UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

|  |  |
|---|---|
| ACCESS LIVING OF METROPOLITAN CHICAGO, INC., an Illinois non-profit corporation,<br><br>        Plaintiff,<br><br>        v.<br><br>CITY OF CHICAGO, an Illinois municipal corporation,<br><br>        Defendant. | Case No. 1:18-cv-03399<br>Honorable Edmond E. Chang<br>Honorable Jeffrey Cole |

**JOINT STATUS REPORT**

Plaintiff Access Living of Metropolitan Chicago, Inc. ("Plaintiff") and Defendant City of Chicago ("Defendant" or "the City") (collectively, "the Parties") submit the following Joint Status Report, as requested by the Court following the reassignment of the case to the Honorable Edmond E. Chang. Dkt. No. 292.

1. **The Nature of the Case**

   a. **Attorneys of Record for Each Party**

*For Plaintiff*

    Michael G. Allen (Lead Trial Attorney)*
    Jennifer I. Klar*
    Valerie D. Comenencia Ortiz*
    Emily E. E. Curran*
    RELMAN COLFAX PLLC
    1225 19th Street NW, Suite 600
    Washington, DC 20036
    **Admitted Pro Hac Vice*

    Kenneth M. Walden

Mary Rosenberg
Access Living of Metropolitan Chicago
115 West Chicago Avenue
Chicago, IL 60654

*For Defendant*

Monica H. Khetarpal
Jason A. Selvey
Jackson Lewis P.C.
150 N. Michigan Avenue
Suite 2500
Chicago, IL 60601

John C. Hansberry (Lead Trial Attorney)*
Fox Rothschild LLP
500 Grant Street, Suite 2500
Pittsburg, PA 15219
*Admitted Pro Hac Vice*

Matthew S. Payne
Fox Rothschild LLP
321 North Clark Street, Suite 1600
Chicago, IL 60654

### b. Basis for Federal Jurisdiction

This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331 and 1343; the Americans with Disabilities Act, 42 U.S.C. § 12133; the Rehabilitation Act of 1973, 29 U.S.C. § 794a; and the Fair Housing Act, 42 U.S.C. § 3613.

### c. Nature of Plaintiff's Claims (as described by Plaintiff)

Access Living filed its Complaint in May 2018 alleging that the City of Chicago has failed to ensure that apartment units and common areas it has funded through the Affordable Rental Housing Program ("Program")—consisting of approximately 542 developments and more than 50,000 rental units—comply with the architectural and programmatic accessibility requirements set out in Title II of the Americans with Disabilities Act ("ADA"), Section 504 of the Rehabilitation Act of 1973 ("Section 504"), and the Fair Housing Act ("FHA"). *See*

*generally* Compl.; Am. Joint Rule 26(f) Report. As a consequence of the City's failure to comply with these requirements, the Complaint alleges, thousands of Access Living's constituents have been excluded from the Program because of their disabilities. Many have ended up living in nursing homes and other institutional settings (including homeless shelters, assisted living, and group homes) or have become homeless because of the inaccessibility of these affordable units.

As alleged in the Complaint, even though the City does not own the buildings in the Program, it has an affirmative obligation to ensure compliance by third party developers, construction companies, and managers with the federal architectural and program accessibility requirements, so that the buildings are constructed and operated consistent with such requirements. Among other things, federal program accessibility requirements mandate that accessible units be affirmatively marketed to people with disabilities and prioritized for occupancy by them.

*Defendant's Position*

Plaintiff's case theory stretches the limits of the ADA, Rehabilitation Act, and Fair Housing Act far beyond their scope. The City is not an affordable housing provider: it did not develop, construct, own, operate, or manage any of the affordable housing in the City of Chicago that is the subject of this case. Rather, the City provided funding for the construction and rehabilitation of 517 multifamily affordable housing developments identified in a stipulated list filed at ECF 185. Plaintiff claims the 517 developments should include approximately 2,500 mobility accessible units and 1,000 sensory accessible units that comply with certain federal accessibility standards. Plaintiff elected not to sue the actual owners, operators, or managers of the affordable housing for alleged lack of accessible housing. Instead, Access Living chose to pursue the City: one of the dozens of entities that provided financing for affordable housing in Chicago over the last 30 years.

3

The City is not the guarantor of accessibility to the extent that Access Living alleges.

