# EXHIBIT 8



# Expert Report

*ACCESS LIVING OF
METROPOLITAN CHICAGO, INC.*,
Plaintiff,

v.

*CITY OF CHICAGO*,
Defendant

Case No. 18-cv-3399
US District Court – Northern District of Illinois – Eastern Division

January 3, 2023



**Bill Hecker, AIA**
**Accessibility Consultant**

Member American Institute of Architects
Alabama Architect  -  3339
Colorado Architect  -  202381
Georgia Architect  -  7309
Louisiana Architect  -  6717
Florida Architect  -  AR102359

3568 Hampshire Drive
Birmingham, AL 35223
(205) 298-1900 office
(205) 907-8155 cell
Bill@HeckerDesign.info

**Got Access?**

## TABLE OF CONTENTS

TABLE OF EXHIBITS .................................................................................................5

INTRODUCTION .......................................................................................................11

I.      EXECUTIVE SUMMARY ..............................................................................11

II.     QUALIFICATIONS........................................................................................18

III.    DOCUMENTS AND INFORMATION REVIEWED/RELIED ON IN PREPARATION FOR THIS REPORT ..............................................................23

IV.    CONTEXT & SCOPE OF ACCESSIBILITY ANALYSES .............................30

      A.     Context for Analyses ............................................................................ 30

      B.     Scope of Analyses ................................................................................ 32

      C.     Accessibility Standards Applicable to My Review................................. 36

V.     METHODOLOGY OF ACCESSIBILITY ANALYSES AND DESCRIPTION OF ACCESSIBILITY REQUIREMENTS APPLIED TO MY REVIEW .........................36

      A.     Section 504 of the Rehabilitation Act .................................................. 36

      B.     The Americans with Disabilities Act ................................................... 39

      C.     Discussion of Section 504 and ADA as Applied to my Review ...................... 41

      D.     Fair Housing Amendments Act ........................................................... 43

VI.    COMMON INSTANCES OF INACCESSIBILITY PRESENT IN THE PROGRAM ...............................................................................49

      A.     Site Arrival Location Issues ................................................................ 49

      B.     Exterior and Interior Accessible Route Issues .................................... 51

      C.     Entrance and Accessible Door Issues .................................................. 54

      D.     Public and Common-Use Spaces and Facilities................................... 55

      E.     Public and Common-Use Restrooms.................................................... 56

      F.     Miscellaneous Accessibility Issues ...................................................... 57

      G.     Specific Dwelling Unit Issues ............................................................. 57

VII.   RANDOMIZED REVIEW OF DEVELOPMENTS FOR ACCESSIBILITY ............58

      A.     Randomized Measurement Reviews ...................................................... 58

             1.     Introduction to Measurement Reviews ................................. 58

             2.     Randomized Measurement Review Methodology............................. 58

|   |   | 3. | Randomized Measurement Review Conclusions ................................. 63 |
|   | B. | **Randomized Plan Reviews** ................................................... 93 |
|   |   | 1. | Introduction to Plan Reviews .................................................. 93 |
|   |   | 2. | Randomized Plan Review Methodology ................................ 93 |
|   |   | 3. | Randomized Plan Review Conclusions ................................ 97 |
| VIII. | **ANALYSIS OF MOPD SITE INSPECTION REPORTS** ...................108 |
|   | A. | **Introduction to MOPD Report Reviews** ................................ 108 |
|   | B. | **MOPD Report Reviews Methodology** ................................ 108 |
|   | C. | **MOPD Report Reviews Conclusions** ................................ 109 |
| IX. | **SUMMARY CONCLUSIONS FOR RANDOMIZED REVIEW OF DEVELOPMENTS** ...............................................................113 |
|   | A. | **All Developments** ................................................ 113 |
|   |   | 1. | Subject to Section 504 ................................................ 113 |
|   |   | 2. | Subject to ADA ................................................ 113 |
|   |   | 3. | Subject to FHA ................................................ 113 |
|   | B. | **All Federally-Funded Developments** ................................ 113 |
|   |   | 1. | Subject to Section 504 ................................................ 113 |
|   |   | 2. | Subject to ADA ................................................ 113 |
|   |   | 3. | Subject to FHA ................................................ 113 |
|   | C. | **Federally-Funded New Construction** ................................ 114 |
|   |   | 1. | Subject to Section 504 ................................................ 114 |
|   |   | 2. | Subject to ADA ................................................ 114 |
|   |   | 3. | Subject to Fair Housing Amendments Act ................................ 114 |
|   | D. | **Non-Federally-Funded New Construction** ................................ 114 |
|   |   | 1. | Subject to Section 504 ................................................ 114 |
|   |   | 2. | Subject to ADA ................................................ 114 |
|   |   | 3. | Subject to FHA ................................................ 114 |
|   | E. | **Federally-Funded Rehabilitations** ................................ 115 |
|   |   | 1. | Subject to Section 504 ................................................ 115 |
|   |   | 2. | Subject to ADA ................................................ 115 |

**F.** **Non-Federally-Funded Rehabilitations** ........................................................... 115

    **1.** **Subject to Section 504** ................................................................ 115

    **2.** **Subject to ADA** ........................................................................... 115

**X.** **OVERALL CONCLUSIONS** ............................................................................... 115

## TABLE OF EXHIBITS

| Exhibit Number | Exhibit Description |
| --- | --- |
| A | Measurement Reviews Overall Sample Property Identification and Results Table |
| B | Plan Reviews Overall Sample Property Identification and Results Table |
| C | MOPD Report Reviews Overall Property Identification and Results Table |
| 1 | *Curriculum Vitae* of Bill Hecker |
| 2 | Letter from Beth Pepper, Attorney, Housing and Civil Enforcement Section, Civil Rights Section, Dep't. of Justice to John H. Catlin and Douglas A. Mohnke of LCM Architects re: *United States v. Post Properties, Inc., et al.*, Case No. 10-1866 (RJL) (D.D.C.), Apr. 9, 2013. |
| 3 | Measurement Review Summary Table with Number of Violations |
| 4 | Measurement Review Information and Coverage Table |
| 5 | Plan Review Pass/Fail Summary Table |
| 6 | Plan Review Development Information and Coverage Table |
| 7 | MOPD Report Reviews Summary Table with Number of Violations |
| **MEASUREMENT REVIEWS** | |
| 8 | 12013 S Eggleston Apartments |
| 9 | 1225 S Michigan Apartments |
| 10 | 1451 N Washtenaw Ave Apartments |
| 11 | 1826 S Avers Apartments |
| 12 | 3108 W Walton Apartments |
| 13 | 3151-3159 W Argyle St Apartments |
| 14 | 3502 W Van Buren St Apartments |
| 15 | 4119-4129 S Ellis, 1029 E 41st Apartments |
| 16 | 436-42 E 47th Street Apartments |
| 17 | 45th Cottage Grove Apartments |
| 18 | 4945 W Monroe St Apartments |
| 19 | 5001-5005 W Monroe Apartments |
| 20 | 6213 S Greenwood Apartments |
| 21 | 647-49 E. 50th Pl. Apartments |
| 22 | 7010 S Clyde Street Apartments |
| 23 | 7024 S Clyde Ave Apartments |
| 24 | 7200 S Lowe Ave Apartments |
| 25 | 7901 S Kingston Ave Apartments |

| Exhibit Number | Exhibit Description |
|---|---|
| 26 | 8031-35 S. Drexel Avenue Apartments |
| 27 | 825-827 W Sunnyside Apartments |
| 28 | African Village Apartments |
| 29 | Austin Shore II Apartments |
| 30 | Caroline Hedger Apartments |
| 31 | Churchview Manor Senior Apartments |
| 32 | Churchview Supportive Living Apartments |
| 33 | Clifton Magnolia Apartments |
| 34 | Concordia Place Apartments |
| 35 | Courtyard Commons Apartments |
| 36 | Drexel Court Apts. |
| 37 | Eden Development Apartments |
| 38 | Edgewater Shores Apartments |
| 39 | Evergreen Towers Apartments |
| 40 | Faith Residences |
| 41 | Germano Milgate Apartments |
| 42 | Hancock House Apartments |
| 43 | Harriet Tubman Apartments |
| 44 | Harrison Court Apartments |
| 45 | Hazel Winthrop Apartments |
| 46 | Hearts United III Apartments |
| 47 | Highland Tudor Apartments |
| 48 | Homan Square IV Apartments |
| 49 | Homan Square VI Apartments |
| 50 | Hope Manor Apartments |
| 51 | Keeler Roosevelt Apartments |
| 52 | Kilpatrick Renaissance Apartments |
| 53 | KLEO Art Residences |
| 54 | La Estancia Apartments |
| 55 | La Paz Place Apartments |
| 56 | Lakefront Phase II Apartments |
| 57 | Lakeview Towers |
| 58 | Leland Hotel Apartments |
| 59 | Lincoln Village Senior Apartments |

| Exhibit Number | Exhibit Description |
|:---:|:---:|
| 60 | Malden Arms Apartments |
| 61 | Malden Avenue Apartments |
| 62 | Margaret Ford Manor Apartments |
| 63 | Mayfair Commons |
| 64 | Montclare Senior Residences of Calumet Heights |
| 65 | New Moms Apartments |
| 66 | Northtown Library and Apartments |
| 67 | Park Boulevard Phase 2b Apartments |
| 68 | Park Douglas Apartments |
| 69 | Park Towers Apartments |
| 70 | Parkside Of Old Town P2A Apartments |
| 71 | Paseo Boricua Apartments |
| 72 | Paul G Stewart V Apartments |
| 73 | Porta Coeli Residences |
| 74 | Prairie Park Apartments |
| 75 | Pullman Suites Apartments |
| 76 | Renaissance II Apartments |
| 77 | Roentgen School - Switching Station Lofts |
| 78 | Roosevelt Square II Apartments |
| 79 | Roseland Village Apartments |
| 80 | Rosenwald Courts Apartments |
| 81 | Rowan Trees Apartments |
| 82 | Ruth Shriman House Apartments |
| 83 | San Miguel Apartments |
| 84 | Sankofa House Apartments |
| 85 | Schiff Residences |
| 86 | Senior Suites of Central Station Apartments |
| 87 | Senior Suites of Hegewisch Apartments |
| 88 | Senior Suites of Jefferson Park Apartments |
| 89 | Senior Suites of Ravenswood Manor Apartments |
| 90 | St. Edmonds Tower Annex Apartments |
| 91 | St. Edmunds Manor Apartments |
| 92 | St. Sabina Apartments |
| 93 | The Diplomat Hotel / Buffet Place Apartments |

| Exhibit Number | Exhibit Description |
|:---:|:---:|
| 94 | The Pershing Apartments |
| 95 | The Pomeroy Apartments |
| 96 | The Spaulding Apartments |
| 97 | Town and Garden Apartments |
| 98 | Vision House Apartments |
| 99 | Westhaven Park Apartments |
| 100 | Willard Square Apartments |
| 101 | Woodlawn Michigan Apartments |
| 102 | Wrightwood Senior Apartments |
| 103 | YMCA Washington Park Apartments |
| | **PLAN REVIEWS** |
| 104 | 1826 S Avers |
| 105 | 2501 West 63rd Street |
| 106 | 3502 W Van Buren |
| 107 | 4119-29 S Ellis & 1029 E 41st Pl Apt |
| 108 | 7000-04 S. Merrill Ave Apts |
| 109 | 7014 S. Kimbark Ave. |
| 110 | 7024 S Clyde Ave |
| 111 | Austin Shore I |
| 112 | Barbara Jean Wright Court |
| 113 | Bettendorf Place Sro |
| 114 | Boulevard Commons II |
| 115 | Brainerd Senior Center |
| 116 | Caroline Hedger Apartments |
| 117 | Casa Sor Juana |
| 118 | Cathedral Shelter |
| 119 | Churchview Senior Apartments |
| 120 | Clybourn and Division Apartments |
| 121 | Dorchester Artist Housing Collaborative |
| 122 | Dorchester Way |
| 123 | 3625-3629 W. Dickens |
| 124 | East Park Apartments SRO |
| 125 | Englewood |
| 126 | Evergreen Tower Apartments |

| Exhibit Number | Exhibit Description |
|---|---|
| 127 | Geneva Gables |
| 128 | Greenwood Park Apartments |
| 129 | Hairpin Lofts |
| 130 | Harrison Courts Apartments |
| 131 | Homan Square Phase IV |
| 132 | Homan Square Phase VI |
| 133 | Howard Apartments |
| 134 | Independence Apartments |
| 135 | J. Michael Fitzgerald Apartments |
| 136 | Jeffery Towers Apartments |
| 137 | Kilpatrick Renaissance |
| 138 | La Estancia Affordable Housing |
| 139 | Lincoln Village Senior Apartments |
| 140 | Malden Avenue Apartments |
| 141 | Midway Pointe Senior Residences Housing |
| 142 | Montclare Senior Residences of Calumet Heights |
| 143 | Montclare Senior Residences of Englewood |
| 144 | Montclare Senior Residences SLF Lawndale |
| 145 | Montclare Sr. Res. SLF Avalon Park Phase II |
| 146 | Nathalie Salmon House |
| 147 | Northtown Library and Apartments |
| 148 | Oakwood Shores Senior Apartments |
| 149 | Paseo Boricua |
| 150 | Paul G Stewart Apartment Phases I & II |
| 151 | Paul G. Stewart Apartments Phase III |
| 152 | Porta Coeli Residence |
| 153 | Presentation Apartments II |
| 154 | Rainbow's End |
| 155 | Riverside Village (Eden Green) |
| 156 | Roosevelt Square Phase 1 |
| 157 | Roosevelt Towers Phase II |
| 158 | San Miguel Apartments |
| 159 | Senior Suites of Austin |
| 160 | Senior Suites of Hegewisch |

| Exhibit Number | Exhibit Description |
|:---:|:---:|
| 161 | Senior Suites of Jefferson Park |
| 162 | Senior Suites of Rainbow Beach |
| 163 | Senior Suites of West Humboldt Park |
| 164 | Shops And Lofts At 47Th |
| 165 | Sky 55 |
| 166 | South Loop Affordable Housing |
| 167 | St Edmunds Tower Annex |
| 168 | St. Edmund's Plaza |
| 169 | St. Sabina Apartments |
| 170 | Stewart Court Apartments |
| 171 | The Diplomat Hotel SRO |
| 172 | The Studio SRO |
| 173 | Trc Senior Village 1 |
| 174 | Victoria Jennings Residences |
| 175 | Victory Centre at Galewood |
| 176 | Villages of Westhaven |
| 177 | Vincennes Court |
| 178 | West Humboldt Place |
| 179 | Wheeler House |
| 180 | Woodlawn-Michigan |
| **MOPD REPORT REVIEWS** | |
| 181 | Casa Guerrero |
| 182 | Casa Puebla |
| 183 | Casa San Luis |
| 184 | Emmett Street Apartments |
| 185 | Humboldt Park Residences |
| 186 | LCDC Lazarus Apartments |
| 187 | Paseo Boricua |
| 188 | Southbridge Bldg. 3 |
| 189 | Southbridge Bldg. 4 |

## I. __EXECUTIVE SUMMARY__

I have been engaged by counsel for Access Living of Metropolitan Chicago, Inc. ("Access Living") in connection with its suit against the City of Chicago (the "City") (the "Litigation"), to conduct an analysis of whether multifamily apartment housing developments ("developments") that are part of the City of Chicago's Affordable Rental Housing Program ("the Program") are accessible to individuals with disabilities under the applicable federal accessibility standards and regulations for Section 504 of the Rehabilitation Act of 1973 ("Section 504") and Title II of the Americans with Disabilities Act (the "ADA"). Additionally, for new apartment developments built after March 13, 1991, I have included in my analysis the accessibility and adaptability review of those units as well as the amenity and common-use spaces serving them based on the Fair Housing Amendments Act (the "FHA"), and regulations and technical assistance information promulgated by the U.S. Department of Housing and Urban Development ("HUD").

I have been compensated as follows: I was paid $500 for each analysis of the accessibility of an individual development, including review of certain accessibility inspection reports prepared by the City, and reviews of building plans and/or blueprints. For trial preparation and the development of my expert report, my hourly rate is $325 per hour, plus reimbursable expenses. For testimony at deposition and trial, my fee is $425 per hour, plus reimbursable expenses. No portion of these fees was or is dependent on the nature of my findings or on the outcome of the case.

This analysis was based on the applicable federal accessibility standards and regulations for Section 504 of the Rehabilitation Act of 1973 and Title II of the Americans with Disabilities Act, as well as the Fair Housing Amendments Act. HUD's Section 504 regulations (24 C.F.R.

§ 8.22, 24, C.F.R. § 8.23, and 24 C.F.R. § 8.32) specify that recipients of federal financial assistance from HUD ("recipients") must comply with the accessibility provisions of the Uniform Federal Accessibility Standards ("UFAS"). For the facility compliance provisions associated with Title II of ADA—applicable to the programs, services, activities, and facilities of public entities (state or local governmental entities)—my analysis relied on the ADA Title II regulations and the 1991 ADA Standards, UFAS, or the 2010 ADA Standards for Accessible Design, depending on when the development in question was constructed. As noted above, for FHA compliance of new apartment developments built after March 13, 1991, I have included in my analysis the accessibility and adaptability review of those units, as well as the amenity and common-use spaces serving them based on HUD's FHA Regulations and technical assistance information—including the FHA Guidelines citing the ANSI A117.1-1986 accessibility standards.

As described in detail below, my analysis included: (1) accessibility analysis of as-built conditions surveys including measurements and photographs for a randomly generated sample of developments at issue in this Litigation ("Measurement Reviews"); (2) analysis of proposed accessibility conditions by conducting plan reviews for a randomly generated sample of developments at issue in this Litigation ("Plan Reviews"); and, (3) accessibility analysis of accessibility reports conducted in 2022 by an accessibility specialist in the Chicago's Mayor's Office for People with Disabilities ("MOPD Reports" and my corresponding "MOPD Report Reviews"). Measurement Reviews consist of an experienced accessibility consultant visiting a development to document the as-built conditions at the facility associated with elements required to be accessible by the appropriate accessibility regulations and/or standards as well as the analysis of the resulting measurements and photographs for compliance with applicable

12

accessibility standards. A Plan Review is a detailed analysis of the information provided on the building plans compared with the accessibility requirements of the federal standards and regulations applicable to that development.

My report in this matter consists of this document summarizing my qualifications, my analysis and opinions, and incorporates by reference the attached exhibits including individual development reports, measurements, diagrams and/or photographs described in 96 Measurement Reviews, 77 Plan Reviews and my review of nine (9) MOPD Reports.

In order to account for the many variables associated with the appropriate facility compliance analysis I conducted, my analysis of the accessibility of the multifamily dwelling units and associated amenity spaces in the Program considered four categories of developments, defined by funding and construction type: (1) Federally-Funded New Construction; (2) Non-Federally-Funded New Construction; (3) Federally-Funded Rehabilitations; and (4) Non-Federally-Funded Rehabilitations.

I have repeatedly been accepted as an expert in ADA, FHA, and Section 504 facility compliance litigation and bring my knowledge, judgment, and experience to the task of analyzing the facility compliance issues at the heart of this Litigation.

After an extensive accessibility review of the developments identified in this report and based on Measurement Reviews, Plan Reviews, and a review of the MOPD Reports, it is my professional opinion that there is strong and incontrovertible evidence to support the conclusion that every one of the developments I evaluated has failed to comply with federal accessibility standards (UFAS and/or ADA Standards) and every development required to comply with the Fair Housing Amendments Act design and construction regulations has failed to comply with

those federal regulations and/or HUD's specifications in the Fair Housing Accessibility Guidelines.

There was a total failure to design and construct the developments in the Program in compliance with federal accessibility requirements. It is my professional opinion that the City's oversight of the design and construction of these developments failed to provide people with disabilities meaningful access to the multifamily housing developments I evaluated as required by Section 504, the ADA, and the FHA.

The City's failures to comply have profound, real-world consequences for people with disabilities, whose literal ability to enter the apartment units and common areas in the City's Affordable Rental Housing Program depends on compliance with federal accessibility requirements. In the exhibits attached to this report, I have chronicled hundreds of specific instances of federal accessibility violations. By way of example and to introduce the reader to the format of the Measurement Reviews and Plan Reviews, I offer the following examples of significant accessibility violations:

**Narrow Unit Doors**: The narrow interior doors in the accessible 3-bedroom unit at 829 W Sunnyside in Chicago make passage by a 27" wide typical manual wheelchair difficult or impossible.



The photos in the above table are Confidential and subject to Protective Order. *See* Dkt. 232.

**Steps on Required Accessible Routes to Amenities:** There are inaccessible steps on the required accessible routes from the accessible dwelling units at the La Paz Place Apartments, so wheelchair users are excluded from being able to rent or visit these accessible units.



**Steep Ramps to Common-Use Amenities:** The ramps that connect the dwelling unit wings to the common-use laundry are both very steep (17.3% & 21.2%) at the Highland Tutor development and can easily cause a manual wheelchair user to tip over backwards and fall from their wheelchair as they approach the laundry room.



**Steep Cross Slopes**: The steep (up to 11.0%) cross slopes (i.e., perpendicular to pedestrian traffic) shown in the survey photos of the approach walk serving the accessible 3-bedroom unit at 829 W. Sunnyside in Chicago make straight-line travel in a manual wheelchair very difficult and can tip mobility impaired residents using walkers.

The photos in the above table are Confidential and subject to Protective Order. *See* Dkt. 232.

**Lack of Pull Side Door Clearance:** These examples illustrate instances where wheelchair users and those who use walkers lack adequate space on the pull side of the doors to approach and open them without having to relocate their mobility devices. The examples below are from the survey report for 45th Cottage Grove Apartments.



**Lack of Fire Alarm Strobes in Communications Units**: The Communications Unit at the Montclare Senior Residences development lacks strobes for audible fire alarms provided at this unit, so deaf or hard of hearing residents will not be aware of a fire emergency in the special units designed to accommodate their special communications need under Section 504 and ADA. The strobe shown in the photos below is for the required accessible unit doorbell.

| Dwelling Units – Communications Unit | | | | | | |
|---|---|---|---|---|---|---|
| Communication Unit- Door Notification | There is a visual device for door notification. However, there were no fire alarm notification devices observed in the following units:<br>• 218 Communication Features | 2010 ADA 809.5 | | | | |

**Accessible Unit Toilet Clearance:** The position (too close to the lavatory cabinet and too far from the adjacent side grab bar wall) of the accessible toilet in the accessible 3-bedroom unit at 829 W. Sunnyside in Chicago makes it difficult or impossible for a disabled resident using a typical manual wheelchair to make an accessible transfer to the toilet.



The photos in the above table are Confidential and subject to Protective Order. *See* Dkt. 232.

**Accessible Parking Lacks Access Aisle**: The accessible parking spaces designated by post mounted signs in the new Montclare Senior Residences development each lack an access aisle which is required to allow wheelchair users to load and unload their wheelchair from their vehicle, so they can transfer into and out of the vehicle to use the facilities. With cars parked as close as those in these photos there is no space to allow a wheelchair user to exit their vehicle at this facility.



**Accessible Parking lacks Curb Ramp:** The accessible route from the designated accessible parking space at 114 N Parkside Ave of the Faith Residences development lacks an accessible curb ramp for the abrupt level change between the parking lot and the approach sidewalk.



**Head Height lower than 80" AFF**: An example of protruding objects that are not cane detectable by a blind resident or guest are the angled cross-bracing structural members that the architect left exposed in the interior circulation routes of the 3rd Floor Corridor at the Apartment Development at 436-442 E. 47th Street in Chicago. It is very likely blind and visually impaired residents and guests are at risk of injury when walking along these corridors.



## II.     QUALIFICATIONS

I am an architect who is certified by the National Council of Architectural Registration Boards for reciprocity in the various states, and I am licensed to practice architecture in Alabama, Colorado, Louisiana, Florida, and Georgia. I have a Bachelor of Architecture degree from Louisiana State University. I have more than thirty years of experience working in the area of accessible design and have learned from the first generation of accessibility specialists who broke new ground with the implementation of early federal accessibility laws (i.e., The Architectural Barriers Act of 1968 and the Rehabilitation Act of 1973).

I am not an attorney and do not offer any legal opinions, but instead, as an experienced accessibility consultant, I offer extensive technical assistance related to rules and regulations associated with the accessibility provisions of federal, state and local laws. I have been judicially recognized as having "extensive experience in the field of [Americans with Disabilities Act]

18

compliance sufficient to qualify . . . as an expert in this field." *United States v. AMC Entm't, Inc.*, 245 F. Supp. 2d 1094, 1096 (C.D. Cal. 2003) (order granting government's motion for partial summary judgment).

Additionally, in November 2014, District Court Judge Saundra Armstrong stated the following in the case, *Ivana Kirola, et al. v. City & County of San Francisco, et al.*, Case No. C 07-3685 SBA (N. D. Cal. Nov. 26, 2014) (findings of fact and conclusions of law):

- "The Court finds Hecker, who serves as a consultant to the DOJ in ADA enforcement actions, to be a credible witness and credits his testimony accordingly." *Id.* at 26:15-16.

- "Hecker, a licensed architect, was received by the Court as an expert in architecture and disability access." *Id.* at 41:12-13.

- "The Court finds Hecker, the City's access expert, to be credible, and finds the City's priorities for curb ramp installation, as set forth in the Curb Ramp and Sidewalk Transition Plan, to be consistent with the priorities and recommendations established by the DOJ." *Id.* at 46:1-4.

- "The Court is likewise persuaded by Hecker, who provided testimony regarding program access to the City's library program and RecPark programs." *Id.* at 55:1-2.

I served as a member of the Public Rights of Way Accessibility Advisory Committee to the United States Access Board and helped to draft specific recommendations that have been used as the basis for proposed Americans with Disabilities Act Accessibility Guidelines for public rights-of-ways. I have served as the "Task Group" leader on ADA issues for the American Institute of Architects' building codes and standards committee. I also have had ongoing dialogues with organizations, such as the American Institute of Architects and the National

19

Council on Independent Living, during comment periods for the proposed new ADA and Architectural Barriers Act accessibility guidelines.

I devote my entire professional practice to questions of architectural accessibility. This interest began in 1981, when a teenager with Spina Bifida saw a public demonstration of my martial arts troupe and asked if we might teach him self-defense. During the ensuing five years that I helped to adapt the kung fu forms for him and other wheelchair users, I came to understand for the first time the unique challenges those who use wheelchairs face in everyday activities. This experience influenced my architectural studies to the extent that I participated in a design competition for the 1983 International Summer Special Olympics, and was one of a few architectural students on the winning team selected by the Special Olympics officials, because of our creative mixture of accessibility and functionality.

After the Americans with Disabilities Act passed, and while I was working at Evan Terry Associates, Inc., I authored the *Americans with Disabilities Act Facilities Compliance Workbook,* a seminal publication which is the most comprehensive book on ADA facility compliance available. This book was later reorganized and condensed for use by non-design professionals and sold through John Wiley & Sons publishing as *Americans with Disabilities Act Facilities Compliance: A Practical Guide*. I have also authored articles for national publications, including *How Will the Americans with Disabilities Act Affect You?* for the American School & University Journal and *Architect Offers Advice on Conducting ADA Site Evaluations* for the Thompson Publishing Group ADA Compliance Guide Monthly Bulletin.

During the process of researching for these books and articles, I interviewed many people with disabilities and government officials tasked with the development of the ADA Accessibility Guidelines and other federal accessibility guidelines. I worked closely with Mr. Ron Mace,

FAIA, a nationally recognized accessibility specialist and a pioneer in the field of architectural accessibility.

I am an Instructor in the Office of Executive Education at the Harvard University Graduate School of Design in Cambridge, MA and have developed and conducted more than 100 training seminars in 26 states, the Caribbean, Guam, and Australia. I have trained architects, builders, and building owners on the accessibility requirements of the ADA, Fair Housing Amendments Act, Architectural Barriers Act, and the Rehabilitation Act of 1973, including accessibility seminars specifically tailored for architects and engineers at the following locations: the American Institute of Architects national convention in Chicago; the Construction Specifications Institute in Birmingham, AL; Einhorn, Yafee, Prescott Architects ADA Seminar in Albany, NY; Hawaii Architectural Access Board Seminar in Honolulu, HI; Kurt/Voit/Geuest Architects in Dallas, TX; Woolpert Consultants in Dayton, OH and Hilton Head, SC; RTKL Architects in Baltimore, MD and Washington, DC; AEC Systems National Conference in Anaheim, CA; Gulf States AIA Regional Convention in Bay Point, FL; the Institute of Transportation Engineers Convention in Melbourne, Australia; and, the Western Region American Institute of Architects Convention in Reno, NV. I have also provided in-house training on accessibility issues to law firms, including the following: Powell, Tally, Frederic Law Firm of Birmingham, AL; Serote Permut Law Firm of Birmingham, AL; and the JacksonLewis law offices of New York, NY.

I have had both governmental and private clients. I have been hired to advise the Architect of the Capitol on accessibility issues related to the proposed underground addition to the Capitol Building in Washington, DC, as well as exterior accessibility circulation around Capitol Square. I have advised major US companies on accessible design issues, including: IBM,

Rockwell International, Wal-Mart, Winn Dixie Grocery Stores, and Ruby Tuesday Restaurants. My opinion has been sought by governmental and university clients, including the United States Department of Justice, the Department of Housing and Urban Development, the Illinois Attorney General's Disability Rights Bureau, the City and County of Honolulu, George Washington University, University of Florida, MARTA-Metro Atlanta Regional Transit Authority, Duke University, and the University of California system. Architects and engineers from around the country seek my opinions on accessibility issues and ask me to advise them on specific project design concerns.

I have reviewed plans for and done accessibility evaluations of many apartment complexes and other types of facilities, including: condominiums, hotels, retail stores, transportation stations, homes, hospitals, office buildings, restaurants, nursing homes, and senior citizen centers, to name a few. I have analyzed many complex site and building accessibility problems and designed solutions for those problems which properly balance the sometimes-conflicting needs of various disability groups. I have been on panels where experts debated and discussed the finer points of accessible design and answered impromptu audience questions.

For more than thirty years, I have had the chance to teach and work with many persons with disabilities who have shared with me direct life experiences and challenges. I have moved beyond an academic understanding of accessibility to a real life, hands-on appreciation for the practical difficulties encountered by people with disabilities, such as: the difficulties facing manual wheelchair users when encountering steep slopes and cross slopes; how someone who has braces on his legs that lock his ankle in an "L-shape" can easily trip on open stair risers or squared-off nosings; the difficulties of draining a urine bag in a public restroom urinal without having the urine back-flow into the catheter tube; the problems encountered in keeping a

22

wheelchair from rolling away before sliding out of a car's front seat into it; and the difficulties associated with making tight 180 degree turns, wheelies, and going through doors in a wheelchair without scraping the skin off your knuckles.

The combination of my professional education, the lessons learned from my mentors, the 30+ years of one-on-one relationships with individuals who have disabilities, the extensive professional research conducted during the process of writing two seminal accessibility books, the experience gained in surveying more than 500 buildings and thousands of pages of architectural plans for accessibility form the basis for my opinions on how buildings and facilities can be made accessible for people with disabilities. Additionally, the opinions stated herein are based on my knowledge, training, and experience, and have been rendered within a reasonable degree of professional certainty.

In addition to the qualifications mentioned above that make up the basis of my opinions, I have attached as Exhibit 1 my *curriculum vitae*, which includes key project experience and workshop instruction on accessibility issues, as well as a list of publications I have contributed to and/or authored within the last ten years. It also includes all cases I have testified in at trial and/or deposition within the past five years.

III.   **DOCUMENTS AND INFORMATION REVIEWED/RELIED ON IN PREPARATION FOR THIS REPORT**

- Accessibility Survey measurements and photographs of the following sample developments from Chicago's Affordable Rental Housing Program conducted and prepared by John Torkelson of the ACCESSpartnership, LP of Austin, Texas:

  - 12013 S Eggleston Apartments
  - 1225 S Michigan Apartments
  - 1451 N Washtenaw Ave Apartments
  - 1826 S Avers Apartments
  - 3108 W Walton Apartments

- 3151-3159 W Argyle St Apartments
- 3502 W Van Buren St Apartments
- 4119-4129 S Ellis, 1029 E 41st Apartments
- 436-42 E 47th Street Apartments
- 45th Cottage Grove Apartments
- 4945 W Monroe St Apartments
- 5001-5005 W Monroe Apartments
- 6213 S Greenwood Apartments
- 647-49 E. 50th Pl. Apartments
- 7010 S Clyde Street Apartments
- 7024 S Clyde Ave Apartments
- 7200 S Lowe Ave Apartments
- 7901 S Kingston Ave Apartments
- 8031-35 S. Drexel Avenue Apartments
- 825-827 W Sunnyside Apartments
- African Village Apartments
- Austin Shore II Apartments
- Caroline Hedger Apartments
- Churchview Manor Senior Apartments
- Churchview Supportive Living Apartments
- Clifton Magnolia Apartments
- Concordia Place Apartments
- Courtyard Commons Apartments
- Drexel Court Apts.
- Eden Development Apartments
- Edgewater Shores Apartments
- Evergreen Towers Apartments
- Faith Residences
- Germano Milgate Apartments
- Hancock House Apartments
- Harriet Tubman Apartments
- Harrison Court Apartments
- Hazel Winthrop Apartments
- Hearts United III Apartments
- Highland Tudor Apartments
- Homan Square IV Apartments
- Homan Square VI Apartments
- Hope Manor Apartments
- Keeler Roosevelt Apartments
- Kilpatrick Renaissance Apartments
- KLEO Art Residences
- La Estancia Apartments
- La Paz Place Apartments
- Lakefront Phase II Apartments

- Lakeview Towers
- Leland Hotel Apartments
- Lincoln Village Senior Apartments
- Malden Arms Apartments
- Malden Avenue Apartments
- Margaret Ford Manor Apartments
- Mayfair Commons
- Montclare Senior Residences of Calumet Heights
- New Moms Apartments
- Northtown Library and Apartments
- Park Boulevard Phase 2b Apartments
- Park Douglas Apartments
- Park Towers Apartments
- Parkside Of Old Town P2A Apartments
- Paseo Boricua Apartments
- Paul G Stewart V Apartments
- Porta Coeli Residences
- Prairie Park Apartments
- Pullman Suites Apartments
- Renaissance II Apartments
- Roentgen School - Switching Station Lofts
- Roosevelt Square II Apartments
- Roseland Village Apartments
- Rosenwald Courts Apartments
- Rowan Trees Apartments
- Ruth Shriman House Apartments
- San Miguel Apartments
- Sankofa House Apartments
- Schiff Residences
- Senior Suites of Central Station Apartments
- Senior Suites of Hegewisch Apartments
- Senior Suites of Jefferson Park Apartments
- Senior Suites of Ravenswood Manor Apartments
- St. Edmonds Tower Annex Apartments
- St. Edmunds Manor Apartments
- St. Sabina Apartments
- The Diplomat Hotel / Buffet Place Apartments
- The Pershing Apartments
- The Pomeroy Apartments
- The Spaulding Apartments
- Town and Garden Apartments
- Vision House Apartments
- Westhaven Park Apartments
- Willard Square Apartments

- Woodlawn Michigan Apartments
- Wrightwood Senior Apartments
- YMCA Washington Park Apartments

- Building Plans for the following sample developments from Chicago's Affordable Rental

  Housing Program:

  - 1826 S Avers
  - 2501 West 63rd Street
  - 3502 W Van Buren
  - 4119-29 S Ellis & 1029 E 41st Pl Apt
  - 7000-04 S. Merrill Ave Apts
  - 7014 S. Kimbark Ave.
  - 7024 S Clyde Ave
  - Austin Shore I
  - Barbara Jean Wright Court
  - Bettendorf Place Sro
  - Boulevard Commons II
  - Brainerd Senior Center
  - Caroline Hedger Apartments
  - Casa Sor Juana
  - Cathedral Shelter
  - Churchview Senior Apartments
  - Clybourn and Division Apartments
  - Dorchester Artist Housing Collaborative
  - Dorchester Way
  - 3625-3629 W. Dickens
  - East Park Apartments SRO
  - Englewood
  - Evergreen Tower Apartments
  - Geneva Gables
  - Greenwood Park Apartments
  - Hairpin Lofts
  - Harrison Courts Apartments
  - Homan Square Phase IV
  - Homan Square Phase VI
  - Howard Apartments
  - Independence Apartments
  - J. Michael Fitzgerald Apartments
  - Jeffery Towers Apartments
  - Kilpatrick Renaissance
  - La Estancia Affordable Housing
  - Lincoln Village Senior Apartments

- Malden Avenue Apartments
- Midway Pointe Senior Residences Housing
- Montclare Senior Residences of Calumet Heights
- Montclare Senior Residences of Englewood
- Montclare Senior Residences SLF Lawndale
- Montclare Sr. Res. SLF Avalon Park Phase II
- Nathalie Salmon House
- Northtown Library and Apartments
- Oakwood Shores Senior Apartments
- Paseo Boricua
- Paul G Stewart Apartment Phases I & II
- Paul G. Stewart Apartments Phase III
- Porta Coeli Residence
- Presentation Apartments II
- Rainbow's End
- Riverside Village (Eden Green)
- Roosevelt Square Phase 1
- Roosevelt Towers Phase II
- San Miguel Apartments
- Senior Suites of Austin
- Senior Suites of Hegewisch
- Senior Suites of Jefferson Park
- Senior Suites of Rainbow Beach
- Senior Suites of West Humboldt Park
- Shops And Lofts At 47Th
- Sky 55
- South Loop Affordable Housing
- St Edmunds Tower Annex
- St. Edmund's Plaza
- St. Sabina Apartments
- Stewart Court Apartments
- The Diplomat Hotel SRO
- The Studio SRO
- Trc Senior Village 1
- Victoria Jennings Residences
- Victory Centre at Galewood
- Villages of Westhaven
- Vincennes Court
- West Humboldt Place
- Wheeler House
- Woodlawn-Michigan

- Chicago's Mayor's Office for People with Disabilities (MOPD) accessibility

inspection reports for the following developments:

- Casa Guerrero (C0633711)
- Casa Puebla (C0633715)
- Casa San Luis (C0633720)
- Emmett Street Apartments (C0633723)
- Humboldt Park Residences (C0633728)
- LCDC Lazarus Apartments 9C0633735)
- Paseo Boricua (C0633742)
- Southbridge Bldg. 3 (C0633745)
- Southbridge Bldg. 4 (C0633749)

- The following statutes, regulations, and related guidance:

  - 28 C.F.R. part 8—Department of Housing and Urban Development regulations for Section 504 of the Rehabilitation Act of 1973.
  - 28 C.F.R. part 35—ADA Title II regulations issued by the Department of Justice.
  - 1991 ADA Standards for Accessible Design, *available at* https://www.ada.gov/law-and-regs/design-standards/1991-design-standards/.
  - 2010 ADA Standards for Accessible Design, *available at* https://www.ada.gov/law-and-regs/design-standards/2010-stds/.
  - ADA Title II Action Guide,Adaptive Environments Center, National Institute on Disability and Rehabilitation Research Grant # H133D10122, Published 1992 & Revised 1996.
  - Americans with Disabilities Act of 1990, 42 U.S.C. § 12181, as amended.
  - ANSI A117.1-1986 Accessibility Standard for Buildings and Facilities – Providing Accessibility and Usability for Physically Handicapped People, American National Standards Institute, New York, NY.
  - Barrier Free Environments, Inc., Fair Housing Act Design Manual—a Manual to Assist Designers and Builders in Meeting the Accessibility Requirements of the Fair Housing Act, published by Department of Housing and Urban Development, Published Aug. 1996 & Revised Apr. 1998.
  - Barriers Free Environments, Inc. for U.S. Architectural and Transportation Compliance Board, UFAS Retrofit Manual, Apr. 1991, *available at* https://ia600807.us.archive.org/27/items/retrofitmanualde00unit/retrofitmanualde00unit.pdf
  - Fair Housing Amendments Act of 1988—Pub. L. No. 100-430, Sept. 13, 1988.
  - Fair Housing Accessibility Guidelines with HUD's preamble, 56 Fed. Reg. 9472-9515, Mar. 6, 1991.
  - Federal Rules of Civil Procedure for Expert Witness Requirements.
  - FHA Guidelines Questions & Answers – Supplemental Notice, 59 Fed. Reg. 33362-33368, June 28, 1994.
  - HUD's Section 504 Deeming Notice for an Alternate Accessibility Standard

to UFAS, 79 Fed. Reg. 29671-29676, Published May 23, 2014.

- Letter from Beth Pepper, Attorney, Housing and Civil Enforcement Section, Civil Rights Section, Department of Justice to John H. Catlin and Douglas A. Mohnke of LCM Architects re: *United States v. Post Properties, Inc., et al.*, Case No. 10-1866 (RJL) (D.D.C.), Apr. 9, 2013.

- The Rehabilitation Act of 1973 (29 U.S.C. § 701 et seq.); 28 C.F.R. part 41—Coordinating regulations for Section 504 of the Rehabilitation Act issued by the Department of Justice.

- Uniform Federal Accessibility Standards ("UFAS").

- The following additional documents:

  - Barrier Free Environments, Inc. Accessible Routes, ADAAG 4.3 The Americans with Disabilities Act Accessibility Guidelines Tech Sheet Series, National Institute on Disabilities and Rehabilitation Research. Grant #H133D10122. Washington, D.C, 1994.

  - Barrier Free Environments, Inc. Accessibility in Georgia: A Technical & Policy Guide to Access in Georgia, Governor's Council on Development Disabilities for Georgia, 1996.

  - Barrier Free Environments, Inc. Toilet Stalls, ADAAG 4.17 The Americans with Disabilities Act Accessibility Guidelines Tech Sheet Series, National Institute on Disabilities and Rehabilitation Research, Grant #H133D10122, Washington, D.C., 1994.

  - Chartbook on Disabilities in the United States, An InfoUse Report, Washington, DC: US National Institute on Disability and Rehabilitation Research, 1996.

  - Information and technical assistance from the U.S. Department of Housing and Urban Development website *available at* www.HUD.gov.

  - Information and technical assistance from the U.S. Department of Justice website *available at* www.ADA.gov.

  - Information provided by counsel including data on the on funding, type of construction, developments selected based on statistician's randomizations, and construction start date for developments and the operative Complaint in this matter.

  - Kirschbaum, B.A., Axelson, P.W., et al. Part 2 - Designing Sidewalks and Trails for Access, Best Practices Design Guide, U.S. Department of Transportation, Washington, D.C., Sept. 2001.

  - Kraus, L.E., Stoddard, S. and Gilmartin, D, Chartbook on Disability in the United States, An InfoUse Report, Washington, D.C.: US National Institute on Disability and Rehabilitation Research, 1996.

  - Porch Design & Construction Guidelines, City of Chicago Department of Buildings, May 2011

  - Sanford, JA, A Review of Technical Requirements for Ramps, U.S. Access Board, contract # QA930020, Washington, D.C., 1996.

  - Steinfeld E., Schroeder S., Bishop M., Accessible Buildings for People

29

with Walking and Reaching Limitations, U.S. Department of Housing and Urban Development, Washington, D.C., Apr. 1979.

- Taylor, Danielle M., U.S. Census Bureau, Report on Americans with Disabilities: 2014, Nov. 2018, *available at* https://www.census.gov/content/dam/Census/library/publications/2018/demo/p70-152.pdf.
- Templer, John, Development of Priority Accessible Networks, an Implementation Manual - Provisions for the Elderly and Handicapped Pedestrians, U.S. Department of Transportation, Federal Highway Administration, Jan. 1980.
- Templer, John, Provisions for the Elderly and Handicapped Pedestrians Report No. FHWA-RD-79-2, Volume 2, Hazards, Barriers, Problems, and the Law Final Report, U.S. Department of Transportation, Federal Highway Administration, May 1980.

## IV. CONTEXT & SCOPE OF ACCESSIBILITY ANALYSES

### A. Context for Analyses

Counsel represented the following to me as background for my analysis: The Litigation concerns the accessibility of more than 500 multifamily apartment housing developments that received some form of financial or other assistance from the City of Chicago from July 1988 to the present.[1] Each such development is required to comply with the accessibility provisions set forth in one or more of the following statutes: Section 504 of the Rehabilitation Act of 1973, Title II of the Americans with Disabilities Act, and/or the Fair Housing Amendments Act, as well as the applicable regulations.

All three of these statutory schemes required the City to evaluate the accessibility of these developments. Thus, it is appropriate to look at the accessible units, or lack thereof, at all of these

---

[1] I was informed that Access Living and the City of Chicago entered into a set of stipulations identifying at least 517 multifamily developments that received funding from the City of Chicago after July 1988, and that the stipulations identify the type of funding and the type of construction for each development in the Program. Dkt. 185. My review was not limited to those developments but included properties for which Access Living has evidence are properly included in the Program.

developments together to evaluate the City's compliance with its Program-wide obligations.

In addition, to ensure that similarly situated developments were evaluated together, the developments in the Program were divided into four categories defined by funding and construction type. The City provided federal funding to some of these developments, thus giving rise to additional, independent obligations to comply with Section 504 beyond the City's obligation to ensure accessibility throughout the entire housing program. In addition, the City provided funding to some developments for construction of a new multifamily housing complex, while other developments received assistance to rehabilitate an existing structure. In order to account for all of these variables, the developments in the Program were stratified into the following four categories:

1. Federally-Funded New Construction

2. Non-Federally-Funded New Construction

3. Federally-Funded Rehabilitations

4. Non-Federally-Funded Rehabilitations

Because the Program consists of more than 500 developments, it is impractical and cost-prohibitive to conduct a site inspection of each one. As a result, Access Living asked its statistical expert to randomize the Program's portfolio of developments so that a representative sample of developments in each category could be identified and examined for compliance with the applicable federal accessibility standards. *See* Expert Report of B. Siskin. Based upon Mr. Siskin's direction, Plaintiff's counsel assigned me to conduct my accessibility analyses in the order provided in the randomized lists for the four categories.

Each of those four lists was randomized twice so that two independent reviews could be performed: (1) randomized Measurement Review and (2) randomized Plan Review. During

discovery, the City also produced nine (9) MOPD Accessibility Inspection Reports ("MOPD Reports"), consisting of measurements and photographs taken by an accessibility specialist. I have reviewed these as part of my analysis ("MOPD Report Reviews").

**B.  Scope of Analyses**

Plaintiff's counsel retained me to perform three complementary accessibility analyses. First, I reviewed measurements and photographs taken during our on-site accessibility inspections for compliance with applicable federal accessibility regulations and/or accessibility standards (referred to as "Measurement Reviews"). The developments reviewed were assigned by Plaintiff's counsel in accordance with the four randomized lists created for randomized Measurement Review. The measurements and photographs were taken as part of accessibility inspections conducted by John Torkelson of the ACCESSpartnership, LP under my direction and guidance. My Measurement Review process and findings for these reports are discussed further below at Section VII.A.

Second, I reviewed copies of blueprints and/or architectural drawings ("building plans") for compliance with applicable federal accessibility regulations and/or accessibility standards (referred to as "Plan Reviews"). The developments for which I received building plans were assigned to me by Plaintiff's counsel in accordance with the four randomized lists created for randomized Plan Review. My Plan Review process and findings for these reports are discussed further below at Section VII.B.

Third, I reviewed all nine (9) of the MOPD Reports produced during discovery to see if the measurements and photographs taken by Defendant's accessibility specialist at developments in the Program demonstrated compliance or lack of compliance with the applicable federal accessibility regulations and/or accessibility standards. My review process and findings for these

reports are discussed further at Section VIII below.

For purposes of this report, I was asked to assign a "pass" or a "fail" assessment for each development I reviewed, using the applicable accessibility regulations and/or accessibility standards. Technically, in new and altered residential facilities, the determination of non-compliance (or a "fail") would occur where there is **any** deviation from the specific applicable new construction or alteration provisions of UFAS or the ADA Standards. However, in this report I have employed a less rigorous standard of meaningful accessibility, under which a development fails only if the violations found are of a type or frequency that would prevent someone with a disability from being able to use important portions of their dwelling unit and/or common-use facilities. Doing so ensures that minor deviations or purely technical noncompliance does not result in a failing grade in the absence of actual barriers to accessibility. Some examples of violations that, in my experience, demonstrate a lack of meaningful accessibility are: inadequate room in the accessible dwelling unit bathroom such that an individual using a wheelchair cannot enter the bathroom and close the door behind them; insufficient clear floor space in front of the sink in the bathroom or kitchen to allow a forward approach in a wheelchair so an individual can wash their hands or their dishes; doorways that are not wide enough for an individual in a manual wheelchair to maneuver without scraping the knuckles on their hands on the door frames as they pass; stairs or steps that make it difficult or impossible for wheelchair users to enter a space; and lack of lowered kitchen counters or cabinets in accessible dwelling units. Thus, I used my professional judgment to review developments for an overall level of meaningful accessibility, and then determined whether the development passed or failed.

This approach is in accord with that used by the Department of Justice. *See* Letter of Apr. 9, 2013 from Beth Pepper, Attorney, Housing and Civil Enforcement Section, Civil Rights Section, Dep't. of Justice to John H. Catlin and Douglas A. Mohnke of LCM Architects re: *United States v. Post Properties, Inc., et al.*, Case No. 10-1866 (RJL) (D.D.C.)., attached as Exhibit 2. The U.S. Department of Justice stated in that letter that the reason for instructing their expert witness to edit his findings using what I refer to as "acceptable deviations" or "additional noted violations" was "to streamline the presentation of the issues in the case" and "to narrow the issues for litigation."

The acceptable deviations defined in the DOJ letter are divided into slope measurements and dimensional measurements using a tape measure. Regarding slope measurements, the federal accessibility standards categorize them into either running slopes or cross slopes. Running slopes are the slope or angle of the walking surface in the direction of pedestrian travel. UFAS and 2010 ADA Standards both specify that walking surfaces with a slope from level (0%) to 5% is accessible without ramp features. DOJ instructed their expert to accept deviations in running slope up to 1% so only walkways with running slopes at or steeper than 6% would be cited in litigation. For running slopes between 5% - 8.3%, UFAS and 2010 ADA Standards both require specific ramp features such as: accessible handrails on each side (if the ramp run rise is above 6"), edge protection to keep wheelchair users from accidently falling off the sides, and the availability of 60" long level landings at the top, bottom and where ramps change direction or rise more than 30" in height. For ramp running slopes, DOJ litigated those that were at or steeper than 9%.

For vertical or horizontal dimensions identified in the federal accessibility standards, the DOJ acceptable deviations were dependent on the specific dimension required in the federal

accessibility standards. For dimensions specified in the standards as 1½" to 3", the acceptable deviation was ½" in the DOJ letter. For dimensions specified in the standards as 3" to 96", the acceptable deviation was 1". An example of the smaller dimension is the distance required of ramp handrails off the adjacent wall surface, which is specified in UFAS as 1½". The DOJ acceptable deviation was ½", so the acceptable measurements would be 1" to 2". An example of specified dimensions between 3" and 96" is associated with the centerline distance between the toilet and the adjacent wall, which is required to be 18" per UFAS, but the DOJ acceptable deviation was 1", so my litigation opinion regarding the accessibility placement of a toilet in an accessible toilet stall is between 17" and 19" —beyond that is an accessibility violation.

Another DOJ acceptable deviation applies to a very common accessibility barrier, the cross slope along accessible routes. Basically, cross slopes are the angle of the pavement as measured perpendicular to the dominant direction of pedestrian traffic and are also associated with the limit of the slope at door stoops, as well as accessible parking space/access aisles. The UFAS and ADA Standards limit cross slopes to 2% maximum, but as with running slopes, the DOJ has established a 1% acceptable deviation in their letter. Following their lead, I will not cite violations for these cross slopes unless they exceed 3.0%.

In sum, while smaller violations have been noted to demonstrate the widespread failure to comply with the appropriate accessibility standards, my determination of whether a development passed or failed is based on an assessment of meaningful accessibility, by which I mean whether violations of a type or frequency exist at the development that significantly impede the ability of an individual with disabilities from being able to use important portions of their dwelling unit and/or common-use facilities.

### C.  Accessibility Standards Applicable to My Review

For the purposes of my accessibility review of new construction and alteration projects in this matter, I based my accessibility evaluations related to Section 504 and the ADA on the following accessibility standards depending on the date of the plans and/or the development's construction start date:

| Date | Section 504 Standard | ADA Standard |
|---|---|---|
| On or after July 11, 1988 but before January 26, 1992 | UFAS | n/a |
| After January 26, 1992 but before March 15, 2012 | UFAS | UFAS |
| On or after March 15, 2012[2] | UFAS | 2010 ADA Standards |

## V.  METHODOLOGY OF ACCESSIBILITY ANALYSES AND DESCRIPTION OF ACCESSIBILITY REQUIREMENTS APPLIED TO MY REVIEW

### A.  Section 504 of the Rehabilitation Act

The federal government has a long history of passing laws that assist people with disabilities in navigating their built environment more effectively. In 1973, the Rehabilitation Act was signed into law and as I understand it, Section 504 of this act states that "[n]o otherwise qualified handicapped individual in the United States…shall, solely by reason of his handicap, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." While each federal agency sets its own regulations regarding compliance with Section 504, for housing or residential programs, all federal agencies defer to the regulations published by HUD.

---

[2] Again, as noted above, the ADA regulations allowed developers the choice of using either UFAS or 2010 ADA Standards for projects where construction began between September 15, 2010 and March 15, 2012, but mandated the use of the 2010 ADA Standards for projects constructed after March 15, 2012. 28 C.F.R. § 35.151(c).

HUD's regulations, 24 C.F.R. §§ 8.22, 8.23, 8.32, specify that recipients of federal financial assistance from HUD must comply with the accessibility provisions of UFAS. As a practicing architect and accessibility consultant, I have had to become familiar with these technical standards, so that I could apply them to my analyses of whether recipients have complied with their obligations under Section 504. These standards have been in force since July 11, 1988, and are broadly available to recipients, architects, and other design professionals. Below are relevant excerpts from these HUD Section 504 regulations:

*§ 8.22 New construction—housing facilities.*

*(a) New multifamily housing projects . . . shall be designed and constructed to be readily accessible to and usable by individuals with handicaps.*
*(b) Subject to paragraph (c) of this section, a minimum of five percent of the total dwelling units or at least one unit in a multifamily housing project, whichever is greater, shall be made accessible for persons with mobility impairments. A unit that is on an accessible route and is adaptable and otherwise in compliance with the standards set forth in § 8.32 is accessible for purposes of this section. An additional two percent of the units (but not less than one unit) in such a project shall be accessible for persons with hearing or vision impairments.*

*§ 8.23 Alterations of existing housing facilities.*

*(a) **Substantial alteration.** If alterations are undertaken to a project (including a public housing project as required by § 8.25(a)(2)) that has 15 or more units and the cost of the alterations is 75 percent or more of the replacement cost of the completed facility, then the provisions of § 8.22 shall apply.*

*(b) **Other alterations**.*
*(1) Subject to paragraph (b)(2) of this section, alterations to dwelling units in a multifamily housing project (including public housing) shall, to the maximum extent feasible, be made to be readily accessible to and usable by individuals with handicaps. If alterations of single elements or spaces of a dwelling unit, when considered together, amount to an alteration of a dwelling unit, the entire dwelling unit shall be made accessible. Once five percent of the dwelling units in a project are readily accessible to and usable by individuals with mobility impairments, then no additional elements of dwelling units, or entire dwelling units, are required to be accessible under this paragraph. Alterations to common areas or parts of facilities that affect*

37

*accessibility of existing housing facilities shall, to the maximum extent feasible, be made to be accessible to and usable by individuals with handicaps. For purposes of this paragraph, the phrase to the maximum extent feasible shall not be interpreted as requiring that a recipient (including a PHA) make a dwelling unit, common area, facility or element thereof accessible if doing so would impose undue financial and administrative burdens on the operation of the multifamily housing project.*

*(2) HUD may prescribe a higher percentage or number than that prescribed in paragraph (b)(1) of this section for any area upon request therefor by any affected recipient or by any State or local government or agency thereof based upon demonstration to the reasonable satisfaction of HUD of a need for a higher percentage or number, based on census data or other available current data (including a currently effective Housing Assistance Plan or Comprehensive Homeless Assistance Plan), or in response to evidence of a need for a higher percentage or number received in any other manner. In reviewing such request or otherwise assessing the existence of such needs, HUD shall take into account the expected needs of eligible persons with and without handicaps.*

### § 8.32 Accessibility standards.

*(a) Effective as of July 11, 1988, design, construction, or alteration of buildings in conformance with sections 3–8 of the Uniform Federal Accessibility Standards (UFAS) shall be deemed to comply with the requirements of §§ 8.21, 8.22, 8.23, and 8.25 with respect to those buildings. Departures from particular technical and scoping requirements of the UFAS by the use of other methods are permitted where substantially equivalent or greater access to and usability of the building is provided. . . .*

*(b) For purposes of this section, section 4.1.6(1)(g) of UFAS shall be interpreted to exempt from the requirements of UFAS only mechanical rooms and other spaces that, because of their intended use, will not require accessibility to the public or beneficiaries or result in the employment or residence therein of individuals with physical handicaps.*

*(c) This section does not require recipients to make building alterations that have little likelihood of being accomplished without removing or altering a load-bearing structural member.*

*(d) For purposes of this section, section 4.1.4(11) of UFAS may not be used to waive or lower the minimum of five percent accessible units required by § 8.22(b) or to apply the minimum only to projects of 15 or more dwelling units.*

*(e) Except as otherwise provided in this paragraph, the provisions of §§ 8.21(a) and (b), 8.22 (a) and (b), 8.23, 8.25(a) (1) and (2), and 8.29 shall apply to facilities that are designed, constructed or altered after July 11, 1988. If the design of a facility was commenced before July 11, 1988, the provisions shall be followed to the maximum extent practicable, as determined by the Department. For purposes of this paragraph, the date a facility is*

> *constructed or altered shall be deemed to be the date bids for the construction or alteration of the facility are solicited. For purposes of the Urban Development Action Grant (UDAG) program, the provisions shall apply to the construction or alteration of facilities that are funded under applications submitted after July 11, 1988. If the UDAG application was submitted before July 11, 1988, the provisions shall apply, to the maximum extent practicable, as determined by the Department.*

In broad terms, these regulations require new construction and alterations constructed after July 11, 1988, to provide a heightened level of accessibility as described by UFAS, which exceeds the obligations imposed by most state and local accessibility requirements. From my own experience with these standards and my interactions with people with disabilities, I have come to understand that people with serious mobility, vision, and hearing impairments are likely to require this heightened level of accessibility in order to be able to live in and enjoy the benefits of rental housing.

In an attempt to harmonize the accessible design provisions applicable to residential facilities under both Section 504 and ADA, HUD published a deeming notice on May 23, 2014. *See* 79 Fed. Reg. 29671. This notice allows entities that receive federal financial assistance to use the 2010 ADA Standards (with minor modifications) as an alternative to UFAS, the specified accessibility standard under HUD's regulations for Section 504 of the Rehabilitation Act.

### B.  <u>The Americans with Disabilities Act</u>

In 1990, President George H.W. Bush signed the ADA into law. The ADA is a comprehensive and sweeping disability rights law. The accessibility provisions that apply to state and local government entities, such as the City of Chicago, are codified in the ADA Title II regulations. Originally published in 1991 and revised in 2010, these regulations, as I understand them, define the specific facility compliance requirements for housing projects and programs. They also stipulate that government entities are not allowed to enter into contractual agreements

with other entities that provide services or programs (i.e., develop housing projects) on behalf of the government entity and discriminate against qualified individuals with disabilities by, among other things, not allowing them to "participate in or benefit from the aid, benefit, or service" that is equal to that "afforded others." 28 C.F.R. §35.130(b)(1). In my own architectural practice and in my role as an expert witness in cases involving programs and services provided by public entities, I regularly caution my clients that the accessibility requirements of the ADA will apply to their private sector contractors.

The original ADA regulations required that "[e]ach facility or part of a facility constructed by, on behalf of, or for the use of a public entity shall be designed and constructed in such manner that the facility or part of the facility is readily accessible to and usable by individuals with disabilities, if the construction was commenced after January 26, 1992." 28 C.F.R. § 35.151. It identified UFAS and the 1991 ADA Standards (without the elevator exception) as accessibility standards. However, because the 1991 ADA Standards did not specifically address architectural accessibility requirement for residential facilities and UFAS does, I and others in the field (including the DOJ) rely on UFAS[3] for residential facility compliance analysis. Thus, in practice and as described in more detail below, the provisions of UFAS for ADA compliance apply to residential developments where construction began between January 26, 1992 and March 15, 2012.

---

[3] The 1991 ADA Title II regulations allowed the use of the 1991 ADA Standards (without the elevator exemption) as an alternate accessibility standard to UFAS, but the 1991 ADA Standards did not include accessibility provisions for residential dwelling projects. In my analysis, I relied on the 1991 ADA Standards for portions of residential developments where social service programs were offered.

In 2010, the Department of Justice adopted revised the ADA Title II regulations and new accessibility standards for residential developments ("2010 ADA Standards"). The new regulations allowed developers the choice to use either UFAS or the 2010 ADA Standards for projects where construction began between September 15, 2010 and March 15, 2012, but mandated the use of the 2010 ADA Standards for projects constructed after March 15, 2012. 28 C.F.R. § 35.151(c).

### C. <u>Discussion of Section 504 and ADA as Applied to my Review</u>

The facility compliance requirements of Section 504 and the ADA are not difficult to understand. They both divide these requirements into three categories, each of which has relevance to what the City must do with respect to the residential developments that are the subject of this Litigation:

- **New Construction** requirements (discussed above);

- **Alterations** requirements; and,

- **Existing Facility** accessibility requirements (i.e., "program accessibility" for state and local governmental entities).

Under Section 504 and to the maximum extent feasible, virtually all covered properties undergoing renovation must comply with the same UFAS technical requirements that are applicable to new construction.[4] Since 2010, public entities like the City must also comply with the alteration provisions set forth in the 2010 ADA Standards.[5]

---

[4] This is set forth in HUD Regulation 24 C.F.R. § 8.23:
　　　 ***Alterations of existing housing facilities.***

Some of the developments I reviewed for this report were alterations projects subject to the 2010 ADA provisions listed above and were analyzed based on those requirements with the recognition that strict compliance is tempered by the "maximum extent feasible" language of the regulations. I did not have access to adequate cost information necessary to properly analyze the "path of travel" obligations, so only general opinions were offered regarding that provision of the ADA regulations.

---

*(a) Substantial alteration. If alterations are undertaken to a project (including a public housing project as required by § 8.25(a)(2)) that has 15 or more units and the cost of the alterations is 75 percent or more of the replacement cost of the completed facility, then the provisions of § 8.22 shall apply.*

*(b) Other alterations. (1) Subject to paragraph (b)(2) of this section, alterations to dwelling units in a multifamily housing project (including public housing) shall, to the maximum extent feasible, be made to be readily accessible to and usable by individuals with handicaps. If alterations of single elements or spaces of a dwelling unit, when considered together, amount to an alteration of a dwelling unit, the entire dwelling unit shall be made accessible. Once five percent of the dwelling units in a project are readily accessible to and usable by individuals with mobility impairments, then no additional elements of dwelling units, or entire dwelling units, are required to be accessible under this paragraph. Alterations to common areas or parts of facilities that affect accessibility of existing housing facilities shall, to the maximum extent feasible, be made to be accessible to and usable by individuals with handicaps. For purposes of this paragraph, the phrase to the maximum extent feasible shall not be interpreted as requiring that a recipient (including a PHA) make a dwelling unit, common area, facility or element thereof accessible if doing so would impose undue financial and administrative burdens on the operation of the multifamily housing project.*

[5] 28 C.F.R. § 35.151 provides:

*(b) Alterations.*

*(1) Each facility or part of a facility altered by, on behalf of, or for the use of a public entity in a manner that affects or could affect the usability of the facility or part of the facility shall, to the maximum extent feasible, be altered in such manner that the altered portion of the facility is readily accessible to and usable by individuals with disabilities, if the alteration was commenced after January 26, 1992.*

*(2) The path of travel requirements of 28 C.F.R § 35.151(b)(4) shall apply only to alterations undertaken solely for purposes other than to meet the program accessibility requirements of 28 C.F.R. § 35.150.*

Another HUD regulation (24 C.F.R. § 8.20) for Section 504 states the following with regards to accessibility and the requirements that recipients of federal financial assistance (such as the City of Chicago) ensure newly constructed and altered facilities are accessible, and that existing facilities housing such programs or activities meet the "program accessibility" provisions:

> **§ 8.20 General requirement concerning program accessibility.**
> *Except as otherwise provided in §§ 8.21(c)(1), 8.24(a), 8.25, and 8.31, no qualified individual with handicaps shall, because a recipient's facilities are inaccessible to or unusable by individuals with handicaps, be denied the benefits of, be excluded from participation in, or otherwise be subjected to discrimination under any program or activity that receives Federal financial assistance.*

The applicability of this "program accessibility" requirement is discussed in greater detail in the Expert Report of Mr. John L. Wodatch.

### D. <u>Fair Housing Amendments Act</u>

The 1988 amendments to the Fair Housing Act were a fundamental improvement to the ability of individuals with disabilities to benefit from the vast new multifamily residential opportunities in the United States that were built after the March 13, 1991, which is the effective date for the design and construction provisions. While these new legislative mandates that apply to multifamily developments in buildings with four or more dwelling units did not offer living accommodations that were as accessible as those required by Section 504 of the Rehabilitation

Act of 1973, the FHA mandates did offer a new modest[6] level of accessibility and adaptability in ground floor dwelling units in buildings without elevators and all dwelling units in buildings with elevators.

Congress recognized that ensuring a modest level of accessibility and adaptability during the design and construction of multifamily dwellings was critical to meaningful inclusion of people with disabilities:

> *The Committee understands that housing discrimination against handicapped persons is not limited to blatant, intentional acts of discrimination. Acts that have the effect of causing discrimination can be just as devastating as intentional discrimination. A person using a wheelchair is just as effectively excluded from the opportunity to live in a particular dwelling by the lack of access into a unit and by too narrow doorways as by a posted sign saying 'No Handicapped People Allowed.'" See* H.R. Rep. No. 711, 100th Cong. 2d Sess. 25 (1988), reprinted at 1988 U.S.S.C.A.N. 2173, 2186.

My opinions are informed by the following HUD guidance explaining that Congress intended the 1988 FHA the accessibility provisions to:

> *(1) facilitate the ability of persons with handicaps to **enjoy full use of their homes without imposing unreasonable requirements on homebuilders**, landlords and non-handicapped tenants; (2) **be essential for equal access and to avoid future de facto exclusion of persons with handicaps;** and (3) **be easy to incorporate in housing design and construction**. Congress predicted that compliance with these minimal accessibility design and construction standards would eliminate many of the barriers which discriminate against persons with disabilities in their attempts to obtain equal housing opportunities.* 56 Fed. Reg. 9474 (Emphasis added)

---

[6] HUD states the following in its preamble, *see* 56 Fed. Reg. 9482, to the FHA Guidelines that references a "modest" level of accessibility in the legislative history: *"In House Report No. 711, the accessibility requirements of the Fair Housing Act were referred to by the Congress as 'modest' (House Report at 25), 'minimal' and 'basic features of adaptability' (House Report at 25). In developing the Fair Housing Accessibility Guidelines, the Department was attentive to the fact that Congress viewed the Act's* accessibility *requirements as reasonable, and that the Guidelines for these requirements should conform to this 'reasonableness' principle—that is, that the Guidelines should provide the level of reasonable accessibility envisioned by Congress, while maintaining the affordability of new multifamily construction. The Department believes that the final Guidelines conform to this principle of reasonableness and cost."*

Unlike Section 504 and the ADA, the FHA does not supply technical accessibility standards that have the force of law. Rather, Section 804 defines discrimination, in part, to include:

> *(C) in connection with the design and construction of covered multifamily dwellings for first occupancy after the date that is 30 months after the date of enactment of the Fair Housing Amendments Act of 1988, a failure to design and construct those dwelling in such a manner that—*
>
>> *(i) the public use and common use portions of such dwellings are readily accessible to and usable by handicapped persons;*
>>
>> *(ii) all the doors designed to allow passage into and within all premises within such dwellings are sufficiently wide to allow passage by handicapped persons in wheelchairs; and*
>>
>> *(iii) all premises within such dwellings contain the following features of adaptive design:*
>>
>>> *(I) an accessible route into and through the dwelling;*
>>>
>>> *(II) light switches, electrical outlets, thermostats, and other environmental controls in accessible locations;*
>>>
>>> *(III) reinforcements in bathroom walls to allow later installation of grab bars; and*
>>>
>>> *(IV) usable kitchens and bathrooms such that an individual in a wheelchair can maneuver about the space.* 42 U.S.C. § 3604.

In short, new multifamily housing built after March 13, 1991, is required to comply with these provisions. To assist developers of such housing, HUD has promulgated regulations (at 24 C.F.R. § 100.205) and published substantial guidance (the provisions of which are summarized below).

The Measurement Reviews and Plan Reviews for developments newly constructed after March 13, 1991, document, in detail, my site-specific FHA design and construction accessibility

findings, but my general opinions related to the design and construction provisions of the Fair Housing Amendments Act are as follows:

- The multifamily dwellings that I surveyed and reviewed were not designed and constructed in such a manner that the public and common-use portions of the developments are readily accessible to and usable by persons with disabilities;

- The multifamily dwellings at these developments were not designed and constructed in such a manner that all doors designed to allow passage into and within all premises within such dwellings are sufficiently wide to allow passage by handicapped persons in wheelchairs; and,

- These multifamily dwellings were not designed and constructed in such a manner that all premises within such dwellings contain the following features of adaptive design:

  o An accessible route into and through the dwelling;

  o Thermostats, light switches and electrical outlets in accessible locations; and,

  o Usable kitchens and bathrooms such that an individual in a wheelchair can maneuver about the space.

With regard to the multifamily residential developments in this Litigation that I surveyed and reviewed that were not designed and constructed in such a manner that the public and common-use portions of the developments are readily accessible to and usable by persons with disabilities, my understanding of the intent of the phrase "readily accessible to and usable by persons with disabilities" is informed by the U.S. Department of Justice, which states with that this phrase means "a high degree of convenient access."

*Subpart D -- New Construction and Alterations*

*Subpart D implements section 303 of the Act, which requires that newly constructed or altered places of public accommodation or commercial facilities be readily accessible to and usable by individuals with disabilities. **This requirement contemplates a high degree of convenient access.** It is intended to ensure that patrons and employees of places of public accommodation and employees of commercial facilities are able to get to, enter, and use the facility.* Preamble to ADA Title III Regulations 28 C.F.R. Part 36 – 56 Fed. Reg. 35574 (Emphasis Added)

Additionally, my opinion related to the accessibility of public and common-use areas of

FHA covered facilities is also informed by the guidance Congress offered related to their intent

when defining the term of art *"readily accessible to and usable by"* which they included in the

following excerpt from their ADA Legislative History:

*The phrase **"readily accessible to or usable by"** is a **term of art** which, in slightly varied formulations, has been applied in **the Architectural Barriers Act of 1968 ("ready access to, and use of'), the Fair Housing Act of 1968, as amended** ("readily accessible to and usable by"), and the regulations implementing section **504 of the Rehabilitation Act of 1973** ("readily accessible to and usable by") and is included in standards used by Federal agencies and industry, e.g., **the Uniform Federal Accessibility Standards (UFAS)** ("ready access to and use of") **and the American National Standard for Buildings and Facilities-Providing Accessibility and Usability for Physically Handicapped People (ANSI All7.1)** (readily accessible to, and usable by).*

*The term is intended to enable people with disabilities (including mobility, sensory, and cognitive impairments) to get to, enter and use a facility. While the term does not necessarily require the accessibility of every part of every area of a facility, **the term contemplates a high degree of convenient accessibility**, entailing accessibility of parking areas, accessible routes to and from the facility, accessible entrances, usable bathrooms and water fountains, accessibility of public and common use areas, and access to the goods, services, programs, facilities, accommodations and work areas available at the facility.*

*The term is not intended to require that all parking spaces, bathrooms, stalls within bathrooms, etc. are accessible; only a reasonable number must be accessible, depending on such factors as their use, location and number. However, when the facilities involved do not serve identical functions, each facility must be accessible. For example, to provide equal service, all check-out lanes in a supermarket should be built sufficiently wide to allow passage by individuals who use wheelchairs. Likewise, meeting rooms at a conference center may be used for different purposes at any given time and therefore all must be accessible. Accessibility elements for each particular type of facility should assure both ready access to the facility and usability of its features and equipment and of*

47

*the goods, services, and programs available therein.* ADA Legislative History, Education Labor Report, pp. 117-18, (Emphasis Added).

My general opinions related to the FHA design and construction findings identified in the Measurement Reviews, Plan Reviews, and MOPD Reports are also based in part on compliance with the specifications of HUD's Fair Housing Accessibility Guidelines, including the preamble, HUD's FHA Guidelines Questions & Answers – Supplemental Notice, and for public and common-use spaces, the ANSI A117.1-1986.

While I understand and will testify using the mandatory minimum requirements found in HUD's Fair Housing Act regulations (24 C.F.R. 100.250) related to design and construction of newly constructed multifamily residential projects (*i.e.*, covered multifamily dwellings built for first occupancy after March 13, 1991) as the basis of the inaccessibility of FHA barriers identified in the Measurement Reviews and Plan Reviews of sample developments at the heart of this Litigation, I also recognize that HUD's 1991 Final Fair Housing Accessibility Guidelines (citing ANSI A117.1-1986 for public and common-use areas and informed by HUD's FHA Guidelines Questions & Answers – Supplemental Notice) are generally accepted as the least onerous of the 15 HUD-recognized "safe harbor" strategies for FHA compliance. These Guidelines are included in citations in the individual Measurement Reviews and Plan Reviews appended as exhibits to this report. This strategy of including citations to the FHA Guidelines as a review of FHA design and construction mandates is based in part on the similar recognition by HUD in its preamble to the Fair Housing Accessibility Guidelines, which states that when investigating claims of design and construction discrimination, HUD relies on the FHA Guidelines as *"…a basis for a determination that there is no reasonable cause to believe that a discriminatory housing practice under section 804(f)(3) has occurred.…"*

*It is true, however, that compliance with the Fair Housing Accessibility Guidelines will provide builders with a safe harbor.* ***Evidence of compliance with the Fair Housing Accessibility Guidelines adopted by this notice shall be a basis for a determination that there is no reasonable cause to believe that a discriminatory housing practice under section 804(f)(3) has occurred or is about to occur in connection with the investigation of complaints filed with the Department relating to covered multifamily dwellings****. 56 Fed. Reg. 9478 (Emphasis added).*

As a consequence of the FHA's approach to defining accessibility, an assessment of whether any specific development complies with FHA accessibility standards requires a careful analysis of whether the built conditions of public and common-use areas render the development "readily accessible to and usable by" people with disabilities, whether the doors are wide enough, and whether the individual units contain the specified "features of adaptive design." In conducting that analysis in this matter, in each individual Measurement Review or Plan Review appended as exhibits to this report, I note the presence and effects of specific inaccessible features giving rise to my general opinions stated above.

## VI.  COMMON INSTANCES OF INACCESSIBILITY PRESENT IN THE PROGRAM

By way of summary of the Measurement Reviews and Plan Reviews I conducted to support my analysis, I note the following inaccessible features present in the Program and their effects on the ability of people with disabilities to enter, use, and enjoy the features of individual units and common areas of developments. The parenthetical notations indicate the locations of diagrams, sketches and/or photographs from resource materials that may be helpful to illustrate the nature of these conditions and concerns, and which I may use to illustrate my testimony.

### A.  Site Arrival Location Issues

- **Lack of Accessible Parking**: When no accessible parking is provided, visitors and residents who are disabled and require the additional space and surface characteristics of accessible parking spaces cannot exit the vehicle or approach these facilities. Fair Housing Act Design Manual at p. 1.5

49

- **Too Few Accessible Parking Spaces**: When accessible parking provided for residents is less than 2% of the FHA-covered units, and when there is insufficient accessible visitor parking, there will not be adequate accessible parking for people with disabilities who require such parking spaces. Without even considering those who have heart conditions or other stamina related disabilities necessitating a parking space closest to the building entrances, census data in 2014 shows approximately 7.7 percent of all adults (18.4 million people) used a cane, crutches, or a walker for mobility assistance devices for which these accessible parking spaces are designed.

- **Accessible Parking Spaces not Closest to Accessible Entrance**: People who have stamina limitations, heart conditions which place limits on physical exertion, and those who use mobility aids to move about the parking spaces designed to accommodate them, need accessible parking on the shortest possible accessible route to an accessible entrance to the building. Fair Housing Act Design Manual at p. 1.15.

- **Inaccessible Routes:** Lack of an accessible route to covered units and public/common-use spaces in an apartment development means those with disabilities who require such features are not able to approach and use these facilities. Fair Housing Act Design Manual at p. 1.7.

- **Obscured Accessible Parking Space Signs:** Signs designating the accessible parking spaces, which can be obscured by vehicles in the spaces, makes enforcement of parking rules regarding use of accessible spaces difficult or impossible, thus creating situations where disabled users are left without an accessible space because these spaces are occupied by unauthorized users. *See* UFAS Retrofit Manual at p. 276.

- **Inaccessible Loading Zones:** Those areas intended for loading and unloading passengers, such as at mailbox kiosks and trash collection stations, must accommodate wheelchair users. To accommodate a wheelchair user, the area for the vehicle and a minimum 60" wide access aisle area must be provided with a level surface (i.e., no more than 2% slope in any direction). This access aisle must be part of the accessible route to the public/common-use feature it serves. As with parking spaces and access aisles that serve them, these accessible passenger loading zones must have level surface characteristics to minimize the likelihood of a wheelchair rolling away from the vehicle when the user places the wheelchair next to the vehicle for transferring. UFAS Retrofit Manual pp. 267, 279; ADAAG 4.3 The Americans with Disabilities Act Accessibility Guidelines Tech Sheet Series at p. 18.

## B.  Exterior and Interior Accessible Route Issues

- **Narrow Accessible Routes**: When a vehicle overhangs a walkway such that the space between the front of the vehicle and the opposite edge of the walkway is less than 36", wheelchair users cannot get by the vehicle. UFAS Retrofit Manual at p. 19, 227.

- **Steep Ramp Flared Sides:** For flared side type curb ramps with by-pass space at the top measuring between 36"- 48" wide, the side flares must slope no more than 8.3% (i.e., 1:12 slope ratio of rise to run). This allows wheelchair users turning onto or off the top by-pass space to "cut the corner" on the more gently sloping flared side. When the flared sides are steeper than 8.3%, wheelchair users cutting the corner can lose control or flip over backwards. ANSI A117.1-1986 at fig. 12(a).

- **Steep Ramp Slopes:** Running slopes of ramps which exceed 8.3% (1:12) exclude many manual wheelchair users who do not have the mobility skills or strength to propel their wheelchair up such a steep slope, or are afraid of tipping backwards on ascent. HUD research by Steinfeld, Accessible Buildings for People with Walking and Reaching Limitations at pp. 49-54.

- **Inaccessible Ramp Handrails**: The inaccessibility of handrails on ramps found in the portfolio include the following issues:

  o  **Handrails on Both Side of Ramp:** If the handrails are not positioned on both sides of the ramp, disabled individuals who favor one arm or the other will lack the support and stabilization provided by the handrail on either the ascent or descent, depending on which arm they favor and which side of the ramp lacks the handrail. ANSI A117.1-1986 at Fig. 17.

  o  **Edge Protection**: The absence of a curb or low rail which offers edge protection on the open sides of ramps increases the risk of wheelchair users inadvertently directing their wheelchair under the handrail and off the edge of the ramp. When the front wheel of a wheelchair falls off the edge of the ramp, the wheelchair user can become trapped between the underside of the handrail and the seat of the wheelchair, which is locked by gravity in this undesirable position. The lack of edge protection on ramps also increases the likelihood of a rubber crutch tip inadvertently slipping sideways on the wet surface of the ramp and causing the user to fall. With the edge protection in place, the wheelchair front wheel and errant crutch tips will be caught and personal injury is minimized. UFAS Retrofit Manual at p. 66; ADAAG 4.3 The Americans with Disabilities Act Accessibility Guidelines Tech Sheet Series at p. 21.

  o  **Gripping Surface:** The lack of a continuous gripping surface along the inside switchback of a ramp requires a disabled user to remove his/her

hand from the handrail on one side of the ramp and turn the corner without support or stabilization. With the continuous gripping surface of the handrail that turns the corner at the ramp switchback, the disabled user has a fluid transition from one ramp run to the next with the continuous support of the handrail for stabilization.

- **Inaccessible Ramp Landings:** The lack of a minimum 60" long landing at the top, bottom, and intermediate points of a ramp, makes it difficult for wheelchair users to maneuver into turns while resisting the gravitational force exerted by their descent. The landings also allow wheelchair users to stop and rest every 30' of ramp run and to turn around if needed to return in the direction from which they came. These landings must also be level (no more than 2% slopes in any direction) to allow for smooth and controlled turning and convenient resting. UFAS Retrofit Manual at p. 62.

- **Lack of Handrail Extensions:** Where a handrail on a ramp does not extend at least 12" beyond the top and bottom end of the ramp run, there is inadequate means for those with gait impairments or balance impairments to stop and stabilize themselves before proceeding along the sloped portions of the ramp. *See* DOT research Jan '80 illustration M3.3; UFAS Retrofit Manual at p. 73.

- **Narrow Accessible Routes:** When wheelchair users are confronted with a narrow route, such as a curb ramp which is less than 36" wide (or 32" if the ramp or constriction is 24" long or less), the risk of losing control upon ascent or descent is high. This is because wheelchair users often have to make minor directional corrections when they travel, and narrow ramps and routes limit the space needed for those directional corrections. *See* ANSI A117.1-1986 at Fig. 1.

- **Steep Walkways:** In situations where the running slope of the accessible route exceeds 5%, it is critical to accessibility that properly designed handrails on each side of the ramp be provided for stabilization and assistance. Additionally, curbs or other edge protection should be provided on open sides of the ramp to keep wheelchair casters from going off the edge of the ramp. Further, intermediate landings should be provided to allow wheelchair users to rest and re-group for continued ramp travel or changes in direction. Ramps with slopes greater than 8.3% are not to be considered accessible in new construction because many people who use manual wheelchairs cannot negotiate them, for fear of failing to make it to the top on ascent or fear of tipping over backwards and injuring themselves. *See* ANSI A117.1-1986 at Figure 17; ADAAG 4.3 The Americans with Disabilities Act Accessibility Guidelines Tech Sheet Series at p. 18.

- **Cross Slope:** The absence of a cross slope along a given route (*i.e.*, a level path) is ideally accessible to wheelchair users and those who use walkers or crutches. Unfortunately, water can accumulate on the surface of walks without a cross slope and lead to ice buildup; therefore, a minimum cross slope along the accessible route is acceptable to minimize this likelihood. A high degree of convenient

accessibility is provided when the cross slope of an accessible route is between 0%-2%. Cross slopes in excess of 2%, however, tend to direct manual wheelchair users off their desired direction of travel because gravity tends to direct the wheelchair, which has swiveling front casters, downhill. Extra effort is required from the manual wheelchair user to fight this gravitational force and keep on the intended route. Those who use walkers or have braces on their legs and use crutches must also fight the tendency to tip to the side or loose balance. *See* ADAAG 4.3 The Americans with Disabilities Act Accessibility Guidelines Tech Sheet Series at p. 18.

- **Head Height along Accessible Routes:** Situations where a blind pedestrian is walking along a pedestrian circulation route where the head height becomes less than 80" high, with no cane detectable warning cue, can lead to personal injury when a blind or visually impaired person hits the overhead obstruction. *See* ANSI A117.1-1986 at Fig. 9(d); ADAAG 4.3 The Americans with Disabilities Act Accessibility Guidelines Tech Sheet Series at p. 12

- **Abrupt Level Changes:** Manual wheelchair users can have great difficulty proceeding over abrupt level changes (*i.e.*, non-sloped level changes) greater than 1/4" in height and they pose serious tripping hazards for those with gait impairments and/or those who use crutches and/or walkers. The front casters of wheelchairs can be stopped abruptly by such level changes, potentially ejecting the wheelchair user onto the walkway surface, or causing loss of maneuverability and control. There is a safe harbor provision within the Fair Housing Accessibility Guidelines, Req't. 4, guideline (5), that allows a maximum 4" high level change along the accessible route between the interior floor level of a covered unit and the level of an impervious (i.e., paved) patio or balcony outside.

- **Reach Ranges:** The reach-over capabilities of wheelchair users are limited by the distance over, and the height of objects over, which they have to reach. The side approach allows a comfortable reach range up to 54" high if the user does not have to extend more than 10" beyond the side of the wheelchair. If the user has to reach over a 24" deep base cabinet to the back of a shelf above, the comfortable reach ranges decrease to between 44"-48", depending upon the approach by the wheelchair user (*i.e.*, either side approach on the lower end of the range or forward approach to counter/shelf at the higher end of the range).

- **Protruding Objects:** Objects positioned between 27"- 80" in height and which project more than 4" into the circulation route are not detectable to blind and visually impaired cane users before they hit the protruding object and are potentially injured. *See* ADAAG 4.3 The Americans with Disabilities Act Accessibility Guidelines Tech Sheet Series at p. 13.

- **Route Surfaces:** Accessible routes must provide firm, stable and slip resistant surface characteristics. Those routes on which the surfaces are not firm and stable,

such as grass, gravel or mud, are nearly impossible for manual wheelchair users to independently maneuver.

## C. Entrance and Accessible Door Issues

- **Door Width**: Wheelchair users and those who use walkers need a clear passage width of at least 32" at doors and doorways (not deeper than 24"). This clear width is required to accommodate mobility devices and allow maneuvering space large enough to approach and proceed through the opening. The wider the clear passage width, the lower the risk of scraping the skin off your knuckles. The Fair Housing Accessibility Guidelines do offer the safe harbor interpretation of "nominal" clear passage width within covered dwelling units, accepting a standard 34" wide swinging door slab as compliant (or a 31 5/8" clear passage width). *See* Fair Housing Act Design Manual at p. 3.5.

- **Round Doorknobs:** If doors have only round knob hardware, then those with limited manual dexterity and limited grasping ability cannot open the doors. Those doorknobs require tight grasping and twisting of the wrist to operate.

- **Level Maneuvering Space:** Where the maneuvering space at the door has a surface which slopes in any direction more than 2%, the manual wheelchair user who removes his/her hand from the wheel to operate the door hardware will have his/her wheelchair moved by gravity in an undesirable direction, typically away from the door.

- **Latch Side Maneuvering Space:** When a person using a wheelchair makes a forward approach to open a door that has less than a minimum 18" wide latch side maneuvering space on the pull side, the swing of the door will conflict with the location of a wheelchair. Basically, the wheelchair needs space on the latch side of the door to allow the user to angle the wheelchair, so it is outside the out-swinging arc of the door. *See* ANSI A117.1-1986 at Fig. 25(a).

- **Pull Side Maneuvering Depth:** When a person using a wheelchair makes a parallel approach to open a door, a minimum 48" wide pull side, latch side approach maneuvering space is necessary to approach and angle the wheelchair to avoid the swing of the door. *See* ANSI A117.1-1986 at Fig. 25(c).

- **One Hand Operation**: Door hardware which requires a manual wheelchair user to use both hands at the same time is inaccessible because the user does not have use of a hand to move his/her wheelchair away from an opening door and through that door. Further, the force exerted on the door while opening it will move the wheelchair away from or toward the door, depending on the direction of door opening.

- **Controls and Operating Mechanisms:** To be accessible, controls and operating mechanisms must be on an accessible route, so disabled users can approach them.

Further, they must be within accessible reach ranges for wheelchair users and operable with only one hand that does not require tight grasping, pinching, or twisting of the wrist. Tight grasping, pinching, and twisting of the wrist is difficult, if not impossible for those who have developmental disabilities and/or quadriplegia.

- **Door Thresholds:** Thresholds at doors must have a profile that offers wheelchair users the least possible obstacles while still providing weather resistance. Wheelchair users have great difficulty proceeding over abrupt level changes (*i.e.*, non-sloped level changes) greater than 1/4" in height, and also have great difficulty with sloped level changes, depending upon the steepness of the ramp and the overall height of the threshold. Accessible thresholds which have a total height of ½" may be beveled at the slope ratio of 1:2 (rise/run) without great impairment to wheelchair users. However, thresholds greater than ½" in height must be sloped no steeper than 1:12 to be accessible. Those who use crutches also benefit from low threshold heights because they often move forward with little space between the front edge of their shoes and the route surface —a vertical rise greater then 1/4" can trip those who use crutches. *See* UFAS Retrofit Manual at p. 125; ADAAG 4.3 The Americans with Disabilities Act Accessibility Guidelines Tech Sheet Series at p. 16

- **Door Closers -** On non-fire rated interior doors, a door closer which is set to require excessive force to open the door (*i.e.*, those greater than 5# resistance) taxes the strength of many with stamina and mobility impairments who simply cannot complete that operation. Further, doors with closers that shut the door in less than 3 seconds often catch the wheelchair user or person who uses a walker before they have moved all the way through the opening. The 2010 ADA Standards require a minimum 5 second closer speed.

## D. **Public and Common-Use Spaces and Facilities**

- **Facility Approach:** Public and common-use facilities must be connected by an accessible route from each site arrival point on the property to be deemed accessible. These site arrival points include parking spaces, public transportation stops, passenger loading zones and public sidewalks/streets. *See* Fair Housing Act Design Manual at pp. 1.5, 2.8-2.9.

- **Counter Knee Space and Height:** To allow people who use wheelchairs to pull under counters, desks, bars, or dining tables, there must be a minimum 30" wide knee space. This knee space must also provide a minimum 27" high opening for a depth of at least 19". Further, the top of the counter should fall within a height range of 28"-34". *See* ANSI A117.1-1986 at Fig. 45.

### E. **Public and Common-Use Restrooms**

- **Toilet Grab Bars:** Rear grab bars which are less than 36" long and side grab bars which are less than 40" long with the forward end at least 54" from the rear wall, do not provide adequate aid in transferring from the wheelchair to the toilet or stabilization once on the toilet. Rear wall grab bars must not be positioned such that there is a gap greater than 6" from the side wall. *See* Fair Housing Act Design Manual at p. 2.29.

- **Toilet Position**: The distance between the center of the toilet and the adjacent side wall grab bar should be between 16"-18". This range provides a comfortable arm's reach for the wheelchair user to use the side grab bar for stabilization and aid in transfer. *See* Toilet Stalls, ADAAG 4.17 The Americans with Disabilities Act Accessibility Guidelines Tech Sheet Series at p. 3; Fair Housing Act Design Manual at p. 2.28.

- **Need for Toilet Grab Bars:** Grab bars at the side and rear of the toilet are required by many wheelchair users as an aid to transferring from their wheelchair and as a stabilization device while toileting. The absence of these grab bars will make it difficult or impossible for many individuals who use wheelchairs to independently use the toilet. *See* Fair Housing Act Design Manual at pp. 7.41-7.42.

- **Lavatory/Toilet Relationship:** The minimum clear floor space required for a perpendicular, diagonal, or forward transfer to the toilet from a wheelchair requires a full 36" width between the wall adjacent to the toilet and the opposing wall-hung lavatory or vanity base cabinet. A wider (60" minimum) toilet clearance is required at facilities covered by 2010 ADA Standards to allow a parallel transfer. *See* illustrations on ANSI A117.1-1986 at Fig. 28; Fair Housing Act Design Manual at pp. 7.41-7.42.

- **Lavatory Clear Floor Space:** Where counters are provided for a lavatory in a public or common-use restroom, there must be a minimum 30" wide knee space which allows a minimum of 27" of height for a distance of at least 8" underneath, the height at a lavatory apron must be 29" minimum to account for the downward contour of the lavatory bowl. This allows a wheelchair with armrests to approach the lavatory counter and proceed underneath without too much conflict. *See* ANSI A117.1-1986 at Fig. 31.

## F. **Miscellaneous Accessibility Issues**

- **Low Drinking Fountains**: Wheelchair users find drinking fountain spout heights greater than 36" to be difficult to drink from. Many must lean forward in their wheelchairs and this process lowers the head such that higher spouts cannot be used. The minimum knee height for wheelchair use at a drinking fountain is 27". This clear height allows for knees to proceed under the drinking fountain for convenient use. *See* ANSI A117.1-1986 at Figure 27(a).

- **Visual Fire Alarm Strobes:** Where there are audible fire alarm and smoke alarm systems to notify building occupants of an alarm situation, a visual alarm strobe must be provided to communicate the same emergency to those who are deaf. If not provided, those who are deaf may be unaware of the emergency evacuation sand remain in the burning building until it is too late to safely escape the fire.

## G. **Specific Dwelling Unit Issues**

- **Unit Interior Route Width:** Within the context of the Fair Housing Accessibility Guidelines, when the minimum 36" wide accessible route (not at doors) is reduced to less than 36", the convenience and ease of wheelchair users to move about the dwelling unit is impaired. *See* Fair Housing Act Design Manual at p. 4.3.

- **Centered Lavatory Approach:** For bathroom lavatories without adequate under-counter knee space, wheelchair users must have sufficiently clear floor space to position themselves such that they are essentially centered in a parallel approach to the lavatory. This will allow for the maximum arm swing and horizontal reach range for wheelchair users to brush their teeth, wash their face, and clean their razor while shaving their face or legs. *See* ADA Standards at Figure A3(a); Fair Housing Act Design Manual at p. 7.47.

- **Refrigerator Approach:** When a refrigerator is positioned to allow only a parallel approach, the clear floor space for the wheelchair user must be centered within that parallel approach to allow for the maximum arm swing and horizontal reach range. *See* Fair Housing Act Design Manual at p. 7.6

- **40" Kitchen Clearance:** The minimum 40" clear width between kitchen counters and opposing counters, walls, and appliances is necessary to accommodate the maneuvering space of wheelchair users as they move about the kitchen and open drawers, appliances, or cabinets. *See* Fair Housing Act Design Manual at p. 7.7, 7.22-7.30.

- **Toilet Room Clear Floor Space out of Door Swing:** The 30"x48" minimum clear floor space for wheelchair users must be outside the swing of the bathroom door or the bathroom door cannot be closed with the wheelchair user in the room—this is a critical privacy issue for wheelchair users.

## VII. RANDOMIZED REVIEW OF DEVELOPMENTS FOR ACCESSIBILITY

### A. Randomized Measurement Reviews

#### 1. Introduction to Measurement Reviews

Measurement Reviews consist of an experienced accessibility consultant visiting a development to document the as-built conditions at the facility associated with elements required to be accessible by the appropriate accessibility regulations and/or standards, as well as the analysis of the resulting measurements and photographs for compliance with applicable accessibility standards.

#### 2. Randomized Measurement Review Methodology

As described above, the developments in the Program were stratified into four categories based on funding and type of construction (new construction or rehabilitation). These categories were subject to two independent randomizations by a statistician, one for randomized Measurement Review and one for randomized Plan Review.

After those categories were randomized, the first developments in each group were selected for Measurement Review. Plaintiff's counsel provided the list of developments to review—I had no control over their selection.[7]

I relied on measurements and photographs taken by John Torkelson of the ACCESSpartnership, LP, under my direction and guidance. As discussed further below, I

---

[7] I determined that certain developments identified for review should be excluded from consideration when I could not confirm they were subject to federal accessibility guidelines based on the scope of the rehabilitation of the property. In addition, properties were excluded by Counsel for Access Living when the property was found to no longer exist or the property was now a condominium that would not be the subject of equitable relief in this case. When one was excluded, the next property in the randomization was selected for Measurement Review.

consulted with Mr. Torkelson to ensure that he inspected the developments in a way that would capture relevant measurements and photographs for federal accessibility law compliance.

I worked closely with Mr. Torkelson throughout this analysis. It was imperative to team-up with a nationally recognized accessibility consultant with impeccable accessibility credentials who was able to meet the required facility evaluation schedule, as well as my strict facility evaluation criteria.

I gave detailed instructions to Mr. Torkelson related to the specific UFAS, ADA, and FHA accessibility compliance reviews. A sample of the methodology is offered below:

**Facility Compliance Methodology:** Measurements were taken (with associated digital photographs documenting exact measurement locations, conditions, and findings) during the on-site survey of site arrival points, project approach routes, common-use facilities, dwelling unit approach routes, and dwelling unit interiors. These measurements were analyzed based on the following accessibility standards or regulations (including the associated reference standards):

- Section 504 of Rehabilitation Act, HUD regulations 28 C.F.R. part 8, and Uniform Federal Accessibility Standards (UFAS) for projects constructed or altered after July 11, 1988.
- Fair Housing Amendments Act, HUD Regulations (24 C.F.R. § 100), as well as the Fair Housing Accessibility Guidelines citing ANSI A117.1-1986 (used as the basis for public and common use portions of projects newly constructed after March 13, 1991) and HUD's FHA Guidelines Questions & Answers – Supplemental Notice (59 FR 33362-33368).
- 2010 ADA Standards applicable based on ADA Title II regulations (28 C.F.R. §§ 35.149, 35.150) for projects constructed or altered after March 15, 2012.

A representative sample (at least one) of the designated accessible units was selected by property management for detailed analysis and in the numerous instances where management knew of no designated accessible dwelling units in the development—which are generally required to include at least 5% mobility feature units and 2% communications units—a sample

dwelling unit on the ground floor was selected for review. Other standard dwelling units in the complex were also inspected as appropriate for FHA compliance, as well as reviewing public and common-use amenity spaces.

**Number of Accessible Units:** The number of designated accessible dwelling units in a project was compared to the required number associated with the ADA and/or 504 requirements. HUD 504 regulations and the 2010 ADA Standards require 5% of the total number of units in new construction developments to be designed to accommodate mobility impaired residents, and an additional 2% of the units in the building to be designed as communications units which accommodate those with hearing or vision impairments by means of auxiliary visual fire/smoke alarms, audible/visual doorbell systems, and wide-angle peepholes. As the U.S. Department of Justice states at 28 C.F.R. § 35.150(b)(2)(ii), scoping and technical requirements for residential dwelling units were not included in the 1991 ADA Standards, and therefore there is no "safe harbor" related to ADA Standards compliance in existing residential facilities. ADA Title II regulations, 28 C.F.R. § 35.149, state that with the exception of limitations defined in 28 C.F.R. § 35.150, public entities like the City must ensure "no qualified individual with a disability shall, *because a public entity's facilities are inaccessible to or unusable by individuals with disabilities*, be excluded from participation in, or be denied the benefits of the services, programs, or activities of a public entity" (emphasis added).

My instructions to Mr. Torkelson detailed the scope and methodology, along with the applicable accessibility regulations and/or standards upon which to base the inspection measurements that I required in order to opine on whether or not the City met the facility compliance requirements of those applicable federal accessibility and/or adaptability requirements.

The individual Measurement Reviews include the following information:

- Name & Address of Facility

- Date(s) of Surveys & Basis of Report

- Facility Description

- Relevant year of construction/alteration (if known)

- ADA Residential Coverage (if applicable)

- Section 504 Coverage

- Fair Housing Act Coverage

- Standards/Guidelines Used for Review

- Specific Units Reviewed

- Location of Deficiency Observed

- Deficiency Observed

- Code Reference (Standards Citation)

- Diagrams (if applicable)

- Field Photos

This information is important to my analysis of a development's accessibility requirements. For example, there are different accessibility requirements for multi-story projects with and without an elevator. There are also more rigorous accessibility standards applicable to shared kitchens and bathrooms (such as those in Single Room Occupancy [SRO] hotel-like residential properties) than to the private bathrooms and kitchens found in more typical accessible apartment units. The year of construction and/or alteration is used to determine what standard is applicable, as discussed above. *See* Section IV.C. Some projects included residential parking that triggers the need for accessible resident parking, but other projects did not offer

parking at all. Thus, all of this information is relevant to identification of standards applicable to each specific development.

In particular, the total number of dwelling units is important, because one must calculate the number of dwelling units that are required to accommodate individuals with mobility impairments (*i.e.*, 5% accessible units per UFAS 4.34 and/or 2010 ADA Standards 809) and the appropriate number (*i.e.*, 2%) of dwelling units designed to accommodate those with hearing or vision impairments per HUD regulations, 24 C.F.R. § 8.23, and ADA regulations, 28 C.F.R. § 35.151. HUD's Section 504 regulations at 24 C.F.R. § 8.26[8] require that:

> *[T]o the maximum extent feasible*… [accessible dwelling units]… *be distributed throughout projects and sites and shall be available in a sufficient range of sizes and amenities so that a qualified individual with handicaps' choice of living arrangements is, as a whole, comparable to that of other persons eligible for housing assistance under the same program.*

If there were units designated as accessible for people with mobility and/or hearing or vision impairments, these units were selected as sample units for Mr. Torkelson to inspect and take accessibility measurements. If there were no units designated as accessible for people with mobility and/or hearing or vision impairments, Mr. Torkelson was instructed to measure a representative sample of the unit types provided by the residential management representative.

For each Measurement Review, a development-specific report is appended as an exhibit to and incorporated into this report. Each such report is divided into a number of useful

---

[8] These HUD Section 504 regulations are also cited by the 2010 ADA Standards at 233.2 as the basis for the required 5% minimum number of accessible dwelling units and the 2% of units required to be provided for people with hearing or vision impairments.

categories necessary to fully understand the nature of the existing facility conditions whether they constitute violations of a particular UFAS or ADA accessibility standard or FHA design and construction obligation.

The most substantive information in these reports is the identification of UFAS, ADA, and FHA accessibility violations and the appropriate regulatory and/or standards citation upon which the findings of violation are based.

### 3. Randomized Measurement Review Conclusions

I performed measurement reviews on 96 developments. All 96 of those reports included violations of the federal accessibility standards sufficient to justify a fail, which translates to a lack of meaningful accessibility of the development to a person with disabilities.

Typically, in new and altered residential facilities the determination of non-compliance (or a fail) is a standard where any deviation from the specific applicable new construction, or alteration provisions of UFAS and/or the ADA Standards, is evidence that the facility in question does not comply with the rules and regulations. For the FHA violations, deviations from the specific applicable new construction or alteration provisions of HUD's FHA Regulations and technical design and construction guidance is evidence that the facility in question does not comply with HUD rules and regulations. However, as discussed above, I use a standard of meaningful accessibility. *See supra* IV.B. Thus, a development fails only if the violations found are of a type or frequency that would prevent someone with a disability from being able to use important portions of their dwelling unit and/or common-use facilities. **Applying these standards, 96 of 96—or 100% of those developments subjected to Measurement Reviews— failed to comply with the applicable federal accessibility standards.** My understanding is that a statistician will provide statistical conclusions regarding the inaccessibility of the entire

portfolio of developments in the case based on the randomized sample that I reviewed in this analysis.

Below and at Exhibit 3[9] is a summary table that describes the specific number of significant federal accessibility regulatory and/or standard violations identified at each development. It lists the Development Name, Development Address, whether that property passed or failed, the exhibit number of the applicable Measurement Review, the number of dwelling unit entry violations, the number of dwelling unit bathroom violations, the number of dwelling unit kitchen violations, the number of other violations in the dwelling unit, the number of violations in the development common use and public use areas and facilities, and the number of accessible route violations.

| Development Name | Development Address | Pass/Fail | Exhibit Number | # Dwelling Unit/Entry and Path of Travel Violations | # Dwelling Unit/Bathroom Violations | # Dwelling Unit/Kitchen Violations | # Dwelling Unit/Other Violations | # Common Use Areas/Facilities Violations | # Accessible Route Violations |
|---|---|---|---|---|---|---|---|---|---|
| 12013 S Eggleston Apartments | 12013 S Eggleston Ave | Fail | 8 | N/A | 2 | 2 | 1 | 1 | 4 |
| 1225 S Michigan Apartments | 1225 S Michigan Ave | Fail | 9 | N/A | 3 | 4 | 1 | 9 | 6 |
| 1451 N Washtenaw Ave Apartments | 1451 N Washtenaw Ave | Fail | 10 | 1 | 5 | 2 | 2 | N/A | 4 |

---

[9] The tables at Exhibits 3 and 4 are subsets of the information in Ex. A (Measurement Reviews Overall Property Sample Identification and Results Table).

| Development Name | Development Address | Pass/Fail | Exhibit Number | # Dwelling Unit/Entry and Path of Travel Violations | # Dwelling Unit/Bathroom Violations | # Dwelling Unit/Kitchen Violations | # Dwelling Unit/Other Violations | # Common Use Areas/Facilities Violations | # Accessible Route Violations |
|---|---|---|---|---|---|---|---|---|---|
| 1826 S Avers Apartments | 1826 S Avers | Fail | 11 | 1 | 5 | 1 | 2 | 1 | 5 |
| 3108 W Walton Apartments | 3108 W Walton | Fail | 12 | N/A | 5 | 2 | N/A | 1 | 4 |
| 3151-3159 W Argyle St Apartments | 3151-3159 W Argyle St | Fail | 13 | 1 | 4 | N/A | 2 | N/A | 3 |
| 3502 W Van Buren St Apartments | 3502 W Van Buren St | Fail | 14 | 1 | 5 | 1 | 1 | 1 | 3 |
| 4119-4129 S Ellis, 1029 E 41st Apartments | 4119-4129 S Ellis, 1029 E 41st | Fail | 15 | 1 | 2 | 1 | N/A | N/A | 1 |
| 436-42 E 47th Street Apartments | 423-42 E 47th St | Fail | 16 | 1 | N/A | 2 | 2 | N/A | 3 |
| 45th Cottage Grove Apartments | 4424 and 4434S Cottage Grove | Fail | 17 | N/A | 3 | N/A | 2 | 10 | 8 |

65

| Development Name | Development Address | Pass/Fail | Exhibit Number | # Dwelling Unit/Entry and Path of Travel Violations | # Dwelling Unit/Bathroom Violations | # Dwelling Unit/Kitchen Violations | # Dwelling Unit/Other Violations | # Common Use Areas/Facilities Violations | # Accessible Route Violations |
|---|---|---|---|---|---|---|---|---|---|
| 4945 W Monroe St Apartments | SE corner of W Monroe Street and S Lavergne Avenue, NE corner of W Adams Street and S Lavergne Avenue, NW corner of W Adams Street and S Lavergne Avenue | Fail | 18 | 2 | N/A | N/A | 1 | N/A | 5 |
| 5001-5005 W Monroe Apartments | 5001-5005 W Monroe | Fail | 19 | 1 | 5 | N/A | 1 | 2 | 5 |
| 6213 S Greenwood Apartments | 6213-15 S Greenwood Ave | Fail | 20 | 1 | 6 | 2 | 1 | N/A | 3 |
| 647-49 E. 50th Pl. Apartments | 647-49 E. 50th Pl. | Fail | 21 | 1 | 5 | 1 | 1 | 1 | 5 |

| Development Name | Development Address | Pass/Fail | Exhibit Number | # Dwelling Unit/Entry and Path of Travel Violations | # Dwelling Unit/Bathroom Violations | # Dwelling Unit/Kitchen Violations | # Dwelling Unit/Other Violations | # Common Use Areas/Facilities Violations | # Accessible Route Violations |
|---|---|---|---|---|---|---|---|---|---|
| 7010 S Clyde Street Apartments | 7010 S Clyde Street | Fail | 22 | N/A | 5 | 2 | 1 | 3 | 4 |
| 7024 S Clyde Ave Apartments | 7024 S Clyde Ave | Fail | 23 | N/A | 6 | N/A | 3 | 1 | 1 |
| 7200 S Lowe Ave Apartments | 7200 S Lowe Ave | Fail | 24 | N/A | 5 | N/A | 1 | 2 | 4 |
| 7901 S Kingston Ave Apartments | 7901 S Kingston Ave | Fail | 25 | 2 | 4 | 1 | 1 | 1 | 1 |
| 8031-35 S. Drexel Avenue Apartments | 8031-35 S. Drexel Ave. | Fail | 26 | N/A | 5 | 1 | N/A | 1 | 3 |

| Development Name | Development Address | Pass/Fail | Exhibit Number | # Dwelling Unit/Entry and Path of Travel Violations | # Dwelling Unit/Bathroom Violations | # Dwelling Unit/Kitchen Violations | # Dwelling Unit/Other Violations | # Common Use Areas/Facilities Violations | # Accessible Route Violations |
|---|---|---|---|---|---|---|---|---|---|
| 825-827 W Sunnyside Apartments | 825-827 W Sunnyside Avenue, 829-837 W Sunnyside Avenue, 839-845 W Sunnyside Avenue and 820 W Agatite Avenue | Fail | 27 | N/A | 5 | 1 | 3 | N/A | 5 |
| African Village Apartments | 400-08 S Laramie Avenue and 418-24 S Laramie Avenue | Fail | 28 | 1 | 5 | N/A | 1 | 3 | 2 |
| Austin Shore II Apartments | 169 Le Claire Avenue | Fail | 29 | 1 | 5 | 2 | 1 | 1 | 4 |
| Caroline Hedger Apartments | 6400 and 6418 N Sheridan | Fail | 30 | N/A | 3 | N/A | 1 | 2 | 8 |

| Development Name | Development Address | Pass/Fail | Exhibit Number | # Dwelling Unit/Entry and Path of Travel Violations | # Dwelling Unit/Bathroom Violations | # Dwelling Unit/Kitchen Violations | # Dwelling Unit/Other Violations | # Common Use Areas/Facilities Violations | # Accessible Route Violations |
|---|---|---|---|---|---|---|---|---|---|
| Churchview Manor Senior Apartments | 2642 W 63rd St | Fail | 31 | N/A | 5 | N/A | 1 | 15 | 2 |
| Churchview Supportive Living Apartments | 2626 W 63rd St | Fail | 32 | N/A | 1 | N/A | N/A | 21 | 8 |
| Clifton Magnolia Apartments | 4416 N Clifton Ave | Fail | 33 | N/A | 4 | 1 | 2 | N/A | 2 |
| Concordia Place Apartments | 13037 S Daniel Dr | Fail | 34 | 3 | 5 | 2 | 4 | 13 | 9 |
| Courtyard Commons Apartments | 4815-4825 W Monroe St | Fail | 35 | N/A | 5 | N/A | 1 | 1 | 2 |
| Drexel Court Apts. | 4611-17 S Drexel | Fail | 36 | N/A | 5 | 1 | 2 | 1 | 6 |
| Eden Development Apartments | 5532-34 S Indiana Ave | Fail | 37 | 4 | 7 | 1 | 3 | 7 | 3 |

| Development Name | Development Address | Pass/Fail | Exhibit Number | # Dwelling Unit/Entry and Path of Travel Violations | # Dwelling Unit/Bathroom Violations | # Dwelling Unit/Kitchen Violations | # Dwelling Unit/Other Violations | # Common Use Areas/Facilities Violations | # Accessible Route Violations |
|---|---|---|---|---|---|---|---|---|---|
| Edgewater Shores Apartments | 5326 N Winthrop Ave | Fail | 38 | N/A | 6 | 1 | 1 | 2 | 4 |
| Evergreen Towers Apartments | 1342 N Cleveland Ave | Fail | 39 | N/A | 5 | 2 | 5 | 24 | 3 |
| Faith Residences | 5644-56 W Washington Boulevard, 114 N Parkside Avenue and 124 N Parkside Avenue | Fail | 40 | 2 | N/A | 2 | 3 | 3 | 9 |
| Germano Milgate Apartments | 8760-66 S Burley | Fail | 41 | 1 | 4 | 2 | 2 | 22 | 7 |
| Hancock House Apartments | 12045 S Emerald Ave | Fail | 42 | N/A | 8 | 2 | N/A | 8 | 2 |
| Harriet Tubman Apartments | 5751 S Michigan Ave | Fail | 43 | 2 | N/A | 3 | 1 | N/A | 4 |
| Harrison Court Apartments | 2910, 2930 and 2950 W. Harrison | Fail | 44 | 2 | N/A | N/A | 5 | 1 | 3 |

| Development Name | Development Address | Pass/Fail | Exhibit Number | # Dwelling Unit/Entry and Path of Travel Violations | # Dwelling Unit/Bathroom Violations | # Dwelling Unit/Kitchen Violations | # Dwelling Unit/Other Violations | # Common Use Areas/Facilities Violations | # Accessible Route Violations |
|---|---|---|---|---|---|---|---|---|---|
| Hazel Winthrop Apartments | 4426-28 Magnolia, 912-14 N Montrose, 852-54 W Sunnyside and 4813-15 N Winthrop | Fail | 45 | N/A | 3 | 4 | 1 | N/A | 2 |
| Hearts United III Apartments | 4217 S St Lawrence Ave | Fail | 46 | N/A | 7 | 7 | 7 | 2 | 27 |
| Highland Tudor Apartments | 7010-12 and 7016-18 South Cregier Avenue | Fail | 47 | 2 | 7 | 2 | N/A | 17 | 7 |
| Homan Square IV Apartments | 3607 W Polk St | Fail | 48 | 1 | 2 | 2 | 2 | 16 | 18 |
| Homan Square VI Apartments | West Arthington St and South Central Park Ave | Fail | 49 | 6 | N/A | 2 | 3 | 1 | 8 |
| Hope Manor Apartments | 3053 W Franklin Blvd | Fail | 50 | 1 | 7 | N/A | 1 | 8 | 4 |

| Development Name | Development Address | Pass/Fail | Exhibit Number | # Dwelling Unit/Entry and Path of Travel Violations | # Dwelling Unit/Bathroom Violations | # Dwelling Unit/Kitchen Violations | # Dwelling Unit/Other Violations | # Common Use Areas/Facilities Violations | # Accessible Route Violations |
|---|---|---|---|---|---|---|---|---|---|
| Keeler Roosevelt Apartments | 4200 W Roosevelt Rd | Fail | 51 | 1 | 6 | 4 | 1 | 1 | 5 |
| Kilpatrick Renaissance Apartments | 4117 N Kilpatrick Ave | Fail | 52 | N/A | 6 | 1 | 2 | 15 | 1 |
| KLEO Art Residences | 5510 S Michigan Avenue | Fail | 53 | N/A | 3 | 7 | 2 | 14 | 5 |
| La Estancia Apartments | 2753 W. Division Street, 3228 W. Division Street, and 3248 W. Division Street | Fail | 54 | 1 | 3 | 3 | 3 | 6 | 11 |

| Development Name | Development Address | Pass/Fail | Exhibit Number | # Dwelling Unit/Entry and Path of Travel Violations | # Dwelling Unit/Bathroom Violations | # Dwelling Unit/Kitchen Violations | # Dwelling Unit/Other Violations | # Common Use Areas/Facilities Violations | # Accessible Route Violations |
|---|---|---|---|---|---|---|---|---|---|
| La Paz Place Apartments | 3535-37 West Dickens Avenue/ 2049-53 North Drake Avenue; 3600-02 West Shakespeare Avenue/ 2142-46 North Central Ave; 3604-08 West Shakespeare Avenue; 3643 West Shakespeare Avenue, 3518 and 520 West Dickens | Fail | 55 | 1 | 5 | 1 | 3 | 3 | 3 |

| Development Name | Development Address | Pass/Fail | Exhibit Number | # Dwelling Unit/Entry and Path of Travel Violations | # Dwelling Unit/Bathroom Violations | # Dwelling Unit/Kitchen Violations | # Dwelling Unit/Other Violations | # Common Use Areas/Facilities Violations | # Accessible Route Violations |
|---|---|---|---|---|---|---|---|---|---|
| Lakefront Phase II Apartments | 13 buildings: 1060 E 41st Street, 4131 and 4143 Lake Park Avenue, 1106 and 1140 42nd Place, 1110, 1113, 1120, 1125, and 1137 Bowen and 4116 and 4130 Oakenwald | Fail | 56 | N/A | N/A | N/A | 2 | 2 | 8 |
| Lakeview Towers | 4550 N Clarendon | Fail | 57 | 2 | 6 | 2 | 3 | 10 | 3 |
| Leland Hotel Apartments | 1201 W Leland Ave | Fail | 58 | N/A | 8 | 1 | 4 | 9 | 1 |

| Development Name | Development Address | Pass/Fail | Exhibit Number | # Dwelling Unit/Entry and Path of Travel Violations | # Dwelling Unit/Bathroom Violations | # Dwelling Unit/Kitchen Violations | # Dwelling Unit/Other Violations | # Common Use Areas/Facilities Violations | # Accessible Route Violations |
|---|---|---|---|---|---|---|---|---|---|
| Lincoln Village Senior Apartments | 6057 N Lincoln Ave | Fail | 59 | N/A | 2 | N/A | N/A | 9 | 4 |
| Malden Arms Apartments | 4725-4727 N Malden | Fail | 60 | 2 | 4 | N/A | N/A | 3 | 4 |
| Malden Avenue Apartments | 4520 N Malden St | Fail | 61 | 2 | 2 | 1 | 2 | 1 | 5 |
| Margaret Ford Manor Apartments | 4500-12 S Wabash | Fail | 62 | N/A | 2 | 2 | N/A | 16 | 2 |
| Mayfair Commons | 4444 W Lawrence | Fail | 63 | 1 | 3 | 1 | 1 | 20 | 3 |
| Montclare Senior Residences of Calumet Heights | 9401 S Stony Island | Fail | 64 | N/A | 4 | N/A | 8 | 14 | 10 |
| New Moms Apartments | 5317 W Chicago Ave | Fail | 65 | N/A | 1 | 1 | 1 | 5 | 1 |
| Northtown Library and Apartments | 6800 N Western Ave | Fail | 66 | N/A | 2 | N/A | 2 | 2 | 7 |

| Development Name | Development Address | Pass/Fail | Exhibit Number | # Dwelling Unit/Entry and Path of Travel Violations | # Dwelling Unit/Bathroom Violations | # Dwelling Unit/Kitchen Violations | # Dwelling Unit/Other Violations | # Common Use Areas/Facilities Violations | # Accessible Route Violations |
|---|---|---|---|---|---|---|---|---|---|
| Park Boulevard Phase 2b Apartments | 3637 and 3643 S State Street, 4 & 10 and 16 & 22W 37th Street and 3720 S Dearborn Street | Fail | 67 | 1 | 1 | 1 | N/A | 6 | 18 |
| Park Douglas Apartments | 19 buildings; management office at 2721 W Roosevelt | Fail | 68 | N/A | 1 | 1 | N/A | 2 | 8 |
| Park Towers Apartments | 5140 S Hyde Park | Fail | 69 | N/A | 5 | 3 | 6 | 13 | 1 |
| Parkside Of Old Town P2A Apartments | 544 W Oak st | Fail | 70 | 4 | 4 | 4 | 8 | 15 | 18 |
| Paseo Boricua Apartments | 1154 N Campbell Ave | Fail | 71 | 2 | N/A | 20 | 2 | 20 | 7 |

| Development Name | Development Address | Pass/Fail | Exhibit Number | # Dwelling Unit/Entry and Path of Travel Violations | # Dwelling Unit/Bathroom Violations | # Dwelling Unit/Kitchen Violations | # Dwelling Unit/Other Violations | # Common Use Areas/Facilities Violations | # Accessible Route Violations |
|---|---|---|---|---|---|---|---|---|---|
| Paul G Stewart V Apartments | 410 E Bowen Ave | Fail | 72 | N/A | 3 | 3 | 9 | 19 | 7 |
| Porta Coeli Residences | 2300 E 99th St | Fail | 73 | N/A | N/A | N/A | 1 | 22 | 3 |
| Prairie Park Apartments | 5610 S Calumet Aveue & 331 E 56th Street, 5525 S Prairie Avenue & 315 E 55th Place, and 5539 S Prairie Avenue &314 E 56th Street | Fail | 74 | N/A | 6 | 3 | 5 | 8 | N/A |
| Pullman Suites Apartments | 3 E 112th Pl | Fail | 75 | 2 | N/A | 1 | N/A | 13 | 14 |

| Development Name | Development Address | Pass/Fail | Exhibit Number | # Dwelling Unit/Entry and Path of Travel Violations | # Dwelling Unit/Bathroom Violations | # Dwelling Unit/Kitchen Violations | # Dwelling Unit/Other Violations | # Common Use Areas/Facilities Violations | # Accessible Route Violations |
|---|---|---|---|---|---|---|---|---|---|
| Renaissance II Apartments | 1016 E 62nd Street; 6219-21 S University and 6225 S University; 1128-30 E 62nd Street & 6156-58 S University; 1113-15 & 1109 E 62nd Street; 6201 & 6209 E Greenwood; 6156-58 E Greenwood and 1020 & 1128E 62nd Street; 1016 E 62nd Street and 957-59 East 62nd Street | Fail | 76 | 11 | 10 | 1 | 4 | 3 | 9 |
| Roentgen School - Switching Station Lofts | 15 S Homan | Fail | 77 | 2 | 4 | 3 | 2 | 7 | 2 |

| Development Name | Development Address | Pass/Fail | Exhibit Number | # Dwelling Unit/Entry and Path of Travel Violations | # Dwelling Unit/Bathroom Violations | # Dwelling Unit/Kitchen Violations | # Dwelling Unit/Other Violations | # Common Use Areas/Facilities Violations | # Accessible Route Violations |
|---|---|---|---|---|---|---|---|---|---|
| Roosevelt Square II Apartments | Clustered around the intersection of W Roosevelt Road and S Throop Street | Fail | 78 | 3 | 1 | 2 | 4 | 1 | 19 |
| Roseland Village Apartments | 10400 S Michigan Ave | Fail | 79 | 2 | 1 | N/A | N/A | 2 | 5 |
| Rosenwald Courts Apartments | 4648 S Michigan | Fail | 80 | N/A | N/A | N/A | N/A | 18 | 10 |
| Rowan Trees Apartments | 500 W Englewood Ave | Fail | 81 | N/A | 2 | N/A | 2 | 13 | 3 |
| Ruth Shriman House Apartments | 4036-46 N Sheridan | Fail | 82 | N/A | 2 | 3 | 4 | 10 | 2 |
| San Miguel Apartments | 907 W Argyle St | Fail | 83 | 1 | 2 | N/A | 3 | 2 | 3 |
| Sankofa House Apartments | 4041 W Roosevelt Rd | Fail | 84 | N/A | N/A | N/A | N/A | 11 | 4 |

79

| Development Name | Development Address | Pass/Fail | Exhibit Number | # Dwelling Unit/Entry and Path of Travel Violations | # Dwelling Unit/Bathroom Violations | # Dwelling Unit/Kitchen Violations | # Dwelling Unit/Other Violations | # Common Use Areas/Facilities Violations | # Accessible Route Violations |
|---|---|---|---|---|---|---|---|---|---|
| Schiff Residences | 1244 N Clybourn Ave | Fail | 85 | N/A | 9 | 1 | 3 | 12 | 2 |
| Senior Suites of Central Station Apartments | 1400-12 S Indiana Avenue | Fail | 86 | N/A | 2 | 9 | 10 | 16 | 1 |
| Senior Suites of Hegewisch Apartments | 13550 S Avenue O | Fail | 87 | N/A | 5 | 7 | 1 | 15 | 7 |
| Senior Suites of Jefferson Park Apartments | 5400 N North W Hwy | Fail | 88 | N/A | 3 | 5 | N/A | 9 | 4 |
| Senior Suites of Ravenswood Manor Apartments | 2800-14 W Montrose | Fail | 89 | N/A | 6 | 6 | 2 | 4 | 4 |
| St. Edmonds Tower Annex Apartments | 6151 S Michigan Ave | Fail | 90 | 1 | N/A | 5 | 1 | 8 | 2 |

| Development Name | Development Address | Pass/Fail | Exhibit Number | # Dwelling Unit/Entry and Path of Travel Violations | # Dwelling Unit/Bathroom Violations | # Dwelling Unit/Kitchen Violations | # Dwelling Unit/Other Violations | # Common Use Areas/Facilities Violations | # Accessible Route Violations |
|---|---|---|---|---|---|---|---|---|---|
| St. Edmunds Manor Apartments | 5947 S Indiana Ave | Fail | 91 | 2 | 4 | 1 | N/A | N/A | 6 |
| St. Sabina Apartments | 1222 W 79th St | Fail | 92 | N/A | 2 | 1 | 2 | 21 | 5 |
| The Diplomat Hotel / Buffet Place Apartments | 3208 N Sheffield | Fail | 93 | N/A | N/A | N/A | 1 | 4 | N/A |
| The Pershing Apartments | 3845 S State St | Fail | 94 | N/A | N/A | 1 | 3 | 12 | N/A |
| The Pomeroy Apartments | 5650 N Kenmore Ave | Fail | 95 | N/A | 2 | 1 | 1 | 15 | 3 |
| The Spaulding Apartments | 1750 N Spaulding Avenue | Fail | 96 | N/A | 10 | N/A | 2 | 7 | 5 |
| Town and Garden Apartments | 1448 N Sedgwick St | Fail | 97 | N/A | 2 | 1 | N/A | 10 | 6 |

| Development Name | Development Address | Pass/Fail | Exhibit Number | # Dwelling Unit/Entry and Path of Travel Violations | # Dwelling Unit/Bathroom Violations | # Dwelling Unit/Kitchen Violations | # Dwelling Unit/Other Violations | # Common Use Areas/Facilities Violations | # Accessible Route Violations |
|---|---|---|---|---|---|---|---|---|---|
| Vision House Apartments | 514 E 50th Pl | Fail | 98 | N/A | 4 | N/A | 4 | 3 | 7 |
| Westhaven Park Apartments | 105 N Wood St | Fail | 99 | 1 | 4 | 7 | 2 | N/A | 2 |
| Willard Square Apartments | 4843-45 S St. Lawrence | Fail | 100 | N/A | 1 | 2 | N/A | 3 | 8 |
| Woodlawn Michigan Apartments | 5630 S Michigan and 6446 S Kenwood Avenue | Fail | 101 | N/A | 4 | 2 | 1 | 4 | 12 |
| Wrightwood Senior Apartments | 2815 W 79th St | Fail | 102 | N/A | N/A | 4 | N/A | 14 | 4 |
| YMCA Washington Park Apartments | 5000 S Indiana Ave | Fail | 103 | N/A | 2 | 1 | 2 | 3 | 4 |

Common accessibility violations found in these site inspection measurement reviews include, but are not limited to: accessible parking space violations affecting the ability of residents with disabilities to transfer from a vehicle to a wheelchair; inaccessible door maneuvering clearances in dwelling units and along approach routes, which make it difficult for wheelchair users to effectively approach and operate doors and gates; door thresholds that are too high (or lack the necessary beveled edges), such that a wheelchair user may not be able to surmount the threshold or may risk being thrown from the wheelchair; steep running slopes and cross slopes that could tip wheelchair users backward or off the path; many wall or ceiling mounted elements that were not cane detectable and could injure blind or visually impaired residents or guests; a lack of accessible door hardware that is easier for those with limited grasping ability to operate; steps or inaccessible abrupt level changes along routes that impede passage by wheelchair users; lack of wheelchair maneuvering clearance required in kitchens and bathrooms; and narrow doors that could prevent passage of a wheelchair, or result in a wheelchair user scraping his or her knuckles on the door frame.

Exhibit 4 identifies each development for which a randomized Measurement Review was performed to assess compliance with federal accessibility standards, the address of the development, whether the development received federal funding directly, the construction type (new construction or rehabilitation), the coverage based on construction start date, the Exhibit to this report at which my Measurement Review can be found, and the result of my evaluation.

| Development Name | Development Address | Tranche | Coverage | Exhibit Number | Pass/Fail |
|---|---|---|---|---|---|
| 12013 S Eggleston Apartments | 12013 S Eggleston Ave | Federal Rehab | Section 504, ADA | 8 | Fail |
| 1225 S Michigan Apartments | 1225 S Michigan Ave | Non-Federal New | Section 504, FHA, ADA | 9 | Fail |
| 1451 N Washtenaw Ave Apartments | 1451 N Washtenaw Ave | Non-Federal Rehab | Section 504 | 10 | Fail |
| 1826 S Avers Apartments | 1826 S Avers | Federal Rehab | Section 504, ADA | 11 | Fail |
| 3108 W Walton Apartments | 3108 W Walton | Non-Federal Rehab | Section 504 | 12 | Fail |
| 3151-3159 W Argyle St Apartments | 3151-3159 W Argyle St | Non-Federal Rehab | Section 504 | 13 | Fail |
| 3502 W Van Buren St Apartments | 3502 W Van Buren St | Non-Federal Rehab | Section 504 | 14 | Fail |
| 4119-4129 S Ellis, 1029 E 41st Apartments | 4119-4129 S Ellis, 1029 E 41st | Federal Rehab | Section 504, ADA | 15 | Fail |
| 436-42 E 47th Street Apartments | 423-42 E 47th St | Federal Rehab | Section 504, ADA | 16 | Fail |
| 45th Cottage Grove Apartments | 4424 and 4434S Cottage Grove | Non-Federal New | Section 504, FHA, ADA | 17 | Fail |
| 4945 W Monroe St Apartments | Located at the Southeast corner of W Monroe Street and S Lavergne Avenue, the Northeast corner of W Adams Street and S Lavergne Avenue and the Northwest corner of W Adams | Non-Federal Rehab | Section 504 | 18 | Fail |

| Development Name | Development Address | Tranche | Coverage | Exhibit Number | Pass/Fail |
|---|---|---|---|---|---|
| | Street and S Lavergne Avenue | | | | |
| 5001-5005 W Monroe Apartments | 5001-5005 W Monroe | Federal Rehab | Section 504, ADA | 19 | Fail |
| 6213 S Greenwood Apartments | 6213-15 S Greenwood Ave | Federal Rehab | Section 504, ADA | 20 | Fail |
| 647-49 E. 50th Pl. Apartments | 647-49 E. 50th Pl. | Non-Federal Rehab | Section 504, ADA | 21 | Fail |
| 7010 S Clyde Street Apartments | 7010 S Clyde Street | Non-Federal Rehab | Section 504 | 22 | Fail |
| 7024 S Clyde Ave Apartments | 7024 S Clyde Ave | Federal Rehab | Section 504 | 23 | Fail |
| 7200 S Lowe Ave Apartments | 7200 S Lowe Ave | Federal Rehab | Section 504 | 24 | Fail |
| 7901 S Kingston Ave Apartments | 7901 S Kingston Ave | Federal Rehab | Section 504, ADA | 25 | Fail |
| 8031-35 S. Drexel Avenue Apartments | 8031-35 S. Drexel Ave. | Federal Rehab | Section 504, ADA | 26 | Fail |
| 825-827 W Sunnyside Apartments | 825-827 W Sunnyside Avenue, 829-837 W Sunnyside Avenue, 839-845 W Sunnyside Avenue and 820 W Agatite Avenue | Federal Rehab | Section 504, ADA | 27 | Fail |
| African Village Apartments | 400-08 S Laramie Avenue and 418-24 S Laramie Avenue | Federal Rehab | Section 504 | 28 | Fail |

| Development Name | Development Address | Tranche | Coverage | Exhibit Number | Pass/Fail |
|---|---|---|---|---|---|
| Austin Shore II Apartments | 169 LeClaire Avenue | Non-Federal Rehab | Section 504 | 29 | Fail |
| Caroline Hedger Apartments | 6400 and 6418 N Sheridan | Non-Federal Rehab | Section 504, ADA | 30 | Fail |
| Churchview Manor Senior Apartments | 2642 W 63rd St | Non-Federal New | Section 504, FHA | 31 | Fail |
| Churchview Supportive Living Apartments | 2626 W 63rd St | Federal New | Section 504, FHA, ADA | 32 | Fail |
| Clifton Magnolia Apartments | 4416 N Clifton Ave | Non-Federal Rehab | Section 504, ADA | 33 | Fail |
| Concordia Place Apartments | 13037 S Daniel Dr | Non-Federal Rehab | Section 504, ADA | 34 | Fail |
| Courtyard Commons Apartments | 4815-4825 W Monroe St | Federal Rehab | Section 504, ADA | 35 | Fail |
| Drexel Court Apts. | 4611-17 S Drexel | Non-Federal Rehab | Section 504 | 36 | Fail |
| Eden Development Apartments | 5532-34 S Indiana Ave | Federal Rehab | Section 504, ADA | 37 | Fail |
| Edgewater Shores Apartments | 5326 N Winthrop Ave | Non-Federal Rehab | Section 504 | 38 | Fail |
| Evergreen Towers Apartments | 1342 N Cleveland Ave | Federal New | Section 504, FHA, ADA | 39 | Fail |
| Faith Residences | 5644-56 W Washington Boulevard, 114 N Parkside Avenue and 124 N Parkside Avenue | Federal Rehab | Section 504, ADA | 40 | Fail |
| Germano Milgate Apartments | 8760-66 S Burley | Non-Federal Rehab | Section 504, ADA | 41 | Fail |
| Hancock House Apartments | 12045 S Emerald Ave | Non-Federal New | Section 504, FHA, ADA | 42 | Fail |
| Harriet Tubman Apartments | 5751 S Michigan Ave | Federal Rehab | Section 504, ADA | 43 | Fail |

| Development Name | Development Address | Tranche | Coverage | Exhibit Number | Pass/Fail |
|---|---|---|---|---|---|
| Harrison Court Apartments | 2910, 2930and2950 W. Harrison | Non-Federal Rehab | Section 504, ADA | 44 | Fail |
| Hazel Winthrop Apartments | 4426-28 Magnolia, 912-14 N Montrose, 852-54 W Sunnyside and 4813-15 N Winthrop | Federal Rehab | Section 504, ADA | 45 | Fail |
| Hearts United III Apartments | 4217 S St Lawrence Ave | Non-Federal New | Section 504, FHA, ADA | 46 | Fail |
| Highland Tudor Apartments | 7010-12 and 7016-18 South Cregier Avenue | Federal Rehab | Section 504, ADA | 47 | Fail |
| Homan Square IV Apartments | 3607 W Polk St | Federal New | Section 504, FHA, ADA | 48 | Fail |
| Homan Square VI Apartments | West Arthington St and South Central Park Ave | Federal New | Section 504, FHA, ADA | 49 | Fail |
| Hope Manor Apartments | 3053 W Franklin Blvd | Federal New | Section 504, FHA, ADA | 50 | Fail |
| Keeler Roosevelt Apartments | 4200 W Roosevelt Rd | Non-Federal Rehab | Section 504, ADA | 51 | Fail |
| Kilpatrick Renaissance Apartments | 4117 N Kilpatrick Ave | Federal New | Section 504, FHA, ADA | 52 | Fail |
| KLEO Art Residences | 5510 S Michigan Avenue | Non-Federal New | Section 504, FHA, ADA | 53 | Fail |
| La Estancia Apartments | 2753 W. Division Street, 3228 W. Division Street, and 3248 W. Division Street | Federal New | Section 504, FHA, ADA | 54 | Fail |

| Development Name | Development Address | Tranche | Coverage | Exhibit Number | Pass/Fail |
|---|---|---|---|---|---|
| La Paz Place Apartments | 3535-37 West Dickens Avenue/ 2049-53 North Drake Avenue; 3600-02 West Shakespeare Avenue/ 2142-46 North Central Ave; 3604-08 West Shakespeare Avenue; 3643 West Shakespeare Avenue, 3518 and 520 West Dickens | Federal Rehab | Section 504, ADA | 55 | Fail |
| Lakefront Phase II Apartments | 13 buildings: 1060 E 41st Street, 4131 and 4143 Lake Park Avenue, 1106 and 1140 42nd Place, 1110, 1113, 1120, 1125, and 1137 Bowen and 4116 and 4130 Oakenwald | Federal New | Section 504, FHA, ADA | 56 | Fail |
| Lakeview Towers | 4550 N Clarendon | Non-Federal Rehab | Section 504, ADA | 57 | Fail |
| Leland Hotel Apartments | 1201 W Leland Ave | Federal Rehab | Section 504, ADA | 58 | Fail |
| Lincoln Village Senior Apartments | 6057 N Lincoln Ave | Non-Federal New | Section 504, FHA, ADA | 59 | Fail |
| Malden Arms Apartments | 4725-4727 N Malden | Federal Rehab | Section 504, ADA | 60 | Fail |
| Malden Avenue Apartments | 4520 N Malden St | Federal Rehab | Section 504, ADA | 61 | Fail |
| Margaret Ford Manor Apartments | 4500-12 S Wabash | Federal New | Section 504, FHA, ADA | 62 | Fail |
| Mayfair Commons | 4444 W Lawrence | Federal New | Section 504, | 63 | Fail |

| Development Name | Development Address | Tranche | Coverage | Exhibit Number | Pass/Fail |
|---|---|---|---|---|---|
| | | | FHA, ADA | | |
| Montclare Senior Residences of Calumet Heights | 9401 S Stony Island | Federal New | Section 504, FHA, ADA | 64 | Fail |
| New Moms Apartments | 5317 W Chicago Ave | Federal New | Section 504, FHA, ADA | 65 | Fail |
| Northtown Library and Apartments | 6800 N Western Ave | Non-Federal New | Section 504, FHA, ADA | 66 | Fail |
| Park Boulevard Phase 2b Apartments | 3637 and 3643 S State Street, 4 & 10 and 16 & 22W 37th Street and 3720 S Dearborn Street | Non-Federal New | Section 504, FHA, ADA | 67 | Fail |
| Park Douglas Apartments | 19 buildings; management office at 2721 W Roosevelt | Federal New | Section 504, FHA, ADA | 68 | Fail |
| Park Towers Apartments | 5140 S Hyde Park | Non-Federal New | Section 504 | 69 | Fail |
| Parkside Of Old Town P2A Apartments | 544 W Oak st | Federal New | Section 504, FHA, ADA | 70 | Fail |
| Paseo Boricua Apartments | 1154 N Campbell Ave | Federal New | Section 504, FHA, ADA | 71 | Fail |
| Paul G Stewart V Apartments | 410 E Bowen Ave | Non-Federal New | Section 504, FHA, ADA | 72 | Fail |
| Porta Coeli Residences | 2300 E 99th St | Federal New | Section 504, FHA, ADA | 73 | Fail |

| Development Name | Development Address | Tranche | Coverage | Exhibit Number | Pass/Fail |
|---|---|---|---|---|---|
| Prairie Park Apartments | 5610 S Calumet Aveue & 331 E 56th Street, 5525 S Prairie Avenue & 315 E 55th Place, and 5539 S Prairie Avenue &314 E 56th Street | Federal New | Section 504, FHA, ADA | 74 | Fail |
| Pullman Suites Apartments | 3 E 112th Pl | Federal New | Section 504, FHA, ADA | 75 | Fail |
| Renaissance II Apartments | 1016 E 62nd Street; 6219-21 S University and 6225 S University; 1128-30 E 62nd Street & 6156-58 S University; 1113-15 & 1109 E 62nd Street; 6201 & 6209 E Greenwood; 6156-58 E Greenwood and 1020 & 1128E 62nd Street; 1016 E 62nd Street and 957-59 East 62nd Street | Federal Rehab | Section 504, ADA | 76 | Fail |
| Roentgen School - Switching Station Lofts | 15 S Homan | Federal Rehab | Section 504, ADA | 77 | Fail |
| Roosevelt Square II Apartments | Clustered around the intersection of W Roosevelt Road and S Throop Street | Non-Federal New | Section 504, FHA, ADA | 78 | Fail |
| Roseland Village Apartments | 10400 S Michigan Ave | Federal New | Section 504, FHA, ADA | 79 | Fail |

| Development Name | Development Address | Tranche | Coverage | Exhibit Number | Pass/Fail |
|---|---|---|---|---|---|
| Rosenwald Courts Apartments | 4648 S Michigan | Federal Rehab | Section 504, ADA | 80 | Fail |
| Rowan Trees Apartments | 500 W Englewood Ave | Non-Federal Rehab | Section 504, ADA | 81 | Fail |
| Ruth Shriman House Apartments | 4036-46 N Sheridan | Federal New | Section 504, FHA, ADA | 82 | Fail |
| San Miguel Apartments | 907 W Argyle St | Federal Rehab | Section 504, ADA | 83 | Fail |
| Sankofa House Apartments | 4041 W Roosevelt Rd | Non-Federal New | Section 504, FHA, ADA | 84 | Fail |
| Schiff Residences | 1244 N Clybourn Ave | Non-Federal New | Section 504, FHA, ADA | 85 | Fail |
| Senior Suites of Central Station Apartments | 1400-12 S Indiana Avenue | Federal New | Section 504, FHA, ADA | 86 | Fail |
| Senior Suites of Hegewisch Apartments | 13550 S Avenue O | Federal New | Section 504, FHA, ADA | 87 | Fail |
| Senior Suites of Jefferson Park Apartments | 5400 N North W Hwy | Federal New | Section 504, FHA, ADA | 88 | Fail |
| Senior Suites of Ravenswood Manor Apartments | 2800-14 W Montrose | Federal New | Section 504, FHA, ADA | 89 | Fail |
| St. Edmonds Tower Annex Apartments | 6151 S Michigan Ave | Non-Federal New | Section 504, FHA, ADA | 90 | Fail |
| St. Edmunds Manor Apartments | 5947 S Indiana Ave | Federal Rehab | Section 504, ADA | 91 | Fail |
| St. Sabina Apartments | 1222 W 79th St | Federal New | Section 504, FHA, | 92 | Fail |

| Development Name | Development Address | Tranche | Coverage | Exhibit Number | Pass/Fail |
|---|---|---|---|---|---|
| | | | ADA | | |
| The Diplomat Hotel / Buffet Place Apartments | 3208 N Sheffield | Non-Federal Rehab | Section 504, ADA | 93 | Fail |
| The Pershing Apartments | 3845 S State St | Federal New | Section 504, FHA, ADA | 94 | Fail |
| The Pomeroy Apartments | 5650 N Kenmore Ave | Non-Federal Rehab | Section 504, ADA | 95 | Fail |
| The Spaulding Apartments | 1750 N Spaulding Avenue | Federal New | Section 504, FHA, ADA | 96 | Fail |
| Town and Garden Apartments | 1448 N Sedgwick St | Non-Federal Rehab | Section 504, ADA | 97 | Fail |
| Vision House Apartments | 514 E 50th Pl | Federal Rehab | Section 504, ADA | 98 | Fail |
| Westhaven Park Apartments | 105 N Wood St | Federal New | Section 504, FHA, ADA | 99 | Fail |
| Willard Square Apartments | 4843-45 S St. Lawrence | Federal New | Section 504, FHA, ADA | 100 | Fail |
| Woodlawn Michigan Apartments | 5630 S Michigan and 6446 S Kenwood Avenue | Federal Rehab | Section 504, ADA | 101 | Fail |
| Wrightwood Senior Apartments | 2815 W 79th St | Federal New | Section 504, FHA, ADA | 102 | Fail |
| YMCA Washington Park Apartments | 5000 S Indiana Ave | Non-Federal Rehab | Section 504, ADA | 103 | Fail |

B. **Randomized Plan Reviews**

    1. **Introduction to Plan Reviews**

For purposes of accessibility analysis, a Plan Review is a detailed analysis of the information provided on the building plans compared with the accessibility requirements of the federal standards and regulations applicable to that development. Given my architectural education and extensive work experience, I am well versed in identifying the potential accessibility barriers evident in an architect's or engineer's building plans. Working from the more global concerns to the smaller details, each Plan Review begins with an analysis of the number of dwelling units provided in the project and a comparison with the minimum number of accessible units required by the appropriate accessibility standards. Next, the review focuses on the approach and entrance areas, parking, and general circulation issues, followed by common-use amenity evaluations, and dwelling unit accessibility issues. Lastly, a review of door schedules and building details allowed for the review of common accessibility elements along accessible routes and common elements in accessible spaces.

    2. **Randomized Plan Review Methodology**

As described above, the randomized categories were subject to two independent randomizations by a statistician, one for randomized Measurement Review and one for randomized Plan Review. Plaintiff's counsel provided me with building plans for developments for which I was to perform randomized Plan Reviews according to the randomized lists. I had no control over what developments were selected or which developments I reviewed.

For purposes of Plan Review, Access Living sought to obtain the final blueprints or final architectural drawings approved by the City for all developments in the Program. Upon learning that there were many developments for which the City did not maintain any building plans, let

93

alone complete sets, Plaintiff's counsel sought to supplement building plans from the owners of developments for which building plans from City records were missing or incomplete. [10]

Depending on the nature of the accessibility violations found in the Plan Review, the project design would fail if I identified at least three or four substantive examples of accessibility violations of UFAS, ADA standards, and/or FHA Regulations/Guidance. Examples of substantive accessibility violations include: failure to provide any UFAS or ADA accessible dwelling units, failure to provide a wheelchair turning space in every room in the accessible dwelling unit or unit that should have been accessible, doors swinging into the clear floor space of bathroom fixtures, lack of accessible kitchen sinks or associated work surfaces, lack of the required number of accessible parking spaces, stairs or steps along required approach routes, etc. I decided if the identified examples of accessibility barriers resulted in a pass or fail under the meaningful accessibility test described above. *See supra* IV.B.

The format of the Plan Reviews is divided into two general sections: 1) general project information; and, 2) detailed excerpts from the actual building plans with a description of the accessibility violations. The general project information includes the name of the project, the address of the project, the name of the architect or design firm who developed the plans, the date of the building plans along with any noted revisions, the number of dwelling units proposed in

---

[10] Some of these owners represented that they had no copies of the building plans for the development at issue, or the owners could not be located or served. Thus, if the City did not maintain plans, a Plan Review became impossible. When one of those developments was selected by the randomized list, it was skipped and I went on to the next development on the list. However, in some cases a Measurement Review had been conducted for such development and therefore there was an analysis of the development's accessibility. In my professional opinion there is no reason to believe that developments without plans would be more likely to comply with federal accessibility guidelines than developments with plans, and in fact, the opposite may be true.

the project, the number of required accessible dwelling units based on federal regulations, UFAS, or ADA Standards, and the number of floors or stories provided in the building.

The second part includes at least three or four specific examples of meaningful accessibility violations. Each example begins with a reference to the building plans sheet from which the excerpted diagram or drawing was captured. These "snapshots" of the actual drawings allow for a clear understanding of the nature of each condition cited as an accessibility violation and offer context for those who are not familiar with the particular portion of the facility in question. There is a short narrative that describes the specific accessibility violation and a corresponding description of the accessible conditions required by either UFAS or ADA Standards, or the HUD specifications applicable under the FHA Guidelines citing ANSI A117.1-1986 where applicable. Finally, there is a citation for each of the accessibility violations associated with either UFAS or the ADA Standards, or the HUD specifications applicable under the FHA Guidelines citing ANSI A117.1-1986 where applicable. Occasionally, a single drawing excerpt will be used as the basis of describing more than one accessibility barrier or violation; in those situations, each violation is accompanied by the citation from the appropriate accessibility standard or the HUD specifications applicable under the FHA Guidelines citing ANSI A117.1-1986 where applicable.

A sample from the attached Plan Review findings for the new 70-unit TRC Senior Village 1 development (346 E. 53rd Street – Chicago, IL) is shown below to allow a better understanding of the format of those reports and the nature of the findings. The first excerpt from my Plan Review report details the failure of the architect to provide adequate width for the approach hallway to the two common-use single-user restrooms that must comply with UFAS and the ADA Standards.

95

**Accessibility Violations:**

**1. Sheet A101:** The specified 3'- 8"(actual 42 5/8" clear when taking into account the 5/8" thick drywall on each wall) wide approach hallway leading to the Warming Pantry and Public Restrooms lacks the minimum 54"required pull side approach width (to the Warming Pantry) and 48" required push side approach width for the two Public Restrooms per 1991 ADA Standards 4.13.6 and UFAS 4.13.6.



Figure 2 - The Hallway leading to the Warming Pantry and Public Restrooms is too Narrow for ADA/UFAS.

The second example from my sample Plan Review findings for this TRC Senior Village 1 development illustrates the architect's failure to ensure that a minimum 60" turning space is provided in the walk-in closet of the bedroom in the designated "504" Unit.

**3. Sheet A105:** The typical UFAS unit lacks a 60" turning space in the walk-in closet of the Bedroom as required by UFAS 4.34.2(2).



Figure 4 – The Typical UFAS Unit Type lacks a 60" Turning Space in the Walk-in Closet

96

### 3. Randomized Plan Review Conclusions

In sum, I performed 77 randomized Plan Reviews. All 77 of these reviews demonstrated non-compliance with the requirements of federal accessibility standards sufficient to justify a fail, which translates to a lack of meaningful accessibility of the development for a person with disabilities. Again, in new and altered residential facilities the determination of non-compliance (or a fail) is a standard where any deviation from the specific applicable new construction or alteration provisions of UFAS or the ADA Standards is evidence that the facility in question does not comply with the rules and regulations. However, as discussed above, I decided to use a standard of meaningful accessibility. *See supra* IV.B. Thus, a development fails only if the violations found are of a type or frequency that would prevent someone with a disability from being able to use important portions of their dwelling unit and/or common-use facilities.

**Applying these standards, all 77 of 77 developments—or 100% of those subjected to Plan Review—failed.** My understanding is that a statistician will provide statistical conclusions regarding the inaccessibility of the entire portfolio of developments in the case based on the randomized sample that I reviewed in this analysis.

Below and attached as Exhibit 5[11] is a summary table that describes the name of the development for which I reviewed plans, the address of that development, whether the development passed or failed, and the Exhibit at which the corresponding Plan Review can be found.

---

[11] The tables at Exhibits 5 and 6 are subsets of the information in Ex. B (Plan Reviews Overall Property Sample Identification and Results Table).

| Development Name | Development Address | Pass/Fail | Exhibit Number |
|---|---|---|---|
| 1826 S Avers | 1826 S Avers | Fail | 104 |
| 2501 West 63rd Street | 2501 West 63rd Street | Fail | 105 |
| 3502 W Van Buren | 3502-08 W Van Buren Ave | Fail | 106 |
| 4119-29 S Ellis & 1029 E 41st Pl Apt | 4119-29 S Ellis & 1029 E 41st Pl | Fail | 107 |
| 7000-04 S. Merrill Ave Apts | 7000-04 S. Merrill Ave | Fail | 108 |
| 7014 S. Kimbark Ave. | 7014-7016 S. Kimbark Ave. | Fail | 109 |
| 7024 S Clyde Ave | 7024 S Clyde Ave | Fail | 110 |
| Austin Shore I | 7117 S Euclid Ave | Fail | 111 |
| Barbara Jean Wright Court | Community Center & Office: 1350-54 S Morgan. Other units on 14th St. and Morgan St. (doesn't specify all addresses) | Fail | 112 |
| Bettendorf Place Sro | 8425 S Saginaw Ave | Fail | 113 |
| Boulevard Commons II | 149 N Central Ave | Fail | 114 |
| Brainerd Senior Center | 8915 S Loomis | Fail | 115 |
| Caroline Hedger Apartments | 6400 N Sheridan | Fail | 116 |
| Casa Sor Juana | 2700 S Drake Ave | Fail | 117 |
| Cathedral Shelter | 1668 W Ogden Ave | Fail | 118 |
| Churchview Senior Apartments | W 63rd St & S Talman Ave | Fail | 119 |
| Clybourn and Division Apartments | 1200 N Clybourn Ave | Fail | 120 |
| Dorchester Artist Housing Collaborative | 1446-1470 E. 70th St, 1506-1514 E. 70th St., 6948-6958 S. Harper Ave., 6949-6959 S. Harper Ave., 6949-6959 S. Dante Ave. | Fail | 121 |
| Dorchester Way | 1454-1455 E 67th Pl. | Fail | 122 |
| 3625-3629 W. Dickens | 3625 W Dickens | Fail | 123 |
| East Park Apartments SRO | 3300 W Maypole Ave | Fail | 124 |
| Englewood | 6750 S Green St. | Fail | 125 |
| Evergreen Tower Apartments | 133 N Cleveland Ave | Fail | 126 |
| Geneva Gables | 4420-26 S Michigan Ave | Fail | 127 |

| Development Name | Development Address | Pass/Fail | Exhibit Number |
|---|---|---|---|
| Greenwood Park Apartments | 4710 S Greenwood Ave | Fail | 128 |
| Hairpin Lofts | 3414 W Diversey Ave | Fail | 129 |
| Harrison Courts Apartments | 2910 W Harrison St | Fail | 130 |
| Homan Square Phase IV | 3607 W Polk St | Fail | 131 |
| Homan Square Phase VI | 3609 W Arthington | Fail | 132 |
| Howard Apartments | 1567-1569 N Hoyne Ave | Fail | 133 |
| Independence Apartments | 4022 N Elston Ave | Fail | 134 |
| J. Michael Fitzgerald Apartments | 5801 N Pulaski Rd.. | Fail | 135 |
| Jeffery Towers Apartments | 7020 S Jeffery Blvd | Fail | 136 |
| Kilpatrick Renaissance | 4117 N Kilpatrick Ave | Fail | 137 |
| La Estancia Affordable Housing | 3248 W Division | Fail | 138 |
| Lincoln Village Senior Apartments | 6055 N Lincoln Ave | Fail | 139 |
| Malden Avenue Apartments | 4520-28 N Malden Ave | Fail | 140 |
| Midway Pointe Senior Residences Housing | 5001-5021 W 47th St | Fail | 141 |
| Montclare Senior Residences of Calumet Heights | 9401 S Stony Island | Fail | 142 |
| Montclare Senior Residences of Englewood | 6346 S Green St | Fail | 143 |
| Montclare Senior Residences SLF Lawndale | 4329 W 18th Pl | Fail | 144 |
| Montclare Sr. Res. SLF Avalon Park Phase II | 1210 E 78th | Fail | 145 |
| Nathalie Salmon House | N Sheridan Rd | Fail | 146 |
| Northtown Library and Apartments | 6800 N Western Ave | Fail | 147 |
| Oakwood Shores Senior Apartments | 3750 S Cottage Grove Ave | Fail | 148 |
| Paseo Boricua | 1154 N Campbell Ave | Fail | 149 |
| Paul G Stewart Apartment Phases I & II | 400 E 41st St | Fail | 150 |
| Paul G. Stewart Apartments Phase III | 401 E Bowen | Fail | 151 |
| Porta Coeli Residence | 2260 E 99th St | Fail | 152 |
| Presentation Apartments II | 817-823 S Springfield Ave | Fail | 153 |

| Development Name | Development Address | Pass/Fail | Exhibit Number |
|---|---|---|---|
| Rainbow's End | 7401 S Kingston Ave | Fail | 154 |
| Riverside Village (Eden Green) | 132nd and Indiana | Fail | 155 |
| Roosevelt Square Phase 1 | 1124 W Washburne Ave | Fail | 156 |
| Roosevelt Towers Phase II | W Roosevelt at S St. LouisAve | Fail | 157 |
| San Miguel Apartments | 907 W Argyle St | Fail | 158 |
| Senior Suites of Austin | W Corcoran Pl at N Menard Ave | Fail | 159 |
| Senior Suites of Hegewisch | 13600 S Ave O | Fail | 160 |
| Senior Suites of Jefferson Park | 5400 N Northwest W Hwy | Fail | 161 |
| Senior Suites of Rainbow Beach | 2804 E 77th Pl | Fail | 162 |
| Senior Suites of West Humboldt Park | 3656 W Huron St | Fail | 163 |
| Shops And Lofts At 47Th | 4739 S Evans Ave | Fail | 164 |
| Sky 55 | 1255 S Michigan | Fail | 165 |
| South Loop Affordable Housing | 600 S Wabash Ave | Fail | 166 |
| St Edmunds Tower Annex | 6151 S Michigan Ave | Fail | 167 |
| St. Edmund's Plaza | 5701-03 S Michigan Ave | Fail | 168 |
| St. Sabina Apartments | 1222 W 79th St | Fail | 169 |
| Stewart Court Apartments | 7640-7656 S Stewart Ave | Fail | 170 |
| The Diplomat Hotel SRO | 3208 N Sheffield | Fail | 171 |
| The Studio SRO | 1801 S Wabash Ave | Fail | 172 |
| Trc Senior Village 1 | 346 E 53rd St | Fail | 173 |
| Victoria Jennings Residences | 620 W 61st St | Fail | 174 |
| Victory Centre at Galewood | 2370 N Newcastle Ave | Fail | 175 |
| Villages of Westhaven | 114 N Hoyne Ave | Fail | 176 |
| Vincennes Court | 4801-4807 S Vincennes Ave | Fail | 177 |
| West Humboldt Place | 3533 W Chicago Ave | Fail | 178 |
| Wheeler House | 1450 W 69th St | Fail | 179 |
| Woodlawn-Michigan | 6446-6450 S. Kenwood Ave | Fail | 180 |

Common accessibility violations found in these Plan Reviews include, but are not limited to: accessible parking space violations affecting the ability of residents with disabilities to transfer from a vehicle to a wheelchair; inaccessible door maneuvering clearances in dwelling units and along approach routes, which make it difficult for wheelchair users to effectively approach and operate doors and gates; door thresholds that are too high (or lack the necessary beveled edges), such that a wheelchair user may not be able to surmount the threshold, or may risk being thrown from the wheelchair; steep running slopes and cross slopes that could tip wheelchair users backward or off the path; many wall or ceiling mounted elements that were not cane detectable and could injure blind or visually impaired residents or guests; lack of accessible door hardware that is easier for those with limited grasping ability to operate; steps or inaccessible abrupt level changes along routes that impede passage by wheelchair users; lack of wheelchair maneuvering clearance required in kitchens and bathrooms; and narrow doors that could prevent passage of a wheelchair, or result in a wheelchair user scraping his or her knuckles on the door frame.

The table below and at Exhibit 6 identifies each development for which a randomized Plan Review was performed to assess compliance with federal accessibility standards, the address of the development, whether the development received federal funding directly, the construction type (new construction or rehabilitation), the coverage based on construction start date, the Exhibit to this report at which my detailed Plan Review can be found, and the result of my evaluation.

| Development Name | Development Address | Tranche | Coverage | Exhibit Number | Pass/Fail |
|---|---|---|---|---|---|
| 1826 S Avers | 1826 S Avers | Federal Rehab | Section 504, ADA | 104 | Fail |
| 2501 West 63rd Street | 2501 West 63rd Street | Federal Rehab | Section 504, ADA | 105 | Fail |
| 3502 W Van Buren | 3502-08 W Van Buren Ave | Non-Federal Rehab | Section 504 | 106 | Fail |
| 4119-29 S Ellis & 1029 E 41st Pl Apt | 4119-29 S Ellis & 1029 E 41st Pl | Federal Rehab | Section 504, ADA | 107 | Fail |
| 7000-04 S. Merrill Ave Apts | 7000-04 S. Merrill Ave | Federal Rehab | Section 504 | 108 | Fail |
| 7014 S. Kimbark Ave. | 7014-7016 S. Kimbark Ave. | Federal Rehab | Section 504, ADA | 109 | Fail |
| 7024 S Clyde Ave | 7024 S Clyde Ave | Federal Rehab | Section 504 | 110 | Fail |
| Austin Shore I | 7117 S Euclid Ave | Federal Rehab | Section 504 | 111 | Fail |
| Barbara Jean Wright Court | Community Center & Office: 1350-54 S Morgan. Other units on 14th St. and Morgan St. (doesn't specify all addresses) | Non-Federal Rehab | Section 504, ADA | 112 | Fail |
| Bettendorf Place Sro | 8425 S Saginaw Ave | Non-Federal Rehab | Section 504, ADA | 113 | Fail |
| Boulevard Commons II | 149 N Central Ave | Non-Federal Rehab | Section 504 | 114 | Fail |
| Brainerd Senior Center | 8915 S Loomis | Federal New | Section 504, FHA, ADA | 115 | Fail |
| Caroline Hedger Apartments | 6400 N Sheridan | Non-Federal Rehab | Section 504, ADA | 116 | Fail |

| Development Name | Development Address | Tranche | Coverage | Exhibit Number | Pass/Fail |
|---|---|---|---|---|---|
| Casa Sor Juana | 2700 S Drake Ave | Federal Rehab | Section 504, ADA | 117 | Fail |
| Cathedral Shelter | 1668 W Ogden Ave | Federal Rehab | Section 504, ADA | 118 | Fail |
| Churchview Senior Apartments | W 63rd St & S Talman Ave | Non-Federal New | Section 504, FHA | 119 | Fail |
| Clybourn and Division Apartments | 1200 N Clybourn Ave | Non-Federal New | Section 504, FHA, ADA | 120 | Fail |
| Dorchester Artist Housing Collaborative | 1446-1470 E. 70th St, 1506-1514 E. 70th St., 6948-6958 S. Harper Ave., 6949-6959 S. Harper Ave., 6949-6959 S. Dante Ave. | Non-Federal Rehab | Section 504, ADA | 121 | Fail |
| Dorchester Way | 1454-1455 E 67th Pl. | Federal Rehab | Section 504, ADA | 122 | Fail |
| 3625-3629 W. Dickens | 3625 W Dickens | Non-Federal New | Section 504 | 123 | Fail |
| East Park Apartments SRO | 3300 W Maypole Ave | Non-Federal New | Section 504, FHA, ADA | 124 | Fail |
| Englewood | 6750 S Green St. | Federal Rehab | Section 504, ADA | 125 | Fail |
| Evergreen Tower Apartments | 133 N Cleveland Ave | Federal New | Section 504, FHA, ADA | 126 | Fail |
| Geneva Gables | 4420-26 S Michigan Ave | Federal Rehab | Section 504, ADA | 127 | Fail |
| Greenwood Park Apartments | 4710 S Greenwood Ave | Federal Rehab | Section 504, ADA | 128 | Fail |
| Hairpin Lofts | 3414 W Diversey Ave | Non-Federal Rehab | Section 504, ADA | 129 | Fail |

| Development Name | Development Address | Tranche | Coverage | Exhibit Number | Pass/Fail |
|---|---|---|---|---|---|
| Harrison Courts Apartments | 2910 W Harrison St | Non-Federal Rehab | Section 504, ADA | 130 | Fail |
| Homan Square Phase IV | 3607 W Polk St | Federal New | Section 504, FHA, ADA | 131 | Fail |
| Homan Square Phase VI | 3609 W Arthington | Federal New | Section 504, FHA, ADA | 132 | Fail |
| Howard Apartments | 1567-1569 N Hoyne Ave | Federal Rehab | Section 504, ADA | 133 | Fail |
| Independence Apartments | 4022 N Elston Ave | Federal New | Section 504, FHA, ADA | 134 | Fail |
| J. Michael Fitzgerald Apartments | 5801 N Pulaski Rd. | Non-Federal New | Section 504, FHA, ADA | 135 | Fail |
| Jeffery Towers Apartments | 7020 S Jeffery Blvd | Non-Federal Rehab | Section 504, ADA | 136 | Fail |
| Kilpatrick Renaissance | 4117 N Kilpatrick Ave | Federal New | Section 504, FHA, ADA | 137 | Fail |
| La Estancia Affordable Housing | 3248 W Division | Federal New | Section 504, FHA, ADA | 138 | Fail |
| Lincoln Village Senior Apartments | 6055 N Lincoln Ave | Non-Federal New | Section 504, FHA, ADA | 139 | Fail |
| Malden Avenue Apartments | 4520-28 N Malden Ave | Federal Rehab | Section 504, ADA | 140 | Fail |
| Midway Pointe Senior Residences Housing | 5001-5021 W 47th St | Non-Federal New | Section 504, FHA, ADA | 141 | Fail |

| Development Name | Development Address | Tranche | Coverage | Exhibit Number | Pass/Fail |
|---|---|---|---|---|---|
| Montclare Senior Residences of Calumet Heights | 9401 S Stony Island | Federal New | Section 504, FHA, ADA | 142 | Fail |
| Montclare Senior Residences of Englewood | 6346 S Green St | Federal New | Section 504, FHA, ADA | 143 | Fail |
| Montclare Senior Residences SLF Lawndale | 4329 W 18th Pl | Federal New | Section 504, FHA, ADA | 144 | Fail |
| Montclare Sr. Res. SLF Avalon Park Phase II | 1210 E 78th | Federal New | Section 504, FHA, ADA | 145 | Fail |
| Nathalie Salmon House | N Sheridan Rd | Federal New | Section 504, FHA, ADA | 146 | Fail |
| Northtown Library and Apartments | 6800 N Western Ave | Non-Federal New | Section 504, FHA, ADA | 147 | Fail |
| Oakwood Shores Senior Apartments | 3750 S Cottage Grove Ave | Federal New | Section 504, FHA, ADA | 148 | Fail |
| Paseo Boricua | 1154 N Campbell Ave | Federal New | Section 504, FHA, ADA | 149 | Fail |
| Paul G Stewart Apartment Phases I & II | 400 E 41st St | Non-Federal New | Section 504, FHA, ADA | 150 | Fail |
| Paul G. Stewart Apartments Phase III | 401 E Bowen | Non-Federal Rehab | Section 504, ADA | 151 | Fail |
| Porta Coeli Residence | 2260 E 99th St | Federal New | Section 504, FHA, ADA | 152 | Fail |

| Development Name | Development Address | Tranche | Coverage | Exhibit Number | Pass/Fail |
|---|---|---|---|---|---|
| Presentation Apartments II | 817-823 S Springfield Ave | Federal Rehab | Section 504, ADA | 153 | Fail |
| Rainbow's End | 7401 S Kingston Ave | Federal Rehab | Section 504, ADA | 154 | Fail |
| Riverside Village (Eden Green) | 132nd and Indiana | Federal Rehab | Section 504, ADA | 155 | Fail |
| Roosevelt Square Phase 1 | 1124 W Washburne Ave | Non-Federal New | Section 504, FHA, ADA | 156 | Fail |
| Roosevelt Towers Phase II | W Roosevelt at S St. LouisAve | Federal New | Section 504, FHA, ADA | 157 | Fail |
| San Miguel Apartments | 907 W Argyle St | Federal Rehab | Section 504, ADA | 158 | Fail |
| Senior Suites of Austin | W Corcoran Pl at N Menard Ave | Federal New | Section 504, FHA, ADA | 159 | Fail |
| Senior Suites of Hegewisch | 13600 S Ave O | Federal New | Section 504, FHA, ADA | 160 | Fail |
| Senior Suites of Jefferson Park | 5400 N Northwest W Hwy | Federal New | Section 504, FHA, ADA | 161 | Fail |
| Senior Suites of Rainbow Beach | 2804 E 77th Pl | Federal New | Section 504, FHA, ADA | 162 | Fail |
| Senior Suites of West Humboldt Park | 3656 W Huron St | Federal New | Section 504, FHA, ADA | 163 | Fail |
| Shops And Lofts At 47Th | 4739 S Evans Ave | Non-Federal New | Section 504, FHA, ADA | 164 | Fail |

| Development Name | Development Address | Tranche | Coverage | Exhibit Number | Pass/Fail |
|---|---|---|---|---|---|
| Sky 55 | 1255 S Michigan | Non-Federal New | Section 504, FHA, ADA | 165 | Fail |
| South Loop Affordable Housing | 600 S Wabash Ave | Non-Federal New | Section 504, FHA, ADA | 166 | Fail |
| St Edmunds Tower Annex | 6151 S Michigan Ave | Non-Federal New | Section 504, FHA, ADA | 167 | Fail |
| St. Edmund's Plaza | 5701-03 S Michigan Ave | Federal Rehab | Section 504, ADA | 168 | Fail |
| St. Sabina Apartments | 1222 W 79th St | Federal New | Section 504, FHA, ADA | 169 | Fail |
| Stewart Court Apartments | 7640-7656 S Stewart Ave | Federal Rehab | Section 504, ADA | 170 | Fail |
| The Diplomat Hotel SRO | 3208 N Sheffield | Non-Federal Rehab | Section 504, ADA | 171 | Fail |
| The Studio SRO | 1801 S Wabash Ave | Federal New | Section 504, FHA, ADA | 172 | Fail |
| Trc Senior Village 1 | 346 E 53rd St | Federal New | Section 504, FHA, ADA | 173 | Fail |
| Victoria Jennings Residences | 620 W 61st St | Federal New | Section 504, FHA, ADA | 174 | Fail |
| Victory Centre at Galewood | 2370 N Newcastle Ave | Federal New | Section 504, FHA, ADA | 175 | Fail |
| Villages of Westhaven | 114 N Hoyne Ave | Non-Federal Rehab | Section 504, ADA | 176 | Fail |

| Development Name | Development Address | Tranche | Coverage | Exhibit Number | Pass/Fail |
|---|---|---|---|---|---|
| Vincennes Court | 4801-4807 S Vincennes Ave | Federal Rehab | Section 504, ADA | 177 | Fail |
| West Humboldt Place | 3533 W Chicago Ave | Non-Federal New | Section 504, FHA, ADA | 178 | Fail |
| Wheeler House | 1450 W 69th St | Federal New | Section 504, FHA, ADA | 179 | Fail |
| Woodlawn-Michigan | 6446-6450 S. Kenwood Ave | Federal Rehab | Section 504, ADA | 180 | Fail |

## VIII.  ANALYSIS OF MOPD SITE INSPECTION REVIEW REPORTS

### A.  Introduction to MOPD Report Reviews

Access Living received MOPD Reports in discovery, which contained measurements and photographs taken by City accessibility specialists who performed on-site accessibility inspections for the City for 9 of the developments in the Program. Each MOPD Report, as received, contained a development name and address, and listed a series of measurements taken, and, if applicable, corresponding photograph(s).

### B.  MOPD Site Inspection Report Reviews Methodology

It is my understanding, based on the measurements documented in these MOPD Reports, that a MOPD accessibility specialist conducted on-site inspections of these nine (9) multi-family residential projects included to document ADA, Section 504, and FHA accessibility barriers. Access Living obtained the MOPD Reports of requested residential complexes that included the following categories of information:

- Site name & address;

- Whether the accessibility measurement was for an element in the building or on the site;

- The floor level upon which the measured accessibility element was located;

- The dwelling unit number, if applicable;

- The dwelling unit type (e.g., 2 bedroom/1 bath unit type);

- The room or area where the measured accessibility element was located;

- The physical measurement associated with the accessibility element (e.g., closet rod 66" AFF (which stands for "above finish floor")); and,

- The photograph number of the measured accessibility element (digital inspection photos were also provided).

I reviewed these MOPD Reports and, using a "mark-up" feature in the Adobe Acrobat computer program, was able to document UFAS, FHA and/or ADA accessibility violations based on the measurements and photographs we received. My findings are listed in my MOPD Report Reviews as "mark-up" boxes situated next to the original MOPD measurements. Each of my "mark-up" boxes (colored red) includes the citation for the particular UFAS, FHA, and/or ADA accessibility provision that sets a standard that the measured feature did not comply with, as well as the measurement that would be appropriate for that particular feature.

### C.  **MOPD Report Review Conclusions**

I reviewed 9 MOPD Reports that corresponding to 9 developments. All 9 of those reports—or 100% of the MOPD Reports produced by the City in discovery—included violations of the federal accessibility standards and regulations sufficient to justify a fail, which translates to a lack of meaningful accessibility of the development to a person with disabilities.

Again, in new and altered residential facilities, the determination of non-compliance (or a fail) is a standard where any deviation from the specific applicable new construction or alteration provisions of UFAS or the ADA Standards is evidence that the facility in question does not comply with the rules and regulations. However, as discussed above, I decided to use a standard of meaningful accessibility. *See supra* IV.B. Thus, a development fails only if the violations found are of a type or frequency that would prevent someone with a disability from being able to use important portions of their dwelling unit and/or common-use facilities. **Applying these standards, all 9 of 9 developments, or 100%, failed.**

Below and attached as Exhibit 7[12] is a summary table that describes the specific number of federal accessibility standard violations identified at each development. It lists the Development Name, the Development Address, whether the development passed or failed, the Exhibit Number at which the corresponding MOPD Report Review can be found, the number of dwelling unit entry and approach violations, the number of dwelling unit bathroom violations, the number of dwelling unit kitchen violations, the number of other violations in the dwelling unit, the number of violations in the development common use and public use areas and facilities, and the number of accessible route violations.

| Development Name | Development Address | Pass/Fail | Exhibit Number | # Dwelling Unit/Entry and Path of Travel Violations | # Dwelling Unit/Bathroom Violations | # Dwelling Unit/Kitchen Violations | # Dwelling Unit/Other Violations | # Common Use Areas/Facilities Violations | # Accessible Route Violations |
|---|---|---|---|---|---|---|---|---|---|
| Casa Guerrero | 963 W Cullerton | Fail | 181 | 1 | N/A | N/A | 1 | 1 | 1 |
| Casa Puebla | 2014 S Racine | Fail | 182 | N/A | 1 | 3 | 2 | 2 | 4 |

---

[12] The table at Exhibit 7 is a subset of the information in Ex. C (MOPD Report Reviews Overall Property Identification and Results Table).

| Development Name | Development Address | Pass/Fail | Exhibit Number | # Dwelling Unit/Entry and Path of Travel Violations | # Dwelling Unit/Bathroom Violations | # Dwelling Unit/Kitchen Violations | # Dwelling Unit/Other Violations | # Common Use Areas/Facilities Violations | # Accessible Route Violations |
|---|---|---|---|---|---|---|---|---|---|
| Casa San Luis | 1646-1650 S Throop | Fail | 183 | N/A | N/A | N/A | 2 | N/A | 2 |
| Emmett Street Apartments | 2914 N Emmett St | Fail | 184 | 3 | N/A | 6 | 2 | 4 | N/A |
| Humboldt Park Residences | 1152 N Christiana Ave | Fail | 185 | N/A | 6 | 1 | 1 | 7 | 1 |
| LCDC Lazarus Apartments | 1859 S Pulaski | Fail | 186 | N/A | N/A | 1 | 6 | N/A | 4 |
| Paseo Boricua | 2709-2715 W Division | Fail | 187 | N/A | 2 | N/A | 1 | N/A | N/A |
| Southbridge Bldg. 3 | 2310 S State St | Fail | 188 | N/A | N/A | 1 | 2 | N/A | N/A |
| Southbridge Bldg. 4 | 2344 S State St | Fail | 189 | N/A | 2 | 1 | 4 | N/A | 2 |

Common accessibility violations found in the site inspection measurement reviews prepared by MOPD accessibility specialists include, but are not limited to: inaccessible door maneuvering clearances in dwelling units and along approach routes which make it difficult for wheelchair users to effectively approach and operate doors and gates; wall or ceiling mounted elements that were not cane detectable and could injure blind or visually impaired residents or guests; lack of accessible door hardware that is easier for those with limited grasping ability to operate; steps or inaccessible abrupt level changes along routes that are required to be accessible for wheelchair users; and, lack of wheelchair maneuvering clearance required in kitchens and bathrooms.

The chart below identifies each development for which a MOPD Report was received and reviewed for compliance with federal accessibility standards, the date of the MOPD Report,

whether the development received federal funding directly, the construction type (new construction or rehabilitation), the coverage based on construction start date, the Exhibit to this report at which my detailed report can be found, and the result of my evaluation.[13]

| **Development Name** | **Report Date** | **Address** | **Tranche** | **Coverage** | **Exhibit Num.** | **Result** |
|---|---|---|---|---|---|---|
| Casa Guerrero | 5/15/22 | 963 W Cullerton | Non-Federal Rehab | 504, ADA | 181 | Fail |
| Casa Puebla | 5/13/22 | 2014 S Racine | Federal Rehab | 504, ADA | 182 | Fail |
| Casa San Luis | 5/13/22 | 1646-1650 S Throop | Federal Rehab | 504, ADA | 183 | Fail |
| Emmett Street Apartments | 4/11/22 | 2914 N Emmett St | Federal New | 504, FHA, ADA | 184 | Fail |
| Humboldt Park Residences | 5/5/22 | 1152 N Christlana Ave | Federal Rehab | 504, ADA | 185 | Fail |
| LCDC Lazarus Apartments | 7/6/22 | 1859 S Pulaski | Federal Rehab | 504, ADA | 186 | Fail |
| Paseo Boricua | 5/13/22 | 2709-2715 W Division | Federal Rehab | 504, ADA | 187 | Fail |
| Southbridge Building 3 | 5/13/22 | 2310 South State Street | Federal New | 504, FHA, ADA | 188 | Fail |
| Southbridge Building 4 | 5/13/22 | 2344 South State Street | Federal New | 504, FHA, ADA | 189 | Fail |

---

[13] The existence of direct federal funding, the construction type, and the construction start date were all provided by Plaintiff's counsel.

## IX. SUMMARY CONCLUSIONS FOR RANDOMIZED REVIEW OF DEVELOPMENTS

### A. All Developments

#### 1. Subject to Section 504

|  | Number | Fails |
|---|---|---|
| Randomized Measurement Review | 96 | 96 |
| Randomized Plan Review | 77 | 77 |

#### 2. Subject to ADA

|  | Number | Fails |
|---|---|---|
| Randomized Measurement Review | 82 | 82 |
| Randomized Plan Review | 70 | 70 |

#### 3. Subject to FHA

|  | Number | Fails |
|---|---|---|
| Randomized Measurement Review | 44 | 44 |
| Randomized Plan Review | 41 | 41 |

### B. All Federally-Funded Developments

#### 1. Subject to Section 504

|  | Number | Fails |
|---|---|---|
| Randomized Measurement Review | 59 | 59 |
| Randomized Plan Review | 50 | 50 |

#### 2. Subject to ADA

|  | Number | Fails |
|---|---|---|
| Randomized Measurement Review | 56 | 56 |
| Randomized Plan Review | 47 | 47 |

#### 3. Subject to FHA

|  | Number | Fails |
|---|---|---|
| Randomized Measurement Review | 30 | 30 |
| Randomized Plan Review | 27 | 27 |

## C.  **Federally-Funded New Construction**

### 1.  **Subject to Section 504**

|  | Number | Fails |
|---|---|---|
| Randomized Measurement Review | 30 | 30 |
| Randomized Plan Review | 27 | 27 |

### 2.  **Subject to ADA**

|  | Number | Fails |
|---|---|---|
| Randomized Measurement Review | 30 | 30 |
| Randomized Plan Review | 27 | 27 |

### 3.  **Subject to Fair Housing Amendments Act**

|  | Number | Fails |
|---|---|---|
| Randomized Measurement Review | 30 | 30 |
| Randomized Plan Review | 27 | 27 |

## D.  **Non-Federally-Funded New Construction**

### 1.  **Subject to Section 504**

|  | Number | Fails |
|---|---|---|
| Randomized Measurement Review | 15 | 15 |
| Randomized Plan Review | 15 | 15 |

### 2.  **Subject to ADA**

|  | Number | Fails |
|---|---|---|
| Randomized Measurement Review | 13 | 13 |
| Randomized Plan Review | 13 | 13 |

### 3.  **Subject to FHA**

|  | Number | Fails |
|---|---|---|
| Randomized Measurement Review | 14 | 14 |
| Randomized Plan Review | 14 | 14 |

### E.  Federally-Funded Rehabilitations

#### 1.  Subject to Section 504

|  | Number | Fails |
|---|---|---|
| Randomized Measurement Review | 29 | 29 |
| Randomized Plan Review | 23 | 23 |

#### 2.  Subject to ADA

|  | Number | Fails |
|---|---|---|
| Randomized Measurement Review | 26 | 26 |
| Randomized Plan Review | 20 | 20 |

### F.  Non-Federally-Funded Rehabilitations

#### 1.  Subject to Section 504

|  | Number | Fails |
|---|---|---|
| Randomized Measurement Review | 22 | 22 |
| Randomized Plan Review | 12 | 12 |

#### 2.  Subject to ADA

|  | Number | Fails |
|---|---|---|
| Randomized Measurement Review | 13 | 13 |
| Randomized Plan Review | 10 | 10 |

## X.  OVERALL CONCLUSIONS

After an extensive accessibility review of the developments identified in this report and based on reviews of measurements and photographs taken by others at site inspections, reviews of building plans for projects listed above, and a review of the MOPD Reports, it is my professional opinion that there is strong and incontrovertible evidence to support the conclusion that every one of the multifamily residential projects I evaluated has failed to comply with federal accessibility standards (UFAS and/or ADA Standards) and every development required to comply with the Fair Housing Amendments Act design and construction regulations has failed to comply with those federal regulations and/or HUD's specifications in the Fair Housing

Accessibility Guidelines.

As stated above, a development fails only if the violations found are of a type or frequency that would prevent someone with a disability from being able to use important portions of their dwelling unit and/or common-use facilities. Some examples of violations that, in my experience, demonstrate a lack of meaningful accessibility are: inadequate maneuvering space in the bathroom such that an individual using a wheelchair cannot enter the bathroom and close the door behind them; insufficient clear floor space in front of the sink in the bathroom or kitchen to allow a forward approach in a wheelchair, so an individual can wash their hands or their dishes; doorways that are not wide enough for an individual in a manual wheelchair to maneuver without scraping the knuckles on their hands on the door frames as they pass; stairs or steps that make it difficult or impossible for wheelchair users to enter or approach the accessible or adaptable dwelling unit; lack of lowered kitchen counters or cabinets in accessible dwelling units so wheelchair users can easily use the counter and reach items stored in the cabinets; accessible parking space violations affecting the disabled residents' ability to transfer from the vehicle to their wheelchairs; inaccessible door maneuvering clearances in dwelling units and along approach routes which make it difficult for wheelchair users to effectively approach and operate doors and gates; door thresholds that are too high or lack the necessary beveled edges in a manner that could eject a wheelchair user rolling over them; steep slopes and cross slopes that could tip wheelchair users backwards or off the path; many wall or ceiling mounted elements that are not cane detectable and could injure blind or visually impaired residents or guests; lack of accessible door hardware that is easier for those with limited grasping ability to operate; and, the lack of wheelchair maneuvering clearance required for usability in kitchens and bathrooms. I saw significant

violations such as these at every development, and, using my professional judgment to review developments for an overall level of meaningful accessibility, determined whether the development passed or failed.

In the exhibits attached to this report, I have chronicled hundreds of specific instances of federal accessibility violations. Every single project failed the accessibility review and none of the developments provide meaningful accessibility as required under federal accessibility regulations.

It is my opinion, with a reasonable degree of professional certainty, that there was a total failure on the part of the City of Chicago to ensure that multifamily buildings in the City of Chicago's Affordable Rental Housing Program were designed and constructed in compliance with federal accessibility requirements. It is my further professional opinion that the City of Chicago's oversight of the design and construction of these residential projects failed to provide people with disabilities meaningful access to the multifamily housing developments I inspected, as required by Section 504 of the Rehabilitation Act, the Americans with Disabilities Act, and the Fair Housing Amendments Act.

**Bill Hecker, AIA – Accessibility Consultant**                    **Date**

# EXHIBIT A

Exhibit A - Measurement Reviews Overall Sample Property Identification and Results Table

| Development Name | Development Address | Tranche | Number of Units | Pass/Fail | Exhibit Number | Coverage | # Dwelling Unit/Entry and Path of Travel Violations | # Dwelling Unit/Bathroom Violations | # Dwelling Unit/Kitchen Violations | # Dwelling Unit/Other Violations | # Common Use Areas/Facilities Violations | # Accessible Route Violations |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 12013 S Eggleston Apartments | 12013 S Eggleston Ave | Federal Rehab | 13 | Fail | 8 | Section 504, ADA | N/A | 2 | 2 | 1 | 1 | 4 |
| 1225 S Michigan Apartments | 1225 S Michigan Ave | Non-Federal New | 91 | Fail | 9 | Section 504, FHA, ADA | N/A | 3 | 4 | 1 | 9 | 6 |
| 1451 N Washtenaw Ave Apartments | 1451 N Washtenaw Ave | Non-Federal Rehab | 7 | Fail | 10 | Section 504 | 1 | 5 | 2 | 2 | N/A | 4 |
| 1826 S Avers Apartments | 1826 S Avers | Federal Rehab | 7 | Fail | 11 | Section 504, ADA | 1 | 5 | 1 | 2 | 1 | 5 |
| 3108 W Walton Apartments | 3108 W Walton | Federal Rehab | 8 | Fail | 12 | Section 504 | N/A | 5 | 2 | N/A | 1 | 4 |
| 3151-3159 W Argyle St Apartments | 3151-3159 W Argyle St | Non-Federal Rehab | 31 | Fail | 13 | Section 504 | 1 | 4 | N/A | 2 | N/A | 3 |
| 3502 W Van Buren St Apartments | 3502 W Van Buren St | Non-Federal Rehab | 13 | Fail | 14 | Section 504 | 1 | 5 | 1 | 1 | 1 | 3 |
| 4119-4129 S Ellis, 1029 E 41st Apartments | 4119-4129 S Ellis, 1029 E 41st | Non-Federal New | 23 | Fail | 15 | Section 504, ADA | 1 | 2 | 1 | N/A | N/A | 4 |
| 436-42 E 47th Street Apartments | 423-42 E 47th St | Federal Rehab | 16 | Fail | 16 | Section 504, ADA | 1 | N/A | 2 | 2 | N/A | 3 |
| 45th Cottage Grove Apartments | 4424 and 4434S Cottage Grove | Non-Federal New | 84 | Fail | 17 | Section 504, FHA, ADA | N/A | 3 | N/A | 2 | 10 | 8 |
| 4945 W Monroe St Apartments | Located at the Southeast corner of W Monroe Street and S Lavergne Avenue, the Northeast corner of W Adams Street and S Lavergne Avenue and the Northwest corner of W Adams Street and S Lavergne Avenue | Non-Federal Rehab | 52 | Fail | 18 | Section 504 | 2 | N/A | N/A | 1 | N/A | 5 |
| 5001-5005 W Monroe Apartments | 5001-5005 W Monroe | Federal Rehab | 26 | Fail | 19 | Section 504, ADA | 1 | 5 | N/A | 1 | 2 | 5 |
| 6213 S Greenwood Apartments | 6213-15 S Greenwood Ave | Federal Rehab | 6 | Fail | 20 | Section 504, ADA | 1 | 6 | 2 | 1 | N/A | 3 |
| 647-49 E. 50th Pl. Apartments | 647-49 E. 50th Pl. | Non-Federal New | 8 | Fail | 21 | Section 504, ADA | 1 | 5 | 1 | 1 | 1 | 5 |
| 7010 S Clyde Street Apartments | 7010 S Clyde Street | Non-Federal Rehab | 31 | Fail | 22 | Section 504, ADA | N/A | 5 | 2 | 1 | 3 | 4 |
| 7024 S Clyde Ave Apartments | 7024 S Clyde Ave | Federal Rehab | 6 | Fail | 23 | Section 504 | N/A | 6 | N/A | 3 | 1 | 1 |
| 7200 S Lowe Ave Apartments | 7200 S Lowe Ave | Federal Rehab | 26 | Fail | 24 | Section 504 | N/A | 5 | N/A | 1 | 2 | 4 |
| 7901 S Kingston Ave Apartments | 7901 S Kingston Ave | Federal Rehab | 24 | Fail | 25 | Section 504, ADA | 2 | 4 | 1 | 1 | 1 | 1 |
| 8031-35 S. Drexel Avenue Apartments | 8031-35 S. Drexel Ave. | Federal Rehab | 12 | Fail | 26 | Section 504 | N/A | 5 | 1 | N/A | 1 | 3 |
| 825-827 W Sunnyside Apartments | 825-827 W Sunnyside Avenue, 829-837 W Sunnyside Avenue, 839-845 W Sunnyside Avenue and 820 W Agatite Avenue | Federal Rehab | 69 | Fail | 27 | Section 504, ADA | N/A | 5 | 1 | 3 | N/A | 5 |
| African Village Apartments | 400-08 S Laramie Avenue and 418-24 S Laramie Avenue | Federal Rehab | 95 | Fail | 28 | Section 504 | 1 | 5 | N/A | 1 | 3 | 2 |
| Austin Shore II Apartments | 169 Le ClaireAvenue | Non-Federal Rehab | 19 | Fail | 29 | Section 504 | 1 | 5 | 2 | 1 | 1 | 4 |
| Caroline Hedger Apartments | 6400 and 6418 N Sheridan | Non-Federal Rehab | 450 | Fail | 30 | Section 504, ADA | N/A | 3 | N/A | 1 | 2 | 8 |
| Churchview Manor Senior Apartments | 2642 W 63rd St | Non-Federal New | 60 | Fail | 31 | Section 504, FHA | N/A | 5 | N/A | 1 | 15 | 2 |
| Churchview Supportive Living Apartments | 2626 W 63rd St | Federal New | 84 | Fail | 32 | Section 504, FHA, ADA | N/A | 1 | N/A | N/A | 21 | 8 |
| Clifton Magnolia Apartments | 4416 N Clifton Ave | Non-Federal Rehab | 59 | Fail | 33 | Section 504, ADA | N/A | 4 | 1 | 2 | N/A | 2 |
| Concordia Pl. Apartments | 13037 S Daniel Dr | Non-Federal New | 297 | Fail | 34 | Section 504, ADA | 3 | 5 | 2 | 4 | 13 | 9 |
| Courtyard Commons Apartments | 4815-4825 W Monroe St | Federal Rehab | 26 | Fail | 35 | Section 504, ADA | N/A | 5 | 2 | 1 | 1 | 2 |
| Drexel Court Apts. | 4611-17 S Drexel | Non-Federal Rehab | 44 | Fail | 36 | Section 504 | N/A | 5 | 1 | 2 | 1 | 6 |
| Eden Development | 5532-34 S Indiana Ave | Federal Rehab | 8 | Fail | 37 | Section 504, ADA | 4 | 7 | 1 | 3 | 7 | 3 |
| Edgewater Shores Apartments | 5326 N Winthrop Ave | Non-Federal Rehab | 73 | Fail | 38 | Section 504 | 1 | 6 | 1 | 1 | 2 | 4 |
| Evergreen Towers Apartments | 1342 N Cleveland Ave | Federal New | 102 | Fail | 39 | Section 504, FHA, ADA | N/A | 5 | 2 | 5 | 24 | 5 |
| Faith Residences | 5644-56 W Washington Boulevard, 114 N Parkside Avenue and 124 N Parkside Avenue | Federal Rehab | 63 | Fail | 40 | Section 504, ADA | 2 | N/A | 2 | 3 | 3 | 9 |
| Germano Milgate Apartments | 8760-66 S Burley | Non-Federal Rehab | 336 | Fail | 41 | Section 504, ADA | 1 | 4 | 2 | 2 | 22 | 7 |
| Hancock House Apartments | 12045 S Emerald Ave | Non-Federal New | 89 | Fail | 42 | Section 504, FHA, ADA | N/A | 8 | 2 | N/A | 8 | 2 |
| Harriet Tubman Apartments | 5751 S Michigan Ave | Federal Rehab | 28 | Fail | 43 | Section 504, ADA | 2 | N/A | 3 | 1 | N/A | 4 |
| Harrison Court Apartments | 2910, 2930and2950 W. Harrison | Non-Federal Rehab | 126 | Fail | 44 | Section 504, ADA | 2 | N/A | N/A | 5 | 1 | 3 |
| Hazel Winthrop Apartments | 4426-28 Magnolia, 912-14 N Montrose, 852-54 W Sunnyside and 4813-15 N Winthrop | Federal Rehab | 30 | Fail | 45 | Section 504, ADA | N/A | 3 | 4 | 1 | N/A | 4 |
| Hearts United III Apartments | 4217 S St Lawrence Ave | Non-Federal New | 53 | Fail | 46 | Section 504, FHA, ADA | N/A | 7 | 7 | 7 | 2 | 27 |
| Highland Tudor Apartments | 7010-12 and 7016-18 South Cregier Avenue | Federal Rehab | 87 | Fail | 47 | Section 504, ADA | 2 | 7 | 2 | N/A | 17 | 7 |
| Homan Square IV Apartments | 3607 W Polk St | Federal New | 108 | Fail | 48 | Section 504, FHA, ADA | 1 | 2 | 2 | 2 | 16 | 18 |
| Homan Square VI Apartments | West Arthington St and South Central Park Ave | Federal New | 52 | Fail | 49 | Section 504, FHA, ADA | 6 | N/A | 2 | 3 | 1 | 8 |

1

Exhibit A - Measurement Reviews Overall Sample Property Identification and Results Table

| Development Name | Development Address | Tranche | Number of Units | Pass/Fail | Exhibit Number | Coverage | # Dwelling Unit/Entry and Path of Travel Violations | # Dwelling Unit/Bathroom Violations | # Dwelling Unit/Kitchen Violations | # Dwelling Unit/Other Violations | # Common Use Areas/Facilities Violations | # Accessible Route Violations |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Hope Manor Apartments | 3053 W Franklin Blvd | Federal New | 50 | Fail | 50 | Section 504, FHA, ADA | 1 | 7 | N/A | 1 | 8 | 4 |
| Keeler Roosevelt Apartments | 4200 W Roosevelt Rd | Non-Federal Rehab | 26 | Fail | 51 | Section 504, FHA, ADA | 1 | 6 | 4 | 1 | 1 | 5 |
| Kilpatrick Renaissance Apartments | 4117 N Kilpatrick Ave | Federal New | 98 | Fail | 52 | Section 504, FHA, ADA | N/A | 6 | 1 | 2 | 15 | 1 |
| KLEO Art Residences | 5510 S Michigan Avenue | Non-Federal New | 58 | Fail | 53 | Section 504, FHA, ADA | N/A | 3 | 7 | 2 | 14 | 5 |
| La Estancia Apartments | 2753 W. Division Street, 3228 W. Division Street, and 3248 W. Division Street | Federal New | 57 | Fail | 54 | Section 504, FHA, ADA | 1 | 3 | 3 | 3 | 6 | 11 |
| La Paz Pl. Apartments | 3535-37 West Dickens Avenue/ 2049-53 North Drake Avenue; 3600-02 West Shakespeare Avenue/ 2142-46 North Central Ave; 3604-08 West Shakespeare Avenue; 3643 West Shakespeare Avenue, 3518 and 520 West Dickens | Federal Rehab | 44 | Fail | 55 | Section 504, ADA | 1 | 5 | 1 | 3 | 3 | 3 |
| Lakefront Phase II Apartments | 13 buildings: 1060 E 41st Street, 4131 and 4143 Lake Park Avenue, 1106 and 1140 42nd Pl., 1110, 1113, 1120, and 1137 Bowen and 4116 and 4130 Oakenwald | Federal New | 132 | Fail | 56 | Section 504, FHA, ADA | N/A | N/A | N/A | 2 | 2 | 8 |
| Lakeview Towers | 4550 N Clarendon | Non-Federal Rehab | 500 | Fail | 57 | Section 504, ADA | 2 | 6 | 2 | 3 | 10 | 3 |
| Leland Hotel Apartments | 1201 W Leland Ave | Federal Rehab | 139 | Fail | 58 | Section 504, ADA | N/A | 8 | 1 | 4 | 9 | 1 |
| Lincoln Village Senior Apartments | 6057 N Lincoln Ave | Non-Federal New | 102 | Fail | 59 | Section 504, FHA, ADA | N/A | 2 | N/A | N/A | 9 | 4 |
| Malden Arms Apartments | 4725-4727 N Malden | Federal Rehab | 83 | Fail | 60 | Section 504, ADA | 2 | 4 | N/A | 3 | 4 | 4 |
| Malden Avenue Apartments | 4520 N Malden St | Federal Rehab | 34 | Fail | 61 | Section 504, ADA | 2 | 2 | 1 | 2 | 1 | 5 |
| Margaret Ford Manor Apartments | 4500-12 S Wabash | Federal New | 60 | Fail | 62 | Section 504, FHA, ADA | N/A | 2 | 2 | N/A | 16 | 5 |
| Mayfair Commons | 4444 W Lawrence | Federal New | 97 | Fail | 63 | Section 504, FHA, ADA | 1 | 3 | 1 | 1 | 20 | 3 |
| Montclare Senior Residences of Calumet Heights | 9401 S Stony Island | Federal New | 134 | Fail | 64 | Section 504, FHA, ADA | N/A | 4 | N/A | 8 | 14 | 10 |
| New Moms Apartments | 5317 W Chicago Ave | Federal New | 40 | Fail | 65 | Section 504, FHA, ADA | N/A | 1 | 1 | 1 | 5 | 1 |
| Northtown Library and Apartments | 6800 N Western Ave | Non-Federal New | 44 | Fail | 66 | Section 504, FHA, ADA | N/A | 2 | N/A | 2 | 2 | 7 |
| Park Boulevard Phase 2b Apartments | 3637 and 3643 S State Street, 4 & 10 and 16 & 22W 37th Street and 3720 S Dearborn Street | Non-Federal New | 108 | Fail | 67 | Section 504, FHA, ADA | 1 | 1 | 1 | N/A | 6 | 18 |
| Park Douglas Apartments | 19 buildings; management office at 2721 W Roosevelt | Federal New | 137 | Fail | 68 | Section 504, FHA, ADA | N/A | 1 | 1 | N/A | 2 | 8 |
| Park Towers Apartments | 5140 S Hyde Park | Non-Federal New | 155 | Fail | 69 | Section 504, ADA | N/A | 5 | 3 | 6 | 13 | 1 |
| Parkside Of Old Town P2A | 544 W Oak st | Federal New | 112 | Fail | 70 | Section 504, FHA, ADA | 4 | 4 | 4 | 8 | 15 | 18 |
| Paseo Boricua Apartments | 1154 N Campbell Ave | Federal New | 58 | Fail | 71 | Section 504, FHA, ADA | 2 | N/A | 20 | 2 | 20 | 7 |
| Paul G Stewart V Apartments | 410 E Bowen Ave | Non-Federal New | 96 | Fail | 72 | Section 504, FHA, ADA | N/A | 3 | 3 | 9 | 19 | 7 |
| Porta Coeli Residences | 2300 E 99th St | Federal New | 86 | Fail | 73 | Section 504, FHA, ADA | N/A | N/A | N/A | 1 | 22 | 3 |
| Prairie Park Apartments | 5610 S Calumet Avenue & 331 E 56th Street, 5525 S Prairie Avenue & 315 E 55th Pl., and 5539 S Prairie Avenue.&314 E 56th Street | Federal New | 56 | Fail | 74 | Section 504, FHA, ADA | N/A | 3 | 5 | 8 | N/A | N/A |
| Pullman Suites Apartments | 3 E 112th Pl | Federal New | 60 | Fail | 75 | Section 504, FHA, ADA | 2 | N/A | 1 | N/A | 13 | 14 |
| Renaissance II Apartments | 1016 E 62nd Street; 6219-21 S University and 6225 S University; 1128-30 E 62nd Street & 6156-58 S University; 1113-15 & 1109 E 62nd Street; 6201 & 6209 E Greenwood; 6156-58 E Greenwood and 1020 & 1128E 62nd Street; 1016 E 62nd Street and 957-59 East 62nd Street | Federal Rehab | 84 | Fail | 76 | Section 504, ADA | 11 | 10 | 1 | 4 | 3 | 9 |
| Roentgen School - Switching Station Lofts | 15 S Homan | Federal Rehab | 24 | Fail | 77 | Section 504, ADA | 2 | 4 | 3 | 2 | 7 | 2 |
| Roosevelt Square II Apartments | Clustered around the intersection of W Roosevelt Road and S Throop Street | Non-Federal New | 177 | Fail | 78 | Section 504, ADA | 3 | 1 | 2 | 4 | 1 | 19 |
| Roseland Village Apartments | 10400 S Michigan Ave | Federal New | 10 | Fail | 79 | Section 504, FHA, ADA | 2 | 1 | N/A | N/A | 2 | 5 |
| Rosenwald Courts Apartments | 4648 S Michigan | Federal Rehab | 239 | Fail | 80 | Section 504, ADA | N/A | N/A | N/A | N/A | 18 | 10 |
| Rowan Trees Apartments | 500 W Englewood Ave | Non-Federal Rehab | 39 | Fail | 81 | Section 504, ADA | N/A | 2 | N/A | 2 | 13 | 3 |
| Ruth Shriman House Apartments | 4036-46 N Sheridan | Federal New | 82 | Fail | 82 | Section 504, FHA, ADA | 2 | 2 | 3 | 4 | 10 | 2 |
| San Miguel Apartments | 907 W Argyle St | Federal Rehab | 71 | Fail | 83 | Section 504, ADA | 1 | 2 | N/A | 3 | 2 | 3 |
| Sankofa House Apartments | 4041 W Roosevelt Rd | Non-Federal New | 58 | Fail | 84 | Section 504, FHA, ADA | N/A | N/A | N/A | N/A | 11 | 4 |

Exhibit A - Measurement Reviews Overall Sample Property Identification and Results Table

| Development Name | Development Address | Tranche | Number of Units | Pass/Fail | Exhibit Number | Coverage | # Dwelling Unit/Entry and Path of Travel Violations | # Dwelling Unit/Bathroom Violations | # Dwelling Unit/Kitchen Violations | # Dwelling Unit/Other Violations | # Common Use Areas/Facilities Violations | # Accessible Route Violations |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Schiff Residences | 1244 N Clybourn Ave | Non-Federal New | 96 | Fail | 85 | Section 504, ADA | N/A | 9 | 1 | 3 | 12 | 2 |
| Senior Suites of Central Station Apartments | 1400-12 S Indiana Avenue | Federal New | 96 | Fail | 86 | Section 504, FHA, ADA | N/A | 2 | 9 | 10 | 16 | 1 |
| Senior Suites of Hegewisch Apartments | 13550 S Avenue O | Federal New | 84 | Fail | 87 | Section 504, FHA, ADA | N/A | 5 | 7 | 1 | 15 | 7 |
| Senior Suites of Jefferson Park Apartments | 5400 N North W Hwy | Federal New | 96 | Fail | 88 | Section 504, FHA, ADA | N/A | 3 | 5 | N/A | 9 | 4 |
| Senior Suites of Ravenswood Manor Apartments | 2800-14 W Montrose | Federal New | 96 | Fail | 89 | Section 504, FHA, ADA | N/A | 6 | 6 | 2 | 4 | 4 |
| St. Edmonds Tower Annex Apartments | 6151 S Michigan Ave | Non-Federal New | 34 | Fail | 90 | Section 504, ADA | 1 | N/A | 5 | 1 | 8 | 2 |
| St. Edmunds Manor Apartments | 5947 S Indiana Ave | Federal Rehab | 30 | Fail | 91 | Section 504, ADA | 2 | 4 | 1 | N/A | N/A | 6 |
| St. Sabina Apartments | 1222 W 79th St | Federal New | 80 | Fail | 92 | Section 504, FHA, ADA | N/A | 2 | 1 | 2 | 21 | 5 |
| The Diplomat Hotel / Buffet Pl. Apartments | 3208 N Sheffield | Non-Federal Rehab | 51 | Fail | 93 | Section 504, ADA | N/A | N/A | N/A | 1 | 4 | N/A |
| The Pershing Apartments | 3845 S State St | Federal New | 80 | Fail | 94 | Section 504, FHA, ADA | N/A | N/A | 1 | 3 | 12 | N/A |
| The Pomeroy Apartments | 5650 N Kenmore Ave | Non-Federal Rehab | 104 | Fail | 95 | Section 504, ADA | N/A | 2 | 1 | 1 | 15 | 3 |
| The Spaulding Apartments | 1750 N Spaulding Avenue | Federal New | 36 | Fail | 96 | Section 504, FHA, ADA | N/A | 10 | N/A | 2 | 7 | 5 |
| Town and Garden Apartments | 1448 N Sedgwick St | Non-Federal Rehab | 678 | Fail | 97 | Section 504, ADA | N/A | 2 | 1 | N/A | 10 | 6 |
| Vision House Apartments | 514 E 50th Pl | Federal Rehab | 25 | Fail | 98 | Section 504, FHA, ADA | N/A | 4 | N/A | 4 | 3 | 7 |
| Westhaven Park Apartments | 105 N Wood St | Federal New | 163 | Fail | 99 | Section 504, FHA, ADA | 1 | 4 | 7 | 2 | N/A | 4 |
| Willard Square Apartments | 4843-45 S St. Lawrence | Federal New | 100 | Fail | 100 | Section 504, FHA, ADA | N/A | 1 | 2 | N/A | 3 | 8 |
| Woodlawn Michigan Apartments | 5630 S Michigan and 6446 S Kenwood Avenue | Federal Rehab | 84 | Fail | 101 | Section 504, ADA | N/A | 4 | 2 | 1 | 4 | 12 |
| Wrightwood Senior Apartments | 2815 W 79th St | Federal New | 85 | Fail | 102 | Section 504, FHA, ADA | N/A | N/A | 4 | N/A | 14 | 4 |
| YMCA Washington Park Apartments | 5000 S Indiana Ave | Non-Federal Rehab | 63 | Fail | 103 | Section 504, ADA | N/A | 2 | 1 | 2 | 3 | 4 |

# EXHIBIT B

Exhibit B - Plan Reviews Overall Sample Property Identification and Results Table

| Development Name | Development Address | Tranche | Number of Units | Pass/Fail | Exhibit Number | Coverage |
|---|---|---|---|---|---|---|
| 1826 S Avers | 1826 S Avers | Federal Rehab | 6 | Fail | 104 | Section 504, ADA |
| 2501 West 63rd Street | 2501 West 63rd Street | Federal Rehab | 12 | Fail | 105 | Section 504, ADA |
| 3502 W Van Buren | 3502-08 W Van Buren Ave | Non-Federal Rehab | 13 | Fail | 106 | Section 504 |
| 4119-29 S Ellis & 1029 E 41st Pl Apt | 4119-29 S Ellis & 1029 E 41st Pl | Federal Rehab | 23 | Fail | 107 | Section 504, ADA |
| 7000-04 S. Merrill Ave Apts | 7000-04 S. Merrill Ave | Federal Rehab | N/A (stair rehab) | Fail | 108 | Section 504 |
| 7014 S. Kimbark Ave. | 7014-7016 S. Kimbark Ave. | Federal Rehab | 4 | Fail | 109 | Section 504, ADA |
| 7024 S Clyde Ave | 7024 S Clyde Ave | Federal Rehab | N/A (stair rehab) | Fail | 110 | Section 504 |
| Austin Shore I | 7117 S Euclid Ave | Federal Rehab | N/A (stair rehab) | Fail | 111 | Section 504 |
| Barbara Jean Wright Court | Community Center & Office: 1350-54 S Morgan. Other units on 14th St. and Morgan St. | Non-Federal Rehab | 268 | Fail | 112 | Section 504, ADA |
| Bettendorf Pl. Sro | 8425 S Saginaw Ave | Non-Federal Rehab | 15 | Fail | 113 | Section 504, ADA |
| Boulevard Commons II | 149 N Central Ave | Non-Federal Rehab | N/A (stair rehab) | Fail | 114 | Section 504 |
| Brainerd Senior Center | 8915 S Loomis | Federal New | 60 | Fail | 115 | Section 504, FHA, ADA |
| Caroline Hedger Apartments | 6400 N Sheridan | Non-Federal Rehab | 450 | Fail | 116 | Section 504, ADA |
| Casa Sor Juana | 2700 S Drake Ave | Federal Rehab | 20 | Fail | 117 | Section 504, ADA |
| Cathedral Shelter | 1668 W Ogden Ave | Federal Rehab | 28 | Fail | 118 | Section 504, ADA |
| Churchview Senior Apartments | W 63rd St & S Talman Ave | Non-Federal New | 60 | Fail | 119 | Section 504, FHA |
| Clybourn and Division Apartments | 1200 N Clybourn Ave | Non-Federal New | 84 | Fail | 120 | Section 504, FHA, ADA |
| Dorchester Artist Housing Collaborative | 1446-1470 E. 70th St, 1506-1514 E. 70th St., 6948-6958 S. Harper Ave., 6949-6959 S. Harper Ave., 6949-6959 S. Dante Ave. | Non-Federal Rehab | 32 rehabbed units | Fail | 121 | Section 504, ADA |
| Dorchester Way | 1454-1455 E 67th Pl. | Federal Rehab | 13 | Fail | 122 | Section 504, ADA |
| 3625-3629 W. Dickens | 3625 W Dickens | Non-Federal New | N/A (building rehab) | Fail | 123 | Section 504 |
| East Park Apartments SRO | 3300 W Maypole Ave | Non-Federal New | 153 | Fail | 124 | Section 504, FHA, ADA |
| Englewood | 6750 S Green St. | Federal Rehab | 10 | Fail | 125 | Section 504, ADA |

1

Exhibit B - Plan Reviews Overall Sample Property Identification and Results Table

| Development Name | Development Address | Tranche | Number of Units | Pass/Fail | Exhibit Number | Coverage |
|---|---|---|---|---|---|---|
| Evergreen Tower Apartments | 133 N Cleveland Ave | Federal New | 101 | Fail | 126 | Section 504, FHA, ADA |
| Geneva Gables | 4420-26 S Michigan Ave | Federal Rehab | 20 | Fail | 127 | Section 504, ADA |
| Greenwood Park Apartments | 4710 S Greenwood Ave | Federal Rehab | 122 | Fail | 128 | Section 504, ADA |
| Hairpin Lofts | 3414 W Diversey Ave | Non-Federal Rehab | 28 | Fail | 129 | Section 504, ADA |
| Harrison Courts Apartments | 2910 W Harrison St | Non-Federal Rehab | 41 | Fail | 130 | Section 504, ADA |
| Homan Square Phase IV | 3607 W Polk St | Federal New | 108 | Fail | 131 | Section 504, FHA, ADA |
| Homan Square Phase VI | 3609 W Arthington | Federal New | 52 | Fail | 132 | Section 504, FHA, ADA |
| Howard Apartments | 1567-1569 N Hoyne Ave | Federal Rehab | 49 | Fail | 133 | Section 504, ADA |
| Independence Apartments | 4022 N Elston Ave | Federal New | 44 | Fail | 134 | Section 504, FHA, ADA |
| J. Michael Fitzgerald Apartments | 5801 N Pulaski Rd. | Non-Federal New | 63 | Fail | 135 | Section 504, FHA, ADA |
| Jeffery Towers Apartments | 7020 S Jeffery Blvd | Non-Federal Rehab | 135 | Fail | 136 | Section 504, ADA |
| Kilpatrick Renaissance | 4117 N Kilpatrick Ave | Federal New | 98 | Fail | 137 | Section 504, FHA, ADA |
| La Estancia Affordable Housin | 3248 W Division | Federal New | 9 | Fail | 138 | Section 504, FHA, ADA |
| Lincoln Village Senior Apartments | 6055 N Lincoln Ave | Non-Federal New | 102 | Fail | 139 | Section 504, FHA, ADA |
| Malden Avenue Apartments | 4520-28 N Malden Ave | Federal Rehab | 34 | Fail | 140 | Section 504, ADA |
| Midway Pointe Senior Residences Housing | 5001-5021 W 47th St | Non-Federal New | 95 | Fail | 141 | Section 504, FHA, ADA |
| Montclare Senior Residences of Calumet Heights | 9401 S Stony Island | Federal New | 134 | Fail | 142 | Section 504, FHA, ADA |
| Montclare Senior Residences of Englewood | 6346 S Green St | Federal New | 102 | Fail | 143 | Section 504, FHA, ADA |
| Montclare Senior Residences SLF Lawndale | 4329 W 18th Pl | Federal New | 120 | Fail | 144 | Section 504, FHA, ADA |
| Montclare Sr. Res. SLF Avalon Park Phase II | 1210 E 78th | Federal New | 122 | Fail | 145 | Section 504, FHA, ADA |
| Nathalie Salmon House | N Sheridan Rd | Federal New | 54 | Fail | 146 | Section 504, FHA, ADA |

Exhibit B - Plan Reviews Overall Sample Property Identification and Results Table

| Development Name | Development Address | Tranche | Number of Units | Pass/Fail | Exhibit Number | Coverage |
|---|---|---|---|---|---|---|
| Northtown Library and Apartments | 6800 N Western Ave | Non-Federal New | 44 | Fail | 147 | Section 504, FHA, ADA |
| Oakwood Shores Senior Apartments | 3750 S Cottage Grove Ave | Federal New | 76 | Fail | 148 | Section 504, FHA, ADA |
| Paseo Boricua | 1154 N Campbell Ave | Federal New | 59 | Fail | 149 | Section 504, FHA, ADA |
| Paul G Stewart Apartment Phases I & II | 400 E 41st St | Non-Federal New | 420 | Fail | 150 | Section 504, FHA, ADA |
| Paul G. Stewart Apartments Phase III | 401 E Bowen | Non-Federal Rehab | 180 | Fail | 151 | Section 504, ADA |
| Porta Coeli Residence | 2260 E 99th St | Federal New | 72 | Fail | 152 | Section 504, FHA, ADA |
| Presentation Apartments II | 817-823 S Springfield Ave | Federal Rehab | 9 | Fail | 153 | Section 504, ADA |
| Rainbow's End | 7401 S Kingston Ave | Federal Rehab | 9 | Fail | 154 | Section 504, ADA |
| Riverside Village (Eden Green | 132nd and Indiana | Federal Rehab | 72 | Fail | 155 | Section 504, ADA |
| Roosevelt Square Phase 1 | 1124 W Washburne Ave | Non-Federal New | 184 | Fail | 156 | Section 504, FHA, ADA |
| Roosevelt Towers Phase II | W Roosevelt at S St. LouisAve | Federal New | 82 | Fail | 157 | Section 504, FHA, ADA |
| San Miguel Apartments | 907 W Argyle St | Federal Rehab | 71 | Fail | 158 | Section 504, ADA |
| Senior Suites of Austin | W Corcoran Pl at N Menard Ave | Federal New | 84 | Fail | 159 | Section 504, FHA, ADA |
| Senior Suites of Hegewisch | 13600 S Ave O | Federal New | 84 | Fail | 160 | Section 504, FHA, ADA |
| Senior Suites of Jefferson Park | 5400 N Northwest W Hwy | Federal New | 81 | Fail | 161 | Section 504, FHA, ADA |
| Senior Suites of Rainbow Beach | 2804 E 77th Pl | Federal New | 84 | Fail | 162 | Section 504, FHA, ADA |
| Senior Suites of West Humboldt Park | 3656 W Huron St | Federal New | 88 | Fail | 163 | Section 504, FHA, ADA |
| Shops And Lofts At 47Th | 4739 S Evans Ave | Non-Federal New | 6 | Fail | 164 | Section 504, FHA, ADA |
| Sky 55 | 1255 S Michigan | Non-Federal New | 502 | Fail | 165 | Section 504, FHA, ADA |
| South Loop Affordable Housing | 600 S Wabash Ave | Non-Federal New | 169 | Fail | 166 | Section 504, FHA, ADA |
| St Edmunds Tower Annex | 6151 S Michigan Ave | Non-Federal New | 34 | Fail | 167 | Section 504, FHA, ADA |

Exhibit B - Plan Reviews Overall Sample Property Identification and Results Table

| Development Name | Development Address | Tranche | Number of Units | Pass/Fail | Exhibit Number | Coverage |
|---|---|---|---|---|---|---|
| St. Edmund's Plaza | 5701-03 S Michigan Ave | Federal Rehab | 18 | Fail | 168 | Section 504, ADA |
| St. Sabina Apartments | 1222 W 79th St | Federal New | 80 | Fail | 169 | Section 504, FHA, ADA |
| Stewart Court Apartments | 7640-7656 S Stewart Ave | Federal Rehab | N/A (stair rehab) | Fail | 170 | Section 504, ADA |
| The Diplomat Hotel SRO | 3208 N Sheffield | Non-Federal Rehab | 51 | Fail | 171 | Section 504, ADA |
| The Studio SRO | 1801 S Wabash Ave | Federal New | 169 | Fail | 172 | Section 504, FHA, ADA |
| Trc Senior Village 1 | 346 E 53rd St | Federal New | 70 | Fail | 173 | Section 504, FHA, ADA |
| Victoria Jennings Residences | 620 W 61st St | Federal New | 24 | Fail | 174 | Section 504, FHA, ADA |
| Victory Centre at Galewood | 2370 N Newcastle Ave | Federal New | 135 | Fail | 175 | Section 504, FHA, ADA |
| Villages of Westhaven | 114 N Hoyne Ave | Non-Federal Rehab | 10 | Fail | 176 | Section 504, ADA |
| Vincennes Court | 4801-4807 S Vincennes Ave | Federal Rehab | 20 | Fail | 177 | Section 504, ADA |
| West Humboldt Pl. | 3533 W Chicago Ave | Non-Federal New | 13 | Fail | 178 | Section 504, FHA, ADA |
| Wheeler House | 1450 W 69th St | Federal New | 89 | Fail | 179 | Section 504, FHA, ADA |
| Woodlawn-Michigan | 6446-6450 S. Kenwood Ave | Federal Rehab | 54 | Fail | 180 | Section 504, ADA |

# EXHIBIT C

Exhibit C - MOPD Report Reviews Overall Property Identification and Results Table

| Development Name | Development Address | Tranche | Number of Units | Exhibit Number | Pass/Fail | # Dwelling Unit/Entry and Path of Travel Violations | # Dwelling Unit/Bathroom Violations | # Dwelling Unit/Kitchen Violations | # Dwelling Unit/Other Violations | # Common Use Areas/Facilities Violations | # Accessible Route Violations |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Casa Guerrero | 963 W Cullerton | Non-Federal Rehab | 25 | 181 | Fail | 1 | N/A | N/A | 1 | 1 | 1 |
| Casa Puebla | 2014 S Racine | Federal Rehab | 52 | 182 | Fail | N/A | 1 | 3 | 2 | 2 | 4 |
| Casa San Luis | 1646-1650 S Throop | Federal Rehab | 12 | 183 | Fail | N/A | N/A | N/A | 2 | N/A | 2 |
| Emmett Street Apartments | 2914 N Emmett St | Federal New | 100 | 184 | Fail | 3 | N/A | 6 | 2 | 4 | N/A |
| Humboldt Park Residences | 1152 N Christiana Ave | Federal New | 65 | 185 | Fail | N/A | 6 | 1 | 1 | 7 | 1 |
| LCDC Lazarus Apartments | 1859 S Pulaski | Federal Rehab | 33 | 186 | Fail | N/A | N/A | 1 | 6 | N/A | 4 |
| Paseo Boricua | 2709-2715 W Division | Federal New | 24 | 187 | Fail | N/A | 2 | N/A | 1 | N/A | N/A |
| Southbridge Bldg. 3 | 2310 S State St | Federal New | 103 | 188 | Fail | N/A | N/A | 1 | 2 | N/A | N/A |
| Southbridge Bldg. 4 | 2344 S State St | Federal New | 103 | 189 | Fail | N/A | 2 | 1 | 4 | N/A | 2 |

# EXHIBIT 1



# Curriculum Vitae



## Education

Bachelor of Architecture - 1984
Louisiana State University - Baton Rouge
   ...Academic Achievement Awards ('83-'84)
   ...Winning Team Member - Int'l. Special Olympic Village Design
   ...Winning Team Member - Parc de la Villette LSU Competition Entry

## Architectural Registration Info

| | |
|---|---|
| Colorado – 1987 | #202381 |
| Alabama - 1988 | # 3339 |
| Georgia – 1990 | #7309 |
| Louisiana – 2007 | #6717 |
| Florida - 2022 | #AR102359 |
| NCARB Certification | #36247 |

## Architectural Work History

Hecker Design, LLC - *Birmingham*
Evan Terry Associates, PC - *Birmingham*
Architects South, Inc. - *Birmingham*
Morgan Associates / CM4 - *Denver*
Barton & Thweatt Architects – *Baton Rouge*
Frank T. Colby, Jr. Architecture - *Lafayette, LA*

## Teaching/Professional

Instructor in the Office of Executive Education - Summer Class on Accessibility
   **Harvard University** – Graduate School of Design 1992-present
Thompson Publishing Company
   ...*ADA Compliance Guide* Editorial Advisor
American Institute of Architects
   ...AIA "Task Group" Leader on ADA Issues for Architects –
      Building Codes & Standards PIA
   ...past Council Representative for Birmingham to Alabama Council
   ...past Birmingham Chapter AIA Newsletter Editor
US Access Board – Member of Public Rights-of-Way Advisory Committee '99-2001
   …Chairman of "Intersections" Subcommittee on curb ramps









**Bill Hecker, AIA**
*Accessibility Consultant*

Member American Institute of Architects
Alabama Architect  -  3339
Colorado Architect  -  202381
Georgia Architect  -  7309
Louisiana Architect  -  6717
Florida Architect  -  AR102359

3568 Hampshire Drive
Birmingham, AL 35223
(205) 298-1900 office
(205) 907-8155 cell
Bill@HeckerDesign.info

**Got Access?**

# Overview of ADA & Accessibility Experience

Bill is an architect (registered in Colorado, Alabama, Florida, Louisiana, and Georgia) who practices nationwide in the field of accessible design and ADA (Americans with Disabilities Act) Consulting. His interest in accessible design began in college when he was on the winning design team for the 1983 Int'l. Special Olympics Village Competition at Louisiana State University. He continued his involvement serving those with Spina Bifida during his years studying at the White Crane Kung Fu Studio in Baton Rouge. While an architect at the Birmingham, Alabama firm of Evan Terry Associates, Bill spearheaded the ADA Consulting/Training efforts and was primary author of two books on ADA facility compliance (published by John Wiley & Sons - NY).

He has conducted more than 100 public and private seminars on ADA/Accessibility compliance and surveyed more than 100 million square feet for access barriers. While with Evan Terry Associates, Bill consulted with or trained staff from IBM, Duke University, Rockwell International, MARTA (Metro Atlanta Regional Transit Authority), Georgia Tech University, Shoney's Restaurants, United Way and the American Bankers Association - just to name a few. Bill left Evan Terry in 1992 to start his own practice and has since split his energies among three broad areas – consulting on facility compliance requirements of federal access laws (ADA, Fair Housing Act, ABA and Section 504 requirements of the Rehabilitation Act); training governmental and private organizations on those laws; and, acting as an expert witness/consultant to the US Department of Justice, private plaintiffs and defense attorneys on ADA and Fair Housing facility compliance cases.

Bill has been judicially recognized as having... *"...extensive experience in the field of ADA [Americans with Disabilities Act] compliance sufficient to qualify [him] as an expert in this field."* United States v. AMC Entertainment, Inc., CV 99-1034 (C.D. Cal., filed January 22, 2003 - order granting government's motion for partial summary judgment at 3).

US District Court Judge Clarence Cooper stated... *"…it is clear that Mr. Hecker is amply*

*qualified to serve as an expert in this case…"* when referring to the Fair Housing Act claim against new Emory University Student Housing projects in Kami Z. Barker and Access Now, Inc., v. Emory University, Niles Bolton Associates, Inc. and TCR GA Construction Limited Partnership, N.D. GA, Civil Action # 1:02-CV-2450-CC in order denying the exclusion of Bill Hecker's Expert Opinions (at page 4) filed 3/3/06.

Chief US District Court Judge Norman A. Mordue stated the following about Bill's expert reports in the FHA design and construction case upon which he was opining… *"…Hecker's report concludes that the units do not comply with section 3604(f)(3)(C). The report explains in detail the measurements and observations supporting each of these conclusions and further sets forth the specific manner in which the various features of the units violate the HUD Guidelines and the ANSI standards.*" United States v. Bruce Tanski, et al., 1:04-CV-714 (N.D. of NY filed 3/30/07 in order granting government's motion for partial summary judgment at 27).

Chief US District Court Judge Herndon stated the following about Bill's adequacy to testify against a Civil Engineering firm in the FHA design and construction case upon which he was opining…

*"The Government argues that as a licensed architect, Hecker has educational training on the development of site plans and extensive experience reviewing site plans specifically in relation to accessibility issues for persons with disabilities. (Doc. 146.) The Court agrees. Mr. Hecker has the education, training, and experience to offer opinions on the adequacy of TWM's engineering plans and whether or not TWM breached the engineering standard of care."* United States v. Shanrie Company, et al., Case No. 05-CV-306-DRH (USDC S.D. Illinois) See January 17, 2008 **Memorandum and Order** regarding Defendant TWM's Motion in Limine to bar Hecker's testimony.

US District Court Judge Saundra Armstrong stated the following about Bill and his opinions...

*"The Court finds Hecker, who serves as a consultant to the DOJ in ADA enforcement*

*actions, to be a credible witness and credits his testimony accordingly." RT 2720:6-2721:15.*

*"Hecker, a licensed architect, was received by the Court as an expert in architecture and disability access." RT 2037:7-2038:3.*

*"The Court finds Hecker, the City's access expert, to be credible, and finds the City's priorities for curb ramp installation, as set forth in the Curb Ramp and Sidewalk Transition Plan, to be consistent with the priorities and recommendations established by the DOJ."*

*"The Court is likewise persuaded by Hecker, who provided testimony regarding program access to the City's library program and RecPark programs."*

Ivana Kirola, et al. v. City & County of San Francisco, et al., Case No: C 07-3685 SBA (USDC ND of Calf. - Oakland Div.) CLASS ACTION - see November 26, 2014 unpublished **FINDINGS OF FACT AND CONCLUSIONS OF LAW** and verdict finding for San Francisco.

Some significant accessibility efforts include curb ramp transition plans for the City & County of Honolulu, Maui County and the County of Hawaii with Wilson Okamoto Corporation, as well as being selected by the US Access Board to serve on the Public Rights-of-Way Accessibility Advisory Committee. He has been retained by RTKL as a peer reviewer and consultant advising the Architect of the Capitol on ADA issues related to the new Visitor's Center expansion and pedestrian routes around Capitol Square. He lectures regularly (beginning in 1992) on accessibility issues during summer programs as an Instructor in the Office of Executive Education at the **Harvard University** Graduate School of Design in Cambridge, MA. He serves as consultant on ADA parks compliance for Maui and Hawaii Counties as well.

# Access Seminars Bill Taught:

**1.** IBM ADA Facilities Training Seminars (with Barrier Free Environments, Inc.)*
 Stamford, CT
 Armonk, NY
 Atlanta, GA
 San Jose, CA
 Chicago, IL

**2.** Business Council of Alabama ADA Seminar - Birmingham, AL*

**3.** National Assoc. of Elevator Contractors Seminar with DOJ Speaker - Williamsburg, VA*

**4.** Powell, Tally, Frederic Law Firm ADA Seminar - Birmingham, AL*

**5.** Professional Development Resources ADA Seminars*
 Washington, DC
 Chicago, IL
 Dallas, TX
 Atlanta, GA
 Denver, CO
 Los Angeles, CA
 San Francisco, CA

**6.** Southern Company Services ADA Workshop - Birmingham, AL*

**7.** Institute of Business Designers ADA Seminar - Birmingham, AL*

**8.** Shoney's Restaurant Parent Company ADA Workshop - Nashville, TN*

**9.** Assoc. of Physical Plant Administrators National Conference ADA Seminar - Orlando, FL*

**10.** Gulf States AIA Reg. Convention ADA Seminar - Bay Point, FL*

**11.** American Hospital Association ADA Seminar - Birmingham, AL*

**12.** Construction Specifications Institute ADA Seminar - Birmingham, AL*

**13.** Einhorn, Yafee, Prescott Architects ADA Seminar - Albany, NY*

**14.** New York University Board ADA Facilities Compliance Workshop - Albany, NY*

**15.** Independent Living Center ADA Workshop - Birmingham, AL*

**16.** Evan Terry Assoc. 1-Day ADA Public Workshops*
 Birmingham, AL
 Atlanta, GA
 Phoenix, AZ
 Dallas, TX
 Honolulu, HI
 San Francisco, CA
 Seattle, WA
 Las Vegas, NV
 Orlando, FL
 Miami, FL
 Washington, DC
 Denver, CO
 Nashville, TN
 Boston, MA
 San Diego, CA
 Houston, TX

**17**. Evan Terry Assoc. 3-Day ADA Public Workshops*

      Birmingham, AL
      Orlando, FL
      San Francisco, CA
      Washington, DC
      Dallas, TX

**18**. Building Owners and Managers Association ADA Workshops - Birmingham*

**19**. Serote Permut Law Firm ADA Seminar - Birmingham, AL*

**20**. Univ. of Alabama at Birmingham ADA Workshop - Birmingham, AL*

**21**. Assoc. of Physical Plant Administrators 2-Day ADA Workshop - Alexandria, VA*

**22**. Baptist Medical Centers Post Polio Association ADA Seminar - Birmingham, AL*

**23**. Brookwood Hospital Public ADA Seminar - Leeds, AL*

**24**. Hawaii Architectural Access Board Seminar - Honolulu, HI*

**25**. Baptist Medical Center Corporate ADA 3-Day Workshop - Birmingham, AL*

**26**. Alabama Power Corporate ADA Workshop - Birmingham, AL*

**27**. Duke University ADA Seminar and Pilot Survey - Durham, NC*

**28**. Assoc. of Physical Plant Administrators 2-Day ADA Workshop - Los Angeles, CA*

**29**. University of California System 3-Day ADA Workshop - Irvine, CA*

**30**. In-house ADA Seminar for Architects Kurt/Voit/Geuest - Dallas, TX

**31**. Metro Birmingham Kiwanis Club ADA Seminar  - Birmingham, AL*

**32**. American Electricians Assoc. ADA Seminar (for Law Firm Jackson/Lewis) - Boston, MA*

**33**. University of Alaska 3-Day ADA Seminar - Fairbanks, AK*

**34**. State of Alaska ADA Consultation - Juneau, AK*

**35**. ADA Seminar for Rockwell International Corp. - Anaheim, CA*

**36**. Assoc. of Physical Plant Administrators ADA Workshop - Syracuse, NY*

**37**. ADA Seminar for Santa Monica Community College - Santa Monica, CA*

**38**. ADA Seminar for National Society of Fund Raising Executives - Birmingham, AL*

**39**. Birmingham Librarians Association ADA Seminar - Birmingham, AL*

**40**. Harvard University Graduate School of Design ADA Seminar (with Cindy Leibrock & Jim Terry)-Cambridge* 1992, 2003-present as an Instructor in the Office of Executive Education

**41**. Assoc. of Physical Plant Administrators ADA Workshop - Indianapolis, IN*

**42**. ADA Seminars and Pilot Surveys for Northern Telecom Corp.*

      Raleigh, NC
      Dallas, TX

**43**. Woolpert Consultants Client ADA 2-Day Seminars - Dayton, OH*

**44**. ADA Seminar for Regional IRS Office - Birmingham, AL*

**45**. ADA Seminar for Attorneys Jackson/Lewis Clients at Woldorf Astoria - New York, NY*

**46**. Assoc. of Physical Plant Administrators (Eastern Reg.) ADA Workshop - Portland, ME*

**47**. ADA Seminar for Western Region American Institute of Architects (AIA) - Reno, NV*

**48**. ADA Seminar for Alabama Banking Association - Montgomery, AL*

**49**. ADA Public Workshop for University of Tennessee at Chattanooga - Chattanooga, TN*

**50**. Alabama Dept. of Rehabilitation Services ADA Seminar - Opilika, AL

**51**. Waste Management Corp. ADA In-House Seminar - Atlanta, GA**

**52**. ADA Seminar for East Baton Rouge Parish School Board - Baton Rouge, LA

**53**. AEC Systems Conference ADA Seminars and Panel Discussions - Anaheim, CA

**54**. Codes Workshop 2-Day ADA Seminars

      Houston
      Austin
      Atlanta
      Nashville
      Baltimore
      Tallahassee
      Jacksonville

**55**. ADA "In-House" Workshop for RTKL - Baltimore with Codes Workshop

**56**. RTKL Architects ADA Seminar with Code Workshop –Washington, DC

**57**. Nation Council of Independent Living ADA Survey Seminar – Tempe, AZ; Orlando, FL; Chicago

**58**. ADA Seminar for "University at Sea" on Holland American Cruise Line – Caribbean

**59**. The Haskell Company Architects ADA Seminar with Code Workshop –Jacksonville

**60**. Mobile Building Officials ADA training seminar for Independent Living Center – Mobile, AL

**61**. Training Session for Mississippi advocacy group on ADA survey process – Jackson, MS

**62**. Survey Workshops for the Pacific DBTAC - Oakland, CA and Long Beach, CA

**63**. NAPAS Conference Workshop on ADA surveying of hotels, Washington, DC

**64**. ADA Hotel Training for Beer Gorman Architects and Interior Designers - New York, NY
**65**. ADA Training for Mississippi Coalition for Citizens with Disabilities - Polling Places Focus
**66**. ADA Hotel Training for Red Roof Inn design and construction staff – Boston
**67**. ADA "Equivalent Facilitation" Panel Discussion with Lois Thibault of US Access Board – Build Boston Convention – Boston
**68**. ADA "Best Practices" Public Training Course for US Attorney's Office – Milwaukee, WI
**69**. ADA Workshop for City of Birmingham Dept. Head Meeting w/ City ADA Coordinator
**70.** Co-Presenter of workshop on ADA, FHA, ABA & 504 "Safe Harbors" and/or Standards with Eric Berg, Esq. of DLA Piper at 2007 Annual Meeting of the Construction Forum of the American Bar Association – San Juan, Puerto Rico
**71.** ADA Movie Theater Survey Workshop for AMC Entertainment, Inc. – Kansas City
**72.** "Lessons Learned from Honolulu ADA Curb Ramp Implementation" with Pete Pascua of Wilson Okamoto and Paul Sheriff – Honolulu, HI
**73.** "Top 10 FHA Design Errors" – Honolulu, HI
**74.** Key Note Speaker on Federal Accessibility Law Challenges at RTKL annual "Commercial Practice Group" meeting – Toronto, Canada.
**75.** Northwest DBTAC Teleconference on ADA Surveying Issues
**76.** ADA Guest Lecture for Occupational Therapist Students at Alabama State University - Montgomery
**77.** "Universal Design" Lecture to the Greater Birmingham Association of Home Builders - Birmingham.
**78.** Webinar for the National Association of ADA Coordinators on new ADA regulations.
**79.** Co-Presenter with Jim Terry, David Ballast & Mark Mazz at **National AIA Convention** in Chicago (2014) on **"ADA and Construction Tolerances." Workshop FR 204**
**80**. AIA Tennessee Workshop on Fair Housing Design Issues - Nashville.
**81**. New ADA Standards Workshop at the East Tennessee Access Symposium - Knoxville.
82. HalfMoon Productions Co-Presenter with State ADA Coordinator/Assist. Attny. General for Alabama on 2010 ADA Standards - Montgomery, AL

## ADA Title II (Governmental) Transition Plans & Self Evaluation Reports:

**1**. University of Florida ADA Coordinators Training and Surveys - Gainesville, FL*
**2**. Auburn University Facilities Dept. ADA Seminar and Library Survey - Auburn, AL*
**3**. Consultant to Woolpert Corp. on Charlotte Transition Plan - Charlotte, NC*
**4**. ADA Survey of Five Points Metro Station for The Architecture Group - Atlanta, GA**
**5**. Jefferson County ADA Transition Plan & Self-Evaluation (with Tony Cothren, Esq.) - B'ham.
**6**. Oakland University Campus Survey (92 buildings) & Transition Plan - Rochester, MI
**7**. Georgia Tech Student Athletic Center ADA Survey with The Architecture Group - Atlanta
**8**. ADA Survey & Transition Plan for Georgia Dept. of Natural Resources (Wildlife Division):
      Buford Trout Hatchery (1 bldg.)
      Gainesville Regional Office (1 bldg.)
      Burton Trout Hatchery (2 bldgs.)
      Walton Office Complex (5 bldgs.)
      Thomson Office (1bldg.)
      McDuffie Hatchery (1 bldg.)
      Baldwin Forest Fishing Area (1bldg.)
      Macon Enforcement Office (1 bldg.)
      Nongame Program Office (1 bldg.)
      Manchester Fisheries Office (1 bldg.)
      Fort Valley Offices (2 bldgs.)
      Cordele Hatchery (2 bldgs.)
      Steve Cocke Hatchery (1 bldg.)
      Albany Region Office (1 bldg.)
      Bowens Mill Offices (2 bldgs.)
      Waycross Region Office (1 bldg.)
      Meridian Boat Dock (1 bldg.)
      Demeries Creek Office (1 bldg.)
      Richmond Hill Hatchery (1 bldg.)
      Metter Fisheries Office (1 bldg.)
**9**. City of Birmingham Survey/Transition Plan Phase IV with B'ham. ILC
      Highlands Racquet Club
      Memorial Park Recreation Center
      McAlpine Park Recreation Center
      Central Park Facilities
      Hooper City Recreational Center
      Don Hawkins Recreational Center
**10**. City of Birmingham Survey/Transition Plan Phase V with B'ham. ILC
      Arlington House Historic Building
      George Ward Park Facilities
      Five Points South Parking Garage
      North and South District Sanitation
      Fire Station #1
      Fire Station #15

Fire Station #18
Fire Station #29
Roosevelt City Recreation Center
Legion Field Stadium-Olympic Soccer
West End Branch Library
Ensley Branch Library
East Lake Park Restrooms
Shepherd's Senior Center
Linn Park Tennis Center
Lynn Hinley Research Library
Woodward Park

**11**. ADA Program Access Schematic Design "Bread & Roses" Homeless Shelter - Birmingham, AL

**12**. ADA Alteration Consultation for Birmingham City Hall Renovation – Birmingham, AL

**13**. Birmingham Botanical Gardens ADA Review – Birmingham

**14**. Murray State University Arena ADA Review for Independent Living Center – Murray, KY

**15**. Fire Station modifications for ADA Transition Plan – Birmingham

**16**. Accessible Design for proposed New Office of Birmingham Independent Living Center – Birmingham

**17**. Plan review of City of Birmingham alteration projects – Birmingham

City Vehicle Service Center
Hawkins Park Golf Course Pro Shop
Fire Station #20 Rehabilitation
City Hall Alterations to the 2nd Floor

**18**. Expert Witness for Plaintiff in Salmond, et al vs. County of Teton, Montana

No. CV-97-130-GF-PGH

Teton County Courthouse – Choteau, MT
Teton County Nursing Home – Choteau, MT
Teton County/Choteau Public Library
Teton County Office of Public Assistance Tenant Space – Choteau, MT
Teton County Office of Child & Family Services Tenant Space – Choteau, MT
Teton County Sheriff's Office – Choteau

**19**. Plan review and site visit to Union Station multi-mode transit facility for Dale & Associates - Jackson, MS

**20**. Surveys of City and County park facilities and renovation plans - Honolulu, HI

Kuhio Park Redevelopment
Hanauma Bay Visitors Center
Central Oahu Park Buildings
Waipio Soccer Park and Buildings

**21**. Consulted on ADA alteration plans for Vulcan Park Historic Restoration - Birmingham

**22**. Litigation Consultant for County of Maui Park & Rec. Department - Maui, HI

Development of Transition Plan

Plan Review of ADA Modification Plans
War Memorial (Hula Bowl) Stadium

**23**. Reviewed alteration plans for Avondale Park Pavilion - City of Birmingham

**24**. Accessibility Review of Auditorium for Sligo Creek Elementary School – Silver Springs, MD

**25**. ADA plan review of Montgomery, Alabama Intermodal Transportation Center

**26**. City of Birmingham consult on City Council Chambers ramp alterations.

**27**. Litigation Consultant for County of Maui Corporation Counsel for DOJ complaint related to ADA Title II Program Access

**28**. Litigation Consultant for County of Hawaii Park & Rec. Department - Hilo, HI

Development of Revised Transition Plan

**29**. Alii Cove comfort station ADA plan review for County of Hawaii – Kona, HI.

**30.** Territorial Centre DMV Office ADA review for program access – Kona, HI.

**31**. Presentation in Federal Court status hearings in the following cases:

- County of Maui Parks Case
- County of Hawaii Parks Case
- Honolulu Curb Ramp Case

**32**. Consult for LBYD Engineers regarding UAB laboratory building entrance accessibility – Birmingham, AL.

**33**. Millennium Residence Hall plan review in ADA, FHA & 504 case Kuchmas v. Towson University, et al. – Towson, MD.

**34**. ADA survey of East Hawaii Cultural Center - Hilo, HI

**35**. Consult with Jackson, MS Architect firm doing ADA Title II Transition Plan for Jackson, MS.

**36**. Plan review of Alabama School of Fine Arts Theatre for Garrison Barrett Group Architects - Birmingham.

**37**. Expert Witness for City and County **San Francisco**, California defending an ADA law suit.

**38**. Expert Witness for California Department of Transportation (**CALTRANS**) defending an ADA law suit.

**39**. Litigation Consultant for law firm defending ADA facilities compliance claim against Pompano Beach, FL.

**40**. Litigation Consultant for law firm defending ADA facilities compliance claim against the Mississippi Gulf Coast Coliseum - Biloxi

**41**. ADA Consultation for the City of Auburn, Alabama.

42. ADA Peer Review – Los Angeles County DPW Transition Plan

# ADA Title III (Private Entity) Surveys or Plan Reviews:

**1.** IBM Tucson Mfg. Plant Survey (with Barrier Free Environments)*

Personally surveyed the 1,000,000 square foot manufacturing plant of IBM at Tucson for architectural and communications barriers, developed a written report of my finding and suggested alternatives for correcting those barriers.

**2.** Beacon Ridge Office Building ADA Survey - Birmingham, AL*

**3.** International Park Office Complex ADA Survey - Birmingham, AL*

**4.** Civitan Research Building Plan Review at UAB Campus - Birmingham, AL*

**5.** ADA Survey of Chamber of Commerce Building - Birmingham, AL*

**6.** ADA Survey of BMC Montclair Hospital - Birmingham, AL*

**7.** ADA Survey of BMC Princeton Hospital - Birmingham, AL*

**8.** Duke University ADA Pilot Survey for Campus Architect - Durham, NC*

**9.** Winter Park Memorial Hospital ADA Survey - Orlando, FL*

**10.** Druid City  Hospital ADA Survey - Tuscaloosa, AL*

**11.** ADA Consultation with Ridout Funeral Home Services - Birmingham, AL*

**12.** ADA Plan Review for Univ. of Miami Diabetes Research Foundation - Miami, FL*

**13.** ADA Survey of USX Flintridge Headquarters Building - Birmingham, AL*

**14.** ADA Plan Review for Mr. Gatti's Pizza Prototype Restaurants - Nationwide*

**15.** Alabama Steel Products Company (ASEPCO) ADA Survey - Birmingham, AL*

**16.** New Entrance Ramp Design for Independent Living Center - Birmingham, AL*

**17.** Riverside Hospital Scope Survey for ADA Proposal Preparation - Columbus, OH*

**18.** ADA Survey for AmSouth/Sonat High-rise Office Tower - Birmingham, AL*

**19.** Survey of Office Building Complexes for Boylston Capital Advisors:**

Northwoods Office Complex - Atlanta, GA
Athena Square Shopping Center
South Dekalb Office Complex - Atlanta, GA
High Tower Offices I&II - Atlanta, GA
Fountain Plaza Office Complex - Tulsa, OK
Regency Square Office Complex - Tulsa, OK
58th Street Office/Warehouse - Tulsa, OK

**20.** Wal-Mart SuperCenter Prototype ADA Plan Review for BSW Architects - Nationwide Use

**21.** Irish Deli Restaurant ADA Survey and Entry Modifications - Birmingham, AL

**22.** Pickwick Conference Center ADA Survey - Birmingham, AL

**23.** ADA Plan Review of Ruby Tuesday & Tias Restaurant Prototypes - Nationwide Use**

**24.** Archon Architects ADA Consultation on Hotel Project - Dallas, TX*

**25.** Consultant to Woolpert Corp. on Moody Woodly ADA Report - Dayton, OH*

**26.** Associated General Contractors ADA Restroom Modifications - Birmingham, AL

**27.** Quality Control of ADA evaluations for major West Coast Branch Banks - California**

**28.** Wal-Mart Consultation on McDonald's Restaurant Counter Design in Super Centers – Texas

**29.** George Washington University – ADA Consulting on Campus Buildings – Washington, DC

Marvin Student Center
Health & Wellness Center
Media & Public Affairs

**30.** Life Trust Assisted Living Facility ADA Plan Review – Nationwide

**31.** Wynfrey Hotel Alteration review for ADA compliance – Birmingham

**32.** Consultation on accessible design for new restaurant and bar - Birmingham

**33.** Vestavia Shopping Center accessibility consultation for Williams Blackstock Architects - Birmingham

**34.** Frontier Bank ADA Consultation - Alabama

**35.** ADA Expert Witness for plaintiff in suit against Emory University Campus – Atlanta

**36.** ADA Expert Witness for Defense in Winn Dixie grocery store suit – Birmingham

**37.** ADA Plan Review of Mitchell, McNutt & Sams Law Office – Jackson, MS

**38.** ADA Consultation on Aston Waikiki Hotel accessibility – Honolulu, HI

**39.** ADA Plan review for New World Divers Headquarters – Honolulu, HI

**40.** Expert Witness in Nelwyn McInnis and Cecil McInnis vs. Barnhill's Restaurant – Meridian, MS

**41.** ADA and Illinois Building Code facility compliance reviews of proposed new Arena for Illinois State Attorney General

**42.** ADA and Illinois Building Code facility plan reviews of Wrigley Field Baseball Stadium addition for Illinois State Attorney General

**43**. Expert Witness in Grocery Store accessibility case related to check out aisles – Knoxville, TN

**44**. Consult on ADA for Harbert Center meeting facilities – Birmingham

**45**. Expert Witness for plaintiff in V. Richard's Grocery Store ADA complaint – Birmingham

**46**. ADA Plan review of Civil Engineering Prototype Plans for Chick-fil-A Restaurant Company – Atlanta, GA

**47**. Expert Witness for Plaintiff in ADA law suit against Lone Star Steakhouse – Hoover, AL

**48**. ADA Consultations on Design Projects for Dale & Associates Architects, PA:

Capitol City Convention Center Plan Review Jackson, MS

Peoples Bank Addition – Biloxi, MS

Mississippi Department of Health Labs Jackson, MS

**49**. Women at Work Rehab Facility ADA plan review - Maui, HI

**50**. Litigation Consult for Helen Lukievics, Esq. of ADA hotel renovations - New York City

**51**. Site visit of House of Pancakes restaurant for ADA lift issue – Waikiki, HI

**52**. Site visit and concept design for new ADA accessible condo/hotel unit in Sunset Condos operated by Resort Quest – Waikiki, HI

**53**. Plan Review of ADA alterations of Law Firm (Balch & Binham, LLP) for Dungan Nequette Architects – Birmingham

**54**. Time Square Hotel ADA Surveys for Hampshire Hotels and Resorts – New York

The Night Hotel

The Dream Hotel

The Hampton Inn

The Hilton Garden Inn

The President Hotel

The Quality Hotel

The Time Hotel

**55**. Home Depot Parking Lot schematic design consultation with Paul Sheriff, Inc. (PSI) – Hilo, HI

**56**. Litigation Consult in ADA Case for Koonz, Lightfoot Attorneys – Washington, DC

**57**. Site visit during construction of altered Moana Kea Resort Hotel, Kona, HI for route designations and bathrooms for PSI.

**58**. Turtle Bay Resort Emergency Evacuation Plan consultation with Paul Sheriff, Inc. (PSI) – Honolulu, HI

**59**. Birmingham International Airport - Expert Witness services in ADA suit.

**60**. Grand Wailea Resort ADA consultation with Paul Sheriff, Inc. (PSI) – Wailea, HI

**61**. Maui Ocean Center ADA consultation with Paul Sheriff, Inc. (PSI) – Maui, HI

**62**. ADA Survey of Northlake Shopping Center by Centdev Development - Charlotte, NC

**63**. ADA Plan review of prototype retail store for private client - nationwide application.

**64**. ADA Analysis of new poolside approach walk and curb ramp at Waikiki Sheraton - Honolulu.

**65**. ADA Analysis of front entrance to Dr. Pittman's Office - Ocean Springs, MS.

**66**. ADA Plan Review and consult on the first two Microsoft Retail Stores in Scottsdale, AZ and Riverside, CA with HiSoftware, Inc.

**67**. ADA consult on proposed Law Office residential elevator at The Preserve Office Building - Hoover, AL.

**68**. ADA consult with the Marriott Biscayne Bay through the South Florida Center for Independent Living - Miami.

**69**. ADA renovation inspection of Edition Hotel in Waikiki for Paul Sheriff, Inc. - Honolulu.

**70**. ADA Analysis of new accessible guest suite at the Waikiki Sheraton with Paul Sheriff, Inc. - Honolulu.

**71**. ADA Analysis of new accessible guest suite at the Ala Moana Hotel with Paul Sheriff, Inc. - Honolulu.

**72**. ADA consult with Paul Sheriff for BambuTwo cafe & bar - Honolulu.

**73**. ADA consult with Paul Sheriff for 1420 Kapiolani Street Office Building - Honolulu.

**74**. ADA consult with Paul Sheriff for 1310 King Street Office Building public restroom - Honolulu.

**75**. ADA consult with Paul Sheriff for Alan Wong's Restaurant at the Grand Wailea Hotel - Wailea, Maui.

**76**. ADA peer review with Paul Sheriff for Ala Moana Hotel - Honolulu.

**77**. ADA Surveys with Frank Colby, AIA of 12 Regional Shopping Malls along East Coast for a national mall developer.

**78**. ADA and Universal Design Consult with Cohen Carnaggio Reynolds Architects on the new offices of Birmingham Independent Living Resources - Birmingham.

**79**. ADA peer review with Paul Sheriff for Aqua Hotels - Honolulu.

**80**. ADA Consult for two different Outlet Store Chains seeking to comply with 2010 ADA Standards for dressing rooms and sales counters - Southeast US.

**81**. Kiton retail clothing store in City Centre ADA plan review of IZ design studio plans - Las Vegas.

**82.** SHe Club & Restaurant in City Centre ADA plan review of IZ design studio plans - Las Vegas.

83. Boca Center ADA survey of shopping center accessibility - Boca Raton, FL.

**84.** Alice Tully Hall at Lincoln Center (Broadway Theater) ADA consultation - New York City.

**85.** Litigation Consultant for law firm defending ADA facilities compliance claim against Eastdale Mall - Montgomery, AL

**86.** Litigation Consultant for law firm defending ADA facilities compliance claim against Westbury Shopping Center - Huntsville, AL

**87.** Litigation Consultant for law firm defending ADA facilities compliance claim against Capital Plaza Shopping Center - Montgomery, AL

**88.** Litigation Consultant for law firm defending ADA facilities compliance claim against 7 Entec Gas Stations - Montgomery, AL

**89.** Litigation Consultant for law firm defending ADA facilities compliance claim against Al Forno Restaurant - Providence, RI.

**90.** ADA peer review with Paul Sheriff for Ainahou Hotel renovations - Honolulu.

**91.** Consultation to evaluate existing ADA survey data of medical facilities for "safe harbor" protections and 2010 ADA Standards differences for Court Monitor - Southeast US.

**92.** Litigation Consultant for law firm defending ADA facilities compliance claim against Grocery Store - New York, NY.

**93.** Litigation Consultant for law firm defending ADA facilities compliance claim against Nine Mile Plaza Shopping Center - Pensacola, FL.

**94.** Litigation Consultant for law firm defending ADA facilities compliance claim against Pelham Commons Shopping Center - Greenville, GA.

**95.** Litigation Consultant for law firm defending ADA facilities compliance claim against Alexander City Shopping Center - Alexander City, AL.

**96.** ADA Facility Analysis for Thompson Facility Services of Tuskegee University - Tuskegee, AL with Compliance Support Associates, LLC.

**97.** Litigation Consultant for law firm defending ADA facilities compliance claim against Garrison Promenade Shopping Center - Montgomery, AL

**98.** ADA Consult on ramp issue at major Theme Park in California

**99.** ADA Consult for New Bar Alteration - Auburn, AL

**100.** Parkerson Village Shopping Center ADA consultation - Opelika, AL

**101.** Parkerson Mill Shopping Center ADA consultation - Auburn, AL

**102.** Fred's Grocery Store ADA consultation - Eclectic, AL

**103.** El Patron Mexican Restaurant ADA consultation - Opelika, AL

**104.** Chuck's BBQ Restaurant ADA consultation - Opelika, AL

**105.** Summit Shopping Center ADA consultation - Macon, GA

**106.** Southgate Mall ADA consultation - Muscle Shoals, AL

**107.** Pulbix Shopping Center ADA consultation - Albany, GA

**108.** Buffalo Wild Wings ADA consultation - Pelham, AL

**109.** Full Moon BBQ Renovation Plan Review - Dothan, AL

**110.** Betts Crossing Shopping Center ADA consultation - Opelika, AL

**111.** Burkes Outlet Store ADA consultation - Greenville, AL

**112.** CitiTrends Outlet Store ADA consultation - Opelika, AL

**113.** Cock of the Walk Restaurant ADA consultation - Opelika, AL

**114.** Aaron's Rent-to-Own ADA consultation - Opelika, AL

**115.** Huddle House ADA consultation - Opelika, AL

**116.** Louie's Chicken Finger Restaurant ADA consultation - Auburn, AL

**117.** Marco's Pizza ADA consultation - Auburn, AL

**118.** Greystone Shopping Center ADA consultation - Birmingham, AL

**119.** McAllister's Deli Restaurant ADA consultation - Birmingham, AL

**120.** Shoppes at Cary Creek ADA consultation - Auburn, AL

**121.** Rite Aid Drug Store ADA consultation - Dadeville, AL

**122.** University Village Shopping Center ADA consultation - Auburn, AL

123. Wendy's Restaurant ADA consultation - Opelika, AL

**116.** Third Party Neutral ADA inspection of ADA issues in Alice Tully Hall at Lincoln Center for the Performing Arts - New York City

**117.** Revere Hotel ADA Consultation - Boston

**118.** Jack's Family Restaurant ADA Consultation - Moody, AL

**119.** Milo's Hamburger Restaurant ADA Consultation - Greater Birmingham Area

**120. Burkes Outlet Store** ADA consultation – various Florida Locations.

121. Autozone ADA Case Expert Witness

122. Moo La La Shop Survey – Miramar, FL

123. Beau Rivage Hotel Casino – Biloxi
124. Blind Tiger Restaurant – Biloxi
125. Books A Million Survey – Gulfport
126. El Sltito Restaurant Survey – Gulfport
127. Golden Nugget Hotel Casio – Biloxi
128. Gulf Coast Prof. Bldg. – Biloxi
129. Hard Rock Hotel Casino – Biloxi
130. IP Hotel Casino – Biloxi
131. Merit Health Bldg. Biloxi
132. Outback Steakhouse Surveys
133. Palace Hotel Casino – Biloxi
134. Sand Dollar Shop – Orange Beach
135. Scarlet Pearl Hotel Casino – Biloxi
136. East Miami Hotel Survey – Miami
137. ABC Store – Troy, AL
138. Aranov Realty Shopping Centers
139. Chuck's BBQ Restaurant
140. El Patron Restaurant
141. Gallery Shopping Center – Huntsville
142. Harley Davidson Shop – Montgomery
143. Jacks Restaurants – Various Sites
144. Lakeview Center – Auburn, AL
145. Montgomery Town Center
146. NAE Credit Union – Huntsville
147. Parkerson Mill Center – Auburn
148. Parkway Village Center
149. Pie R Squared Shop
150. Popeye's Montgomery
151. Promenade Center – Montgomery
152. Publix – Orange Beach, AL

## Justice Department ADA Expert Witness Services:

**1.** Expert Witness to US Dept. of Justice ADA Enforcement Attorneys – Disability Rights Section
  Days Inn Hotels Plan Reviews –
    (in 6 states)
  Days Inn Hotels on-site ADA Surveys
    (in 10 states)
  MGM and New York, New York Hotel/Casino
    Surveys & Plan Reviews – Las Vegas, NV
  Lone Star Restaurants (in 2 states)
  Movie Theater Plan Reviews and Surveys
    (5 cases nationwide including AMC)
  Development of Technical Assistance
    Checklist on Lodging Facilities
  Survey of and Training for Safeway
    Grocery Store Chain
  Subway Restaurant Case - (nationwide)
  Survey of Private Universities (in 5 States)
    University of Chicago - Chicago

    Private College – Pittsburgh, PA
    Private University – Texas
    Private University – Pennsylvania
    Colorado College – Colorado Springs, CO
University of Michigan Stadium Case
Mid-Range Hotel Chain Surveys
  (in 5 states)
Litigation Consultant - Major Hotel Case
Survey of County Courthouses in New
  England
Major Arena Evaluation (Midwest)
Survey Private Community Colleges
  (4 Midwest cities)
  Broward County, FL Emergency Shelter
    compliance review and survey
  Harrison County, MS emergency shelter
    compliance review and survey
  State University ADA compliance review in
    southeastern US
  Litigation Consultant & Expert Witness for DOJ on QuikTrip Gas Station & Convenience Store investigation and settlement implementation on more than 550 stores in nine states.
  State Penitentiary investigations - 2 states
**2.** Expert Witness for US Dept. of Justice - Housing and Civil Enforcement Section of the Civil Rights Division…
    Fair Housing Apartment Design Case
Site #1 - Oletha, KS
    Fair Housing Apartment Design Case
Site #2 - Oletha, KS
    Fair Housing Apartment Design Case
Site #3 - Oletha, KS
    Fair Housing Apartment Design Case
Site #4 - Oletha, KS
    Fair Housing Apartment Design Case
Site #1 - Memphis, TN
    Fair Housing Apartment Design Case
Site #2 - Memphis, TN
    Fair Housing Apartment Design Case
Site #3 - Memphis, TN
    Fair Housing Apartment Design Case
Site #4 - Memphis, TN
    Fair Housing Apartment Design Case
Site #5 - Memphis, TN
    Fair Housing Apartment Design Case
Site #6 - Memphis, TN
    Fair Housing Apartment Design Case
Site #7 - Memphis, TN
    Fair Housing Apartment Design Case
Site #8 - Memphis, TN
    Fair Housing Apartment Design Case
Site #9 - Memphis, TN
    Fair Housing Apartment Design Case -
Charlotte, NC
    Fair Housing Apartment Design Case, 8

sites - Denver, CO
      Fair Housing Apartment Design Case - Bixby, OK
      Fair Housing Apartment Design Case - Shawnee, KS
      Fair Housing Apartment Design Case - Springfield, MO
      Fair Housing Apartment Design Case, 4 sites - Boston area
      Fair Housing Apartment Design Case - Bedford, NH
      Fair Housing Apartment Design Case - Delaware & Maryland
      Fair Housing Apartment Design Case – Midwest Sites
      Fair Housing Apartment Design Case – Illinois
      Fair Housing Apartment Design Case – Upstate New York
      Fair Housing Apartment Design Cases – Spokane, WA
      Fair Housing Apartment and Condo ---- Design Cases – Louisville, KY  9 Complexes
      Fair Housing Apartment Design Cases – Ongoing FHA Case Surveys:
  9 Complexes in MS; 8 Complex in LA; 1 in Texas; 1 in Alabama.
- Design Cases – 7 Kentucky Complexes
      Fair Housing Apartment Design Cases
**3**.  Expert Witness for US Attorney – Oklahoma City, OK Office Building
**4**.  Expert Witness for US Attorney – Jackson, Mississippi
   Shopping Centers
   County Courthouse Facilities
   Restaurants
   Retail Stores
   Art Exposition
   Civic Center
   Parking Facilities
**5**.  Expert Witness for US Attorney – New York, NY
   Luxury Hotel Surveys and Plan Reviews
   (3 Hotels)
   Department Store Survey
   Historic Office Building Survey
**6**.  Expert Witness for US Attorney – Maine
   22 Sandwich Shops Surveyed
**7**.  Litigation Consultant for US Attorney – Boston, MA
   Middle School Survey and Plan Review
   Plan Review of Proposed Football Stadium
   Survey of Existing Baseball Stadium
**8**.  Expert Witness for US Attorney – Chicago, IL
   High Rise Apartment Building for FHA
   Condominium FHA Investigation

**9**.  Peer review of "Tool Kit" survey forms for the Project Civic Action.
**10**.  Litigation Consultant for US Attorney - Northern District of Iowa
  3 Hotel Surveys
**11**.  Litigation Consultant for US Attorney - Eastern District of Tennessee
  Resort Timeshare Surveys
  Indoor Waterpark
**12**.  Litigation Consultant for US Attorney - Southern District of Ohio
  2 New Casino Developments
**13**.  Litigation Consultant for US Attorney - Southern District of Alabama
  Restaurants
  Juvenile Justice Court Facility
**14**.  Litigation Consultant for US Attorney - Portland, Oregon
  Misc. ADA Compliance Reviews
**15**.  Litigation Consultant for US Attorney – Northern District of Iowa
  Misc. ADA Compliance Reviews
**16**.  Litigation Consultant for US Attorney – District of New Jersey
  Misc. ADA Compliance Reviews

## "Katrina ADA Help" Project:

The US Department of Justice contracted with me between 2007 - 2012 to consult with the City of New Orleans and Harrison County, Mississippi.  These two communities were dramatically affected by Hurricane Katrina in 2005 and have entered into Settlement Agreements with the United States to ensure compliance with ADA as recovery work and reconstruction is done.

**1**.  On-going consultations with Dr. Ed Blakely and his Recovery Management staff for the City of New Orleans related to the Unified New Orleans Plan for recovery.
**2**.  On-going consultations with other departments of the City of New Orleans, including the Planning Commission, Capital Projects Administration, ADA Coordinator's Office, Public Works, and others.
**3**.  On-going consultations with Harrison County Building Official.
**4**.  ADA Workshop for Guild Hardy Architects, PA – Gulfport, MS.
**5**.  On-going consultations with the ADAAG plan reviewers of the Louisiana State Fire Marshall's office – Baton Rouge, LA.

**6.** Consultation on new entry ramp for a restaurant reconstruction project – New Orleans, LA.

**7.** Consultation on automatic door requirements of ADA in Community College Dining Hall for Guild Hardy Architects, PA – Gulfport, MS.

**8.** Review of curb ramp challenges in French Quarter with Advocacy Center – New Orleans, LA.

**9.** Housing Coalition Accessibility Workshop at Xavier University – New Orleans, LA.

**10.** Consult on Public Restroom accessibility at the New Orleans City Hall.

**11**. Workshop for City of New Orleans Custodial Dept. and Grainger Supply – New Orleans, LA.

**12.** Review of curb ramp modifications for federally funded roadway resurfacing of flooded streets for DPW – New Orleans, LA.

**13.** Review of accessibility at storm evacuation shelters run by the State of Louisiana in Baton Rouge, Hammond, Thibodaux, Lafayette, Alexandria, Monroe, Bastrop, Shreveport & Bossier City.

**14.** Review of accessibility of Armstrong Park, City Tennis Center, City Pool, DA's Office, and 2 District Police Stations.

**15.** Biloxi Lighthouse Visitor's Center accessibility analysis.

**16.** Plan review and site visits for FEMA's Alternative Housing Pilot Program projects in Bayou LaBatre, AL and plan review consultation for Multi-family housing prototype projects by DPZ Architects in New Orleans.

**17.** ADA, 504 & ABA Plan review of prototype fire station design for City of New Orleans.

**18.** ADA Survey of 385,000 sf, 21 story office building proposed as an alternate City Hall for the City of New Orleans.

**19.** Consult on curb ramps in Biloxi CBD for FEMA submerged roads program - Biloxi

**20.** Plan review for Police Station and EMS HQ - Pass Christian, MS

**21.** Plan review for the new Biloxi Community Center and Library - Biloxi.

**22.** Consult for HTNB and the City of New Orleans on accessible curb ramp installations in CBD for FEMA submerged roads program - New Orleans.

**23.** Consult on ABA for manufactured homes companies with contract with FEMA to provide accessible portable homes for emergency shelter along the Gulf Coast.

**24.** Consult with Mississippi Department of Transportation on ADA curb ramp issues - Jackson, MS.

**25.** Plan review of proposed alterations to the Mississippi State University Research Center - NASA's Stennis Space Center

**26.** Consult on Picayune High School Gymnasium alterations - Picayune, MS.

**27.** Consult with ADA Coordinator for the City of Baton Rouge - Baton Rouge, LA.

**28.** Plan review of Proposed New Streetcar Line serving the French Quarter - New Orleans, LA.

**29.** Workshops for Mississippi AIA on the 2010 ADA Standards - Biloxi, Jackson & Southaven.

**30.** Workshops for Mississippi DOT on the ADA public rights-of-way design issues - Hattiesburg, Jackson & Tupelo.

**31.** Webinar on the New ADA Title II regulations for the Mississippi Bar Association's Public Lawyer's Group.

**32.** Workshop for University of Southern Mississippi on 2010 ADA Standards - Hattiesburg.

**33.** Workshop for Mississippi Section Gulf Coast Brach of American Society of Civil Engineers (ASCE) on 2010 ADA Standards - Biloxi.

**34.** Consult on 2010 ADA Standards application for new Bay St. Louis Harbor project - Bay St. Louis, MS.

**35.** Workshop on 2010 ADA Standards application - Harrison County, MS.

**36.** Workshop on 2010 ADA Standards application for new architects at the Mississippi Board of Architects induction meeting - Jackson, MS.

## Curb Ramp and Public "Rights-of-Way" Projects:

**1**. City & County of Honolulu Curb Ramp Transition Plan & ADA Self Evaluation – Honolulu, HI

Evaluation of intersections and planning for $150,000,000.00+ curb ramp plan under Court Order with Wilson Okamoto & Associates Engineers

**2**. County of Hawaii Curb Ramp Transition Plan & ADA Self Evaluation – Hilo, HI

Evaluation of intersections and planning for $6,000,000.00+ curb ramp plan under Court Order with Wilson Okamoto & Associates Engineers

**3**. County of Maui Curb Ramp Transition Plan and ADA Self Evaluation – Maui, Hawaii

Evaluation of intersections and planning for $5,000,000.00+ curb ramp plan under Court Order with Wilson Okamoto & Associates Engineers

**4**. US Department of Transportation ADA Curb

Ramp seminar at Civil Rights Conference – Denver

**5.** Hawaii Commission on Persons with Disabilities Curb Ramp Training Program – Honolulu

**6.** Build-Boston Conference – at invitation of ATBCB for ADA Curb Ramp Seminar – Boston, MA

**7.** Urban Streets Conference – at invitation of ATBCB for Curb Ramp Seminar – Dallas, TX

**8.** "Tools for Life" Symposium – ADA Curb Ramp Seminars – Honolulu, HI

**9.** Selected to serve as Chair of the Curb Ramp Subcommittee on the Public Rights-of-Way Advisory Committee to the US Access Board – Washington, DC (cmte. report available at www.access-board.gov)

**10.** Expert witness retained to conduct state-wide training, review proposed plans and modification methodology regarding curb ramp Transition Plan for roads and highways under the jurisdiction of the State of Arkansas Highways and Transportation Department in Sassar vs. AHTD et al. USDC Case # PB-C-96-466

**11.** Training program for City of Honolulu engineering consultants implementing ADA Curb Ramp Transition Plan

**12.** Training program for APWA of Hawaii on curb ramp case studies - Honolulu, HI

**13.** Peer reviewer on FHWA publication ***Designing Sidewalks and Trails for Access*** - *Part II of II Best Practices Design Guide* by Beneficial Designs, Inc. – September 2001

**14.** Consultant to SCI Planners & Engineers for Hillsborough County, FL curb ramp transition plan survey and analysis - Tampa, FL

**15.** Memphis, TN curb ramp review for Plaintiff in ADA Case.

**16.** Training program for City Engineers - Little Rock, AR

**17.** University of New Mexico Curb Ramp Training Seminar - Albuquerque, NM

**18.** Peer reviewer of New Mexico DOT standard plans for accessible public rights-of-way

**19.** Consultant to Rob Kirk, ASLA on curb ramp alterations at Univ. of Alabama at Birmingham

**20.** Panel Presentation to General Session of the ACB (American Council of the Blind) National Convention on issues related to accessible public rights-of-way. Birmingham, AL

**21.** Workshop on Wayfinding within the Public Rights-of-Way for ATBCB & ITE – Washington, DC

**22.** Peer reviewer of Montana DOT standard plans for accessible public rights-of-way

**23.** Peer reviewer of Ada County, ID standard plans for accessible public rights-of-way for the Transpo Group, Inc.

**24.** TRB Geometrics Convention seminar on curb ramp design and wayfinding – Chicago, IL

**25.** ADA curb ramp seminar for Institute of Transportation Engineers Conventions – Las Vegas, NV & Melbourne, Australia

**26.** Advisory Board Member in Easter Seals "Project Action" program titled *ACCESSIBLE PEDESTRIAN ENVIRONMENT MATERIALS/PROJECTS REVIEW & ANALYSIS* for Adaptive Environments – Boston, MA

**27.** Advisory Panel member for University of Arkansas research project on accessible driveways:

Co-author of Literature Review with Janet Barlow on accessible driveway issues.

Peer Review of Driveway Survey Forms by lead investigator.

**28.** Consultant to The Presidio Trust for accessible streetscape alterations to the Presidio complex – San Francisco, CA

**29.** Consultant on ADA and Title 24 accessibility issues in the public rights-of-way for the Landscape Architecture/Planning Firm of RHAA – Mill Valley, CA

**30.** Co-presenter with Pete Pascua, PE of Wilson Okamoto Corp on ADA accessibility issues in the public rights-of-way for the 2006 ITE Region 6 Conference – Honolulu, HI

**31.** Expert Witness for California Department of Transportation in ADA Curb Ramp Law Suit *Californians for Disability Rights, Inc., et al. v. Caltrans, et al.*

**32.** Expert Witness retained by all parties in the curb ramp accessibility case of *Leserman & CCDC v. City of Boulder, CO, et al.* – Boulder, CO.

**33.** Peer review of San Francisco Department of Public Works proposal for ADA Curb Ramp installation for Mr. Kevin Jensen.

**34.** Consulted with County of Hawaii Traffic Engineers on Accessible On-Street parking issues – Hilo, HI

**35.** FHWA Bike/Ped Coordinator Webinar on ADA requirements for State/Local Governments

**36.** Consult with District of Columbia DPW ADA Coordinator at invitation of US Access Board to provide technical assistance regarding challenging sidewalk access problems at the corner of 18th and K Street, NW - Washington, DC.

**37.** Poster Session at 89th TRB Annual Meeting to present **"Multimodal Driveway Design"** w/

coauthors Gattis, J.; Levinson, H.; Gluck, J.; Barlow, J.; and, Eck, R. based on research under NCHRP Project # 15-35 **"Geometric Design of Driveways"** - Washington, DC.
**38.** ADA Public Rights-of-Way Workshop at the 2012 Institute of Transportation Engineers Midwestern District and 4th **Urban Street** Symposium - Chicago.

# Residential Renovation Projects for Accessibility:

**1.** McLeroy Residence Accessibility Modifications for Jefferson County
   Leeds, AL
**2.** Hardin Residence Accessibility Modifications for Jefferson County
   Center Point, AL
**3.** Residential accessibility modifications for Deon & Tammy Townes – Birmingham
**4.** Hecker residence designed for visitability by disabled friends and colleagues.
**5.** Barnes Residence family room modifications - Monteagle, TN
**6.** Accessible modification schematics for Ms. Sylvia Krewson-Reck – Oahu, Hawaii
**7.** Accessible plan concept for donated home designed by Rives Designers for disabled vet with HelpingAHero.org - Jones Creek, TX
**8.** Consult on new ramp for elderly women as part of the Birmingham Independent Living Resources video project - Birmingham.

# Rehabilitation Act - Sec. 504 & ABA Training or Consulting

**1.** Seminar on 504 for South Carolina Council of Governments (for Woolpert)
   Hilton Head, SC
**2.** US Army Corp of Engineers Health Design ADA/504 Seminar w/ Code Workshop –
   Washington, DC
**3.** US Air Force ADA/504 accessibility training with Code Workshops
   Brooks Air Force Base, TX
**4.** US Capitol Visitor Center Expansion for the Architect of Capitol & RTKL Architects
   Washington, DC
**5.** Plan review of 1st Phase Hope VI "Park Place" apartments - Birmingham, AL
**6.** Peer review of HUD accessibility specifications for temporary housing for disaster

relief – Washington, DC
**7.** Evaluation of Maui County CDBG funded accessibility projects – UFAS compliance.
**8.** Expert Witness for United States Securities and Exchange Commission in complaint regarding the accessibility of the new main headquarters office lobby
   Washington, DC
**9.** Chinatown Gateway Plaza Apartments consult regarding 504 policy discrimination issues vs. life safety issues – Honolulu, HI
**10.** Consultation regarding 504 Facility Compliance with NASA – Washington, DC and the US Space and Rocket Center in Huntsville, AL
**11.** "504 Program Access Boot Camp" for County of Hawaii staff – Hilo, HI
**12.** Consultation regarding 504 Facility Compliance with NASA – Boston Museum of Science for HiSoftware, Inc.
**13.** Consultation regarding 504 Facility Compliance with NASA – Denver Museum of Nature & Science for HiSoftware, Inc.
**14.** "Lima Foxtrot" Project plan review of new accessible housing for disabled veterans in rehab at Lakeshore Rehab Hospital - Homewood, AL
**15.** Consultation regarding 504 Facility Compliance with NASA – Seattle Aquarium for HiSoftware, Inc.
**16.** Consultation regarding 504 Facility Compliance of Bowdon, GA City Hall - Bowdon.
**17.** Consultation regarding 504 Facility Compliance with NASA – Morehead Planetarium on University of North Carolina campus for HiSoftware, Inc.
**18.** Consultation with Entech Engineering, Inc. and Evan Terry Associates regarding accessible curb ramps and routes at the US Capitol complex which are under the jurisdiction of the Architect of the Capitol - Washington, DC.
**19.** Consultation regarding 504 Facility Compliance with NASA – Great Lakes Science Center for HiSoftware, Inc. - Cleveland, OH.
**20.** Litigation Consultant (with Frank Colby, AIA) for law firm suing City of Los Angeles in Sec. 504 facilities compliance claim -
*Independent Living Center of So. Calf., et al. vs City of Los Angeles, et al.*
Civil Action No. CV 12-0551 FMO (PJWx)
US Dist. Court for Central Dist. of Calf.
   Amistad Plaza Apts.- Los Angeles
   Grandview Nine Apts. - Los Angeles
   Buckingham Senior Apts. - Los Angeles
   Broadway Village II Apts. - Los Angeles
   Casa Verde Apts. - Los Angeles

**21**. Consultation regarding 504 Facility Compliance with NASA – St. Louis

# Fair Housing Accessibility Consultations:

**1**. Peer review for John Wiley & Sons Publishing on 1999 Fair Housing Design Book that was not published

**2**. Fair Housing Design review of Wayne White Condo in Belle Mer Condo Tower–Navarre Beach, FL

**3**. National Association of Home Builders Fair Housing Seminar at National Convention – Dallas

**4**. Institute of Real Estate Managers Seminar - Birmingham, AL*

**5**. 504/Fair Housing Consultation to Peoria Housing Authority – Chicago, IL

**6**. Fair Housing Act Review of Site Work for Meadow Ridge Apts. - Hamilton, OH

**7**. STAR Access Seminar on Accessible Housing Design - Birmingham, AL

**8**. Peer review of CD-Rom resource guide to Fair Housing Act by E&A Services - Tuscaloosa, AL

**9**. Plan review of 1st Phase Hope VI "Park Place" apartments - Birmingham, AL

**10**. Expert Witness in Fair Housing/ADA/504 evaluation of student housing at Emory University, Atlanta

**11**. Evaluation of Proposed Live/Work Design - Birmingham, AL

**12**. Training Workshop on FHAG for Haskell Corporation w/ CodeAccess - Jacksonville, FL

**13**. Peer reviewer of HUD FHA Training Course by Int'l Code Council and Bearing Point - Washington

**14**. Plan Review for 2 Condo Projects and Clubhouse in Florida for Dungan Nequette Architects

**15**. Consultation for Defense in Oahu Apartment Complex with Paul Sheriff – Honolulu

**16**. Consultation for Pettinaro Company developers in Delaware – 3 complexes

**17**. Consultation for Lindsey Development – Fayetteville, AR

**18**. Consultation for One Inverness Place condos designed by Turner Batson Architects – Birmingham, AL

**19**. In-house FHAG workshop for Dungan Nequette Architects – Birmingham, AL

**20**. Consultation for Shoppes of Miramar condos designed by Turner Batson Architects – Birmingham, AL

**21**. Plan Review of apartment complex for Garrison Barrett Group – Homewood, AL

**22**. Plan Review of townhouses for Dungan Nequette Architects – Birmingham, AL

**23**. Plan Review of Apartment complex for Dungan Nequette Architects – Auburn, AL

**24**. Expert Witness for plaintiff in Westcott apartment complex case – Fairfax, VA

**25**. Plan review and consult on FHA for Alys Beach Development – Florida Panhandle

**26**. Plan review consult on FHA for prototype multi-family Katrina Relief housing ("Carpet Cottages") developed by DPZ Architects.

**27**. Plan review and FHA site visit for Gray, Hong, Bills & Assoc., Inc. Civil Engineers for Terraces Condos (aka, Waihuna Village IV) – Waipio, HI

**28**. Site visit to 215 N. King Street Condominiums for FHA evaluation – Honolulu, HI

**29**. Site Visit to Watermark Condos project for FHA evaluation – Waikiki, HI

**30**. FHA Plan review of Los Corales Condominiums by Landry Architects, Inc. – South Padre Island, TX

**31**. FHA seminar for Erdreich Architects – Birmingham, AL

**32**. FHA consult with MVE Architects on new high-rise condo project – Honolulu, HI

**33**. FHA and ADA consult for Resort Condos in Palm Springs, CA.

**34**. Expert Witness for Relman & Dane Law Firm in DC for two national FHA design and construction law suits - site visits and reports for 7 apartment complexes in Nevada, 3 complexes in Florida and 3 complexes in California.

**35**. Peer review of Moana Pacific Condo plans for Paul Sheriff, Inc. - Honolulu.

**36**. Peer review of Keola La'i Condo plans for Paul Sheriff, Inc. - Honolulu.

**37**. Numerous confidential FHA Litigation consults - nationwide.

**38**. Survey of FHA accessibility at the Compass Point Condominiums - Gulf Shores, AL.

**39**. Plan reviews, training, construction analysis and site surveys of new apartments for Florida based construction company - Southeastern states.

**40**. Plan reviews for National apartment complex owner.

**41**. FHA Plan reviews for RTKL architects.

**42**. FHA Plan reviews of new apartment complexes for LIV Development:
       Whitestone Apts. - Austin, TX
       Miller Creek Apts. - Memphis
       Parkside Apts. - Birmingham

White Palm Apts. - Florida

**43.** FHA Plan reviews and site surveys of 9 apartment complexes as a joint expert witness for H.H. Hunt and NFHA - North Carolina, South Carolina, Maryland and Virginia.

**44.** FHA Plan reviews and survey of high rise apartment buildings for East Coast Law Firm - undisclosed location (TR & TL).

**45.** Plan Review for Hannah Lofts Project for Dungan Nequette Architects - Birmingham

**46.** Consult on Norman Ventures - Privada town house project - Miami Beach, FL

**47.** Consult on purchase of Asbury at Ross Bridge apartments - Birmingham.

**48.** FHA Survey & Consult for LIV Development apartment property - Little Rock, AR

**49.** Confidential Surveys and Plan Reviews for major real estate investment group (I)
   Portland, OR
   Boston, MA
   Denver, CO
   Atlanta, GA

**50.** Confidential Surveys and Plan Reviews for major real estate investment group (K)
   Kansas
   Arizona
   Illinois
   Indiana
   Idaho

**51.** Plan Review of The Villages apartment development for Cornerstone Group – Miami

52. FHA Consultation 57 Ocean Project – Miami Beach, FL

53. Various FHA Plan Reviews and Site Inspections for LIV Development

54. Various FHA Plan Reviews and Site Inspections for Crest Residential

55. Various FHA Plan Reviews and Site Inspections for Nequette Architects

56. Various FHA Plan Reviews and Site Inspections for 5th Dimension Architects

57. FHA Plan Review for Flagler Oasis – Miami

58. Avalon Bay South Miami Plan Review

59. Axel Row Apartments Plan Review – Birmingham

60.

# Miscellaneous Accessibility Projects:

**1.** Consultant to Evan Terry Assoc. for 1994 ADA Facilities Compliance Workbook Supplement

**2.** *Architectural Graphics Standards* -

Contributor on ADA design issues - Nationwide Use

**3.** Expert Witness for City of Birmingham Law Dept. - Birmingham, AL

**4.** Miami International Airport Accessible Ticket Counter Evaluation for Dade Aviation Consultants

**5.** Litigation Consultant for Defense in Paul & Bernice Smith vs. Wal-Mart Stores, Inc.
   USDC Eastern District of Tennessee Docket No. 1:95-CV-332

**6.** Peer reviewer of the John Wiley & Son's publication *Architectural Building Codes: A Graphic Reference* by Mr. James Scott, AIA

**7.** Peer reviewer of the John Wiley & Son's publication *Beautifully Usable: A Universal Design Primer* by Ms. Denise Arnold.

**8.** Peer reviewer for Mr. David Ballast of draft white paper on ADA Construction Tolerances for the American Concrete Institute and the US Access Board.

# Architectural Projects:

### Medical Projects

**1.** Alterations and Additions to Surgery Dept. at Russell Hospital
   Alexander City, AL

**2.** Alterations and Additions to Oakwood Psychiatric Hospital
   Windsor, MO

**3.** AMI Brookwood Outpatient Clinic
   Leeds, AL

**4.** Med-Aire Outpatient Clinic
   Baton Rouge, LA

**5.** Dental Clinic
   Baton Rouge, LA

### Educational Projects

**1.** Education Building for Bethel Baptist Church - Moody, AL

**2.** Education Building for St. John Methodist Church - Baton Rouge, LA

### Industrial Projects

**1.** Renovations to Shapiro International Truck Sales and Service
   Baton Rouge, LA

**2.** Exxon Oil Refinery CTDL II Facility
   Baton Rouge, LA

**3.** Attic Away Mini-Storage Building
   Chalkville, AL

**4.** Attic Away Mini-Storage Building

Cahaba Heights, AL

**Office Building Projects**
**1**. Attic Away Office Building
     Cahaba Heights, AL
**2**. Louisiana State Board of Architects Office
(competition) - Baton Rouge, LA
**3**. Credit Services Office Building
     Baton Rouge, LA

**Retail Projects**
**1**. Birmingham Shoe and Luggage Repair
     AmSouth Harbert Plaza - Birmingham, AL
**2**. Destination Travel Branch Office
     AmSouth Harbert Plaza - Birmingham, AL
**3**. Dave Cook Sporting Goods Stores
     7 locations throughout Colorado
**4**. Taffy's Bicycle Shop
     Baton Rouge, LA
**5**. Cole's Florist Shop
     Baton Rouge, LA
**6**. Blue Sky Gift Shop
     Baton Rouge, LA

**Church Sanctuary Projects**
**1**. Abundant Life Church
     Denham Springs, LA
**2**. Walker Baptist Church
     Walker, LA
**3**. St. John's United Methodist Church
     Baton Rouge, LA
**4**. Laurel Lea Baptist Church
     Baton Rouge, LA
**5**, Oak Grove Baptist Church
     Baton Rouge, LA

**Restaurant Projects**
**1**. LaVille Cafeteria Renovations at LSU
     Baton Rouge, LA
**2**. Highland Cafeteria Renovation at LSU
     Baton Rouge, LA
**3**. Hunter's Hill Restaurant
     Denver, CO w/ Jim Morgan
**4**. Victoria's Restaurant
     Newark, NJ
**5**. Hans Brinker Restaurant
     Denver, CO w/ Jim Morgan
**6**. Steak-N-Bake Restaurant w/ Jim Morgan
     Crossroads Mall - Boulder, CO
**7**. Scotto Pizza Restaurants
     Lexington, KY w/ Jim Morgan
     Dayton, OH w/ Jim Morgan
     Aurora, CO w/ Jim Morgan
**8**. Parkway Pizza Restaurants
     Topeka, KS w/ Jim Morgan
     Denver, CO w/ Jim Morgan

**9**. Del Taco Restaurant Renovations
 24 locations in Georgia, Alabama, South
Carolina and North Carolina
**10**. Civil Engineering and Business Admin.
Building Café - LSU
     Baton Rouge, LA

**Banks and Financial Institutions**
**1**. Eaton Bank Renovations w/ Jim Morgan
     Eaton, CO
**2**. Western State Bank
     Baton Rouge, LA
**3**. ICI Federal Credit Union
     Baton Rouge, LA
**4**. Western National Bank
     Kaplan, LA

**Law Office Projects**
**1**. Vincent, Hasty, Arnold and Whaley
 Vestavia Commerce Center - Birmingham, AL
**2**. Ritchie and Rediker
     Birmingham, AL
**3**. Johnson and Barton
     AmSouth Harbert Plaza - Birmingham, AL
**4**. Johnson, Sterling and Paul
     International Park Building III -
Birmingham, AL
**5**. Lewis, Martin and Duncle
     AmSouth Harbert Plaza - Birmingham, AL
**6**. Chamblee, Harris and Coey
     Beacon Ridge Towers - Birmingham, AL
**7**. Constangy, Brooks and Smith
     AmSouth Harbert Plaza - Birmingham, AL
**8**. Bradley, Arant, Rose and White
     AmSouth Harbert Plaza - Birmingham, AL
**9**. Sadler, Sullivan, Herring and Sharp
     AmSouth Harbert Plaza - Birmingham, AL
**10**. Berkowitz, Lefkovits, Isom and Kushner
     AmSouth Harbert Plaza - Birmingham, AL

**Accounting Firm Projects**
**1**. Arthur Anderson and Company
     SouthTrust Tower - Birmingham, AL
     Green Building - Birmingham, AL
     AmSouth Harbert Plaza - Birmingham, AL
**2**. Till, Eddleman and Hester
     Mountain Brook Center – Mtn. Brook, AL
**3**. Coopers and Lybrand
     AmSouth Harbert Plaza - Birmingham, AL
**4**. White & Company - Birmingham, AL

**Residential Projects**
**1**. Pellegrin Residence
     Castle Pines, CO
**2**. Hardin Residence
     Birmingham, AL

**3**. McKleroy Residence
     Leeds, AL
**4**. Parker Residence
     Saratoga, CA
**5**. Hecker Residence I
     Baton Rouge, LA
**6**. Goldberg Residence w/ Jim Morgan
     Denver, CO
**7**. Siegle Residence w/ Jim Morgan
     Denver, CO
**8**. Bookman Residence w/ Jim Morgan
     Denver, CO
**9**. Casagrande Residence w/ Jim Morgan
     Denver, CO
**10**. Silverman Residence w/ Jim Morgan
     Denver, CO
**11**. Knutson Residence w/ Jim Morgan
     Denver, CO
**12**. Summers Residence
     Baton Rouge, LA
**13**. McKnight Residence
     Baton Rouge, LA
**14**. Smith Residence
     Baton Rouge, LA
**15**. Roth Residence
     Baton Rouge, LA
**16**. Peace Development Spec House
     Baton Rouge, LA
**17**. Briarwood Estates (3) Spec Houses
     Lafayette, LA
**18**. Shaffer Residence
     Boulder, CO
**19**. Hallika-Peshok Residence w/ Jim Morgan
     Boulder, CO
**20**. Hecker Residence (my home)
     Mountain Brook, AL
**21**. Hecker Residence II
     Baton Rouge, AL
**22**. Robertson Garage
     Mountain Brook, AL

## Mass Media Presentations by/about Bill Hecker, AIA:

**1**. WERC Birmingham Radio Interview on ADA Facility Compliance with Jim Terry, AIA*
**2**. Television News Interview KITV Honolulu – Curb Ramp Transition Plan for Honolulu 1999
**3**. Interviewed for Article on ADA Facilities Compliance in the Birmingham Business Journal*
**4**. Article on ADA Facilities Compliance in the American Schools & University Magazine*
**5**. ADA Facilities Compliance Video for American Bankers Assoc. - Washington, DC*
**6**. Interviewed for Business Alabama Magazine article on ADA Facilities Compliance*
**7**. Interviewed for Birmingham News article on ADA Facilities Compliance*
**8**. Interviewed for Birmingham News article on Jefferson County, AL ADA Transition Plan*
**9**. Interviewed for Business Alabama Monthly on ADA Facilities Compliance*
**10**. Book review of *ADA Facilities Compliance Workbook* – Handicapped Travel Newsletter
**11**. Book review of *ADA Facilities Compliance Workbook* – New York Construction News
**12**. Interviewed for Birmingham News article on ADA Seminars by Evan Terry Associates, Inc.*
**13**. Interviewed for Birmingham News article on Auburn University ADA Workshop*
**14**. Montgomery Advertiser New article on ADA plan review of Intermodal Transportation Center
**15**. Interview by WLOX TV of Biloxi, MS regarding my appointment as DOJ funded consultant to Harrison County, MS for the Katrina ADA Help program.
http://www.wlox.com/story/7127684/harrison-county-gets-ada-help

## Detailed List of Publications and Articles

### Bill Hecker, AIA was principal author on the following books:

...*ADA Facilities Compliance-A Practical Guide* by Evan Terry Assoc.-John Wiley Publ. New York- Copyright '93
...*The ADA Facilities Compliance Workbook* by Evan Terry Assoc.-John Wiley Publ. New York- Copyright '92
...*ADA Design: "Sneaky Mistakes to Avoid"* by Bill Hecker, AIA for A/E/C Systems Int', Inc.

Seminar - Copyright '96
...*ADA Curb Ramp Design Workbook* by Bill Hecker, AIA , self published - Copyright '98

### Bill Hecker, AIA was involved in the development of the following books:

**1**. Peer reviewer on FHWA publication ***Designing Sidewalks and Trails for Access*** - *Part II of II Best Practices Design Guide* by Beneficial Designs, Inc. – September 2001
**2**. Peer reviewer on the publication **Accessible Rights-of-Way** – *Sidewalks, Street Crossing, Other Pedestrian Facilities – A Design Guide* by the US Access Board – November 1999
**3**. Co-Author for "Case Studies" on the publication **Accessible Public Rights-of-Way – Planning and Designing for Alterations** by the Public Rights-of-Way Access Advisory Committee to the US Access Board – July 2006

### Bill Hecker, AIA was author/co-author of the following articles:

**1**. *"Why IDP?"* - AIA Colorado Field Report Newsletter; Fall 1987.
**2**. *"How will the Americans with Disabilities Act Affect You?"* - American School & University Journal; December, 1991.
**3**. *"Architect offers advice on conducting ADA site evaluations"* - Thompson Publishing Group ADA Compliance Guide Monthly Bulletin; 11-92.
**4**. *"Areas of Rescue Assistance Design Guide Page"* - Architectural Graphic Standards by John Wiley & Sons Publisher; 9th Edition.
**5**. "Designing for ADA in Public Rights-of-Way – Ten Handy Tips for Engineers" – **Westernite** The Official Publication of District 6 of the Institute for Transportation Engineers. March/April 2006 Edition. Volume 60, No. 2. Co-authored by Pete Pascua, PE of Wilson Okamoto Corporation.
**6**. "Accessibility Laws – An Ounce of Prevention is Worth a Pound of Cure" **– The Construction Lawyer,** a publication of ABA Publishing for the American Bar Association Forum on the Construction Industry. Winter 2008 Edition – Volume 28, Number 1, January 2008. Co-authored with Eric Berg, Esq. of DLA Piper in Chicago.
**7**. Driveway Design Practices: Overview (Paper # P08-1253) awarded **"Best Paper"** at the *Third Urban Street Symposium on Highway Geometric Design* in Seattle June 26, 2007 by the Transportation Research Board of the

National Academy of Science. Coauthors: Herbert S. Levinson; Jerome Steven Gluck; Janet Barlow; and, Ronald W. Eck.

**8. Guide for the Geometric Design of Driveways** (NCHRP Report # 659) Published August 2010 by the National Cooperative Highway Research Program of the Transportation Research Board - a component of the National Academy of Science. Research funded by the American Association of State Highway and Transportation Officials in cooperation with the Federal Highway Administration. Coauthors: Herbert S. Levinson; Jerome Steven Gluck; Janet Barlow; and, Ronald W. Eck.

**9. Transportation Research Record Journal of the Transportation Research Board, No. 2198 - Pedestrians 2010**. The paper published in this journal is titled: *"Multimodal Driveway Design"* and is located at pages 116-123. My coauthors were: Gattis, J.; Levinson, H.; Gluck, J.; Barlow, J.; and, Eck, R. based on research under NCHRP Project # 15-35 **"Geometric Design of Driveways."**

# Cases in which Bill Hecker has testified:

**1. Tierney vs. Alamo Rent-a-Car**, Case #: CV-95-N-1908-5 (ND Ala. - 1996) – *Deposition & Court Testimony for Plaintiff*

**2. Gleaves vs. Handy TV, Inc**. Case #: CV9601736 (Jefferson County Alabama Court – 1997) – *Deposition Testimony for Plaintiff*

**3. United States of America vs. Days Inn of America, Inc.; HFS, Inc.; Dilip Patel; Iyer & Associates and R.E. Huffman Corporation** Case #: CIV –S-96 260 WBS GGH (USDC Eastern District of Calf. – 1997) – *Deposition Testimony for the United States*

**4. United States of America vs. Days Inn of America, Inc., et al.** Case #: 96-2028 (USDC Central District of Ill., Danville/Urbana Division – 1997) – *Deposition Testimony for the United States*

**5. United States of America vs. Days Inn of America, Inc., et al.**

Case #: 96-26 (USDC Eastern District of Kentucky - Pikeville Division – 1997) – *Deposition Testimony for the United States*

**6. United States of America vs. Days Inn of America, Inc., et al.** Case #: CIV No. 96-5012 (USDC District of South Dakota, Western Division – 1997) – *Deposition Testimony for the United States*

**7. Bartlett vs. State of Hawaii** – Court Testimony in "Plaintiff's Motion for a Preliminary Injunction" Case #: Civil No. 97-01608 ACK (USDC District of Hawaii – 1998) – *Court Testimony as Third Party Neutral*

**8. Salmond, et al vs. County of Teton**, - Case #: CV-97-130-GF-PGH (USDC District of Montana, Great Falls Division – 1997) – *Deposition Testimony for Plaintiff*

**8. MEMPHIS CENTER FOR INDEPENDENT LIVING, Plaintiff, v. MRB WINDYKE, LP, et.al, Defendants, and UNITED STATES OF AMERICA, Plaintiff-Intervenor, v. MAKOWSKY CONSTRUCTION COMPANY, et.al., Defendants.** Case #: 01-2069 D/Bre (USDC Western District of Tennessee) - *Deposition Testimony and Court Testimony in a Mini-Trial for Preliminary Injunction Motion for the United States.*

**9. United States of America vs. Edward Rose & Sons, et al.** Case #: 02-73518 (USDC Eastern District of Michigan) – *Deposition Testimony for the United States*

**10. Kami Z. Barker, et al. vs. Emory University, et al.** Case #: 1:02-CV-2450-CC (USDC Northern District of Georgia : Atlanta Division) – *Deposition Testimony for the Plaintiff.* See Order denying exclusion of Hecker testimony in this case by Judge Clarence Cooper on 3/3/06. *Trial Testimony for the Plaintiff* August 2006.

**11. United States of America v. Shanrie Company, Inc. et al.** Case # 05-306 (DRH) USDC Southern District of Illinois – *Deposition & Trial Testimony for the United States. March 2006 & May 2008 respectively.*

**12. United States of America v. Tanski, et al.**
Civil Case No. 1:04-CV-714
USDC Northern District of New York
*Trial Testimony for the United States. October 2007.*

**13. Stephen Poe v. Lone Star Steakhouse, et al.** Civil Action No.: CV-04-7170
Circuit Court of Jefferson County, Alabama.
*Deposition testimony for the Plaintiff. January 2008.*

**14. Californians for Disability Rights, Inc., et al. v. California Department of Transportation, et al.**
Civil Action No.: C 06-5125 SBA. USDC Northern District of California. *Deposition testimony for the Defendant. June 2009.*

**15. Richard Skaff, et al. v. County of Maui.**
Civil No. CV 01-00666 HG/KSC. USDC District of Hawaii. Hearing on transition plan implementation challenges under settlement agreement. *Court Testimony for Defendant.*

**16. Ivana Kirola, et al. v. The City and County of San Francisco ("the City"), et al. Defendants.** Civil Action No. C07-3685 SBA. USDC Northern District of California San Francisco/Oakland Division. *Deposition & Trial testimony for the Defendant. April 2010 & May 2011.*

**17. Carr v. Food Giant Supermarkets, Inc**.
Civil Action No.: 1:14-CV-0142-MEF
USDC Middle District of Alabama, Southern Div. *Deposition Testimony for Defendant. May 2015.*

**18. Stelly v. Cambridge Downs, LLC, et al.**
Civil Action No. 2014-EV-002610-D
State Court of Fulton County, Georgia
*Deposition Testimony for Plaintiff. June 2016.*

**19. Independent Living Center of southern California, et al. v. City of Los Angeles, CA**
Case No. 12-CV-00551 FMO (PJMx)
USDC Central District of California, Western Div. *Deposition Testimony for Plaintiff. January 2017.*

**20. Steven Nachshen v. Tishman Speyer Properties, LP; Landmark Properties, LLC, and, Top of the Rock, LLC**
Case No. 1:16-cv-01022-ER US District Court – Southern District of New York
*Deposition Testimony for Defendant. June 2017.*

**21. The National Federation of the Blind, Inc., et al. v. Wal-mart Associates, Inc.**
Case No. 18-cv-03301-RDB
US District Court –District of Maryland
*Deposition Testimony for Defendant-March 2021*

**22. Liberty Resources, Inc., et al. v. City of Philadelphia –** Case No. 2:19-cv-03846
US District Court – Eastern District of Pennsylvania. *Deposition Testimony for Defendant. June 2021.*

**--- END ---**

*\* above denotes work done by Bill while employed at Evan Terry Associates, PC*
*\*\* above denotes work done by Hecker Design, Ltd. under contract to Evan Terry Associates, PC*

*(Updated Last on January 3, 2023)*

# EXHIBIT 2



**U.S. Department of Justice**

Civil Rights Division

Housing and Civil Enforcement Section

SHR:MSM:BP:CMM:JAK
DJ 175-16-135

U.S. Mail:   950 Pennsylvania Ave, N.W.
             Washington, D.C. 20530
Overnight:   1800 G Street, N. W.
             Suite 7062
             Washington, D.C. 20006
Telephone: (202) 514-4713
Facsimile: (202) 514-1116

April 9, 2013

Via Electronic Mail and First-Class Mail

Mr. John H. Catlin
Mr. Douglas A. Mohnke
LCM Architects
819 South Wabash Avenue, Suite 509
Chicago, Illinois 60605

Re:     *United States v. Post Properties, Inc., et al.*, Civ. A. No. 10-1866 (RJL) (D.D.C.)

Dear Mr. Catlin and Mr. Mohnke:

The United States has retained the services of LCM Architects to conduct field inspections of eleven properties owned and managed by Post Properties.  The properties are:

- Post Alexander in Atlanta, Georgia
- Post Riverside in Atlanta, Georgia
- Post Stratford in Atlanta, Georgia
- Post Parkside (Atlanta) in Atlanta, Georgia
- Post Glen in Atlanta, Georgia
- Post Collier Hills in Atlanta, Georgia
- Post Parkside (Orlando) in Orlando, Florida
- Post Luminaria in New York, New York
- Post Spring in Smyrna, Georgia
- Post Massachusetts in Washington, D.C.
- Post Gateway Place in Charlotte, North Carolina

Based on the data and other factual material gathered during these inspections, the United States has asked that you provide an opinion whether the properties listed above comply with the applicable accessibility standard(s) for multi-family properties designed and built for first occupancy after March 13, 1991.

*LCM*

Exhibit No. _4_

10' 1' 13

- 2 -

This letter serves to request that, when composing the written report containing any opinions related to the accessibility of the above properties, you identify cross slopes, running slopes, ramps, and curb ramps only when they meet or exceed the following criteria:

a.  <u>Cross Slopes</u>: Please identify cross slopes of 3% or greater.

b.  <u>Running Slopes</u>: Please identify running slopes of 6% or greater.

c.  <u>Ramps and Curb Ramps</u>: Please identify ramps and curb ramps of 9% or greater.

In addition, for features measured with a tape measure, please identify features using the following criteria:

d.  <u>Dimensions between 3" and 12"</u>: For dimensions that should measure between 3" and 12" under the applicable standard(s), please identify features that are non-compliant with the applicable standard(s) by ½" or more.

e.  <u>Dimensions between 12" and 96"</u>: For dimensions that should measure between 12" and 96" under the applicable standard(s), please identify features that are non-compliant with the applicable standard(s) by 1" or more.

The United States requests that the above criteria be used in an effort to streamline the presentation of the issues in this case. The above criteria do not constitute a legal determination that features below the listed thresholds are compliant with the Fair Housing Act or the Americans with Disabilities Act. Nor are the above criteria intended to alter LCM Architects' inspection process or analysis under the applicable architectural standard(s). Again, the above thresholds are intended to narrow the issues for litigation.

Thank you for your consideration. We look forward to continuing to work with you.

Sincerely,

Steven H. Rosenbaum
Chief

By: Beth Pepper

Beth Pepper
Attorney
Housing and Civil Enforcement Section

# EXHIBIT 3

**Exhibit 3 - Measurement Review Summary Table with Number of Violations**

| Development Name | Development Address | Pass/Fail | Exhibit Number | # Dwelling Unit/Entry and Path of Travel Violations | # Dwelling Unit/Bathroom Violations | # Dwelling Unit/Kitchen Violations | # Dwelling Unit/Other Violations | # Common Use Areas/Facilities Violations | # Accessible Route Violations |
|---|---|---|---|---|---|---|---|---|---|
| 12013 S Eggleston Apartments | 12013 S Eggleston Ave | Fail | 8 | N/A | 2 | 2 | 1 | 1 | 4 |
| 1225 S Michigan Apartments | 1225 S Michigan Ave | Fail | 9 | N/A | 3 | 4 | 1 | 9 | 6 |
| 1451 N Washtenaw Ave Apartments | 1451 N Washtenaw Ave | Fail | 10 | 1 | 5 | 2 | 2 | N/A | 4 |
| 1826 S Avers Apartments | 1826 S Avers | Fail | 11 | 1 | 5 | 1 | 2 | 1 | 5 |
| 3108 W Walton Apartments | 3108 W Walton | Fail | 12 | N/A | 5 | 2 | N/A | 1 | 4 |
| 3151-3159 W Argyle St Apartments | 3151-3159 W Argyle St | Fail | 13 | 1 | 4 | N/A | 2 | N/A | 3 |
| 3502 W Van Buren St Apartments | 3502 W Van Buren St | Fail | 14 | 1 | 5 | 1 | 1 | 1 | 3 |
| 4119-4129 S Ellis, 1029 E 41st Apartments | 4119-4129 S Ellis, 1029 E 41st | Fail | 15 | 1 | 2 | 1 | N/A | N/A | 1 |
| 436-42 E 47th Street Apartments | 423-42 E 47th St | Fail | 16 | 1 | N/A | 2 | 2 | N/A | 3 |
| 45th Cottage Grove Apartments | 4424 and 4434S Cottage Grove | Fail | 17 | N/A | 3 | N/A | 2 | 10 | 8 |

**Exhibit 3 - Measurement Review Summary Table with Number of Violations**

| Development Name | Development Address | Pass/Fail | Exhibit Number | # Dwelling Unit/Entry and Path of Travel Violations | # Dwelling Unit/Bathroom Violations | # Dwelling Unit/Kitchen Violations | # Dwelling Unit/Other Violations | # Common Use Areas/Facilities Violations | # Accessible Route Violations |
|---|---|---|---|---|---|---|---|---|---|
| 4945 W Monroe St Apartments | Located at the Southeast corner of W Monroe Street and S Lavergne Avenue, the Northeast corner of W Adams Street and S Lavergne Avenue and the Northwest corner of W Adams Street and S Lavergne Avenue | Fail | 18 | 2 | N/A | N/A | 1 | N/A | 5 |
| 5001-5005 W Monroe Apartments | 5001-5005 W Monroe | Fail | 19 | 1 | 5 | N/A | 1 | 2 | 5 |
| 6213 S Greenwood Apartments | 6213-15 S Greenwood Ave | Fail | 20 | 1 | 6 | 2 | 1 | N/A | 3 |
| 647-49 E. 50th Pl. Apartments | 647-49 E. 50th Pl. | Fail | 21 | 1 | 5 | 1 | 1 | 1 | 5 |
| 7010 S Clyde Street Apartments | 7010 S Clyde Street | Fail | 22 | N/A | 5 | 2 | 1 | 3 | 4 |
| 7024 S Clyde Ave Apartments | 7024 S Clyde Ave | Fail | 23 | N/A | 6 | N/A | 3 | 1 | 1 |

**Exhibit 3 - Measurement Review Summary Table with Number of Violations**

| Development Name | Development Address | Pass/Fail | Exhibit Number | # Dwelling Unit/Entry and Path of Travel Violations | # Dwelling Unit/Bathroom Violations | # Dwelling Unit/Kitchen Violations | # Dwelling Unit/Other Violations | # Common Use Areas/Facilities Violations | # Accessible Route Violations |
|---|---|---|---|---|---|---|---|---|---|
| 7200 S Lowe Ave Apartments | 7200 S Lowe Ave | Fail | 24 | N/A | 5 | N/A | 1 | 2 | 4 |
| 7901 S Kingston Ave Apartments | 7901 S Kingston Ave | Fail | 25 | 2 | 4 | 1 | 1 | 1 | 1 |
| 8031-35 S. Drexel Avenue Apartments | 8031-35 S. Drexel Ave. | Fail | 26 | N/A | 5 | 1 | N/A | 1 | 3 |
| 825-827 W Sunnyside Apartments | 825-827 W Sunnyside Avenue, 829-837 W Sunnyside Avenue, 839-845 W Sunnyside Avenue and 820 W Agatite Avenue | Fail | 27 | N/A | 5 | 1 | 3 | N/A | 5 |
| African Village Apartments | 400-08 S Laramie Avenue and 418-24 S Laramie Avenue | Fail | 28 | 1 | 5 | N/A | 1 | 3 | 2 |
| Austin Shore II Apartments | 169 Le ClaireAvenue | Fail | 29 | 1 | 5 | 2 | 1 | 1 | 4 |
| Caroline Hedger Apartments | 6400 and 6418 N Sheridan | Fail | 30 | N/A | 3 | N/A | 1 | 2 | 8 |
| Churchview Manor Senior Apartments | 2642 W 63rd St | Fail | 31 | N/A | 5 | N/A | 1 | 15 | 2 |

**Exhibit 3 - Measurement Review Summary Table with Number of Violations**

| Development Name | Development Address | Pass/Fail | Exhibit Number | # Dwelling Unit/Entry and Path of Travel Violations | # Dwelling Unit/Bathroom Violations | # Dwelling Unit/Kitchen Violations | # Dwelling Unit/Other Violations | # Common Use Areas/Facilities Violations | # Accessible Route Violations |
|---|---|---|---|---|---|---|---|---|---|
| Churchview Supportive Living Apartments | 2626 W 63rd St | Fail | 32 | N/A | 1 | N/A | N/A | 21 | 8 |
| Clifton Magnolia Apartments | 4416 N Clifton Ave | Fail | 33 | N/A | 4 | 1 | 2 | N/A | 2 |
| Concordia Pl. Apartments | 13037 S Daniel Dr | Fail | 34 | 3 | 5 | 2 | 4 | 13 | 9 |
| Courtyard Commons Apartments | 4815-4825 W Monroe St | Fail | 35 | N/A | 5 | N/A | 1 | 1 | 2 |
| Drexel Court Apts. | 4611-17 S Drexel | Fail | 36 | N/A | 5 | 1 | 2 | 1 | 6 |
| Eden Development Apartments | 5532-34 S Indiana Ave | Fail | 37 | 4 | 7 | 1 | 3 | 7 | 3 |
| Edgewater Shores Apartments | 5326 N Winthrop Ave | Fail | 38 | N/A | 6 | 1 | 1 | 2 | 4 |
| Evergreen Towers Apartments | 1342 N Cleveland Ave | Fail | 39 | N/A | 5 | 2 | 5 | 24 | 3 |
| Faith Residences | 5644-56 W Washington Boulevard, 114 N Parkside Avenue and 124 N Parkside Avenue | Fail | 40 | 2 | N/A | 2 | 3 | 3 | 9 |
| Germano Milgate Apartments | 8760-66 S Burley | Fail | 41 | 1 | 4 | 2 | 2 | 22 | 7 |

**Exhibit 3 - Measurement Review Summary Table with Number of Violations**

| Development Name | Development Address | Pass/Fail | Exhibit Number | # Dwelling Unit/Entry and Path of Travel Violations | # Dwelling Unit/Bathroom Violations | # Dwelling Unit/Kitchen Violations | # Dwelling Unit/Other Violations | # Common Use Areas/Facilities Violations | # Accessible Route Violations |
|---|---|---|---|---|---|---|---|---|---|
| Hancock House Apartments | 12045 S Emerald Ave | Fail | 42 | N/A | 8 | 2 | N/A | 8 | 2 |
| Harriet Tubman Apartments | 5751 S Michigan Ave | Fail | 43 | 2 | N/A | 3 | 1 | N/A | 4 |
| Harrison Court Apartments | 2910, 2930 and 2950 W. Harrison | Fail | 44 | 2 | N/A | N/A | 5 | 1 | 3 |
| Hazel Winthrop Apartments | 4426-28 Magnolia, 912-14 N Montrose, 852-54 W Sunnyside and 4813-15 N Winthrop | Fail | 45 | N/A | 3 | 4 | 1 | N/A | 2 |
| Hearts United III Apartments | 4217 S St Lawrence Ave | Fail | 46 | N/A | 7 | 7 | 7 | 2 | 27 |
| Highland Tudor Apartments | 7010-12 and 7016-18 South Cregier Avenue | Fail | 47 | 2 | 7 | 2 | N/A | 17 | 7 |
| Homan Square IV Apartments | 3607 W Polk St | Fail | 48 | 1 | 2 | 2 | 2 | 16 | 18 |
| Homan Square VI Apartments | West Arthington St and South Central Park Ave | Fail | 49 | 6 | N/A | 2 | 3 | 1 | 8 |
| Hope Manor Apartments | 3053 W Franklin Blvd | Fail | 50 | 1 | 7 | N/A | 1 | 8 | 4 |
| Keeler Roosevelt Apartments | 4200 W Roosevelt Rd | Fail | 51 | 1 | 6 | 4 | 1 | 1 | 5 |

**Exhibit 3 - Measurement Review Summary Table with Number of Violations**

| Development Name | Development Address | Pass/Fail | Exhibit Number | # Dwelling Unit/Entry and Path of Travel Violations | # Dwelling Unit/Bathroom Violations | # Dwelling Unit/Kitchen Violations | # Dwelling Unit/Other Violations | # Common Use Areas/Facilities Violations | # Accessible Route Violations |
|---|---|---|---|---|---|---|---|---|---|
| Kilpatrick Renaissance Apartments | 4117 N Kilpatrick Ave | Fail | 52 | N/A | 6 | 1 | 2 | 15 | 1 |
| KLEO Art Residences | 5510 S Michigan Avenue | Fail | 53 | N/A | 3 | 7 | 2 | 14 | 5 |
| La Estancia Apartments | 2753 W. Division Street, 3228 W. Division Street, and 3248 W. Division Street | Fail | 54 | 1 | 3 | 3 | 3 | 6 | 11 |
| La Paz Pl. Apartments | 3535-37 West Dickens Avenue/ 2049-53 North Drake Avenue; 3600-02 West Shakespeare Avenue/ 2142-46 North Central Ave; 3604-08 West Shakespeare Avenue; 3643 West Shakespeare Avenue, 3518 and 520 West Dickens | Fail | 55 | 1 | 5 | 1 | 3 | 3 | 3 |

**Exhibit 3 - Measurement Review Summary Table with Number of Violations**

| Development Name | Development Address | Pass/Fail | Exhibit Number | # Dwelling Unit/Entry and Path of Travel Violations | # Dwelling Unit/Bathroom Violations | # Dwelling Unit/Kitchen Violations | # Dwelling Unit/Other Violations | # Common Use Areas/Facilities Violations | # Accessible Route Violations |
|---|---|---|---|---|---|---|---|---|---|
| Lakefront Phase II Apartments | 13 buildings: 1060 E 41st Street, 4131 and 4143 Lake Park Avenue, 1106 and 1140 42nd Pl., 1110, 1113, 1120, 1125, and 1137 Bowen and 4116 and 4130 Oakenwald | Fail | 56 | N/A | N/A | N/A | 2 | 2 | 8 |
| Lakeview Towers | 4550 N Clarendon | Fail | 57 | 2 | 6 | 2 | 3 | 10 | 3 |
| Leland Hotel Apartments | 1201 W Leland Ave | Fail | 58 | N/A | 8 | 1 | 4 | 9 | 1 |
| Lincoln Village Senior Apartments | 6057 N Lincoln Ave | Fail | 59 | N/A | 2 | N/A | N/A | 9 | 4 |
| Malden Arms Apartments | 4725-4727 N Malden | Fail | 60 | 2 | 4 | N/A | N/A | 3 | 4 |
| Malden Avenue Apartments | 4520 N Malden St | Fail | 61 | 2 | 2 | 1 | 2 | 1 | 5 |
| Margaret Ford Manor Apartments | 4500-12 S Wabash | Fail | 62 | N/A | 2 | 2 | N/A | 16 | 2 |
| Mayfair Commons | 4444 W Lawrence | Fail | 63 | 1 | 3 | 1 | 1 | 20 | 3 |

**Exhibit 3 - Measurement Review Summary Table with Number of Violations**

| Development Name | Development Address | Pass/Fail | Exhibit Number | # Dwelling Unit/Entry and Path of Travel Violations | # Dwelling Unit/Bathroom Violations | # Dwelling Unit/Kitchen Violations | # Dwelling Unit/Other Violations | # Common Use Areas/Facilities Violations | # Accessible Route Violations |
|---|---|---|---|---|---|---|---|---|---|
| Montclare Senior Residences of Calumet Heights | 9401 S Stony Island | Fail | 64 | N/A | 4 | N/A | 8 | 14 | 10 |
| New Moms Apartments | 5317 W Chicago Ave | Fail | 65 | N/A | 1 | 1 | 1 | 5 | 1 |
| Northtown Library and Apartments | 6800 N Western Ave | Fail | 66 | N/A | 2 | N/A | 2 | 2 | 7 |
| Park Boulevard Phase 2b Apartments | 3637 and 3643 S State Street, 4 & 10 and 16 & 22W 37th Street and 3720 S Dearborn Street | Fail | 67 | 1 | 1 | 1 | N/A | 6 | 18 |
| Park Douglas Apartments | 19 buildings; management office at 2721 W Roosevelt | Fail | 68 | N/A | 1 | 1 | N/A | 2 | 8 |
| Park Towers Apartments | 5140 S Hyde Park | Fail | 69 | N/A | 5 | 3 | 6 | 13 | 1 |
| Parkside Of Old Town P2A Apartments | 544 W Oak st | Fail | 70 | 4 | 4 | 4 | 8 | 15 | 18 |
| Paseo Boricua Apartments | 1154 N Campbell Ave | Fail | 71 | 2 | N/A | 20 | 2 | 20 | 7 |
| Paul G Stewart V Apartments | 410 E Bowen Ave | Fail | 72 | N/A | 3 | 3 | 9 | 19 | 7 |
| Porta Coeli Residences | 2300 E 99th St | Fail | 73 | N/A | N/A | N/A | 1 | 22 | 3 |

**Exhibit 3 - Measurement Review Summary Table with Number of Violations**

| Development Name | Development Address | Pass/Fail | Exhibit Number | # Dwelling Unit/Entry and Path of Travel Violations | # Dwelling Unit/Bathroom Violations | # Dwelling Unit/Kitchen Violations | # Dwelling Unit/Other Violations | # Common Use Areas/Facilities Violations | # Accessible Route Violations |
|---|---|---|---|---|---|---|---|---|---|
| Prairie Park Apartments | 5610 S Calumet Aveue & 331 E 56th Street, 5525 S Prairie Avenue & 315 E 55th Pl., and 5539 S Prairie Avenue &314 E 56th Street | Fail | 74 | N/A | 6 | 3 | 5 | 8 | N/A |
| Pullman Suites Apartments | 3 E 112th Pl | Fail | 75 | 2 | N/A | 1 | N/A | 13 | 14 |

**Exhibit 3 - Measurement Review Summary Table with Number of Violations**

| Development Name | Development Address | Pass/Fail | Exhibit Number | # Dwelling Unit/Entry and Path of Travel Violations | # Dwelling Unit/Bathroom Violations | # Dwelling Unit/Kitchen Violations | # Dwelling Unit/Other Violations | # Common Use Areas/Facilities Violations | # Accessible Route Violations |
|---|---|---|---|---|---|---|---|---|---|
| Renaissance II Apartments | 1016 E 62nd Street; 6219-21 S University and 6225 S University; 1128-30 E 62nd Street & 6156-58 S University; 1113-15 & 1109 E 62nd Street; 6201 & 6209 E Greenwood; 6156-58 E Greenwood and 1020 & 1128E 62nd Street; 1016 E 62nd Street and 957-59 East 62nd Street | Fail | 76 | 11 | 10 | 1 | 4 | 3 | 9 |
| Roentgen School - Switching Station Lofts | 15 S Homan | Fail | 77 | 2 | 4 | 3 | 2 | 7 | 2 |
| Roosevelt Square II Apartments | Clustered around the intersection of W Roosevelt Road and S Throop Street | Fail | 78 | 3 | 1 | 2 | 4 | 1 | 19 |

**Exhibit 3 - Measurement Review Summary Table with Number of Violations**

| Development Name | Development Address | Pass/Fail | Exhibit Number | # Dwelling Unit/Entry and Path of Travel Violations | # Dwelling Unit/Bathroom Violations | # Dwelling Unit/Kitchen Violations | # Dwelling Unit/Other Violations | # Common Use Areas/Facilities Violations | # Accessible Route Violations |
|---|---|---|---|---|---|---|---|---|---|
| Roseland Village Apartments | 10400 S Michigan Ave | Fail | 79 | 2 | 1 | N/A | N/A | 2 | 5 |
| Rosenwald Courts Apartments | 4648 S Michigan | Fail | 80 | N/A | N/A | N/A | N/A | 18 | 10 |
| Rowan Trees Apartments | 500 W Englewood Ave | Fail | 81 | N/A | 2 | N/A | 2 | 13 | 3 |
| Ruth Shriman House Apartments | 4036-46 N Sheridan | Fail | 82 | N/A | 2 | 3 | 4 | 10 | 2 |
| San Miguel Apartments | 907 W Argyle St | Fail | 83 | 1 | 2 | N/A | 3 | 2 | 3 |
| Sankofa House Apartments | 4041 W Roosevelt Rd | Fail | 84 | N/A | N/A | N/A | N/A | 11 | 4 |
| Schiff Residences | 1244 N Clybourn Ave | Fail | 85 | N/A | 9 | 1 | 3 | 12 | 2 |
| Senior Suites of Central Station Apartments | 1400-12 S Indiana Avenue | Fail | 86 | N/A | 2 | 9 | 10 | 16 | 1 |
| Senior Suites of Hegewisch Apartments | 13550 S Avenue O | Fail | 87 | N/A | 5 | 7 | 1 | 15 | 7 |
| Senior Suites of Jefferson Park Apartments | 5400 N North W Hwy | Fail | 88 | N/A | 3 | 5 | N/A | 9 | 4 |
| Senior Suites of Ravenswood Manor Apartments | 2800-14 W Montrose | Fail | 89 | N/A | 6 | 6 | 2 | 4 | 4 |

**Exhibit 3 - Measurement Review Summary Table with Number of Violations**

| Development Name | Development Address | Pass/Fail | Exhibit Number | # Dwelling Unit/Entry and Path of Travel Violations | # Dwelling Unit/Bathroom Violations | # Dwelling Unit/Kitchen Violations | # Dwelling Unit/Other Violations | # Common Use Areas/Facilities Violations | # Accessible Route Violations |
|---|---|---|---|---|---|---|---|---|---|
| St. Edmonds Tower Annex Apartments | 6151 S Michigan Ave | Fail | 90 | 1 | N/A | 5 | 1 | 8 | 2 |
| St. Edmunds Manor Apartments | 5947 S Indiana Ave | Fail | 91 | 2 | 4 | 1 | N/A | N/A | 6 |
| St. Sabina Apartments | 1222 W 79th St | Fail | 92 | N/A | 2 | 1 | 2 | 21 | 5 |
| The Diplomat Hotel / Buffet Pl. Apartments | 3208 N Sheffield | Fail | 93 | N/A | N/A | N/A | 1 | 4 | N/A |
| The Pershing Apartments | 3845 S State St | Fail | 94 | N/A | N/A | 1 | 3 | 12 | N/A |
| The Pomeroy Apartments | 5650 N Kenmore Ave | Fail | 95 | N/A | 2 | 1 | 1 | 15 | 3 |
| The Spaulding Apartments | 1750 N Spaulding Avenue | Fail | 96 | N/A | 10 | N/A | 2 | 7 | 5 |
| Town and Garden Apartments | 1448 N Sedgwick St | Fail | 97 | N/A | 2 | 1 | N/A | 10 | 6 |
| Vision House Apartments | 514 E 50th Pl | Fail | 98 | N/A | 4 | N/A | 4 | 3 | 7 |
| Westhaven Park Apartments | 105 N Wood St | Fail | 99 | 1 | 4 | 7 | 2 | N/A | 2 |
| Willard Square Apartments | 4843-45 S St. Lawrence | Fail | 100 | N/A | 1 | 2 | N/A | 3 | 8 |
| Woodlawn Michigan Apartments | 5630 S Michigan and 6446 S Kenwood Avenue | Fail | 101 | N/A | 4 | 2 | 1 | 4 | 12 |
| Wrightwood Senior Apartments | 2815 W 79th St | Fail | 102 | N/A | N/A | 4 | N/A | 14 | 4 |

**Exhibit 3 - Measurement Review Summary Table with Number of Violations**

| Development Name | Development Address | Pass/Fail | Exhibit Number | # Dwelling Unit/Entry and Path of Travel Violations | # Dwelling Unit/Bathroom Violations | # Dwelling Unit/Kitchen Violations | # Dwelling Unit/Other Violations | # Common Use Areas/Facilities Violations | # Accessible Route Violations |
|---|---|---|---|---|---|---|---|---|---|
| YMCA Washington Park Apartments | 5000 S Indiana Ave | Fail | 103 | N/A | 2 | 1 | 2 | 3 | 4 |

# EXHIBIT 4

**Exhibit 4 - Measurement Review Information and Coverage Table**

| Development Name | Development Address | Tranche | Coverage | Exhibit Number | Pass/Fail |
|---|---|---|---|---|---|
| 12013 S Eggleston Apartments | 12013 S Eggleston Ave | Federal Rehab | Section 504, ADA | 8 | Fail |
| 1225 S Michigan Apartments | 1225 S Michigan Ave | Non-Federal New | Section 504, FHA, ADA | 9 | Fail |
| 1451 N Washtenaw Ave Apartments | 1451 N Washtenaw Ave | Non-Federal Rehab | Section 504 | 10 | Fail |
| 1826 S Avers Apartments | 1826 S Avers | Federal Rehab | Section 504, ADA | 11 | Fail |
| 3108 W Walton Apartments | 3108 W Walton | Non-Federal Rehab | Section 504 | 12 | Fail |
| 3151-3159 W Argyle St Apartments | 3151-3159 W Argyle St | Non-Federal Rehab | Section 504 | 13 | Fail |
| 3502 W Van Buren St Apartments | 3502 W Van Buren St | Non-Federal Rehab | Section 504 | 14 | Fail |
| 4119-4129 S Ellis, 1029 E 41st Apartments | 4119-4129 S Ellis, 1029 E 41st | Federal Rehab | Section 504, ADA | 15 | Fail |
| 436-42 E 47th Street Apartments | 423-42 E 47th St | Federal Rehab | Section 504, ADA | 16 | Fail |
| 45th Cottage Grove Apartments | 4424 and 4434S Cottage Grove | Non-Federal New | Section 504, FHA, ADA | 17 | Fail |

**Exhibit 4 - Measurement Review Information and Coverage Table**

| Development Name | Development Address | Tranche | Coverage | Exhibit Number | Pass/Fail |
|---|---|---|---|---|---|
| 4945 W Monroe St Apartments | Located at the Southeast corner of W Monroe Street and S Lavergne Avenue, the Northeast corner of W Adams Street and S Lavergne Avenue and the Northwest corner of W Adams Street and S Lavergne Avenue | Non-Federal Rehab | Section 504 | 18 | Fail |
| 5001-5005 W Monroe Apartments | 5001-5005 W Monroe | Federal Rehab | Section 504, ADA | 19 | Fail |
| 6213 S Greenwood Apartments | 6213-15 S Greenwood Ave | Federal Rehab | Section 504, ADA | 20 | Fail |
| 647-49 E. 50th Pl. Apartments | 647-49 E. 50th Pl. | Non-Federal Rehab | Section 504, ADA | 21 | Fail |
| 7010 S Clyde Street Apartments | 7010 S Clyde Street | Non-Federal Rehab | Section 504 | 22 | Fail |
| 7024 S Clyde Ave Apartments | 7024 S Clyde Ave | Federal Rehab | Section 504 | 23 | Fail |
| 7200 S Lowe Ave Apartments | 7200 S Lowe Ave | Federal Rehab | Section 504 | 24 | Fail |
| 7901 S Kingston Ave Apartments | 7901 S Kingston Ave | Federal Rehab | Section 504, ADA | 25 | Fail |

**Exhibit 4 - Measurement Review Information and Coverage Table**

| Development Name | Development Address | Tranche | Coverage | Exhibit Number | Pass/Fail |
|---|---|---|---|---|---|
| 8031-35 S. Drexel Avenue Apartments | 8031-35 S. Drexel Ave. | Federal Rehab | Section 504, ADA | 26 | Fail |
| 825-827 W Sunnyside Apartments | 825-827 W Sunnyside Avenue, 829-837 W Sunnyside Avenue, 839-845 W Sunnyside Avenue and 820 W Agatite Avenue | Federal Rehab | Section 504, ADA | 27 | Fail |
| African Village Apartments | 400-08 S Laramie Avenue and 418-24 S Laramie Avenue | Federal Rehab | Section 504 | 28 | Fail |
| Austin Shore II Apartments | 169 Le ClaireAvenue | Non-Federal Rehab | Section 504 | 29 | Fail |
| Caroline Hedger Apartments | 6400 and 6418 N Sheridan | Non-Federal Rehab | Section 504, ADA | 30 | Fail |
| Churchview Manor Senior Apartments | 2642 W 63rd St | Non-Federal New | Section 504, FHA | 31 | Fail |
| Churchview Supportive Living Apartments | 2626 W 63rd St | Federal New | Section 504, FHA, ADA | 32 | Fail |
| Clifton Magnolia Apartments | 4416 N Clifton Ave | Non-Federal Rehab | Section 504, ADA | 33 | Fail |
| Concordia Pl. Apartments | 13037 S Daniel Dr | Non-Federal Rehab | Section 504, ADA | 34 | Fail |

**Exhibit 4 - Measurement Review Information and Coverage Table**

| Development Name | Development Address | Tranche | Coverage | Exhibit Number | Pass/Fail |
|---|---|---|---|---|---|
| Courtyard Commons Apartments | 4815-4825 W Monroe St | Federal Rehab | Section 504, ADA | 35 | Fail |
| Drexel Court Apts. | 4611-17 S Drexel | Non-Federal Rehab | Section 504 | 36 | Fail |
| Eden Development Apartments | 5532-34 S Indiana Ave | Federal Rehab | Section 504, ADA | 37 | Fail |
| Edgewater Shores Apartments | 5326 N Winthrop Ave | Non-Federal Rehab | Section 504 | 38 | Fail |
| Evergreen Towers Apartments | 1342 N Cleveland Ave | Federal New | Section 504, FHA, ADA | 39 | Fail |
| Faith Residences | 5644-56 W Washington Boulevard, 114 N Parkside Avenue and 124 N Parkside Avenue | Federal Rehab | Section 504, ADA | 40 | Fail |
| Germano Milgate Apartments | 8760-66 S Burley | Non-Federal Rehab | Section 504, ADA | 41 | Fail |
| Hancock House Apartments | 12045 S Emerald Ave | Non-Federal New | Section 504, FHA, ADA | 42 | Fail |
| Harriet Tubman Apartments | 5751 S Michigan Ave | Federal Rehab | Section 504, ADA | 43 | Fail |
| Harrison Court Apartments | 2910, 2930and2950 W. Harrison | Non-Federal Rehab | Section 504, ADA | 44 | Fail |

**Exhibit 4 - Measurement Review Information and Coverage Table**

| Development Name | Development Address | Tranche | Coverage | Exhibit Number | Pass/Fail |
|---|---|---|---|---|---|
| Hazel Winthrop Apartments | 4426-28 Magnolia, 912-14 N Montrose, 852-54 W Sunnyside and 4813-15 N Winthrop | Federal Rehab | Section 504, ADA | 45 | Fail |
| Hearts United III Apartments | 4217 S St Lawrence Ave | Non-Federal New | Section 504, FHA, ADA | 46 | Fail |
| Highland Tudor Apartments | 7010-12 and 7016-18 South Cregier Avenue | Federal Rehab | Section 504, ADA | 47 | Fail |
| Homan Square IV Apartments | 3607 W Polk St | Federal New | Section 504, FHA, ADA | 48 | Fail |
| Homan Square VI Apartments | West Arthington St and South Central Park Ave | Federal New | Section 504, FHA, ADA | 49 | Fail |
| Hope Manor Apartments | 3053 W Franklin Blvd | Federal New | Section 504, FHA, ADA | 50 | Fail |
| Keeler Roosevelt Apartments | 4200 W Roosevelt Rd | Non-Federal Rehab | Section 504, ADA | 51 | Fail |
| Kilpatrick Renaissance Apartments | 4117 N Kilpatrick Ave | Federal New | Section 504, FHA, ADA | 52 | Fail |
| KLEO Art Residences | 5510 S Michigan Avenue | Non-Federal New | Section 504, FHA, ADA | 53 | Fail |