# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

|  |  |  |
|---|---|---|
| ACCESS LIVING OF METROPOLITAN CHICAGO, INC., an Illinois non-profit corporation, | ) ) ) ) |  |
|  | ) |  |
| Plaintiff, | ) | Case No. 1:18-cv-03399 |
| V. | ) ) |  |
|  | ) | Honorable Edmond E. Chang |
| CITY OF CHICAGO, an Illinois municipal corporation, | ) ) |  |
|  | ) |  |
| Defendant | ) ) |  |

## DEFENDANT CITY OF CHICAGO'S RESPONSE TO PLAINTIFF'S LOCAL RULE 56.1(B)(3) STATEMENT OF ADDITIONAL MATERIAL FACTS

Pursuant to Local Rule 56.1(c)(2), Defendant City of Chicago (the "City") responds to Plaintiff Access Living's Local Rule 56.1(b)(3) Statement of Additional Material Facts (Dkt. No. 314). The responses which state "admitted" mean that the statement of fact at issue or part thereof is admitted solely for the purposes of summary judgment.[1]

1.      The City of Chicago ("the City") concedes that it is a public entity subject to Title II of the Americans with Disabilities Act, and that it has "received federal financial assistance within the meaning of Section 504 [of the Rehabilitation Act of 1973]." Dkt. 27, Def.'s Answer at ¶¶ 21-22.

RESPONSE: Admitted in part and Disputed in part.

---

[1] Herein, the City references exhibits attached to its Local Rule 56.1 Statement of Material Facts by Defendant City of Chicago in Support of its Motion for Summary Judgment. Dkt. No. 309; 309-1-39. These are denominated by the abbreviation "City Ex." In addition, attached hereto in Response to Plaintiff's Local Rule 56.1(b)(3) Statement of Additional Material Facts are additional exhibits, sequentially numbered, 40 through 46, which are also denominated by the abbreviation "City Ex."

The City objects to this Additional Fact No. 1 to the extent it states or implies that the City is liable under or subject to ADA Title II or Section 504, as it pertains to the claims raised by Access Living, as legal argument in violation of Local Rule 56.1(d)(4) that should be disregarded.

Subject to and without waiving the foregoing objection, it is admitted that the City is a public entity under Title II of the Americans with Disabilities Act ("ADA Title II") and that it received federal financial assistance within the meaning of Section 504 of the Rehabilitation Act of 1973 ("Section 504"). The City disputes that it is liable under or subject to ADA Title II or Section 504 as it pertains to the claims raised by Access Living. The City refers the Court to its Motion for Summary Judgment, Memorandum in Support, and its Reply in Support in dispute of Access Living's Additional Fact No. 1.

2.      The City has received more than $3.6 billion in federal housing and community development funds from the U.S. Department of Housing and Urban Development ("HUD") since 1988. Pl. Ex. 28, Decl. of Michael Allen at 3. The City draws on this and other funding to provide grants and loans to private developers and non-profits to facilitate the construction or rehabilitation of tens of thousands of apartment units operated as affordable housing. *See also* Pl. Ex. 5, Affordable Rental Housing Resource List, Chicago Dep't of Housing, available at https://www.chicago.govIcityIen/depts/doh/provdrs/renters/svcs/affordable-rental-housing-resource-list.html (last viewed Nov. 13, 2023).

RESPONSE: Admitted.

The City objects that Additional Fact No. 2 is not an "additional" fact because it simply restates facts set forth in the City's SOF (Dkt. No. 309), ¶¶ 2, 7, in violation of Local Rule 56.1(b)(3). The City objects that the total amount of funds received from HUD is immaterial to the questions presented by City's Motion for Summary Judgment. The City objects to the extent that Additional Fact No. 2 states or implies that the City loaned or granted more than $3.6 billion for the construction or rehabilitation of housing units as not supported by the cited materials. Specifically, the City objects that the asserted number "tens of thousands" of apartment units is not supported by the cited materials, in violation of Local Rule 56.1(d)(2). The City objects that

the assertion "since 1988" is not supported by the cited materials, in violation of Local Rule

56.1(d)(2), which analyze data going back to 1993, not 1988.

Subject to and without waiving these objections, admitted.

3.      The Department of Housing ("DOH") is the City department that currently
performs functions related to affordable housing development, including administering grant
funds. Pl. Ex. 29, City 30(b)(6) Dep. Tr. at 30:7-13; *see also* Pl. Ex. 5. Before DOH, these functions
were performed by departments using different names, including the Department of Planning and
Development, the Department of Housing and Economic Development, and the Department of
Economic Development. Pl. Ex. 29, City 30(b)(6) Dep. Tr. at 9:1-17.

RESPONSE:  Admitted.

4.      On its official website, the City states, "[t]he Department of Housing (DOH) works
to develop and support affordable housing initiatives citywide. Affordable rental housing plays an
important role in meeting the housing needs of low-income Chicagoans. From individuals and
families to seniors and the homeless, the City helps to build, rehabilitate and preserve rental
housing to ensure that it is available to residents throughout Chicago." Pl. Ex. 5.

RESPONSE:  Admitted that Additional Fact No. 4 is an accurate quotation of the cited document.

5.      On its official website, the City states, "One of the Department of Housing's chief
responsibilities is to work with private developers to increase the supply of affordable housing in
every Chicago neighborhood through a litany of targeted programs." Pl. Ex. 30, *For Developers*,
Chicago          Dep't          of          Housing,          available          at
https://www.chicago.gov/city/en/depts/doh/provdrs/developers.html (last viewed Nov. 13, 2023).

RESPONSE:  Admitted that Additional Fact No. 5 is an accurate quotation of the cited document.

6.      In an instructional document for developers, the City states, "All developers
seeking DOH funds or other assistance to rehab, construct, or refinance multi-family affordable
rental housing developments [through the Multi-Family Housing Financial Assistance program]
must complete and submit the Multi-Family Housing Financial Assistance Application." Pl. Ex.
31, *Multi-Family Housing Financial Assistance Application Instructions* at 3, Chicago Dep't of
Housing,                              available                              at
https://www.chicago.govIcontent/dam/cityIdepts/doh/qap/qap_2023/2023%20Multifamily%20A
pplication%20Instructions%20and%20Policies_Updated%206.9.23.pdf (last viewed Nov. 13,

2023). Developers must submit "detailed architectural plans" as part of the application process. *Id.* at 13.

RESPONSE: Disputed in part and Admitted in part.

The City disputes the quotation in Additional Fact No. 6 and its use of bracketed language. The document cited does not use the complete term "Multi-Family Housing Financial Assistance program." *See generally*, Pl. Ex. 31. The remainder of Additional Fact No. 6 is admitted.

7.      The Multi-Family Housing Financial Assistance Application Instructions identify a dozen or more programs, initiatives, and funding sources. Pl. Ex. 31 at 3-13. Developers seeking any funds from any of the eight (8) sources described at pp. 3-5 therein must complete the Multi-Family Housing Financial Assistance Application. Pl. Ex. 32, Multi-Family Housing Financial Assistance Application 2023, Chicago Dep't of Housing, available at chrome- extension:// efaidnbmnnnibpcajpcglclefindmkaj/https://www.chicago.gov/content/dam/cityIdepts/ doh/qap/qap_2023/2023_mf_application_FILLABLEFormat%20.pdf(last viewed Nov. 13, 2023).

RESPONSE: Disputed in part and Admitted in part.

The City disputes Additional Fact No. 7 reference to any of the "eight" sources as pages 3-5 of Plaintiff's Ex. 31 lists no less than 14 potential sources, including from third parties, CHA, IHDA, and HUD. Pl. Ex. 31 at 3-5. The remainder of Additional Fact No. 7 is admitted.

8.      DOH describes its myriad avenues of supporting affordable housing development as "Affordable Housing Programs," and lists the Multi-Family Housing Financial Assistance program among them. Pl. Ex. 33, Inclusionary Housing Task Force Staff Report at 24--25, Chicago Dep't      of      Housing,      available      at      chrome-extension:// efaidnbmnnnibpcajpcglclefindmkaj/https://www.chicago.govIcontent/dam/cityIdepts/ doh/ihtf/doh_ihtf_report.pdf (last viewed Nov. 13, 2023).

RESPONSE: Disputed in part and Admitted in part.

The City objects to Additional Fact No. 8 as immaterial. The cited document (Pl. Ex. 33) concerns the City's affordable requirements ordinance, activities, and properties which are not the subject of this lawsuit. *See, e.g.*, Dkt. No. 1, Complaint, ¶ 2; City Ex. 1 (Dkt. No. 185).

Subject to and without waiving the foregoing objections, the City disputes that the term "Multi-Family Housing Financial Assistance program" appears in Pl. Ex. 33. The remainder of Additional Fact No. 8 is admitted.