### d. Major Legal and Factual Issues in the Case

*Plaintiff's Position*

Access Living's architectural accessibility expert presented his findings with respect to 173 developments in a report consisting of 1386 pages and opined that 100% of those developments failed to comply with federal accessibility requirements. Rather than offering contrary facts (measurements, photographs, etc.), the City's architectural expert simply took a narrower view of how to interpret the scoping and technical requirements applicable under the Americans with Disabilities Act and Section 504 of the Rehabilitation Act. Beyond the inaccessibility of the units and common areas in these developments, there are many other factual issues to be resolved concerning whether the City has complied with its program accessibility obligations, such as identifying and publicizing the location of accessible units, reserving those units for people who need the accessibility features, conducting the required "self-evaluation" of the accessibility status of its programs, and adopting and enforcing policies requiring owners and developers to comply with federal accessibility requirements. These considerations make this matter unsuitable for resolution at summary judgment.

*Defendant's Position*

Though the Court requested a mere Status Report, Access Living opted to turn this report into an informal request to disallow summary judgment or other dispositive motions. The City opposes Plaintiff's attempt to skirt Rule 56 because there are significant disagreements concerning the City's legal role and responsibilities that can and should be properly narrowed and defined through a summary judgement motion. Specifically, the City contends that the ADA, Rehabilitation Act, and Fair Housing Act do not apply in the manner that Access Living

alleges and will ask the Court to decide that question. Access Living would avoid this important issue altogether, taking a shotgun approach to affordable and accessible housing over a period covering thirty years. In an effort to convince this court to disregard summary judgment, Access Living describes expert testimony in its portion of this Joint Status Report. While the City does not believe a status report is the appropriate vehicle for a discussion of experts or the appropriateness of summary judgment, the City briefly responds that Access Living's architectural accessibility expert, by his own admission, used a methodology that he simply made up and is not accepted anywhere in the industry. In addition, the City disagrees with the applicability of standards and regulations used by their expert. The Court is best positioned to determine what laws apply, not Access Living's expert. Summary judgment would resolve this point. The City expects to file a summary judgment motion to properly narrow this case on these and other important legal issues.[1]

The City expects to file a summary judgment motion to narrow this case for trial and requests that the Court set a briefing schedule. Following a decision on motion for summary judgment, the issue of a pre-trial schedule can be decided.

e. **Relief Sought by Plaintiff (as described by Plaintiff)**

In its Complaint, Plaintiff seeks injunctive and monetary relief. In short, Plaintiff asks the Court to enter an order enjoining the City from continuing to fail to or refuse to ensure that its housing units that are part of the Affordable Rental Housing Program comply with accessibility laws, and to require the City to bring the architectural features of its units in its Program into

---

[1] Two of Access Living's other experts present additional challenges: one is a lawyer who would take over the Court's job and opine on the meaning and applicability of the law, and another lawyer is offered as a damages expert who did not actually provide a damage calculation and created her own unique methodology that is wholly unreliable.

compliance with relevant accessibility laws (known as architectural accessibility, *see* Compl. at ¶¶ 30, 35). Plaintiff also seeks an injunction to enjoin the City from continuing to otherwise fail to provide meaningful access to people with disabilities in the Program (known as programmatic accessibility, *see* Compl. at ¶¶ 30, 35). Plaintiff also seeks an injunction requiring the City going forward to adopt policies and practices to ensure ongoing architectural and programmatic accessibility compliance in its Affordable Rental Housing Program. Finally, Plaintiff seeks organizational damages that would compensate it for injuries caused to it by the City's discriminatory practices and conduct, as well as reasonable attorneys' fees and costs.

*Defendant's Position*

This is not an enforcement action; the causes of action presented in the Complaint claim discrimination. It is the City's position that Access Living cannot establish its claims and Access Living is not entitled to its requested relief.