9. Through the Multi-Family Housing Financial Assistance program, the City bundles federal and other funds and "encourages developers to apply for public funds and other subsidies to build and rehabilitate affordable rental properties in Chicago." *Id.* at 25; see also Pl. Ex. 34, Multi-Family Financial Assistance Applications, Chicago Dep't of Housing, available at https://www.chicago.govIcityIen/depts/doh/provdrs/developers/svcs/multi-family-assistance.html (last viewed Nov. 13, 2023).

RESPONSE: Disputed in part and Admitted in part.

The City objects to Additional Fact No. 9 as immaterial. The cited document (Pl. Ex. 33) concerns the City's affordable requirements ordinance, activities, and properties which are not the subject of this lawsuit. *See* Dkt. No. 1; City Ex. 1 (Dkt. No. 185). The City objects that the assertion "the City bundles federal and other funds" is unsupported by any of the cited documents, in violation of Local Rule 56.1(d)(2), as such phrase appears nowhere in Pl. Ex. 33 or 34.

Subject to and without waiving the foregoing objections, the City disputes that the term "Multi-Family Housing Financial Assistance program" appears in any of the cited documents. *See* Pl. Exs. 33, 34. It is admitted that the quotation in Additional Fact No. 9 appears in Pl. Ex. 33.

10. In its Five Year Affordable Housing Plan for 2009-2013, the City stated that it had "invested more than $4.5 billion in local state and federal funds to create, improve and maintain more than 170,000 houses and apartments for people of modest means. These homes not only have improved the quality of life for those thousands of Chicagoans, they have helped revive and sustain entire neighborhoods … The Mayor's commitment to affordable housing has been laid out in three successive five-year plans, beginning in 1993." Pl. Ex. 35, Accepting the Challenge: Chicago's Five Year Affordable Housing Plan for 2009-2013 at 3, Chicago Dep't of Comm. Dev., available at https://www.chicago.gov/content/dam/city/progs/general/affordablechicagofiles/2009-2013_Affordable_Housing_Plan.pdf (last visited Nov. 13, 2023).

RESPONSE: Admitted that Additional Fact No. 10 is an accurate quotation of the cited document.

11.     The City's Five Year Housing Plan for 2019-2023 states that the City "will continue to work with and through local partners to invest in targeted development that builds on the existing assets in these neighborhoods to pave the way for private investment. This improved quality of life and new development will help to attract new residents." Pl. Ex. 36, One Chicago: Housing Strategies for a Thriving City: Five Year Housing Plan 2019-2023 at 17, Chicago Dep't of Housing, available at chrome-extension: https://www.chicago.gov/content/dam/cityIdepts/dcd/Housing%20Programs/20733_37_5_Year_Plan_Report_final_WEB_C.pdf (last visited Nov. 13, 2023).

RESPONSE:  Admitted that Additional Fact No. 11 is an accurate quotation of the cited document.

12.     The City issues quarterly reports boasting about its progress toward increasing the affordable housing stock. *See*, *e.g.*, Pl. Ex. 37, 2010 First Quarter Progress Report; Pl. Ex. 38, 2016 First Quarter Progress Report; Pl. Ex. 39, 2022 Second Quarter Progress Report; *see also* Pl. Ex. 40, Tamley Dep. Tr. at 66:10-24 (MOPD aware of quarterly reports but did not verify units provided in reports); Pl. Ex. 29, City 30(b)(6) Dep. Tr. at 162:19-163:22.

RESPONSE:  Subject to objection, Admitted.

The City objects to Additional Fact No. 12 and its reference to "boasting about its progress toward increasing the affordable housing stock" as unsupported by the materials cited and should be disregarded, in violation of Local Rule 56.1(d)(2).

Subject to and without waiving the foregoing objection, it is admitted that the City issues periodic reports, variously including the title "Progress Report," that include a report on the City's funding or tax credit activities.

13.     DOH enters into loan and regulatory agreements ("Agreements") with developers that require developers to comply with federal, state, and local requirements, including Section 504 of the Rehabilitation Act of 1973 ("Section 504"), the Americans with Disabilities Act ("ADA"), and the Fair Housing Act ("FHA") (collectively, "Federal Accessibility Requirements"). Def. Ex. 8 at 2.27, 2.32; Def. Ex. 14 at 6.01; Def. Ex. 18 at Sec. 8; Def. Ex. 20 at 2.29; Def. Ex. 28 at 2.30; Def. Ex. 29 at 4.1.3.8; Def. Ex. 33 at 6.01.

RESPONSE:  Subject to objection, Admitted.

Additional Fact No. 13 attempts to establish, as fact, the enforceability and Plaintiff's interpretation of agreement provisions.  The City objects to Additional Fact No. 13 to the extent it

asserts a legal interpretation of the agreement terms or enforceability thereof. Such assertion is legal argument in violation of Local Rule 56.1(d)(4) that should be disregarded. Subject to and without waiving the foregoing objections, Additional Fact No. 13 is admitted.

14.    The Agreements authorize the City to enforce a borrower's compliance with the Federal Accessibility Requirements. Def. Ex. 8 at Sec. 7.1 ("[T]he City and its successors and assigns, without regard to whether the City or its successors and assigns is an owner of any land or interest therein to which these covenants relate, may institute and prosecute any proceeding at law or in equity to abate, prevent or enjoin any such violation or attempted violation or to compel specific performance by the Borrower of its obligations hereunder."); *id.* at Sec. 17 (City retains right to inspect property); Def. Ex. 15 at 8.01, 8.02 ("[T]he City may pursue any available remedy at law or in equity by suit, action, mandamus or other proceeding to ... enforce and compel the performance of the duties and obligations of the Borrower as herein set forth…"); *id.* at 12.02 (City retains access to all portions of premises); Def. Ex. 18 at 15.8 (City has the option to exercise all rights in event of default); *id.* at 31 (City retains access to all parts of premises); Def. Ex. 20 at 6.1 (City has remedies "without regard to whether the City is an owner of the land."); Def. Ex. 27 at 6.2 (City can take any action at law and equity that appears necessary or desirable); Def. Ex. 29 at 8.2 (City's remedies); *id.* at 5.17 (City retains right of access to premises).

RESPONSE: Subject to objection, Admitted.

Additional Fact No. 14 attempts to establish, as fact, the enforceability and Plaintiff's interpretation of agreement provisions. The City objects to Additional Fact No. 14 to the extent it asserts a legal interpretation of the terms or enforceability thereof. Such assertion is legal argument in violation of Local Rule 56.1(d)(4) that should be disregarded. The City objects to the use of the phrase "enforce a borrower's compliance with the Federal Accessibility Requirements," as Additional Fact No. 14 refers to contractual terms, not a federal statute. Subject to and without waiving the foregoing objections, Additional Fact No. 14 is admitted.

15.    The Agreements authorize DOH to enter and inspect affordable housing developments to assess and ensure compliance with Federal Accessibility Requirements and other federal requirements, at any point during the life of the loan. Def. Ex. 8 at Sec. 17 (City's right to inspect property); Def. Ex. 15 at 12.02 (City's access to all portions of premises); Def. Ex. 18 at 31 (City's access to all portions of premises); Def. Ex. 29 at 5.17 (City's right of access to premises).

RESPONSE: Subject to objection, Admitted.

Additional Fact No. 15 attempts to establish, as fact, the enforceability and Plaintiff's interpretation of agreement provisions. The City objects to this Additional Fact No. 15 to the extent it asserts a legal interpretation of the terms or enforceability thereof. Such assertion is legal argument in violation of Local Rule 56.1(d)(4) that should be disregarded. The City objects to the use of the phrase "ensure compliance with Federal Accessibility Requirements," as Additional Fact No. 15 refers to contractual terms, not a federal statute.

Subject to and without waiving the foregoing objections, Additional Fact No. 15 is admitted.

16. Pursuant to the Agreements, the City imposes detailed substantive and procedural requirements on borrowers for purposes of monitoring and enforcing borrower compliance with dozens of federal, state, and local requirements that do not concern accessibility. The Agreements detail how borrowers must document compliance and set remedies for noncompliance. Def. Ex. 18 at Sec. 19 (detailed rules and compliance structure related to federal and local "developer's employment obligations"); Def. Ex. 20 at Sec. 8 (prevailing wage for contractors and subcontractors), Sec. 9 (developer and contractors commit to minimum construction costs to be expended to minority- and women-owned businesses), Sec. 10 (requiring employment of City residents), Sec. 21 (anti-corruption provision prohibiting business relationship with City elected officials), Ex. B (covenant on unit configuration and rent levels), and Ex. C (annual owner certification report); Def. Ex. 8 at C0266415-452 (subjecting work to requirements of Housing Act Section 3 and other commitments); Def. Ex. 14 at C0524011-036 (special condition regarding minority and women business enterprise commitment); Def. Ex. 35 at Sec. 10 (employment obligations); Def. Ex. 29 at 8.2 (City's remedies).

RESPONSE: Subject to objection, Admitted.