2. **Pending Motions and Case Plan**

    a. **Service of Process**

    Defendant was served on May 14, 2018.

    b. **Pending Motions**

    There are no pending motions before the Court.

    c. **Brief Description of Substantive Rulings**

*Plaintiff's Statement*

On July 9, 2018, Defendant filed a motion to dismiss Plaintiff's Complaint. Dkt. No. 25. On March 29, 2019, the Court denied Defendant's motion to dismiss in its entirety. Dkt. No. 35. In doing so, the Court recognized that Access Living's "detailed, well-organized 44-page complaint easily satisfie[d]" Rule 8 pleading standards, *id.* at 12, and that the complaint reflected

6

Access Living's "extensive investigation into the City's compliance" with federal accessibility requirements. The Court also rejected the City's argument that Access Living's receipt of funds to conduct advocacy for people with disabilities precluded its argument that it had been required to divert its scarce resources in order to counteract the effects of the City's noncompliance with its accessibility obligations, noting that "there would be 'more of' Plaintiff's counseling and supportive services 'were it not for' the City's alleged failure of Federal Accessibility Laws." *Id.* at 10, *quoting from Village of Bellwood v Dwivedi,* 895 F.2d 1521, 1526 (7th Cir. 1990). Finally, the Court recognized that Access Living has alleged a continuing violation, and it therefore rejected the City's statute of limitations argument. *Id.* at 13-14.

*Defendant's Statement*

Plainiff includes an unnecessarily lengthy presentation of the the Court's March 29, 2019 Opinion and Order on the City's Motion to Dismiss. The City's Motion to Dismiss was made at a completely different stage of the case and, obviously, the Court's ruling does not preclude the City from raising issues at summary judgment.

    d. **Status of Discovery**

The Parties have engaged in an extensive discovery process. In addition to written discovery and depositions, Plaintiff conducted 96 site surveys of architectural accessibility with Defendant present and additional plan reviews for randomly selected properties to evaluate the built conditions and plans of a sample of developments.

In accordance with the discovery schedule, the Parties completed all site surveys of architectural accessibility on October 17, 2022 and completed all outstanding fact discovery on November 28, 2022. *See* Dkt. No. 249. Plaintiff then disclosed its expert reports on January 3, 2023, and Defendant disclosed its response reports on March 6, 2023.

The close of oral expert discovery was originally scheduled for May 8, 2023, but Plaintiff learned that its expert Judith Heumann passed away on March 4, 2023. *See* Dkt. 286. The Court granted Plaintiff's Unopposed Motion to amend the discovery schedule such that oral expert discovery of Erin Kemple (replacement expert to Judith Heumann) and the City's response expert would be completed by June 7, 2023. *See* Dkt. No. 287. Accordingly, Plaintiff disclosed Ms. Kemple's expert report on April 24, 2023, Defendant disclosed its response report on May 24, 2023, and the Parties completed depositions by June 7, 2023. The Parties completed all other oral expert discovery by the original deadline of May 8, 2023.

Therefore, the Parties have completed all discovery.

    e.  **[Not applicable because discovery schedule set and discovery complete]**

    f.  **Post-Discovery & Trial Schedule**

No post-discovery deadlines, including deadlines for summary judgment motions and trial, have been set. A jury trial has been requested, and the probable length of the trial is two weeks.

*Plaintiff's Position*

Given the posture of this case after the denial of the motion to dismiss and the status of expert discovery, Plaintiff does not believe that a lengthy wait for trial for Defendant to move for summary judgment is appropriate or advisable. Plaintiff asks that this case be set for a trial in 2023.

Access Living's architectural expert examined 173 developments in the Program and concluded that 100% of them failed to comply with the federal accessibility requirements; the City's expert quibbled with the scope of the federal obligations, but not with the measurements or other direct observations of Access Living's expert. Access Living's program accessibility

8

expert opined that the City has failed to identify the location of accessible units and ensure they are marketed to people with disabilities. He further opined that the City's Department of Housing had not completed a self-evaluation and transition plan for the Program, as required by the ADA and Section 504, and has no program in place to ensure that developers and owners receiving City funding under the Program build or operate the developments in compliance with federal accessibility requirements.

In responses to Requests for Admission, the City concedes that it has no records of the location of accessible units built before 2014 and that no City employee conducted on-site accessibility inspections prior to March 2022.

Because there is more than enough evidence to convince a reasonable jury that there are triable issues of fact concerning liability, Access Living believes that summary judgment proceedings will not be a good use of the Court's time (or that of the Parties).

*Defendant's Position*

The City plans to file a motion for summary judgment under Rule 56, as it is entitled to do under the Federal Rules. It would be an unusual and harsh decision to preclude the City from filing a motion allowed pursuant to Rule 56. The City disagrees with Access Living's extreme position to disregard summary judgment. As reported above, there are significant disagreements between the parties on the framework of this case, and summary judgment is necessary to resolve these legal disagreements and properly and efficiently narrow any remaining disputed factual issues in this case.

    g. **Electronic Service**

The Parties agree to service of pleadings and other papers by electronic means under Federal Rule of Civil Procedure 5(b)(2)(E).