Additional Fact No. 16 attempts to establish, as fact, the enforceability and Plaintiff's interpretation of contractual provisions. The City objects to Additional Fact No. 16 to the extent it asserts a legal interpretation of the terms or enforceability thereof. Such assertion is legal argument in violation of Local Rule 56.1(d)(4) that should be disregarded. The City objects to the use of the phrase "enforcing borrower compliance," as Additional Fact No. 16 refers to contractual terms, not a federal, state, or local law.

Subject to and without waiving the foregoing objections, Additional Fact No. 16 is admitted.

17.     DOH describes how it exercises detailed oversight prior to, during, and after construction or rehabilitation of the developments in its HOME Long Term Monitoring Policies and Procedures. These include front-end "construction monitoring" and back-end "physical inspections" for requirements of the Davis-Bacon Act (concerning wage rates), Section 3 of the Housing and Community Development Act (concerning hiring of low-income workers), minority and women business enterprises, City of Chicago local hiring requirements, loan disbursements, tenant eligibility, and rent levels. Pl. Ex. 41, HOME Long Term Monitoring Policies and Procedures; Pl. Ex. 29, City 30(b)(6) Dep. Tr. at 45-80 (49:1-24), 85:18-86:21 (DOH conducts periodical inspections for compliance with HOME requirements); Pl. Ex. 42, HUD 2010 Report "Monitoring HOME"; Pl. Ex. 43, July 13, 2022 Suppl. RFA 54.

RESPONSE:  Disputed in part and Admitted in part.

The City disputes the statement or implication in Additional Fact No. 17 that the document titled "HOME Long Term Monitoring Policies" applies to non-HOME properties, *i.e.*, the approximately 62% of entries on the Parties Stipulated List without a stipulation of HOME funds. *See* City Ex. 1 (Dkt. No. 185); Pl. Ex. 42 at C0622642 ("All HOME projects are monitored…"). The City disputes that Plaintiff's Ex. 41 reflects all of the practices of DOH prior to or during the construction phase of a development.  By way of further response, Plaintiff's Ex. 41 is a document pertaining to long-term monitoring and is not a comprehensive document relating to the construction phase.  *See* Pl. Ex. 29, Horan Depo., at 49:1-50:8 (DOH construction specialists, not the long-term monitoring division, confirm construction was completed in accordance with drawings signed off by Department of Buildings, MOPD, and others).  The remainder of Additional Fact No. 17 is admitted.

18.     Although the City's HOME Long Term Monitoring Policies and Procedures state that "[a]ll HOME funded projects shall be inspected at project completion and during the period of affordability to determine that the project meets the property standards of §92.251 Property Standards," they do not provide any mechanism for enforcing the Federal Accessibility Requirements, which are incorporated by reference into §§ 92.251(a)(2)(i) and 92.251(b)(l)(iv). Pl. Ex. 41, HOME Long Term Monitoring Policies and Procedures at 19-20; Pl. Ex. 29, City 30(b)(6) Dep. Tr. at 53:1-12, 58:14--59:8.

<u>RESPONSE:</u> Disputed in part and Admitted in part.

The City objects to Additional Fact No. 18 and Plaintiff's purported interpretation of regulations—§§ 92.251, 92.251(a)(2)(i), and 92.251(b)(l)(iv)— as legal argument in violation of Local Rule 56.1(d)(4) that should be disregarded. The City objects to the phrase "any mechanism for enforcing the Federal Accessibility Requirements" because the referenced document, Pl. Ex. 41, in Additional Fact No. 18 is an internal policies document, not a federal statute.

Subject to and without waiving the foregoing objection, the City disputes the statement or implication in Additional Fact No. 18 that the document titled "HOME Long Term Monitoring Policies" applies to non-HOME properties, *i.e.* the approximately 62% of entries on the Parties Stipulated List without a stipulation of HOME funds. *See* City. Ex. 1 (Dkt. No. 185); Pl. Ex. 42 at C0622642 ("All HOME projects are monitored…"). The City disputes that Plaintiff's Ex. 41 reflects all of the practices of DOH prior to or during the construction phase of a development. By way of further response, Plaintiff's Ex. 41 is a document pertaining to long-term monitoring and is not a comprehensive document relating to the construction phase. *See* Pl. Ex. 29, Horan Depo., at 49:1-50:8 (DOH construction specialists, not the long-term monitoring division, confirm construction was completed in accordance with drawings signed off by Department of Buildings, MOPD, and others). The City disputes that there is no review or inspection for accessibility. At the construction or rehabilitation phase, inspections are conducted to ensure compliance with MOPD-approved plans. City Ex. 4, Horan Depo., 49:1-24; City Ex. 5, Ullrich Depo. at 14:25-15:25, 16:20-17:4; City Ex. 7, Dittman Depo., at 296:4-17. MOPD's review is required before issuing a building permit. City Ex. 5, Ullrich Depo, at 13:18-14:14, 16:1-16:19, 38:16-39:24, 85:24-87:17. MOPD's review of a project includes review of local, state, and federal accessibility standards as applicable. City Ex. 6, Zafiris Depo., at 21:4-22:11, 29:11-31:23, 228:18-229:14. All

inspections must pass in order for DOB to issue a building permit. Ex. 5, Ullrich Depo. at 24:3-24:23.

It is admitted that Plaintiff's Ex. 41, an internal policies and procedures document, does not provide a "mechanism for enforcing" Section 504, the ADA, or the Fair Housing Act as it is not the purpose of the document. It is admitted that Additional Fact No. 18 contains an accurate quotation of Plaintiff's Ex. 41.

19.     DOH relies on the City's Department of Buildings ("DOB") to determine whether to issue construction and occupancy permits pursuant to the requirements in the Chicago Building Code ("CBC"). Pl. Ex. 44, Ullrich Dep. Tr. at 13:18-14:14, 14:25-15:25, 21:7-22:6.

RESPONSE: Subject to objection, Admitted.

The City objects that Additional Fact No. 19 is not an "additional" fact because it simply restates facts set forth in the City's SOF (Dkt. No. 309), ¶ 34, in violation of Local Rule 56.1(b)(3).

Subject to and without waiving the foregoing objection, admitted.

20.     DOB has deep expertise in the CBC and regularly goes onto building locations to ensure compliance with structural, electrical, plumbing, HVAC, fire safety, and other City requirements. Pl. Ex. 44, Ullrich Dep Tr. at 15:20-25, 22:16-23:23.

RESPONSE: Admitted.

21.     The City never independently assessed developers' compliance with Federal Accessibility Requirements prior to early 2022, when it conducted on-site inspections of nine new construction Program developments to assess accessibility compliance. Neither its front-end "construction monitoring" nor its back-end "physical inspections" involve an on-site review of whether a development complies with Federal Accessibility Requirements. Pl. Ex. 45, 2005-2009 Fair Housing Plan at C022552 ("Despite the shortage of accessible housing in Chicago, there is no consistent review of accessibility for people with disabilities by the City of Chicago when issuing a building permit."); Pl. Ex. 29, City 30(b)(6) Dep. Tr. at 53:1-54:1 (Under HOME Long Term Monitoring Policies and Procedures, accessibility was not among the requirements projects are monitored for during the construction period; DOH was aware MOPD had conducted no on-site inspections prior to 2022), 67:8-25 (DOH conducts housing quality standard inspections every three years but does not check for compliance with federal accessibility standards during the inspections, nor does any other City agency), 86:23-87:14 (No City entity verified after project completion that project complies with federal accessibility standards until MOPD began that effort in spring of 2022); Pl. Ex. 46, Russo Dep. Tr. at 43:10-17 (Russo was unaware that the City was

11

relying exclusively on MOPD's Accessibility Compliance Unit for enforcement of the Federal Accessibility Requirements for the developments in the Program), 117:6-120:7 (Front-end compliance should include "an inspection process to make sure that what you approved is what got built" but "DOB wasn't inspecting for a long time for accessibility"; after ACU developed the process of "quick checks at various stages of construct" to identify accessibility issues, DOB inspectors told MOPD they were conducting inspections but did not have "time to write the [survey] answers," never presented a question or field report, and shared "no findings of anything being wrong in all the buildings [they were] looking at"), 120:12-17 (Russo never received any DOB field inspection report or data from quick-check process), 125:7-129:24; Pl. Ex. 47, Zafiris Dep. Tr. at 78:10-24 (As the "plan review" architect at MOPD for 27 years, Zafiris was unaware that DOH was relying exclusively on MOPD for analysis and enforcement of federal architectural accessibility requirements, and did not believe that was the job he was carrying out), 22:17-23:4 (Zafiris went onsite to inspect accessibility of multifamily residential buildings "very, very, very rarely," a "handful" of times in 27 years).

RESPONSE:  Disputed.