3. **Consent to Proceed Before a Magistrate Judge**

The Parties do not consent to proceed before a Magistrate Judge for all purposes.

4. **Status of Settlement Discussions**

*Plaintiff's Position*

Access Living has attempted to settle this case since filing the complaint; Defendant represented to the Court that once Plaintiff's expert reports were received and analyzed Defendant would be prepared to engage in settlement discussions. No settlement discussions have occurred.

Access Living proposed settlement terms in correspondence dated July 12, 2018, shortly after it filed the complaint. It received no response from the City. Following denial of the motion to dismiss, Dkt. No. 35, it renewed its settlement inquiry by e-mail of April 15, 2019. The City responded on April 16, 2019, that it had no interest in settlement. Thereafter, on May 12, 2021, pursuant to an inquiry about settlement from the Hon. Jeffrey Cole, Access Living invited the City to participate in a joint inspection protocol to determine the accessibility of developments in the Program. The City declined. Later, at an in-person status hearing on November 2, 2022, Dkt. No. 273, the Hon. Ronald A. Guzman proposed that the matter proceed immediately to trial following expert discovery because he believed it was not an efficient use of the Court's time to consider lengthy briefs only to have to conduct a trial concerning remaining issues. Judge Guzman then inquired about the status of settlement negotiations, and counsel for the City indicated it would be prepared to discuss settlement as soon as expert discovery concluded. By

letter of November 9, 2022, Access Living reiterated its willingness to engage in settlement discussions with the same basic terms it offered in May 2018. Finally, at a virtual status conference on March 23, 2023 before Judge Cole, the City stated again that it would be prepared and interested in discussing settlement after expert discovery concluded.

      Access Living is prepared to engage in immediate settlement discussions, through mediation or any other vehicle agreed to by the Parties. In order to attempt to finally begin the settlement process, Plaintiff requests a settlement conference as soon as the Court can make one available. Access Living would like to do so with the benefit of a trial date to not delay ultimate resolution of the case, given the number of years Access Living has already been willing to discuss settlement without a discussion beginning.

*Defendant's Position*

      The City is currently weighing its position on settlement. That said, as described above, there are significant disputes between the parties on the legal framework of this case. The City expects that settlement discussions can be productive after the Court substantially narrows the issues in this case.

Date: June 8, 2023

| /s/ John C. Hansberry | /s/Jennifer I. Klar |
|---|---|
| John C. Hansberry* | Jennifer I. Klar* |
| Fox Rothschild LLP | Michael G. Allen* |
| 500 Grant Street, Suite 2500 | Valerie D. Comenencia Ortiz* |
| Pittsburg, PA 15219 | Emily E. E. Curran* |
| *Admitted Pro Hac Vice | RELMAN COLFAX PLLC |
|  | 1225 19th Street NW, Suite 600 |
| Monica H. Khetarpal | Washington, DC 20036 |
| Jason A. Selvey | Tel: 202-728-1888 |
| Jackson Lewis P.C. | Fax: 202-728-0848 |
| 150 N. Michigan Avenue | jklar@relmanlaw.com |
| Suite 2500 | mallen@relmanlaw.com |
| Chicago, IL 60601 | vcomenenciaortiz@relmanlaw.com |

11

ecurran@relmanlaw.com

Matthew S. Payne
Fox Rothschild LLP
321 North Clark Street, Suite 1600
Chicago, IL 60654

Kenneth M. Walden
Mary Rosenberg
Access Living of Metropolitan Chicago
115 West Chicago Avenue
Chicago, IL 60654
Tel: 312-640-2136
Fax: 312-640-2101
TTY: 312-640-2102
kwalden@accessliving.org
mrosenberg@accessliving.org

Attorneys for Plaintiff

*Admitted *Pro Hac Vice*

12

**CERTIFICATE OF SERVICE**

      I hereby certify that on June 8, 2023, a true and correct copy of the foregoing Joint Status Report was served via CM-ECF on all attorneys of record.

                                                /s/ Jennifer I. Klar
                                                Jennifer I. Klar