The City objects that Additional Fact No. 21 is not an "additional" fact because it simply restates Plaintiff's Response to the City's SOF (Dkt. No. 313), ¶¶ 36-37, 43, in violation of Local Rule 56.1(b)(3).  The City objects to Additional Fact No. 21 as not concise, in violation of Local Rule 56.1(d)(1), because it contains multiple sentences pertaining to different facts.  The City objects that any reference to recent practices of MOPD and accessibility inspections beginning in 2022 are inadmissible evidence under Federal Rule of Evidence 407.  This case was filed in 2018, and Plaintiff is attempting to use practices implemented following the filing of the complaint in order to prove culpable conduct.

Subject to and without waiving the foregoing objection, the City disputes Additional Fact No. 21.  The City disputes that there is no review or inspection for accessibility.  At the construction or rehabilitation phase, inspections are conducted to ensure compliance with MOPD-approved plans.  City Ex. 4, Horan Depo., 49:1-24; City Ex. 5, Ullrich Depo. at 14:25-15:25, 16:20-17:4; City Ex. 7, Dittman Depo., at 296:4-17.  MOPD's review is required before issuing a building permit.  City Ex. 5, Ullrich Depo, at 13:18-14:14, 16:1-16:19, 38:16-39:24, 85:24-87:17.  MOPD's review of a project includes review of local, state, and federal accessibility standards as

applicable. City Ex. 6, Zafiris Depo., at 21:4-22:11, 29:11-31:23, 228:18-229:14. All inspections

must pass in order for DOB to issue an occupancy permit. Ex. 5, Ullrich Depo. at 24:3-24:23.

By way of further response, and without conceding the admissibility of evidence

concerning MOPD inspections commencing around 2022, said MOPD inspections were an

additional measure on top of existing inspections performed to confirm compliance with building

plans approved by MOPD. City Ex. 7, Dittman Depo, at 296:4-17.

22.      DOH has no expertise concerning compliance with Federal Accessibility
Requirements and maintains no internal capacity to ensure compliance. PL Ex. 29, City 30(b)(6)
Dep. Tr. at 86:8-21, 50:9-51:16, 56:13-23, 55:7-16, 60:3-16, 63:13-17, 77:6-20, 195:12-21,
212:1-24; PL Ex. 44, Ullrich Dep. Tr. at 18:8-14.

RESPONSE: Disputed in part and Admitted in part.

It is disputed that DOH has no internal capacity to ensure compliance with standards under

Section 504, the ADA, or the Fair Housing Act. DOH requires approval from MOPD. City Ex. 4,

Horan Depo, 138:11-139:13, 35:15-37:2, 39:15-40:18, 42:1-43:23. Inspectors with DOH inspect

for compliance with building plans. City Ex. 4, Horan Depo., 49:1-24; City Ex. 7, Dittman Depo.,

296:4-17. These building plans must be approved by MOPD, which reviews plans for compliance

with state, local, and federal accessibility standards, as applicable. City Ex. 6, Zafiris Depo., at

21:4-22:11, 29:11-31:23, 228:18-229:14. In order for an occupancy permit to be issued, all

inspections must pass. City Ex. 5, Ullrich Depo. at  24:3-24:23.

It is admitted that DOH, itself, does not have internal expertise in architectural standards

under Section 504, the ADA, or the Fair Housing Act, which is the role of MOPD.

23.      DOB only enforces the Chicago Building Code, but it does not review plans for
accessibility and does not go on-site to ensure that buildings are actually built in compliance with
the Federal Accessibility Requirements. PL Ex. 44, Ullrich Dep. Tr. at 16:1-10 (DOB relies on
MOPD for review of accessibility compliance with CBC), 13:8-17, 18:8-14 (DOB inspectors not
trained on federal accessibility requirements), 23:9-24:2 (DOB inspectors perform reviews for
many trades, such as plumbing, ventilation, and refrigeration, but no DOB inspector specializes in
accessibility); PL Ex. 47, Zafiris Dep. at 216:14-19.

RESPONSE: Disputed in part and Admitted in part.

The City objects that Additional Fact No. 23 is not an "additional" fact because it simply restates Plaintiff's Response to the City's SOF (Dkt. No. 313), ¶¶ 36-37, 43-44, in violation of Local Rule 56.1(b)(3).

Subject to and without waiving the foregoing objection, the City disputes that DOB does not ensure buildings are built in compliance with standards under Section 504, the ADA, or the Fair Housing Act. Inspectors with the DOB inspect for compliance with building plans. City Ex. 5, Ullrich Depo. at 14:25-15:25, 16:20-17:4; City Ex. 7, Dittman Depo., at 296:4-17. These building plans must be approved by MOPD, which reviews plans for compliance with state, local, and federal accessibility standards, as applicable. City Ex. 5, Ullrich Depo, at 13:18-14:14, 16:1-16:19, 38:16-39:24, 85:24-87:17; City Ex. 6, Zafiris Depo., at 21:4-22:11, 29:11-31:23, 228:18-229:14. In order for an occupancy permit to be issued, all inspections must pass. City Ex. 5, Ullrich Depo. at 24:3-24:23.

It is admitted that DOB enforces the Chicago Building Code. It is admitted that DOB, itself, does not review plans for accessibility for the housing, which is the role of MOPD.

24. DOH and DOB rely on the Mayor's Office for People with Disabilities ("MOPD") to ensure compliance with accessibility requirements. PL Ex. 29, City 30(b)(6) Dep. Tr. at 51:23-52:14, 86:23-87:14, 156:11-18, 212:1-24; PL Ex. 44, Ullrich Dep. Tr. at 16:1-19 (DOB simply refers accessibility issues to MOPD); 40:10-12 (DOB does not do quality control of MOPD accessibility assessments); PL Ex. 46, Russo Dep. Tr. at 43:10-17 (Russo was never advised that DOH and DOB were relying exclusively on MOPD for enforcement of Federal Accessibility Standards in the Program); 125:7-129:24 (expressing Russo's concern that DOB was not actually inspecting for accessibility in the field before issuing occupancy permits).

RESPONSE: Disputed in part and Admitted in part.

Additional Fact No. 24 is disputed to the extent it states or implies that DOH or DOB do not enforce compliance with MOPD-approved plans. DOB and DOH require approval of MOPD.

City Ex. 4, Horan Depo, 35:15-37:2, 39:15-40:18, 42:1-43:23; 138:11-139:13; City Ex. 5, Ullrich

Depo, at 13:18-14:14, 16:1-16:19, 38:16-39:24, 85:24-87:17.  Building plans must be approved by

MOPD, which reviews plans for compliance with state, local, and federal accessibility standards,

as applicable. City Ex. 6, at 21:4-22:11, 29:11-31:23, 228:18-229:14.  Inspectors with the DOB

and DOH inspect for compliance with building plans approved by MOPD.  City Ex. 4, Horan

Depo., at 49:1-24; City Ex. 5, Ullrich Depo., at 14:25-15:25, 16:20-17:4; City Ex. 7, Dittman

Depo., at 296:4-17. In order for an occupancy permit to be issued, all inspections must pass.  City

Ex. 5, Ullrich Depo. at  24:3-24:23.

It is admitted that DOH and DOB rely upon MOPD to review plans for compliance with

state, local, and federal accessibility standards, as applicable.

25.     The MOPD usually had a single architect to conduct accessibility reviews. Prior to
City approval, the architect is in active partnership with each developer and its design team, but
his assessment is confined to "plan reviews" of blueprints for new or rehabilitated developments
to determine whether they are drawn in compliance with the accessibility provisions of the Chicago
Building Code. PL Ex. 46, Russo Dep. Tr. at 21:13-22, 22:25-23:15, 28:21-29:8; PL Ex. 47, Zafiris
Dep. Tr. at 68:1-69:9 (Zafiris would send projects back to architects with corrections until all
corrections were addressed), 72:5-20 (The only assurance that a particular City-funded multifamily
residential development was accessible was Zafiris's review of plans), 90:19-91:4 (if Zafiris did
not approve a plan review, DOB would not issue building permit), 225:15-226:8 (plan review was
limited to new or rehabilitated buildings since approximately 2012).

RESPONSE:  Disputed in part and Admitted in part.

The City objects that the characterization of an "active partnership" is unsupported by the

materials cited, in violation of Local Rule 56.1(d)(2).

Subject to and without waiving the foregoing objections, the City disputes that MOPD only

reviews plans for compliance with the accessibility provisions of the Chicago Building Code.

MOPD reviews plans for compliance with state, local, and federal accessibility standards, as

applicable.  City Ex. 6, Zafiris Depo., at 21:4-22:11, 29:11-31:23, 228:18-229:14.   The City

disputes any characterization of an "active partnership;" Christopher Zafiris was employed by the City of Chicago and worked in MOPD. Transcript of the Deposition of Christopher Zafiris ("Zafiris Depo.") at 12:12-13:24; 19:1-20:17, a true and copy of the relevant portions of which is attached hereto as Exhibit 40.

It is admitted that MOPD usually did not have more than one accessibility reviewer for the housing. It is admitted that the primary role of the MOPD reviewer was confined to plan reviews.

26.     Compliance with the Chicago Building Code does not indicate compliance with the Federal Accessibility Requirements. PL Ex. 47, Zafiris Dep. Tr. at 54:7-23 (CBC did not include accessibility requirements until around 2000), 57:11-18 (Compliance with CBC is not a "safe harbor" for compliance with federal accessibility standards), 217:18-218:10; PL Ex. 46, Russo Dep. Tr. At 78:8-79:14 (DOB rejected ACU's proposed revisions to the CBC incorporating new version of the ADA and accessibility provisions because "they felt it was too hard on developers"), 80:14-82:6, 138:12-139:7 (CBC not certified by the DOJ as compliant with ADA requirements).

RESPONSE:  Disputed in part and Admitted in part.

The City objects that Additional Fact No. 26 purports to make a legal conclusion or asserts legal argument in violation of Local Rule 56.1(d)(4) and should be disregarded. Additional Fact No. 26 is unsupported, in violation of Local Rule 56.1(d)(2), to the extent it states or implies that compliance with the CBC can never satisfy standards under Section 504, the ADA, or the Fair Housing Act, which can include hundreds of building features. Additional Fact No. 26 is unsupported, in violation of Local Rule 56.1(d)(2), for the further reason that the cited materials refer to past versions of the CBC, while Additional Fact No. 26 refers to the present time. Accordingly, it is unclear to what version of the CBC Additional Fact No. 26 refers.

Subject to and without waiving the foregoing objections, it is admitted only that compliance with the CBC may not always match with the standards under Section 504, the ADA, or the Fair Housing Act. The overly broad statement in Additional Fact 26 is disputed to the extent

it states or implies that compliance with the CBC can never satisfy standards under Section 504, the ADA, or the Fair Housing Act.

27. MOPD did not have internal capacity to enforce Federal Accessibility Requirements. PL Ex. 46, Russo Dep. Tr. at 25:3-22, 68:18-69:1 (Staff resources at MOPD were "obviously not" "sufficient to confirm compliance with the local, state, and federal accessibility requirements for the entire Affordable Rental Housing Program"), 42:25-43:9 ("With private buildings we would tell them they were going to violate the federal law. And if it was compliant with the state and the local law, we couldn't really stop them because we didn't have enforcement authority to do that."), 72:12-74:1 (describing budget and staffing constraints affecting Title II self-evaluation), 120:18-121:13 (MOPD architect who performed plan reviews only conducted field inspections a handful of times; he "was not a great field site inspection person" and MOPD had to "keep up with plan review" because otherwise "buildings weren't going up, buildings could lose their financing ... [a]nd it was a surefire way to get a call from the mayor's office"); Pl. Ex. 47, Zafiris Dep. Tr. at 53:5-54:2 (programmatic accessibility under ADA and Section 504 was "not [Zafiris's] responsibility"), 73:2-5 (Zafiris did not have authority to enforce federal accessibility standards), 85:18-86:17 (MOPD does not have enforcement power; DOB is supposed to).

RESPONSE: Disputed.

The City objects to Additional Fact No. 27 as the phrase "internal capacity to enforce" is so vague as to preclude the City from admitting or disputing. The City objects that Additional Fact No. 27 appears to be a conclusion, not a fact. The City objects to Additional Fact No. 27 as not concise, in violation of Local Rule 56.1(d)(1), as the parentheticals refer to multiple, different facts not tied to the fact asserted in Additional Fact No. 27.

Subject to and without waiving the foregoing objection, Additional Fact No. 27 is disputed. In order for construction to begin at a property, DOB must issue a building permit. City Ex. 5, Ullrich Depo., at 21:7-22:6. DOB cannot do so until it acquires approval from MOPD before issuing a building permit. City Ex. 5, Ullrich Depo, at 13:18-14:14, 16:1-16:19, 38:16-39:24, 85:24-87:17. MOPD reviewed building plans for compliance with state, local, and federal accessibility standards as applicable, and had to either approve or disapprove. City Ex. 6, Zafiris Depo., at 21:4-22:11, 29:11-31:23, 228:18-229:14; Pl. Ex. 47, Zafiris Dep., at 90:13-22.

28.     On some occasions since approximately 2000, MOPD has advised a developer that its building plans cannot be approved because they do not meet accessibility requirements. MOPD works with developers to amend those plans so that they come into compliance, but MOPD never sent an inspector into the field prior to 2022 (when they inspected nine properties) to assess whether a Program development-as actually constructed-complied with Federal Accessibility Requirements. Pl. Ex. 47, Zafiris Dep. Tr. at 59:11-16, 65:18-21 (MOPD did not review building plans for accessibility prior to 2000 or 1999); Pl. Ex. 46, Russo Dep. Tr. at 41:10-43:17, 125:7-129:24 (MOPD did not perform on-site reviews for inspection but would tell developers if plans violated federal accessibility laws); Pl. Ex. 44, Ullrich Dep. Tr. at 15:4-16:10 (MOPD issued corrections to developers and required revised plans when initial plans did not comply with accessibility requirements in Chicago Building Code); Pl. Ex. 29, City 30(b)(6) Dep. Tr. at 53:23-54:1 (DOH was aware MOPD had conducted no on-site inspections prior to 2022).

RESPONSE:  Disputed in part and Admitted in part.

The City objects that any reference to recent practices of MOPD and inspections beginning in 2022 are inadmissible evidence under Federal Rule of Evidence 407.  This case was filed in 2018, and Access Living is attempting to use practices implemented following the filing of the complaint in order to prove culpable conduct.  The City objects to the phrase "works with" to the extent it implies any sort of partnership or special relationship between MOPD and developers, as unsupported by the materials cited in violation of Local Rule 56.1(d)(2).

Subject to and without waiving the foregoing objections, it is disputed that MOPD bore the sole responsibility for inspections.  Inspectors with the DOB and DOH inspect for compliance with building plans.  City Ex. 4, Horan Depo., 49:1-24; City Ex. 5, Ullrich Depo. at 14:25-15:25, 16:20-17:4; City Ex. 7, Dittman Depo., at 296:4-17.  These building plans must be approved by MOPD, which reviews plans for compliance with state, local, and federal accessibility standards, as applicable. City Ex. 5, Ullrich Depo, at 13:18-14:14, 16:1-16:19, 38:16-39:24, 85:24-87:17; City Ex. 6, Zafiris Depo., at 21:4-22:11, 29:11-31:23, 228:18-229:14; City Ex. 4, Horan Depo. at 35:15-37:2, 39:15-40:18, 42:1-43:23. The timeframe in Additional Fact No. 28— "since 2000"— is disputed, as MOPD review occurred prior to 2000.  City Ex. 6, Zafiris Depo., at 229:4-11; City Ex. 7, Dittman Depo., at 296:4-8.

It is admitted that MOPD reviews building plans and makes corrections where necessary.

It is admitted that MOPD, itself, did not employ persons whose primary job was to inspect.

29.     Prior to March 2022 (when they inspected nine properties), no City agency sent any inspector into the field to ascertain whether City-funded developments in the Program had actually been built in compliance with Federal Accessibility Requirements. Pl. Ex. 29, City 30(b)(6) Dep. Tr. at 86:23-87:14, 54:25-55:16, 67:8-25, 148:5-24 (DOH coordinates with MOPD for accessibility review; first inspection was in March 2022); Pl. Ex. 48, Oct. 12, 2022 Suppl. RFA Response 55; Pl. Ex. 46, Russo Dep. Tr. at 46:18-47:16; Pl. Ex. 49, Ex. 4 to Russo Dep.; Pl. Ex. 47, Zafiris Dep. Tr. at 22:17-23:4 (Zafiris went onsite to inspect accessibility of multifamily residential buildings "very, very, very rarely," a "handful" of times in 27 years and only for purposes of assessing compliance with CBC accessibility standards).

RESPONSE: Disputed.

The City objects that Additional Fact No. 29 is not an "additional" fact because it simply restates Plaintiff's Response to the City's SOF (Dkt. No. 313), ¶¶ 43-44, in violation of Local Rule 56.1(b)(3).The City objects that any reference to recent practices of MOPD and inspections beginning in 2022 are inadmissible evidence under Federal Rule of Evidence 407. This case was filed in 2018, and Plaintiff is attempting to use practices implemented following the filing of the complaint in order to prove culpable conduct. The City objects to the use of the term "Program" as unsupported and having no basis in the record, in violation of Local Rule 56.1(d)(2). The City limits its response to the Parties Stipulated List, City Ex. 1, Dkt. No. 185.

Subject to and without waiving the foregoing objection, Additional Fact No. 29 is disputed. Inspectors with the DOB and DOH inspect for compliance with building plans. City Ex. 4, Horan Depo., 49:1-24; Ex. 5, Ullrich Depo. at 14:25-15:25, 16:20-17:4; Ex. 7, Dittman Depo., at 296:4-17. These building plans must be approved by MOPD, which reviews plans for compliance with state, local, and federal accessibility standards, as applicable. City Ex. 5, Ullrich Depo, at 13:18-14:14, 16:1-16:19, 38:16-39:24, 85:24-87:17; City Ex. 6, Zafiris Depo., at 21:4-22:11, 29:11-31:23, 228:18-229:14; City Ex. 4, Horan Depo. at 35:15-37:2, 39:15-40:18, 42:1-43:23. In order

for an occupancy permit to be issued, all inspections must pass. City Ex. 5, Ullrich Depo. at 24:3-24:23.

30.     Between March and June 2022, an MOPD inspector conducted the first on-site inspections of nine (9) new developments which MOPD had previously approved at plan review. Pl. Ex. 8, Expert Report of William Hecker ("Hecker Report"), Part 8 at Exs. 181-189; Pl. Ex. 29, City 30(b)(6) Dep. Tr. at 53:23-54:1, 149:16-150:13 (MOPD had previously approved plans for noncompliant unit inspected in 2022). He discovered accessibility violations at all of them. Pl. Ex. 8, Hecker Report, Part 8 at Exs. 181-189.

RESPONSE: Disputed.

The City objects that any reference to recent practices of MOPD and inspections beginning in 2022 are inadmissible evidence under Federal Rule of Evidence 407. This case was filed in 2018, and Plaintiff is attempting to use practices implemented following the filing of the complaint in order to prove culpable conduct. The City objects that Additional Fact No. 30 is unsupported or inadmissible. The citation to and reliance on Hecker's report is not a proper foundation for any facts relating to MOPD inspections in 2022. Hecker is a proposed expert witness for Access Living; he is not a fact witness. The citations to the deposition of James Horan also do not suffice for supporting Additional Fact No. 30 or establishing its admissibility. Mr. Horan was testifying on behalf of DOH, only. City Ex. 4, Horan Depo., at 37:7-38:21. In addition, the cited transcript pages of Mr. Horan's deposition do not reference the purported nine inspections in Additional Fact No. 30. The City objects to Additional Fact No. 30 because the accessible state of developments on the Parties Stipulated List and the opinions of William Hecker are immaterial to the questions presented by City's Motion for Summary Judgment which argues, as a threshold matter, that ADA Title II, Section 504, and the Fair Housing Act do not apply to the City in the manner alleged by Access Living.

Subject to and without waiving the foregoing objections, the City disputes Additional Fact No. 30 because it disputes Hecker's opinion, in its entirety. *See generally*, Expert Report of Peter

A. Stratton ("Stratton Report"), attached hereto as Exhibit 42. Further, Mr. Hecker testified that he made up a standard for his "pass/fail" grade and Mr. Hecker and does not know whether his method is universally accepted among experts. Deposition of William Hecker ("Hecker Depo."), relevant excerpts of which are attached hereto as Exhibit 41, at 59:8-60:16. The expert for the City, Peter Stratton, disagrees with and disputes the validity of Hecker's methodology. Ex. 42, Stratton Report, at pp. 11-14. Further, and not conceding the admissibility of MOPD inspections in 2022, Mr. Stratton disputes Hecker's opinion on the MOPD inspection reports. Ex. 42, Stratton Report, at p. 16.

The City disputes that the cited documents (Pl. Ex. 8 at Exs. 181-189) are authentic documents, rather, they are documents marked up by Plaintiff's expert. The City disputes that all nine inspections were "new developments," as some were rehabilitation properties. *See* Pl. Ex. 8 at Exs. 181, 182, 183, 185, and 186. The City disputes that these were the "first" inspections by an MOPD person. Pl. Ex. 47, Zafiris Dep. at 22:17-23:4.

It is admitted that between March and June 2022, there were nine inspections by an MOPD person. Admitted that the MOPD person identified deficiencies.

31.    Prior to January 1, 2022, the City did not maintain a list of accessible units in the Program, or any mechanism to ensure that accessible units are rented to people with disabilities who need them. Pl. Ex. 48, Oct. 12, 2022 Suppl. RFA Response 7; Pl. Ex. 43, July 13, 2022 Suppl. RFA Response 8; Pl. Ex. 29, City 30(b)(6) Dep. Tr. at 255:1-20, 256:2-22, 284:13-285:6; Pl. Ex. 46, Russo Dep. Tr. at 30:14-31:8, 46:18-47:3, 48:16-20 (ACU would not be the ones to develop the list of accessible units in Chicago); Pl. Ex. 47, Zafiris Dep. Tr. at 71:17-21.

RESPONSE: Disputed in part and Admitted in part.

The City objects that the second clause of Additional Fact No. 31 ("any mechanism to ensure that accessible units are rented to people with disabilities who need them") is not supported by the cited materials, in violation of Local Rule 56.1(d)(2). The City objects to the use of the term "Program" as unsupported and having no basis in the record, in violation of Local Rule

56.1(d)(2). The City limits its response to the Parties Stipulated List, City Ex. 1, Dkt. No. 185. The City objects that Additional Fact No. 31 is immaterial to the questions presented by City's Motion for Summary Judgment which argues, as a threshold matter, that ADA Title II, Section 504, and the Fair Housing Act do not apply to the City in the manner alleged by Access Living. The City objects that the statement in Additional Fact "any mechanism to ensure" is a conclusion, not a fact.

Subject to and without waiving the foregoing objection, it is admitted that the City did not maintain a single unified list of accessible units of the developments on the Parties Stipulated List.

32. While the DOH has remedies available when borrowers violate their covenants, DOH has not sanctioned a single developer since 1988 for noncompliance with accessibility requirements. Pl. Ex. 43, July 13, 2022 Suppl. RFA Responses 15-50 and 72-74; Pl. Ex. 29, City 30(b)(6) Dep. Tr. at 203:11-22, 213:17-214:12; Pl. Ex. 47, Zafiris Dep. at 208:19-209:1; Def. Ex. 18 at 15.8 (City has the option to exercise all rights in event of default); *id.* at 31 (City retains access to all parts of premises); Def. Ex. 20 at 6.1 (City has remedies "without regard to whether the City is an owner of the land"); Def. Ex. 27 at 6.2 (City can take any action at law and equity that appears necessary or desirable); Def. Ex. 29 at 8.2 (City's remedies); *id.* at 5.17 (City retains right of access to premises).

RESPONSE: Admitted.

Admitted that DOH has remedies available. Admitted that DOH has not sanctioned a developer as that term was defined in Plaintiff's Second Set of Request for Admission. Attached hereto as Exhibit 46, is Plaintiff's Second Set of Request for Admission.

33. The DOB did not withhold building permits on the basis of noncompliance with accessibility standards. Pl. Ex. 47, Zafiris Dep. Tr. at 73:12-74:1 (Zafiris not aware of any instances where DOB held back building permits on the basis on noncompliance with accessibility standards); Pl. Ex. 44, Ullrich Dep. Tr. at 16:12-19 (DOB not involved with accessibility compliance in the permitting process, aside from receiving a referral from MOPD).

RESPONSE: Subject to objection, Admitted.

The City objects to Additional Fact No. 33 as unsupported by the materials cited, in violation of Local Rule 56.1(d)(2). Mr. Zafiris testified that he lacked knowledge, not that he had

knowledge of DOB withholding a building permit. The cited testimony of Mr. Ullrich does not refer to a withholding of permits. The City objects as immaterial to the extent this Additional Fact No. 33 concerns withholding of permits for buildings not on the Parties Stipulated List, Dkt. No. 185. Further, the City objects to Additional Fact No. 33 as not limited to building permits relating to accessibility or that would implicate accessibility standards. The City objects to Additional Fact No. 33 and its reference to "non-compliance with accessibility standards" as vague and undefined. The City objects that, as phrased, it is impossible for the City to admit or dispute Additional Fact No. 33 which is nearly limitless in scope.

Subject to and without waiving the foregoing objections, it is admitted that the properties on the Parties Stipulated List received building permits for construction or rehabilitation after and MOPD review and approval of drawings.

34.    The Program has fewer accessible units than federal law requires. Pl. Ex. 8, Hecker Report, Part 1 at 14; Pl. Ex. 50, Hecker Dep. Tr. at 75:20-25, 97:10-22; Pl. Ex. 29, City 30(b)(6) Dep. Tr. at 220:18-221:6 (to the extent owners are not complying with accessibility, that diminishes access of people with disabilities).

RESPONSE: Disputed.

The City objects to Additional Fact No. 34, referring to the requirements of federal law, as legal argument in violation of Local Rule 56.1(d)(4) that should be disregarded. The City objects to Additional Fact No. 34 that the accessibility state of the developments on the Parties Stipulated List and the opinions of William Hecker are immaterial to the questions presented by City's Motion for Summary Judgment which argues, as a threshold matter, that ADA Title II, Section 504, and the Fair Housing Act do not apply to the City in the manner alleged by Access Living. The City objects to the citation of the City 30(b)(6) deposition as not supporting the statement asserted in Additional Fact 36, which testimony relates to a hypothetical unrelated to the numbers of units. The City objects to Additional Fact No. 34 as not supported by the citation to Hecker's

Report or his testimony: Hecker does not comment on the number of "required" units. The City objects to the use of the term "Program" as unsupported and having no basis in the record, in violation of Local Rule 56.1(d)(2). The City limits its response to the Parties Stipulated List, City Ex. 1, Dkt. No. 185. The City objects to Additional Fact No. 34 which is an opinion of Plaintiff's proposed expert, it is not a fact.

Subject to and without waiving the foregoing objections, the City disputes Additional Fact No. 34 because it disputes Hecker's opinion, in its entirety. *See generally*, Ex. 42 , Stratton Report. Hecker testified that he invented a standard for his "pass/fail" grade and Mr. Hecker does not know whether his method is universally accepted among experts. Ex. 41, Hecker Depo., at 59:8-60:16. The expert for the City, Peter Stratton, disagrees with and disputes the validity of Hecker's methodology. Ex. 42, Stratton Report, at pp. 11-14. Accordingly, the City disputes Additional Fact No. 34 which is Hecker's opinion.

35.     Dr. Bernard Siskin, Access Living's statistical expert, conducted a statistical analysis of the estimated percentage of developments in the Program that would fail a test of architectural accessibility based on random samples, and the City did not counter Dr. Siskin's conclusions or challenge his qualifications as an expert. Pl. Ex. 51, Expert Report of Dr. Bernard Siskin. For example, Dr. Siskin concluded: "Based on the measurement review conducted, my best statistical estimate is that if all 542 projects subject to Section 504 were inspected, 100% would fail. I am 97.5% confident that at least 92.4% (or 501 projects) would fail." *Id.* at 18.

RESPONSE:  Disputed.

The City objects to Additional Fact No. 35 that the opinion of Bernard Siskin is immaterial to the questions presented by City's Motion for Summary Judgment which argues, as a threshold matter, that ADA Title II, Section 504, and the Fair Housing Act do not apply to the City in the manner alleged by Access Living. The accessibility or inaccessibility of any of the developments on the Stipulated List is not material to the questions presented City's Motion for Summary Judgment. The City objects to the use of the term "Program" as unsupported and having no basis

in the record, in violation of Local Rule 56.1(d)(2).  The City limits its response to the Parties

Stipulated List, City Ex. 1, Dkt. No. 185.  The City objects that Additional Fact No. 35 is not a

fact, rather it is a statement of an opinion held by Access Living's proposed expert.

Subject to and without waiving the foregoing objections, the City disputes Siskin's opinion

because the City disputes the underlying data relied upon by Siskin, which was the report of

William Hecker.  City Ex., 42, Stratton Report.  Siskin testified that he did not assign a fail grade

to any property, has no opinion on the fail grades, and that if the fail grades were incorrect, then

his calculations would be incorrect.  Transcript of Bernard Siskin, at 16:19-17:1; 49:23-50:24, a

true and correct copy of the relevant portions of which is attached as Exhibit 43 hereto.

36.    William Hecker, Access Living's architectural accessibility expert, found 100
percent non-compliance in both his on-site review of as-built conditions of 96 developments and
his plan reviews of blueprints for 77 developments based on random samples of developments in
the Program, as well as his review of the nine accessibility surveys conducted by the MOPD in
2022. Hecker chronicled hundreds of specific instances of violations in his 1,386-page report,
documenting how the City's failures in the oversight of the design and construction of these
developments deprive people with disabilities of meaningful access to all the multifamily housing
developments that he evaluated. Pl. Ex. 8, Hecker Report, Part 1 at 63, 97, 109-10, 115- 17; *id.* at
Exs. 181-189 (MOPD reports). The City does not challenge any of the specific instances of
violations in Hecker's report, nor question Hecker's qualifications as an expert. Pl. Ex. 52, Stratton
Dep. Tr. at 181:1-6, 193:6-18.

RESPONSE: Disputed.

The City objects to Additional Fact No. 36 that the opinions of William Hecker are

immaterial to the questions presented by the City's Motion for Summary Judgment which argues,

as a threshold matter, that ADA Title II, Section 504, and the Fair Housing Act do not apply to the

City in the manner alleged by Access Living.  The accessibility or inaccessibility of any of the

developments on the Stipulated List is not material to the questions presented in the City's Motion

for Summary Judgment.  The City objects that the last sentence in Additional Fact No. 36 (relating

to the City not challenging specific instances of violations or Hecker's qualifications) is

unsupported by the cited materials, in violation of Local Rule 56.1(d)(2). By way of further response, Access Living blatantly misrepresents the fact that, during discovery, the City disclosed its own expert, Peter Stratton, who directly takes on and rebuts the report of Hecker. Additionally, the cited deposition testimony of Mr. Stratton does not support the statement that the City does not "question Hecker's qualifications," where Mr. Stratton only stated he, personally, had "no comment on Mr. Hecker's qualifications." Pl. Ex. 52, Stratton Depo., at 181:1-6. The City reserves the right to file a motion to exclude Mr. Hecker's report and testimony at the appropriate time. The City further objects to the use of the term "Program" as unsupported and having no basis in the record, in violation of Local Rule 56.1(d)(2). The City limits its response to the Parties Stipulated List, City Ex. 1, Dkt. No. 185. The City objects that the statement in Additional Fact No. 36, "documenting how the City's failures in the oversight of the design and construction of these developments deprive people with disabilities of meaningful access to all the multifamily housing developments that he evaluated," is an opinion stating a conclusion, not a fact.

Subject to and without waiving the foregoing objections, the City disputes Hecker's opinion, in its entirety. City Ex., 42, Stratton Report The City disputes the statement in Additional Fact No. 36 that Hecker conducted an on-site review of 96 developments. In fact, Hecker only conducted a few "on-site reviews of as-built conditions," not 96 developments. City Ex. 41, Hecker Depo., at 31:16-21. The City disputes Additional Fact No. 36 and its statement that Hecker "document[ed] how the City's failures in the oversight of the design and construction of these developments deprive people with disabilities of meaningful access to all the multifamily housing developments that he evaluated." Hecker's report "focus[ed] on the architectural accessibility." City Ex. 41, Hecker Depo., at 26:23-27:6. Hecker did not review or opine on procedures of the City. City Ex. 41, Hecker Depo., 18:5-29:7. Hecker admitted that knowledge of oversight

activities was immaterial. City Ex. 41, Hecker Depo., at 70:17-71:11. Further, Hecker did not have any knowledge of any persons, let alone any persons allegedly "deprive[d] of meaningful access to all the multifamily housing developments that he evaluated." City Ex. 41, Hecker Depo., at 44:20-47:23.

Further, Hecker testified that he invented a standard for his "pass/fail" grade and Hecker does not know whether his method is universally accepted among experts. City Ex. 41, Hecker Depo., at 59:8-60:16. The expert for the City, Peter Stratton, disagrees with and disputes the validity of Hecker's methodology. City Ex. 42, Stratton Report, at pp. 11-14. Further, and not conceding the admissibility of MOPD inspections in 2022, Stratton disputes Hecker's opinion on the MOPD inspection reports. City Ex. 42, Stratton Report, at p. 16.

37. John L. Wodatch, Plaintiffs expert on the federal requirements applicable to the operation of municipal affordable housing programs ("program accessibility"), reviewed a voluminous discovery record, and opined that the City has operated (and continues to operate) the Program in a manner that denies people with disabilities an equal opportunity to participate in the Program. His report identifies how, among other things, the City has failed to: (1) develop the substantive and procedural safeguards necessary to ensure that City-funded developers comply with Federal Accessibility Requirements in Program developments; (2) identify and publicize to people with disabilities the location of accessible units; (3) develop a process for ensuring accessible units are reserved for people with disabilities and that able-bodied tenants are moved out of such units; or (4) impose a single sanction from 1988 to the present on any owner in the Program who is out of compliance with the Federal Accessibility Requirements. The City did not submit any report countering Wodatch's conclusions. Pl. Ex. 53, Expert Report of John L. Wodatch at 18-26; Pl. Ex. 43, July 13, 2022 RFA Response 95 (admitting that the City has no database identifying accessible units in the Program).

RESPONSE: Disputed.

The City objects to Additional Fact No. 37 that the opinions of John Wodatch are inadmissible legal opinions and conclusions in violation of Local Rule 56.1(d)(4). Contemporaneously herewith, the City is filing a Motion to Exclude the Expert Testimony of John Wodatch. The City further objects to Mr. Wodatch's opinion in its entirety and the four enumerated conclusions of Mr. Wodatch listed in Additional Fact No. 37 as immaterial to the

questions presented by City's Motion for Summary Judgment which argues, as a threshold matter, that ADA Title II and Section 504 do not apply to the City in the manner alleged by Access Living.

Subject to and without waiving its foregoing objections, the City disputes the entirety of Mr. Wodatch's opinions and conclusions. Because they are purely legal opinions and conclusions (indeed, Mr. Wodatch has submitted nothing more than his own legal brief masquerading as an expert report), the City refers the Court to its Motion for Summary Judgment, Memorandum in Support, and its Reply in Support in dispute of Access Living's Additional Fact No. 37.

38.    Given the limited availability of affordable, accessible housing units, Access Living consumers have been largely shut out of the Program. They have been forced to live in nursing homes, on the street, in their cars, in homeless shelters, or in other inadequate and dangerous housing. Pl. Ex. 54, Access Living 30(b)(6) Dep. Tr. at 197:24-198:22, 292:2-13; Pl. Exs. 25-39 (Declarations from Access Living consumers); Pl. Ex. 55, 2010 Analysis of Impediments to Fair Housing Choice (PL_0027457) ("The majority of accessible housing for people with disabilities is an institutional setting or federal 811 properties which are specifically for persons with disabilities, not in the private market. Lack of affordable housing that is accessible is exacerbated for the disabled, who are often unemployed and poor. Discrimination and insufficient housing that meets accessibility needs can lead to institutionalization or homelessness for people with disabilities.").

RESPONSE:  Disputed.

The City objects that Additional Fact No. 38 is not an "additional" fact because it simply restates Plaintiff's Response to the City's SOF (Dkt. No. 313), ¶ 59, in violation of Local Rule 56.1(b)(3). The City objects to Additional Fact No. 38 as immaterial to the questions presented by City's Motion for Summary Judgment, which does not address a damage element of Access Living's claims. The City referenced Access Living's alleged damage claims, (City SOF, ¶¶ 57-61), for the sole purpose of arguing that Access Living has no claim over the City's funding or tax credit process. Access Living has indeed conceded it does not base its claim over this process, therefore Additional Fact No. 38 is immaterial.

The City objects to Additional Fact No. 38 as unsupported by the materials cited in violation of Local Rule 56.1(d)(2). The 30(b)(6) deponent of Access Living, and the cited transcript excerpts, do not identify any person who sought housing for any of the units of developments on the Parties Stipulated List. Access Living purports to cite Pl. Exs. 25-39 as "Declarations from Access Living consumers" but only exhibits 25-26 are declarations, and these two exhibits do not reference any housing that appears on the Parties Stipulated List *Compare* Pl. Exs. 25-26 *with* City Ex. 1, Dkt. No. 185. The 2010 Analysis of Impediments likewise does not reference any housing on the Parties Stipulated List. *Compare* Pl. Ex. 55 *with* City Ex. 1 (Dkt. No. 185). Accordingly, Additional Fact No. 38 stating that Access Living consumers have been shut out of properties on the Stipulated List and forced to live elsewhere is based on speculation and is unsupported.

The City further objects to the use of the term "Program" as unsupported and having no basis in the record, in violation of Local Rule 56.1(d)(2). The City limits its response to the Parties Stipulated List, City Ex. 1, Dkt. No. 185.

The City objects to Additional Fact No. 38 and its statement "Given the limited availability of affordable, accessible housing units…" as unsupported by the materials cited in violation of Local Rule 56.1(d)(2).

Subject to and without waiving its foregoing objections, the City disputes that Access Living has identified any person who has been "shut out" of any development on the Parties Stipulated List. The only actual persons identified through litigation in this matter are a collection of declarations. Pl. Exs. 12-26. None of the declarations reference housing on the Parties Stipulated List. *Compare* Pl. Exs. 12-26 *with* City Ex. 1, Dkt. No. 185. The 30(b)(6) Deponent for Access Living essentially disclaimed any basic knowledge of the declarations, and did not

know the persons who provided declarations, the details of declarations, or what questions were

asked of the declarants. Transcript of the 30(b)(6) Deposition of Access Living, Daisy Feidt,

("Access Living Depo."), attached hereto as Exhibit 44, at 193:2-196:23.

39.    The DOH was aware of the need for affordable and/or accessible housing for people
with disabilities. Pl. Ex. 29, City 30(b)(6) Dep. Tr. At 272:23-273:9, 280:17-20, 283:15- 284:11;
Pl. Ex. 56, Ex. 65 to Russo Dep; Pl. Ex. 57, 2000-2004 Fair Housing Plan at PL_0025947
(summary of impediments to housing includes lack of accessible housing for people with
disabilities and lack of information about such housing); Pl. Ex. 45, 2005-2009 Fair Housing Plan
at C022552, C022519 ("The need for safe, affordable, and accessible housing continues to be a
source of concern among Chicago's older residents."); Pl. Ex. 55, 2010 Analysis of Impediments
to Fair Housing Choice and Fair Housing Plan at PL_0027485 ("The supply of available rental
units for people with disabilities continues to be limited in Chicago."); Pl. Ex. 58, 2016 Analysis
of Impediments to Fair Housing Choice (identifying lack of affordable accessible housing and
recommending "[e]xpand[ing] the availability of accessible housing, including affordable housing,
and encourage[ing] removal of barriers to accessibility").

RESPONSE:  Subject to objection, Admitted.

The City objects that Additional Fact No. 39 regarding a general awareness of DOH of

the need for affordable and/or accessible housing is immaterial to the questions presented by

City's motion for summary judgment.  The City objects to Additional Fact No. 39 to the extent it

states or implies that DOH was aware that the City was responsible for meeting the need for

affordable and/or accessible housing as unsupported by the materials cited, in violation of Local

Rule 56.1(d)(2).

Subject to and without waiving its foregoing objections, it is admitted only that DOH,

generally, has been aware of the need for affordable and/or accessible housing in Chicago.

40.    As a result of the City's lack of oversight and enforcement, Access Living has had
to divert thousands of hours of staff time and substantial financial resources to assist thousands of
Chicagoans with disabilities who are prevented from living in the City's affordable housing units
due to inaccessibility. Pl. Ex. 54, Access Living 30(b)(6) Dep. Tr. at 243:14-246:8, 259:7-13; Pl.
Ex. 59, Kemple Report at 11-12. Many of these Chicagoans with disabilities are forced to live in
nursing homes or inaccessible housing, or are unhoused. Pl. Ex. 54, Access Living 30(b)(6) Dep.
Tr. At 132:17-133:11, 197:24-198:22.

<u>RESPONSE:</u>  Disputed.

The City objects to Additional Fact No. 40 as immaterial to the questions presented by City's Motion for Summary Judgment, which does not address a damage element of Access Living's claims.  The City referenced Access Living's alleged damage claims, (City SOF, ¶¶ 57-61), for the sole purpose of arguing that Access Living has no claim over the City's funding or tax credit process. Access Living has indeed conceded it does not base its claim over this process, therefore Additional Fact No. 40 is immaterial.

Subject to and without waiving the foregoing objection, the City disputes Access Living's claim of damages.  Expert Report of Michael D. Pakter ("Pakter Rebuttal Report"), attached hereto as Exhibit 45  ("Pakter Rebuttal Report"). The City's rebuttal expert, Michael Pakter reviewed the expert report of Plaintiffs' damages expert, Erin Kemple (the "Kemple Report") and opined in rebuttal that Kemple's Report utterly failed to support Plaintiff's claimed "diversion of resources" or "frustration of mission" damages.  Specifically, Mr. Pakter opined that the Kemple Report failed to provide a clear opinion to a reasonable degree of certainty as to any alleged monetary "diversion of resources" damages, that instead she merely asserted that Access Living's alleged "diversion of resources" damages related to some random and unidentifiable "10,333 hours" that are allegedly found in Access Living's 704 Reports.  Pakter further opined that Kemple completely failed to provide an actual damages calculation, leaving that task to the trier of fact. Ex. 45, Pakter Rebuttal Report at p. 3.

Dated:   December 15, 2023                    Respectfully submitted,

*/s/ John C. Hansberry*
_____

John C. Hansberry
(admitted *pro hac vice*)
Fox Rothschild LLP
500 Grant Street, Suite 2500
Pittsburg, PA  15219
Tel: 412-394-5539
JHansberry@Foxrothschild.com

Matthew S. Payne
Fox Rothschild LLP
321 North Clark Street, Suite 1600
Chicago, IL  60654
Tel: 312-517-9232
MPayne@Foxrothschild.com

Monica H. Khetarpal
Jason A. Selvey
Jackson Lewis P.C.
150 N. Michigan Avenue
Suite 2500
Chicago, IL  60601
Tel: 312-803-2529
Monica.Khetarpal@jacksonlewis.com
Jason.Selvey@jacksonlewis.com

*Attorneys for Defendant*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true and correct copy of the foregoing Defendant City of Chicago's Response to Plaintiff's Local Rule 5.1(B)(3) Statement of Additional Material Facts was served via the Court's electronic filing system to all parties indicated on the electronic filing receipt this 15th day of December, 2023.

*/s/ John C. Hansberry*
John C. Hansberry